IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MORTON GROVE PHARMACEUTICALS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE NATIONAL PEDICULOSIS ) <br> ASSOCIATION, INC., ) <br> ) <br> Defendant. ) | No.: 08-CV-1384 <br><br> Judge Bucklo <br> Magistrate Judge Mason |

**DEFENDANT THE NATIONAL PEDICULOSIS ASSOCIATION, INC.'S OPPOSITION TO MORTON GROVE PHARMACEUTICALS, INC.'S MOTION TO CONTINUE DISCOVERY FROM PREVIOUS CASE AND ENTER PROTECTIVE ORDER**

**INTRODUCTION**

Defendant The National Pediculosis Association, Inc. ("NPA") agrees with plaintiff Morton Grove Pharmaceuticals, Inc. ("Morton Grove") that this Court should permit the parties to rely on the discovery already conducted in the prior lawsuit filed by Morton Grove – which the Court severed in November 2007 because Morton Grove had improperly joined NPA into a pre-existing lawsuit against another, unrelated party. Discovery from that matter is relevant to the issues in the instant lawsuit, and there is no reason that the parties should be required to incur the expense of repeating that discovery.

NPA, however, disagrees with Morton Grove that document discovery is "nearly complete" and that there should be an accelerated trial on the merits because Morton Grove purportedly "streamlined" its new complaint. As demonstrated below, although Morton Grove now claims that it should be entitled to an expedited resolution of this matter, it is Morton Grove's own conduct that has caused this matter to be delayed. First, during the pendency of the prior lawsuit, Morton Grove dragged its feet in responding to NPA's discovery requests. As a

result, there are still many open discovery issues that have not yet been resolved. Second, contrary Morton Grove's claim, it waited almost 3½ months after the Court severed NPA from the earlier action before it filed the instant action against NPA. If time really were of the essence for Morton Grove, it should have promptly complied with NPA's discovery requests and promptly filed its new action against NPA. NPA should not be prejudiced in its ability to defend itself due to Morton Grove's lack of diligence and/or gamesmanship in its on-again, off-again approach to its own lawsuit. Moreover, while Morton Grove's new complaint does drop some claims, it also adds new allegations for which no discovery has been conducted. Also, NPA has conducted little discovery into Morton Grove's Lanham Act claims; the earlier discovery was mostly focused on the defamation claims and defenses to those claims. Finally, NPA disagrees with Morton Grove's assertion that there is no reason for the parties to comply with Federal Rules of Civil Procedure 26(f) or 16. The parties in the first instance should try to work together to develop an appropriate case management schedule that is realistic and fair.

## **BACKGROUND**

*The Earlier Filed Action.*

On July 14, 2006, Morton Grove filed a four-count complaint against defendants John Fliegel, M.D., William B. Weil, M.D., Lauren Zajac, and the Ecology Center, Inc. (No. 06-CV-3815, Dkt. No. 1.) On February 6, 2007, Morton Grove filed an amended complaint purporting to add NPA as a defendant, and purporting to plead claims against NPA for defamation, violation of the Lanham Act, trade disparagement, and violation of the Illinois Deceptive Trade Practices Act. (No. 06-CV-3815, Dkt. No. 32.)

On June 26, 2007, NPA filed a motion to dismiss the claims against it, or to sever it from Morton Grove's lawsuit against the Ecology Center and Dr. William Weil. (No. 06-CV-3815,

Dkt. No. 94.) While that motion was pending, the parties began to engage in discovery, and NPA served its first requests on Morton Grove on August 14, 2007. (Ex. 1, Decl. of W. Thomson ¶ 4.) Morton Grove did not produce any documents until October 1, 2007, when it produced a limited number of paper documents responsive to a limited number of NPA's document requests. (*Id.* at ¶ 5.) NPA spent significant amounts of time and money trying to get Morton Grove to comply with its discovery obligations. (*Id.* at ¶ 5-9.) Morton Grove was so recalcitrant that NPA repeatedly warned Morton Grove that it was considering seeking the Court's assistance in obtaining complete responses to its discovery requests. (*Id.* at ¶ 9.)

