**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MORTON GROVE PHARMACEUTICALS, INC. | ) ) ) | |
| Plaintiff, | ) ) | No: 08-CV-1384 |
| v. | ) ) ) | Judge Bucklo |
| THE NATIONAL PEDICULOSIS ASSOCIATION, INC., | ) ) ) | Magistrate Judge Mason |
| Defendant. | ) ) ) | |

### JOINT REPORT OF PARTIES' RULE 26(f) PLANNING MEETING

1. **Meeting.** Pursuant to Federal Rule of Civil Procedure 26(f), a meeting was held telephonically on Wednesday, April 2, 2008 and was attended by William O'Neil and Cherish Keller on behalf of the Plaintiff, Morton Grove Pharmaceuticals, Inc. ("Morton Grove"), and Wade Thomson and Amanda Amert on behalf of the Defendant, The National Pediculosis Association, Inc. ("NPA"). On Friday, April 4, 2008, another meeting was held face-to-face and was attended by William O'Neil on behalf of Morton Grove and Amanda Amert and Wade Thomson on behalf of the NPA.

2. **Pre-Trial Schedule.** The parties jointly propose the following discovery plan (the parties acknowledge that this list is not exhaustive and reserve the right to take discovery on additional topics as necessary):

   a. Discovery will be needed on at least the following general subjects:

      i. The truth or falsity of the statements listed in Morton Grove's complaint that were allegedly made by the NPA;

      ii. The scientific or other basis or support for NPA's statements;

      iii. Whether NPA's LiceMeister Comb is in competition with Morton Grove's lindane medications;

      iv. Whether NPA's alleged statements influence consumers, including whether they deceived or had the tendency to deceive, and whether they influenced purchasing decisions;

      v. Any affirmative defenses and other defenses including: statutes of limitations; first publication; waiver; laches; and related doctrines; First

Amendment defenses; and/or counterclaims, identified in NPA's forthcoming answer to Morton Grove's complaint.

vi.      Whether and when there are or have been sellers, manufacturers and/or distributors of pharmaceutical lindane-containing products other than Morton Grove;

vii.     Any qualified and other privileges applicable to NPA's alleged statements;

viii.    Advertising and other communications regarding Lindane Shampoo, Lindane Lotion and the LiceMeister comb;

ix.      NPA proposes, and Morton Grove objects to, discovery on advertising and other communications regarding lindane-containing products other than Lindane Shampoo and Lindane Lotion, whether made by the parties or third parties;

*NPA's basis for seeking discovery on this topic.* This topic is relevant to whether NPA's statements are of and concerning Morton Grove's products, which is an element of each of Morton Grove's claims.

*Morton Grove's position.* The NPA's insistence on including the foregoing legal argument in this joint statement is entirely inappropriate and not contemplated by the Court's report format. Morton Grove has responses and objections to the NPA's position, which it is willing to discuss at an appropriate LR 37.2 conference.

x.       NPA proposes, and Morton Grove objects to, discovery on lobbying and other communications regarding lindane-containing products, whether made by the parties or third parties; and

*NPA's basis for seeking discovery on this topic.* In its extensive lobbying efforts, Morton Grove has made claims about its owns products and negative comments about NPA. Such information is relevant to truth or falsity of the statements at issue (an element of all of three of Morton Grove's causes of action), materiality and likelihood of confusion (both elements of Morton Grove's Lanham Act claim), actual malice (an element of Morton Grove's trade disparagement claim, and NPA's potential counterclaims). *See Muzikowski v. Paramount Pictures*, No. 1 C 6721, 2005 U.S. Dist. LEXIS 13127, at *43-44 (N.D. Ill. June 10, 2005) (elements of trade disparagement claim); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999) (elements of Lanham Act claim); *Am. Wheel & Eng'g Co., Inc. v. Dana Molded Prods., Inc.*, 476 N.E.2d 1291, 1295, 87 Ill. Dec. 299, 303 (Ill. App. Ct. 1985) (trade disparagement and unfair and deceptive trade practices claims subject to same analysis).

