**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MORTON GROVE PHARMACEUTICALS, INC., | ) ) ) | |
| Plaintiff, | ) ) | No. 08-CV-1384 |
| | ) | Judge Bucklo |
| vs. | ) ) | Magistrate Judge Mason |
| THE NATIONAL PEDICULOSIS ASSOCIATION, INC., | ) ) ) ) | |
| Defendant. | ) ) | |

**THE NATIONAL PEDICULOSIS ASSOCIATION, INC.'S
OPPOSITION TO MORTON GROVE PHARMACEUTICAL, INC.'S
MOTION TO COMPEL ANSWERS TO INTERROGATORIES**

Tellingly, plaintiff Morton Grove Pharmaceuticals ("Morton Grove") chose not to provide the Court with the single most important document needed to resolve its motion to compel -- the almost 30-page response of defendant National Pediculosis Associations, Inc. ("NPA") to Morton Grove's First Set of Interrogatories. NPA's responses to those interrogatories demonstrate that NPA has more than satisfied its obligation to provide fulsome answers to Morton Grove's non-objectionable interrogatories. Moreover, NPA's responses illustrate that: (1) Morton Grove has exceeded its maximum number of interrogatories; (2) NPA has raised valid substantive objections, beyond the "arithmetic calculation" of the subparts, to certain interrogatories; and (3) NPA has provided Morton Grove with substantial information concerning the issue for which Morton Grove now claims it needs additional interrogatories. For these reasons, the Court should deny Morton Grove's Motion to Compel, including Morton Grove's request for additional interrogatories.

## FACTUAL BACKGROUND

**Morton Grove's First Set of Interrogatories**

In July 2007, as part of the first suit against NPA that the Court severed from Morton Grove's action against the Ecology Center, Morton Grove served its First Set of Interrogatories to NPA. ("Morton Grove's First Set"). Morton Grove's First Set consisted of 12 separately numbered interrogatories though some of the interrogatories contained unnumbered sub-parts. In Morton Grove's First Set, Interrogatory #1:5 requested the following information[1] :

> For each statement or communication identified in Paragraphs 23 through 31 of the Second Amended Complaint, describe the process or procedure by which You assembled the statement or communication, including but not limited to, the supporting research, if any; the drafting; the editing, if any; the peer review, if any; and the dissemination.

On August 27, 2007, NPA promptly provided a 27-page response to Morton Grove's First Set, a copy of which is attached hereto as Exhibit A. As to #1:5, NPA provided a comprehensive, nine-page response detailing the process by which NPA assembled each of the 12 statements at issue in the Complaint. This request required a long, multi-step narrative about the origin of each statement, the research supporting each statement, the original peer review of each statement, and other information.

As part of its response to Morton Grove's First Set, NPA objected to Morton Grove's interrogatories on the grounds that certain interrogatories in Morton Grove's First Set involved discrete subparts that NPA would treat as such under the Federal Rules. (Ex. A at 2.) NPA explained that, subject to its other objections, NPA would still answer the discrete subparts of the First Set because even including discrete sub-parts, the

---

[1] For clarity, NPA has numbered the interrogatories first according to their set, then according to their number within the set. For example, Interrogatory #5 in Morton Grove's First Set becomes #1:5. NPA uses this approach throughout the document.

number of interrogatories in the First Set did not exceed 25 (although it came close). (*Id.*)

At no time prior to severance did Morton Grove ever raise any issues with respect to NPA's responses to Morton Grove's First Set, nor did it disagree with NPA's objection that Morton Grove's First Set contained far more interrogatories than the 12 that were numbered.

Rather, Morton Grove waited until April 3, 2008 to raise any objections to NPA's responses to substantive responses. While NPA believed that it fully answered the interrogatories, in a spirit of cooperation, it agreed to supplement its response to Interrogatory No. 5 by May 15, 2008 to specifically address the issue of who drafted the statements at issue to the extent that information is not clear from its prior response.