On November 30, 2007, this Court granted NPA's motion to sever because NPA was improperly joined. (No. 06-CV-3815, Dkt. No. 124, 11/30/07 Mem. Op. & Order.)

***The Parties' Conduct During the Three-Plus Months Before this Action was Filed.***

Prior to the Court's November 30 order, neither party had produced any electronic documents (because Morton Grove delayed in agreeing to an electronic discovery protocol despite NPA's repeated requests), and no depositions had been noticed. (Ex. 1, Decl. of W. Thomson ¶ 6, 10.) After the Court's severance order, Morton Grove's counsel informed NPA's counsel that a new complaint would be forthcoming shortly. (*Id.* at ¶ 12.) Based upon that representation, NPA continued to engage in discovery, including producing electronic discovery. (*Id.*) With no complaint on file, however, NPA could not pursue a motion to compel Morton Grove to give complete discovery responses. Moreover, NPA did not serve additional discovery requests because it wanted to review the allegations of any new complaint before undertaking additional discovery.

By February 14, 2008, Morton Grove had not filed a new complaint against NPA, even though more than two months had passed since the Court's severance order. Thus, NPA's

3

counsel spoke with Morton Grove's counsel, who stated that Morton Grove would be filing its new complaint "very soon" and that Morton Grove would allege *no new NPA statements*.  (*Id.* at ¶ 15.)  The parties agreed to table certain discovery issues until after the filing.  (*Id.*)

On February 25, 2008, counsel for Morton Grove again stated that Morton Grove would file a new complaint "very soon," but added, contrary to Morton Grove's previous assurances, that the new complaint would allege claims based on NPA statement not at issue in the original complaint.  (*Id.* at ¶ 16.)  The parties agreed to table all discovery issues until NPA had the opportunity to see the new complaint.  (*Id.*)

*The Instant Action.*

On March 7, 2008, Morton Grove finally filed its new complaint.  Though the complaint eliminates Morton Grove's defamation claim asserted in the prior action, it also identifies new statements that it claims are actionable and shifts the focus from defamation to Lanham Act claims.  (*Id.* at ¶ 17.)  It also includes new factual allegations regarding Morton Grove's settlement with the Ecology Center defendants.  (*Id.*)  NPA has up to and including May 5, 2008 to answer or otherwise plead in response to the new complaint.

## ARGUMENT

I.  **AFTER DRAGGING ITS FEET DURING DISCOVERY AND IN FILING THIS ACTION, MORTON GROVE IS NOT ENTITLED TO THE UNREASONABLY EXPEDITED DISCOVERY SCHEDULE IT PROPOSES.**

Despite the fact that Morton Grove did not promptly respond to discovery served upon it in the prior action (thus making the prior discovery schedule untenable) and the fact that it waited almost 3½ months to file its new action against NPA, Morton Grove now claims that it should be entitled to an accelerated trial on the merits of this case.  Morton Grove fails to offer any explanation as to why such an expedited schedule is appropriate under the circumstances.

Moreover, NPA should not be prejudiced in its ability to defend itself (which is exactly what would happen under Morton Grove's proposed schedule) as a result of Morton Grove's delays.

### A. Morton Grove's Dilatory Conduct In This Action Belies Its Claims That It Needs An Expedited Resolution Of This Matter.

Morton Grove substantially delayed responding to discovery in the prior case and in the filing of the instant case. First, Morton Grove has consistently demanded that discovery be completed according to an aggressive schedule, but dragged its feet when the time came for it to respond to NPA's discovery requests. For example, despite the fact that NPA served written discovery on Morton Grove on August 14, 2007, Morton Grove did not produce any documents until October 1, 2007. (Ex. 1, Decl. of W. Thomson ¶¶ 4-5.) That production was limited to a small number of paper documents that were in response to only a limited number of NPA's document requests. (*Id.* at ¶ 5.) Morton Grove's first electronic production did not occur until January 25, 2008 (*id.* at ¶ 13), despite the fact that the original schedule proposed by the parties contemplated that all fact discovery, including depositions, would be complete in April 2008 (Motion at Ex. A, at 2).

Second, Morton Grove waited 3½ months to file a new complaint after the Court severed NPA from the prior action despite its representations that it would promptly file a new action. In its motion, Morton Grove does not even attempt to explain why it waited so long to re-file.