*Morton Grove's position.* The NPA's insistence on including the foregoing legal argument in this joint statement is entirely inappropriate

and not contemplated by the Court's report format. Morton Grove has responses and objections to the NPA's position, which it is willing to discuss at an appropriate LR 37.2 conference.

*xi.* NPA proposes, and Morton Grove objects to, discovery on what, if any, economic impact defendants' statements may have had on Plaintiff's business.

*NPA's basis for seeking discovery on this topic.* This topic is relevant to whether Morton Grove has been or is likely to be injured as a result of NPA's statements, an element of Morton Grove's Lanham Act claim. *See Hot Wax*, 191 F.3d at 819-20 (holding element of Lanham Act claim is whether "the plaintiff has been or is likely to be injured as a result of the *false* statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products" (emphasis in original)). Moreover, Morton Grove alleges in its complaint that it has suffered "incalculable financial and reputational injury to its business" and "a decrease in Morton Grove's sales of 23%, or $9.3 million, from January 2006 to November 2006" as a result of NPA' statements. Compl. ¶¶ 45-46. Certainly, NPA should be allowed to explore these allegations.

*Morton Grove's position.* The NPA's insistence on including the foregoing legal argument in this joint statement is entirely inappropriate and not contemplated by the Court's report format. Morton Grove has responses and objections to the NPA's position, which it is willing to discuss at an appropriate LR 37.2 conference.

b. Disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1)(A) to be made by May 1, 2008.

*Morton Grove's statement regarding scheduling issues.* Regrettably, the parties were not able to reach accord on the case management schedule despite several meetings and good faith efforts to do so. The parties, not surprisingly, take two very different views of this action. Morton Grove is suffering irreparable and ongoing injury at the hands of the NPA, and it has streamlined its complaint to seek only the immediate entry of a permanent injunction. The NPA, on the other hand, seeks to continue its campaign of misinformation as long as possible, needlessly stringing this litigation long into 2009.

Morton Grove first filed suit against the NPA fourteen months ago, on February 6, 2007. The parties conducted nine months of discovery prior to the Court's severance order. The parties continued to voluntarily conduct discovery during the three months between severance and the re-filing of this action. As a result, the parties have largely completed their document production, producing more than 150,00 pages of documents, and can promptly begin deposition discovery. There is no reason this task cannot be completed by June 30, 2008, as Morton Grove proposes. Moreover, the September 8, 2008 date proposed by the NPA, is one of pure posturing – Morton Grove initially proposed June 12; the NPA initially proposed September 8; Morton Grove then offered June 30 (which

it stands by in this filing); the NPA offered July 30 (but has now strategically retreated from that position in this filing, presumably with the hopes of convincing the Court to split the difference using its later September date).

The schedule proposed by Morton Grove below is reasonable, workable, and appropriate given the prior history of this litigation, the nature and complexity of Morton Grove's complaint, and the injunctive relief sought therein.

*NPA's statement regarding scheduling issues.*  Despite having duly conferred regarding the scheduling issues in this case, the parties regrettably have been unable to reach agreement on scheduling deadlines in this matter.  In particular, the parties have a fundamental disagreement regarding the time needed to complete fact discovery in this matter.

As explained in detail its opposition to the motion for entry of a scheduling, Morton Grove's proposed schedule was unfair and unreasonable in light of the delays in discovery that occurred because Morton Grove dragged its feet on fact discovery and then waited three and a half months after the Court's order severing this matter to file its new complaint.  (And it appears from Morton Grove's recent conduct that the foot dragging with continues; Morton Grove will not agree to list as a discovery topic an element of their Lanham Act claim and insist that we must meet and confer even though the parties have discussed this dispute already.)