**Morton Grove's Second Set**

On January 2, 2008, Morton Grove issued its Second Set of Interrogatories to The National Pediculosis Association, Inc. ("Second Set"). That set contained the following interrogatories:

> 1.      Please describe with specificity the review done, if any, by Dr. David R. Brown; Dr. W. Steven Pray; Jill Reynolds, R.N.; Dr. Robert Truding; Paul Krouner; Philip Lieberman; Gershon Saxe; Leslie Kenney, [sic] Linda Menditto; Dan Sheridan; Bethezda Cervantes; and Eric Phan of the statements contained in Paragraphs 23 through 31 of the Second Amended Complaint. For each statement, identify and describe with specificity the author of the statement, any reviewers of the statement, and the approximate dates of the drafting and review of the statement.
>
> 2.      Please describe with specificity the activities undertaken either on the NPA's behalf or for the NPA's benefit, relating to Lindane and/or Morton Grove, by Dr. David R. Brown; Dr. W. Steven Pray; Jill Reynolds, R.N.; Dr. Robert Truding; Paul Krouner; Philip Lieberman; Gershon Saxe; Leslie Kenney, [sic] Linda Menditto; Dan Sheridan; Bethezda Cervantes; and Eric Phan. For each person, include in the description a general time frame of the activities.

On February 4, 2008, NPA served its Response to Plaintiff Morton Grove Pharmaceutical's Second Set of Interrogatories ("Response to the Second Set").[2] In its Response to the Second Set, NPA raised numerous objections. (See Ex. B to Morton Grove's Mem.) First, NPA objected to both interrogatories on the basis that given the subparts in these interrogatories and Morton Grove's First Set, Morton Grove had now exceeded the number of permissible interrogatories. (*See id* at 2, 5-6.) Second, NPA objected to Interrogatory No. #2:1 because it was largely redundant of Interrogatory No. 5 in Morton Grove's First Set. (*See id.* at 5.) NPA raised other objections as well. (*See id*.) Similarly, NPA objected to Interrogatory #2:2 because it sought information for time periods that were not only long before the applicable statute of limitations, but even long before Morton Grove began selling products containing lindane. (*See id.* at 5-6.)

Morton Grove initially contacted NPA in February 2008 to discuss its objections to NPA's response, but ultimately agreed to table all discovery discussions until it filed its new complaint against NPA, which it waited almost a month to do.

**Morton Grove's Third Set**

On April 11, 2008, Morton Grove served its Third Set of Interrogatories to NPA. NPA's response is not due until May 14. As described below, in addition to exceeding the permitted number of interrogatories, NPA has additional valid objections to some of these interrogatories.

## ARGUMENT

Morton Grove's attempt to require NPA to respond to an excessive number of additional interrogatories even though NPA has already provided almost 30 pages of

---

[2] NPA responded even though it was not required to do because there was no complaint on file against NPA after the Court severed NPA from the prior action in November 2007.

information in response to Morton Grove's prior interrogatories should be rejected. Although the Federal Rules of Civil Procedure provide for broad discovery of information, discovery is not limitless. *Byers v. Ill. State Police*, No. 99 C 8105, 2002 WL 1264004, at *2 (N.D. Ill. June 3, 2002). In order to prevent abuse of the discovery process, the Federal Rules expressly limit discovery in certain respects, including the number of interrogatories. *See* Fed R. Civ. P. 26(b)(2) (listing limitations); Fed R. Civ. P. 33 (limiting the number of interrogatories). Because Morton Grove's interrogatories violate the word and spirit of Rule 33 and Rule 26(b)(2), this Court should deny Morton Grove's Motion to Compel.

## I. Morton Grove Has Exceeded Its Allowed Number Of Interrogatories.

As demonstrated, Morton Grove has served 102 interrogatories, when all of the subparts are included, without leave of court and without justification.