### B. Morton Grove's Discovery Schedule Is Entirely Unrealistic.

Morton Grove's proposed discovery schedule is unreasonable and unfair to NPA. Though NPA agrees that discovery from the prior action should carry over to this new case, discovery is in no sense "nearly complete." (Motion ¶ 5.)

First, while the parties have exchanged some written discovery, substantial document discovery still must occur before it makes sense to begin depositions. Although NPA worked

5

with Morton Grove to complete some outstanding discovery during the past 3½ months (even though NPA had no obligation to do so because there was no pending action against NPA), NPA did not serve any additional discovery during that time because it wished to review and analyze the new complaint that Morton Grove promised to file "very soon" before seeking additional discovery. With regard to its pending requests, NPA was unable to seek the Court's assistance in resolving several discovery issues where the parties were at an impasse because there was no case pending against it after November 30, 2007. Now that a new complaint is on file, NPA must re-evaluate Morton Grove's discovery deficiencies and consider appropriate action. Any discovery schedule must realistically account for these anticipated issues.

Second, Morton Grove's assertions that the new complaint is significantly "streamlined" or "almost identical" to the previous complaint are inaccurate. (Motion ¶¶ 4-5.) In fact, Morton Grove's new complaint alters the scope of discovery needed in this case. For example, in an apparent attempt to evade the protections of the First Amendment, the new complaint drops Morton Grove's defamation claim and shifts the focus to its Lanham Act claims, and it adds factual allegations regarding a settlement between Morton Grove and other parties. The instant complaint also places new alleged NPA statements at issue. No discovery has been taken as to these new statements. Although there is some overlap between the elements and defenses for those causes of action, there are key differences. NPA has not served focused discovery as to many key elements of a Lanham Act claim, such as the likelihood that NPA's allegedly deceptive statements materially influenced consumers' purchasing decisions. *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). Instead, much of NPA's discovery to date has focused on Morton Grove's defamation claims and NPA's defenses thereto. Moreover, on March 17, 2008, counsel for NPA received from counsel for Morton Grove notice of this Court's

Lanham Act mediation program (Ex. 1, Decl. of W. Thomson ¶ 23), and NPA is considering whether to participate in that program. Morton Grove's expedited discovery schedule would be counter-productive to any such mediation.

Third, NPA currently is evaluating whether it will bring any counterclaims in this action. Specifically, NPA recently learned that Morton Grove has made numerous statements in its advertising and elsewhere in which Morton Grove falsely claims that NPA is a sham non-profit organization with improper profit-seeking objectives. NPA is evaluating its recourse for these statements. Also, late last year (after NPA was severed from the earlier lawsuit), the U.S. Food and Drug Administration sent Morton Grove a "warning letter" informing it that several of its advertisements "appear to downplay the significant risks associated with Lindane Shampoo use and encourage wider use, with less care, than is appropriate" and therefore "misbrand Lindane Shampoo in violation of the Federal Food, Drug, and Cosmetic Act" and its implementing regulations. (Ex. 2, Warning Letter from FDA to Morton Grove, *available at* http://www.fda.gov/foi/warning_letters/s6604c.htm.) To the extent that the Court determines that NPA and Morton Grove are competitors for purposes of Lanham Act standing – which is Morton Grove's position in this litigation over NPA's strenuous objection – NPA is evaluating a Lanham Act claim against Morton Grove for its false and misleading advertising. NPA has not conducted any discovery directed toward either of these potential counterclaims. While Morton Grove only addresses its own discovery needs in its motion, NPA's discovery needs must be considered in setting an appropriate schedule.

Fourth, no depositions have been noticed or taken by either party, though numerous depositions are contemplated. Morton Grove's most recent Rule 26(a) alone identifies 15

individuals though NPA believes that number to be higher based upon its review of the documents Morton Grove has produced.