In an attempt to work out a schedule, NPA proposed a discovery cut-off right after Labor Day.  NPA believes that this cut-off is reasonable and fair in light of the amount of paper discovery that remains to be completed and the number of depositions the parties realistically expert to take.

Morton Grove rejected NPA's proposed date out of hand with no explanation.  In a further effort to reach agreement, NPA offered to compromise from its original proposal.  Morton Grove rejected that offer as well, and informed NPA that it refused to move away from its proposed date of June 30, 2008.

Although the parties do not have significant disagreements about the interim scheduling deadlines, they have been unable to agree on those deadlines because of their disagreement regarding the deadline for completion of fact discovery and the trial date.  The schedule proposed by NPA provides a shorter time for the completion of discovery than the schedule the parties had previously agreed to, and provides a trial date only three weeks later than the schedule the parties originally proposed.

c.    All fact discovery to be commenced in time to be completed by [Morton Grove proposes June 30, 2008; NPA proposes September 8, 2008].  All expert discovery to be commenced in time to be completed by [Morton Grove proposes October 31, 2008; NPA proposes December 22, 2008].

4

    d.       Morton Grove expects it will need approximately 7 depositions; NPA expects it will need approximately 15 depositions, including not only the 10 individuals identified in Morton Grove's initial disclosures, but also other individuals who have been, or will be, identified during discovery.  Morton Grove objects to the NPA's taking of more than 10 depositions pursuant to Rule 30(a)(2)(A)(1).

    e.       Reports from retained experts under Rule 26(a)(2) due: [Morton Grove proposes from Morton Grove by August 4, 2008, and from NPA by September 8, 2008; NPA proposes from Morton Grove by October 10, 2008, and from NPA by November 26, 2008.]

    f.       All potentially dispositive motions should be filed by [Morton Grove proposes November 21, 2008; NPA proposes January 15, 2009], with responses due 30 days afterwards and replies due 15 days after responses due.

    g.       Final pretrial order:

        [Morton Grove proposes Morton Grove to prepare proposed draft by February 13, 2009; parties to file joint final pretrial order by February 27, 2009; NPA proposes Morton Grove to prepare proposed draft by May 15, 2009; parties to file joint final pretrial order by May 29, 2009.]

    h.       The case should be ready for trial by [Morton Grove proposes March 20, 2009; NPA proposes June 15, 2009] and at this time is expected to take approximately 5 full days.

3.      **Settlement.**  At least 14 days prior to the Rule 16(b) scheduling conference, Morton Grove shall make a written settlement demand to NPA.  At least 7 days prior to the scheduling conference, NPA is to respond in writing to Morton Grove's settlement demand.

4.      **Consent.**  The parties do not consent unanimously to proceed before a Magistrate Judge.

5.      **Electronically Stored Information.**  As required by Rule 26(f), the parties conferred regarding electronically stored information on August 7, 2007, under the prior case *Morton Grove Pharmaceuticals, Inc. v. Ecology Center et al.*, Case No. CV-06-3815. The parties agreed to continue to confer and cooperate on discovery issues relating to electronically stored information.

Dated:  April 4, 2008                          Respectfully Submitted,

By:__/s/ William C. O'Neil____

***Filed jointly on behalf of Defendant***

W. Gordon Dobie (wdobie@winston.com)
Timothy Rivelli (trivelli@winston.com)
William C. O'Neil (woneil@winston.com)
Cherish M. Keller (ckeller@winston.com)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
T:  (312) 558-5600
F:  (312) 558-5700

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of April 2008, I caused a copy of **Joint Report of Parties' Rule 26(f) Planning Meeting** to be served on counsel of record by ECF electronic filing:

> Debbie L. Berman
> Jennifer A. Hasch
> Amanda S. Amert
> Wade A. Thomson
> JENNER & BLOCK LLP
> 330 North Wabash Avenue
> Chicago, Illinois 60611
> T: (312) 222-9350
> F: (312) 527-0484


/s/William C. O'Neil