A party may not serve more than 25 interrogatories, including discrete subparts, without the court's permission. Fed. R. Civ. P. 33. When the subparts of a single interrogatory are not factually or logically subsumed within and necessarily related to the primary question, then those subparts count as separate questions for the purposes of Rule 33. *Bell v. Woodward Governor Co.*, No. 03 C 50190, 2005 WL 3829134, at *1 (N.D. Ill. June 30, 2005). Interrogatory subparts are not related simply because each subpart is relevant to the case; otherwise, all interrogatories would relate to the "common theme" of being relevant to the case, and a party could never exceed the maximum number of interrogatories. *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) (cited favorably by *Bell*, 2005 WL 3829134, at *1). Notwithstanding the creative

use of grammar or numbering by the party posing an interrogatory, discrete subparts count as separate requests. *Id.* at 685-86.

In its Motion, Morton Grove sets forth the proper test for determining the number of interrogatories, but totally ignores the test when it baldly asserts that it has asked only fourteen interrogatories because it numbered the interrogatory paragraphs as such. *Bell* -- the very case that Morton Grove cites as instructive on the issue -- rejects the circular, *ipse dixit* logic Morton Grove uses to count its interrogatories.

In *Bell*, the plaintiff posed an interrogatory relating to both the creation of and destruction of particular documents. *Bell*, 2005 WL 3829134, at *2. In tallying the number of interrogatories served, the court counted Interrogatory #1 as two separate interrogatories. *Id.* The court reasoned that the creation of the documents and the destruction of those documents occurred as "two entirely separate incidents[.]" *Id.* Likewise, in *Bell*, the plaintiff asked two interrogatories that sought information about each one of the defendant's affirmative defenses. *Id.* The court held that the two interrogatories actually constituted 21 discrete subparts, a separate interrogatory for each logically and factually unrelated affirmative defense. *See id*.

Applying the test set forth in *Bell*, Morton Grove has already served 48 interrogatories on NPA just in the first two sets and an additional 54 in the third set. Specifically, in the First Set, Interrogatory #1:5 requests NPA to describe in detail the process or procedure by which NPA assembled 12 different statements at issue in the lawsuit. These 12 requests are unrelated: NPA published each of these statements at different times (often in separate years), via different media, about a variety of topics ranging from drinking water to legislative activity, having been prompted by different

scientific studies and news-worthy events. The only real relationship between these twelve statements is that Morton Grove has included all of them in its Complaint. That such statements share the "common theme" of relevancy does not create the type of relationship Rule 33 requires. *See Kendall*, 174 F.R.D. at 685. While some of the other interrogatories in the First Set arguably contain subparts which should count as separate interrogatories as well, NPA conservatively only counted each of those as one interrogatory. As such, Morton Grove's First Set in reality contains 23 discrete interrogatories -- the 12 contained within numbered interrogatory #5 and the other 11 numbered interrogatories.

Similarly, applying the *Bell* test to Morton Grove's Second Set results in 25 additional interrogatories. Specifically, Interrogatory #2:1 seeks to know about the review process relating to all of the statements at issue in the complaint, raising the same concerns associated with Interrogatory #1:5. Moreover, Interrogatory #2:1 first asks about the review process for each statement undertaken by a number of current and former NPA employees, scientific advisory board members and board of directors members. Then in a separate sentence, it asks for information about the initial authorship of these statements, among other things. Just as the creation and destruction of documents are two factually and logically unrelated occurrences that require two distinct interrogatories, *see Bell*, 2005 WL 3829134, at *2, the creation and later review of statements are factually and logically unrelated. By NPA's count, Interrogatory #2:1 encompasses at least 24 separate requests: 12 different statements multiplied by at least two distinct requests (the creation and the subsequent review) regarding each statement. Again being conservative, NPA considers Interrogatory No. #2:2 to be only one

interrogatory even though it could be counted as 12 (one per person referenced in the interrogatory).