Finally, Morton Grove's proposed schedule only proposes a deadline for fact discovery, expert discovery and a trial date. It fails to address many key deadlines that will assist the Court and the parties in the orderly preparation of this matter such as deadlines for the production of expert reports and for amending the pleadings. Furthermore, Morton Grove's schedule does not contemplate the filing of dispositive motions and in fact, does not even allow the Court sufficient time to rule on any such motions prior to the trial date. This is not an efficient use of the Court's or the parties' resources, which should be considered in scheduling discovery. For example, based on information from already-conducted discovery, NPA is considering an early summary judgment motion based on statute of limitations defenses that could substantially narrow the discovery issues in this case; Morton Grove's proposed expedited discovery schedule effectively eliminates any efficiency that might be gained from such a motion.

Because Morton Grove's proposed discovery schedule is unreasonable and unfair (especially in light of Morton Grove's own dilatory conduct), its motion should be denied.

## II.    THE COURT SHOULD REQUIRE MORTON GROVE TO WORK OUT AN APPROPRIATE DISCOVERY SCHEDULE WITH NPA.

Federal Rule of Civil Procedure 26(f) seeks to avoid motions to unilaterally set a schedule like Morton Grove's. Rule 26(f) requires the parties to meet and confer about such issues as the subjects on which discovery is needed and when discovery should be completed. Fed. R. Civ. P. 26(f)(2). As the 1993 Advisory Committee Notes on Rule 26(f) explain, "the court should consider the views of the parties" when entering the scheduling order contemplated by Rule 16, and "it is desirable that the parties' proposals regarding discovery be developed through a process where they meet in person, informally explore the nature and basis of the

issues, and discuss how discovery can be conducted most efficiently and economically." Instead of engaging in this discussion, which at any rate was not yet required, *see* Fed. R. Civ. P. 26(f), Morton Grove created its own one-sided discovery schedule and presented it to this Court.

NPA believes that the best way to resolve these issues is by ordering the parties to meet and confer within the time frame contemplated by Federal Rule of Civil Procedure 26(f) so that they can propose to the Court a schedule that is fair and realistic for all of the parties and the Court. If the Court is not inclined to do so, NPA would suggest that the Court add six months to all of the dates in the schedule originally proposed by the parties because Morton Grove's foot-dragging made the dates in that proposed order unrealistic even before the Court severed NPA from the prior action.

### III. NPA MAINTAINS ITS OBJECTION TO ENTRY OF THE PROTECTIVE ORDER.

Morton Grove's Motion also asks this Court to enter a protective order similar to the one the Court entered in the prior action. NPA objected to entry of this order in the prior action and reasserts those same objections here. (No. 06-CV-3815, Dkt. No. 119.)

**CONCLUSION**

For the reasons stated above, Morton Grove Pharmaceuticals, Inc.'s request that the Court enter its proposed discovery schedule should be denied. Instead, the parties should be required to meet and confer and present the Court with a proposed discovery schedule within the time frame contemplated by Federal Rule of Civil Procedure 26(f).

Dated: March 24, 2008

Respectfully submitted,

THE NATIONAL PEDICULOSIS
ASSOCIATION, INC.

By:  s/ Debbie L. Berman
       One of Its Attorneys

Debbie L. Berman (#6205154)
Jennifer A. Hasch (#6272366)
Amanda S. Amert (#6271860)
Wade A. Thomson (#6282174)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484

## CERTIFICATE OF SERVICE

I, Debbie L. Berman, hereby certify that on March 24, 2008, I caused copies of the foregoing Defendant The National Pediculosis Association, Inc.'s Opposition to Morton Grove Pharmaceuticals, Inc.'s Motion to Continue Discovery from Previous Case and Enter Protective Order, and accompanying exhibits, to be served upon the following via electronic filing through the CM/ECF system:

>Timothy Joseph Rivelli  (*trivelli@winston.com*)
>Cherish M. Keller  (*ckeller@winston.com*)
>W. Gordon Dobie  (*wdobie@winston.com*)
>William Charles O'Neill  (*woneil@winston.com*)
>WINSTON & STRAWN, LLP
>35 West Wacker Drive
>41st Floor
>Chicago, IL  60601
>Telephone:  (312) 558-5600
>Facsimile:  (312) 558-5700
>
>*Counsel for Plaintiff Morton Grove Pharmaceuticals, Inc.*

s/ Debbie L. Berman<br>
Debbie L. Berman