Thus, just in the First Set and Second Set, Morton Grove already has served 48 interrogatories on NPA (23 in the First Set; 25 in the Second Set.)  Because NPA has not answered the Second Set because Morton Grove refused NPA's repeated requests to identify which two of the interrogatories it wanted answer (bringing the total to 25), Morton Grove still has two interrogatories left; NPA will answer these two remaining interrogatories once they are appropriately limited to just two discrete subparts.

## II. Morton Grove Should Not Be Given Leave To Pursue Its Duplicative, Highly Burdensome Interrogatories, Which Largely Seek Information Already Provided In Response To Previous Interrogatories.

Morton Grove argues that it should be permitted to serve an excessive number of burdensome interrogatories so that it can determine which of the 19 people on NPA's Rule 26(a) disclosures were involved in the drafting and review of the statements at issue. (Morton Grove Mem. at 2.)  This argument is without merit.

First, Morton Grove's accusation on page 2 of its memorandum that NPA required it to serve new interrogatories so that NPA could buy time and tried to avoid having to answer "legally damning interrogatories" is entirely baseless.  NPA already provided the vast majority of the information Morton Grove claims it needs in response to Interrogatory No. 5 of the First Set.  Interrogatories about the completely new statements that were not part of the prior lawsuit, however, appropriately should be counted as new interrogatories under *Bell* and are not simply supplementations of earlier interrogatories.[3]  Because Morton Grove had exceeded its allotment of interrogatories

---

[3] Morton Grove fails to mention that NPA has agreed to go back and supplement all relevant discovery responses that are not complaint-specific, and that NPA also must

- 8 -

before it served the Third Set, NPA is not required to answer these new interrogatories.[4] Nonetheless, because NPA is *not* trying to avoid detailing the authorship of the various statements at issue (contrary to Morton Grove's accusation), NPA is willing to answer Interrogatory No. 5 from the First Set for the new statements in this lawsuit, even though doing so will mean that NPA has responded to more than 25 interrogatories.

Second, NPA already has incurred substantial expense and burden in preparing a 27-page response to the First Set, including nine pages about these statements at issue and who prepared and reviewed them, and NPA has agreed to specifically supplement those responses to make it clear who drafted which statements. Enough is enough. NPA should not be required to rehash much of its prior answers especially when Morton Grove can clarify the information NPA already provided in a deposition – which would be far less burdensome and certainly more efficient and fair at this point. Therefore, Morton Grove's motion should be denied.

Courts may limit discovery that is "unreasonably cumulative or duplicative, obtainable from another source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs its likely benefit." *Byers,* 2002 WL 1264004, at *2 (citing Fed. R. Civ. P. 26(b)(2)). In addressing undue burden, "[c]ourts have routinely denied motions to compel based on a finding that a deposition would be a more efficient tool for the requesting party to acquire the sought-

---

serve new discovery requests relating to Morton Grove's new allegations. Moreover, *both* Morton Grove and NPA are required to file new discovery requests relating to new allegations solely because Morton Grove elected to add new allegations and new statements in its new complaint and pushed for continuation of discovery.

[4] In any event, even if NPA were required to respond, its responses would not be due until May 14.

after information." *Id.* at *3; *see also Portis v. City of Chicago*, No. 02 C 3139, 2005 WL 991995, at *5 (N.D. Ill. Apr. 15, 2005) (holding deposition, not interrogatory, proper means to clarify the definition of words used in defendant's answers to earlier interrogatories); *Midwest Builder Distrib., Inc. v. Triangle Pacific Corp.*, No. 97 C 0326, 1999 WL 642385, at *1 (N.D. Ill. May 12, 1999) (denying motion to compel that would require multi-step narrative and suggesting the use of a deposition).

*Byers* is precisely on point. In *Byers*, the plaintiff's interrogatory requested information about each individual defendant's detailed knowledge of and involvement in failing to promote particular plaintiffs on each occasion particular plaintiffs were eligible for promotion. 2002 WL 1264004, at *3. The defendants responded that the interrogatory was unduly burdensome. They argued that they had provided a list of names, contact information and general responses to the interrogatory but that plaintiffs more efficiently could gather the detailed information from depositions. *Id.* at *3-4. The court held that "it would be unduly burdensome to require the defendants to state in detail their knowledge and involvement for failing to promote [the plaintiffs]." *Id.* at *4. The court explained that narrative information is more efficiently gathered by means of a deposition. *See id.*

Like the interrogatories at issue in *Byers,* the interrogatories in Morton Grove's Second Set seek information more efficiently obtained by deposition. Morton Grove wants descriptions "with specificity" of the on-going review process that occurred for twelve distinct statements over a period of five years by 12 people. Adequate answers to Interrogatories #2:1 and #2:2 would require NPA to write a novella, which NPA has explained to Morton Grove each step of the way (although Morton Grove completely

ignores this objection in its Motion). A Rule 30(b)(6) deposition is the more efficient means by which Morton Grove can obtain the detailed information it seeks. A deposition would also benefit Morton Grove, which could ask follow-up questions regarding the minutiae of each individual's involvement. Therefore, the Court should not require NPA to answer the outstanding interrogatories or permit Morton Grove to serve any more.

Third, with respect to Morton Grove's Third Set, NPA has not even had a chance to respond; its response is not due until May 14. So, while NPA does not attempt to state its full objections to the Third Set here, it does find it worth noting that Morton Grove's interrogatories seem to be getting *more* abusive rather than less. For example, Interrogatory #3:6 seeks the same information as #1:12, which NPA already answered, regarding NPA's involvement in Wikipedia's web page for "lindane." Interrogatory #3:7 duplicates # 2:1. Interrogatory #3:3 seeks "all testimony (given under oath) by Deborah Altschuler," regardless of the forum for her testimony or its relevance to the issues in the case.

Because NPA has valid objections to these interrogatories – in addition to the fact Morton Grove exceeded the limit – it should be permitted to raise them in the timeframe permitted by the rules. Assuming that Morton Grove still has interrogatories left, the parties should then attempt to work out any issues. It is unfair for Morton Grove to suggest that the Court short circuit that process and order NPA to answer those interrogatories without giving NPA a chance to set forth its objections in due course.

## **CONCLUSION**

Because NPA already has provided Morton Grove with ample information about the drafting and review of the statements at issue in its prior interrogatory responses, the Court should deny Morton Grove's motion to compel or for leave to exceed the limit on

interrogatories. If Morton Grove needs additional information, the most efficient and fair way to get it is for Morton Grove to take a deposition.

Dated: May 2, 2008                                  Respectfully Submitted,
                                                    THE NATIONAL PEDICULOSIS
                                                    ASSOCIATION, INC.

                                                    By:  _____s/ Debbie L. Berman_____
                                                            One of Its Attorneys

Debbie L. Berman (#6205154)
Jennifer A. Hasch (#6272366)
Amanda S. Amert (#6271860)
Wade A. Thomson (#6282174)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, Illinois 60611
312-222-9350

**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
**DLB EDITS**

# CERTIFICATE OF SERVICE

I, Debbie L. Berman, hereby certify that on May 2, 2008, I caused copies of the foregoing **The National Pediculosis Association, Inc.'s Opposition to Morton Grove Pharmaceutical, Inc.s' Motion To Compel Answers to Interrogatories, and accompanying exhibits,** to be served upon the following via electronic filing through the CM/ECF system:

>Timothy Joseph Rivelli  (*trivelli@winston.com*)
>W. Gordon Dobie  (*wdobie@winston.com*)
>William Charles O'Neill  (*woneil@winston.com*)
>Cherish M. Keller  (*ckeller@winston.com*)
>WINSTON & STRAWN, LLP
>35 West Wacker Drive
>41st Floor
>Chicago, IL  60601
>Telephone:  (312) 558-5600
>Facsimile:  (312) 558-5700
>
>*Counsel for Plaintiff Morton Grove Pharmaceuticals, Inc.*

                                                      s/ Debbie L. Berman