**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MORTON GROVE PHARMACEUTICALS, INC. | ) )  ) |
| Plaintiff, | ) ) |
| | )  No:  08-CV-1384 |
| v. | ) ) |
| | )  Judge Bucklo |
| THE NATIONAL PEDICULOSIS ASSOCIATION, INC., | )  Magistrate Judge Mason ) |
| | ) |
| Defendant. | ) ) |
| | ) |

**MORTON GROVE PHARMACEUTICALS, INC.'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENA**

**EXHIBIT INDEX**

Exhibit A  –  NPA's First Set of Document Requests

Exhibit B  –  Morton Grove's Response to NPA's First Set of Document Requests

Exhibit C  –  October 19, 2007 letter from W. O'Neil to W. Thomson

Exhibit D  –  NPA's Second Set of Document Requests

Exhibit E  –  Morton Grove's Response to NPA's Second Set of Document Requests

Exhibit F  –  January 14, 2008 letter from W. O'Neil to W. Thomson

Exhibit G  –  December 13, 2007 letter from D. Berman to T. Rivelli and attached Notice of Deposition for W. Gordon Dobie

Exhibit H  –  December 19, 2007 letter from T. Rivelli to D. Berman

Exhibit I  –  Subpoena served on Closerlook, Inc.

Exhibit J  –  Closerlook, Inc.'s objections to subpoena

Exhibit K  –  May 25, 2007 letter from A. Hebert to R. Warren, preceded by www.lindane.com web page where letter may be accessed

Exhibit L  –  "Ban Lindane Network" March 30, 2006 call notes and email dated April 5, 2006 to which document was attached

Exhibit M  –  Article by Steve Lubetkin, *Memo to NPA: Will you ever stop scratching this one?* (June 16, 2006)

Exhibit N  –  NPA insurance policy ("Chubb Commercial Excess and Umbrella Insurance")

Exhibit O  –  Retractions issued by the Ecology Center

Exhibit P  –  Affidavit of Ralph J. Hodosh

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MORTON GROVE PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.: 06-CV-3815 |
| v. | ) | |
| | ) | Judge Bucklo |
| JOHN FLIEGEL, M.D., WILLIAM B. WEIL, | ) | Magistrate Judge Mason |
| M.D., THE ECOLOGY CENTER, INC., and THE | ) | |
| NATIONAL PEDICULOSIS ASSOCIATION, | ) | **JURY TRIAL DEMANDED** |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT THE NATIONAL PEDICULOSIS
ASSOCIATION, INC.'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF

Defendant the National Pediculosis Association ("NPA"), through its attorneys Jenner &

Block LLP, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, propounds the

following requests for production of documents and things upon Plaintiff Morton Grove

Pharmaceuticals, Inc. ("Morton Grove"), and requests responses be made within 30 days.

## DEFINITIONS AND INSTRUCTIONS

1.    "NPA" shall mean defendant The National Pediculosis Association, Inc., its

predecessor, and its respective present and former officers, directors, employees, agents,

representatives and any other persons acting on its behalf.

2.    "Morton Grove" shall mean plaintiff Morton Grove Pharmaceuticals, Inc., and its

respective present and former subsidiaries, parents, affiliates, divisions, successors, assigns,

officers, directors, employees, agents, consultants (paid or unpaid), advisors, representatives and

any other persons acting or purporting to act on their behalf.

3.     "Complaint" shall refer to Morton Grove's Second Amended Complaint, filed in the United States District Court for the Northern District of Illinois on June 19, 2007.

4.     "NPA's Statements" shall mean the allegedly defamatory, false, and/or misleading statements attributed to NPA in Morton Grove's Complaint.

5.     "Lindane Lotion" shall mean the lotion containing the chemical lindane manufactured by Morton Grove.

6.     "Lindane Shampoo" shall mean the shampoo containing the chemical lindane manufactured by Morton Grove.

7.     The term "lindane" shall mean the chemical lindane.

8.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these interrogatories any information which might otherwise be construed as outside their scope.

9.     The singular and the plural form shall be construed interchangeably so as to bring within the scope of these interrogatories any information which might otherwise be construed as outside their scope.

10.     "Relating to" shall mean concerning, consisting of, referring to, reflecting, regarding, supporting, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected to the subject matter discussed.

11.     The term "including" means "including, but not limited to."

12.   "Document" shall mean all writings, papers, or tangible things of any kind whatsoever, including but not limited to all originals and non-identical copies or reproductions of letters, memoranda, correspondence of any kind, handwritten notes, time records, pay slips, appointment books, notepads, notebooks, electronic mail, Electronically Stored Information ("ESI"), postcards, telegrams, facsimiles, telexes, films, photographs, recordings, tapes, transcriptions, books, records, ledgers, journals, and other things, whether prepared by handwriting, typing, printing, photostating, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds or symbols, or combinations thereof.

13.   These requests are deemed to be continuing so as to require supplemental productions, pursuant to Federal Rule of Civil Procedure 26(e), in the event that Morton Grove creates, discovers or obtains new or additional documents that are responsive to these requests.

14.   With respect to any Documents or portions of Documents withheld on a claim of privilege or work product protection from discovery, provide a statement setting forth as to each such Document:

    (a)   the type of Document;

    (b)   the date of the Document;

    (c)   the author(s) and recipient(s) of the Document;

    (d)   the subject matter of the Document; and

    (e)   the legal and factual basis for the privilege or protection claimed.

15.   When a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without disclosing the privileged material.

3

16.    If no Documents responsive to an individual numbered request are in the possession, custody or control of Morton Grove, please indicate this in a written response.

17.    For ESI, please do the following:

(a)    produce all documents as Group IV single page tiff format files imaged at 300 dpi. Name each tiff file with a unique name matching the Bates number labeled on the corresponding page. Group every 1000 tiffs into a new folder; do not create a separate folder for each document;

(b)    provide an image load file (Opticon file) that contains document boundaries;

(c)    produce the extracted, full text from the body of each document originally kept in electronic form as a .txt file named for the beginning bates number of the document, in the same directory as the image of the first page of the document;

(d)    any redacted, privileged material should be clearly labeled to show the redactions on the tiff image; and

e)    produce extracted metadata for each document in the form of a .dat file, and include the following fields:

4

| FIELDNAME | DESCRIPTION |
|---|---|
| BATES_BEGIN | The bates label of the first page of the document |
| BATES_END | The bates label of the last page of the document |
| ATTACH_BEGIN | The bates label of the first page of a family of documents |
| ATTACH_END | The bates label of the last page of a family of documents |
| TITLE | Subject of e-mail or file name of attachment/standalone file |
| DATE | Document Date or E-mail Sent Date or operating system Date Last Modified for attachments and standalone electronic files |
| TIME | E-mail sent time or operating system Time Last Modified for attachments and standalone electronic files |
| AUTHOR | Author of Document or E-mail |
| RECIPIENT | Recipient of Document or E-mail |
| CC | Copies |
| BCC | BCC (blind copies) |
| CUSTODIAN | Custodian(s) in whose files the document was found |
| FOLDER | Email Folder Information or the original file path of the native file, (for each location in which a duplicate was found) |
| MD5 | MD5Hash value |
| MESSAGE_ID | Unique e-mail message Identifier |
| NATIVE_FILE | The production path to any document produced in native form |

18.     Unless otherwise stated, these Requests call for the production of Documents dated or created during the time period January 1, 1995 to the present.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**Request No. 1:**       All communications with the United States Food and Drug Administration ("FDA") regarding lindane, Lindane Lotion, or Lindane Shampoo.

**Request No. 2:**       All communications with the United States Environmental Protection Agency ("EPA") regarding lindane, Lindane Lotion, or Lindane Shampoo.

**Request No. 3:**       All communications with the United States Centers for Disease Control ("CDC") regarding lindane, Lindane Lotion, or Lindane Shampoo.

**Request No. 4:**       All communications with the United States Agency for Toxic Substances and Disease Registry ("ATSDR") regarding lindane, Lindane Lotion, or Lindane Shampoo.

**Request No. 5:**        All documents relating to, or relied upon in preparing Morton Grove's responses to NPA's First Set of Interrogatories.

**Request No. 6:**        All documents referred to in, or relied upon in preparing the Complaint.

**Request No. 7:**        All documents relating to Morton Grove's allegation that NPA's Statements "necessarily refer to Morton Grove and its products," as alleged in paragraph 4 of the Complaint.

**Request No. 8:**        All documents relating to Morton Grove's allegation that it is the sole manufacturer and distributor of Lindane Lotion and Lindane Shampoo in the U.S., as alleged in paragraphs 4 and 17 of the Complaint.

**Request No. 9:**        All documents relating to potential side effects, harms, injuries, death(s), symptoms, or other health or public safety risks involving the chemical lindane, including but not limited to any analyses, testing, research, government agency reports or actions, development reports, or evaluations since January 1, 1970.

**Request No. 10:**        All documents relating to potential side effects, harms, injuries, death(s), symptoms, or other health or public safety risks involving Lindane Lotion, Lindane Shampoo and/or other pediculicidal products containing lindane, including but not limited to any analyses, testing, studies, research, development reports or evaluations since January 1, 1970.

**Request No. 11:**        All documents relating to resistance of lice or scabies to Lindane Lotion, Lindane Shampoo and/or other pediculicidal lotions, creams, or shampoos.

**Request No. 12:**        All documents relating to overuse and/or misuse by consumers of Lindane Lotion, Lindane Shampoo and/or other pediculicidal products containing lindane.

**Request No. 13:**        All documents concerning allegations, accusations, or complaints received by Morton Grove about the health or public safety risks involving Lindane Lotion, Lindane Shampoo and/or other pediculicidal products containing lindane.

**Request No. 14:**        All documents relating to the "events reported" to Morton Grove, as referenced in page 3 of W. Gordon Dobie's January 22, 2007 letter to Deborah Z. Altschuler (attached to the Complaint as Exhibit E).

**Request No. 15:**        All documents relating to Morton Grove's allegations that Lindane Lotion and Lindane Shampoo are "safe", as alleged in paragraph 5 of the Complaint, including all documents relating to the allegations of governmental approval or oversight in paragraphs 5, 6, 7, 8, 20, 21, 29, and 30 of the Complaint

**Request No. 16:**        All documents relating to the truth or alleged falsity of NPA's Statements.

**Request No. 17:**        All documents relating to Morton Grove's allegation that it has been harmed by NPA's statements, including all documents relating to paragraphs 36, 48, 55, 61, and 67 of the Complaint.

**Request No. 18:**        All documents relating to Morton Grove's allegation in paragraph 36 of the Complaint that Defendants' statements have resulted in a "decline in the sales of Lindane" of "approximately 23%, with a total loss of more than \$9.3 million between January and November 2006," including but not limited to any analyses, calculations, presentations,

7

Board materials, minutes, projections, predictions, communications with analysts, and records of sales of Lindane Lotion and Lindane Shampoo since January 1, 1995.

**Request No. 19:**    Documents sufficient to identify annual, quarterly, and monthly prescription data, including but not limited to IMS data, for Lindane Lotion and Lindane Shampoo since January 1, 1995.

**Request No. 20:**    Documents sufficient to identify any changes in the retail and wholesale price of Lindane Lotion and Lindane Shampoo since January 1, 1995.

**Request No. 21:**    All documents reflecting communications between NPA and Alliant Pharmaceuticals relating to the sales of Lindane Lotion and Lindane Shampoo, including but not limited to discussions of sales and/or sales trends, sales projections, and actual sales data, from January 1, 2000 through present.

**Request No. 22:**    All Morton Grove's audited financial statements from January 1, 2002 to present.

**Request No. 23:**    Documents sufficient to identify all entities or persons who have marketed or sold Lindane Lotion and/or Lindane Shampoo for Morton Grove from January 1, 1995 to present, including each entity or person's name, address, telephone number and annual sales volume.

**Request No. 24:**    Documents sufficient to identify all outside agencies, marketing companies, public relations firms, accountants, analysts, and/or consultants that Morton Grove has employed or used since January 1, 1995 to assist it in promoting sales of Lindane Lotion and Lindane Shampoo.

8

**Request No. 25:**    Documents sufficient to identify all outside agencies, marketing companies, public relations firms, accountants, analysts, and/or consultants that Morton Grove has employed or used since January 1, 1995 to assist it in analyzing or accounting for Morton Grove's sales of Lindane Lotion and Lindane Shampoo.

**Request No. 26:**    Documents sufficient to identify all outside agencies, marketing companies, public relations firms, lobbyists, law firms, attorneys, and/or consultants that Morton Grove has employed or used since January 1, 1995 to assist it in any local, state, administrative or federal legislative advocacy relating to Lindane Lotion and Lindane Shampoo or laws relating to the chemical lindane.

**Request No. 27:**    All documents reflecting communications with any advertising agencies, marketing companies, academics, health care professionals, consultants, or public relations firms employed or used by Morton Grove for the dissemination of information relating to Lindane Lotion, Lindane Shampoo and/or other pediculicidal products containing lindane.

**Request No. 28:**    Documents sufficient to show the amount of money Morton Grove has spent on advertising, lobbying, public relations, disseminating information about, and/or otherwise promoting Lindane Lotion, Lindane Shampoo and/or other pediculicidal products containing lindane.

**Request No. 29:**    All documents relating to Morton Grove's allegation that consumers were misled or deceived by NPA's Statements, as alleged in paragraphs 44-48 of the Complaint, including but not limited to any communications from consumers relating to Morton Grove's allegation.

9

**Request No. 30:**    All documents reflecting any communications, discussions, research, or investigations relating to NPA or NPA's LiceMeister Comb.

**Request No. 31:**    All documents reflecting communications between Morton Grove and any governmental entity, including but not limited to state and federal regulatory agencies and state and federal elected officials and their assistants, relating to Lindane Lotion, Lindane Shampoo, or NPA's LiceMeister Comb.

**Request No. 32:**    All documents reflecting political contributions by Morton Grove, its executives, and directors since January 1, 2000.

**Request No. 33:**    All documents reflecting any communications to or edits, corrections, or changes made or contemplated to the content of Wikipedia.org, Wikepedia.com, or the Wikimedia Foundation.

**Request No. 34:**    All documents relating to the content of lindane.com, including but not limited to documents relied on in creating the content, drafts of the content, and communications regarding the content.

**Request No. 35:**    All documents reflecting communications, web-postings, marketing materials, promotional materials, information materials, advertising materials, or information disseminated by Morton Grove relating Lindane Lotion, Lindane Shampoo and/or other pediculicidal products containing lindane.

**Request No. 36:**    All cease and desist letters sent by Morton Grove, or its attorneys, relating to Lindane Lotion, Lindane Shampoo, or pediculicidal products containing lindane.

**Request No. 37:**     All documents reflecting any communications, discussions, research, or investigations relating to all persons and/or entities who are involved in efforts to ban the sale or use of Lindane Lotion, Lindane Shampoo, or pediculicidal products containing lindane.

**Request No. 38:**     Documents sufficient to identify all persons or entities who sell lindane-containing products that can be purchased in the U.S., and their respective market shares.

Dated: August 14, 2007

Debbie L. Berman (#6205154)
Jennifer A. Hasch (#6272366)
Amanda S. Amert (#6271860)
Wade A. Thomson (#6282174)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484

*Attorneys for Defendant*
*The National Pediculosis Association, Inc.*

Respectfully submitted,

THE NATIONAL PEDICULOSIS
ASSOCIATION, INC.

By: _Alh Berne_
    One of Its Attorneys

## CERTIFICATION OF SERVICE

I hereby certify that a true and correct copy of the forgoing Defendant The National

Pediculosis Association, Inc.'s First Set of Requests for Production of Documents and Things to

Plaintiff was served this August 14, 2007, via United States mail, postage prepaid, upon the

counsel of record below:

Timothy Joseph Rivelli
Cherish M. Keller
W. Gordon Dobie
William Charles O'Neill
WINSTON & STRAWN, LLP
35 West Wacker Drive
41st Floor
Chicago, IL  60601

*Counsel for Plaintiff Morton Grove
Pharmaceuticals, Inc*

Richard M. Waris
James Joseph Sipchen
Amy Joan Thompson
Edward J. Aucoin, Jr.
PRETZEL & STOUFFER, CHTD.
One South Wacker Drive
Suite 2500
Chicago, IL  60606

*Counsel for Defendants The Ecology Center,
Inc., John Fliegel, M.D., and William B. Weil,
M.D.*

Debbie L. Berman

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MORTON GROVE PHARMACEUTICALS, INC. | ) ) ) | |
| Plaintiff, | ) ) ) | No: 06-CV-3815 |
| v. | ) ) | Judge Bucklo |
| THE NATIONAL PEDICULOSIS ASSOCIATION, INC., ECOLOGY CENTER, INC., WILLIAM WEIL, M.D., | ) ) ) ) | Magistrate Judge Mason **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

**MORTON GROVE PHARMACEUTICALS, INC.'S RESPONSE TO
DEFENDANT THE NATIONAL PEDICULOSIS ASSOCIATION, INC.'S
<u>FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS</u>**

Plaintiff Morton Grove Pharmaceuticals, Inc. ("Morton Grove"), by and through its attorneys Winston & Strawn LLP, hereby responds to Defendant the National Pediculosis Association, Inc.'s ("NPA's") First Set of Requests for Production as follows:

**PRELIMINARY STATEMENT**

In responding to the NPA's Requests for Production, Morton Grove does not concede the relevancy, materiality, or admissibility of the Requests for Production or the subject(s) to which the Requests for Production refer. Morton Grove's responses are made subject to, and without in any way waiving or intending to waive, any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the documents produced or referred to, or of any of the responses given herein, or of the subject matter thereof, in any proceeding. Such responses are made specifically subject to the right to

object to any discovery proceeding involving or relating to the subject matter of the Requests for Production.

## **GENERAL OBJECTIONS**

Each of these objections is incorporated into each and every one of Morton Grove's Responses as if fully set forth therein, and is in addition to any specific objections stated in response to a particular Request.

1.    Morton Grove objects to these requests for production to the extent that they seek disclosure of any protected or privileged information, including attorney-client communications and/or attorney work product. The inadvertent disclosure of such information or documents is not intended to be, and shall not be deemed to be, a waiver of any applicable protection or privilege.

2.    Morton Grove objects to these requests for production and their definitions and instructions to the extent they attempt to alter the scope of discovery under the Federal Rules of Civil Procedure, the Local Rules of this Court, and/or any applicable Standing Order.

3.    Morton Grove objects to these requests for production to the extent they are premature, overly broad, unduly burdensome, and/or calculated to harass, and to the extent they are not reasonably calculated to lead to the discovery of admissible evidence.

4.    Morton Grove objects to these requests for production to the extent they are vague and ambiguous and call for speculation outside the personal knowledge of Morton Grove's representatives.

5.    Morton Grove's response that it will produce documents responsive to any particular request should not be construed as meaning that documents responsive to that request exist. Such response means only that Morton Grove will produce documents requested by the

NPA if they are in Morton Grove's possession, custody, or control and are not subject to any applicable privilege.

6.    Morton Grove objects to these requests for production to the extent they require Morton Grove to obtain documents and/or things from persons or entities over whom it has no control.

7.    Morton Grove objects to the use of the term "communication" in these requests for production to the extent that term is not defined. Morton Grove will answer these requests for production as if "communication" is defined as it is in Morton Grove's request for production to the NPA.

8.    Morton Grove objects to these requests for production to the extent they seek legal conclusions and/or would require Morton Grove to reach a legal conclusion in order to prepare a response.

9.    Morton Grove objects to these requests for production to the extent they seek documents in the public domain and, therefore, equally as accessible to the NPA.

10.    Morton Grove reserves the right to assert all evidentiary objections under the Federal Rules of Evidence in connection with all documents it produces.

11.    To the extent the document requests assume knowledge or conduct by Morton Grove that is without factual basis, Morton Grove, by answering these document requests, does not intend to imply, acknowledge, or concede that the conduct or knowledge assumed by a particular document request actually occurred.

12.    Morton Grove's response to any of these requests for production does not constitute acquiescence or agreement to any definition proposed by the NPA, and is made without waiver of Morton Grove's right to object to such definition(s).

3

13.    Morton Grove expressly reserves the right to supplement its responses to these requests for production with additional documents as they become available to it in the course of the litigation.

## REQUESTS

### REQUEST NO. 1:

All communications with the United States Food and Drug Administration ("FDA") regarding lindane, Lindane Lotion, or Lindane Shampoo.

### RESPONSE:

Morton Grove objects to this request on the basis that it is overly broad and unduly burdensome and to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Further, Morton Grove objects to this request to the extent that it requests documents outside of Morton Grove's possession, custody, or control. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

### REQUEST NO. 2:

All communications with the United States Environmental Protection Agency ("EPA") regarding lindane, Lindane Lotion, or Lindane Shampoo.

### RESPONSE:

Morton Grove objects to this request on the basis that it is overly broad and unduly burdensome and to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Further, Morton Grove objects to this request to the extent that it requests documents outside of Morton Grove's possession, custody, or control. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 3:**

All communications with the United States Centers for Disease Control ("CDC") regarding lindane, Lindane Lotion, or Lindane Shampoo.

**RESPONSE:**

Morton Grove objects to this request on the basis that it is overly broad and unduly burdensome and to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Further, Morton Grove objects to this request to the extent that it requests documents outside of Morton Grove's possession, custody, or control. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 4:**

All communications with the United States Agency for Toxic Substances and Disease Registry ("ATSDR") regarding lindane, Lindane Lotion, or Lindane Shampoo.

**RESPONSE:**

Morton Grove objects to this request on the basis that it is overly broad and unduly burdensome and to the extent it is not reasonably calculated to lead to the discovery of admissible evidence. Further, Morton Grove objects to this request to the extent that it requests documents outside of Morton Grove's possession, custody, or control. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 5:**

All documents relating to, or relied upon in preparing Morton Grove's responses to NPA's First Set of Interrogatories.

**RESPONSE:**

Morton Grove objects on the basis that this request is vague, ambiguous, overly broad, and unduly burdensome. Morton Grove also objects to this request to the extent it seeks documents or things protected by attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 6:**

All documents referred to in, or relied upon in preparing the Complaint.

**RESPONSE:**

Morton Grove objects on the basis that this request is vague, ambiguous, overly broad, and unduly burdensome. Morton Grove also objects to this request to the extent it seeks documents or things protected by attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 7:**

All documents relating to Morton Grove's allegation that NPA's Statements "necessarily refer to Morton Grove and its products," as alleged in paragraph 4 of the Complaint.

**RESPONSE:**

Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 8:**

All documents relating to Morton Grove's allegation that it is the sole manufacturer and distributor of Lindane Lotion and Lindane Shampoo in the U.S., as alleged in paragraphs 4 and 17 of the Complaint.

**RESPONSE:**

Subject to and without waiving its objections, Morton Grove states that it will produce

responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 9:**

All documents relating to potential side effects, harms, injuries, death(s), symptoms, or other health or public safety risks involving the chemical lindane, including but not limited to any analyses, testing, research, government agency reports or actions, development reports, or evaluations since January 1, 1970.

**RESPONSE:**

Morton Grove objects to this request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to admissible evidence.  Morton Grove also

objects to this request to the extent that it seeks documents outside of Morton Grove's

possession, custody, or control.  Further, Morton Grove objects to the extraordinarily long time

frame contained in this request, which makes this request overly broad and unduly burdensome.

Subject to and without waiving its objections, Morton Grove states that it will produce

responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 10:**

All documents relating to potential side effects, harms, injuries, death(s), symptoms, or other health or public safety risks involving Lindane Lotion, Lindane Shampoo and/or other pediculicidal products containing lindane, including but not limited to any analyses, testing, studies, research, development reports or evaluations since January 1, 1970.

**RESPONSE:**

Morton Grove objects to this request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Morton Grove also objects to this request to the extent that it seeks documents outside of Morton Grove's possession, custody, or control. Further, Morton Grove objects to the extraordinarily long time frame contained in this request, which makes this request overly broad and unduly burdensome. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 11:**

All documents relating to resistance of lice or scabies to Lindane Lotion, Lindane Shampoo and/or other pediculicidal lotions, creams, or shampoos.

**RESPONSE:**

Morton Grove objects to this request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Morton Grove also objects to this request to the extent that it seeks documents outside of Morton Grove's possession, custody, or control. Further, Morton Grove objects to the time frame of this request, which makes this request overly broad and unduly burdensome. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 12:**

All documents relating to overuse and/or misuse by consumers of Lindane Lotion, Lindane Shampoo and/or other pediculicidal products containing lindane.

8

**RESPONSE:**

Morton Grove objects to this request on the basis that it is overly broad and unduly burdensome. Morton Grove also objects to this request to the extent that it seeks documents outside Morton Grove's possession, custody, or control. Further, Morton Grove objects to this request to the extent it seeks disclosure of any protected or privileged information, including attorney-client communications and/or attorney work product. Subject to and without waiving is objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 13:**

All documents concerning allegations, accusations, or complaints received by Morton Grove about the health or public safety risks involving Lindane Lotion, Lindane Shampoo and/or other pediculicidal products containing lindane.

**RESPONSE:**

Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control regarding patient allegations, accusations, or complaints received by Morton Grove about the health or public safety risks involving Lindane Lotion or Lindane Shampoo.

**REQUEST NO. 14:**

All documents relating to the "events reported" to Morton Grove, as referenced in page 3 of W. Gordon Dobie's January 22, 2007 letter to Deborah Z. Altschuler (attached to the Complaint as Exhibit E).

**RESPONSE:**

Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 15:**

All documents relating to Morton Grove's allegations that Lindane Lotion and Lindane Shampoo are "safe", as alleged in paragraph 5 of the Complaint, including all documents relating to the allegations of governmental approval or oversight in paragraphs 5, 6, 7, 8, 20, 21, 29 and 30 of the Complaint.

**RESPONSE:**

Subject to and without waiving its objections, Morton Grove states that it will produce

responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 16:**

All documents relating to the truth or alleged falsity of NPA's Statements.

**RESPONSE:**

Morton Grove objects on the basis that this request is overly broad, unduly burdensome,

and not reasonably calculated to lead to admissible evidence. Morton Grove objects to the use of

the term "alleged falsity" as argumentative. Morton Grove objects to this request to the extent

that it seeks documents not in Morton Grove's possession, custody, or control. Morton Grove

also objects that the requested time frame makes this request particularly overly broad and

unduly burdensome. Subject to and without waiving is objections, Morton Grove states that it

will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 17:**

All documents relating to Morton Grove's allegations that it has been harmed by NPA's statements, including all documents relating to paragraphs 36, 48, 55, 61, and 67 of the Complaint.

**RESPONSE:**

Subject to and without waiving its objections, Morton Grove states that it will produce

responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 18:**

All documents relating to Morton Grove's allegation in paragraph 36 of the Complaint that Defendants' statements have resulted in a "decline in the sales of Lindane" of approximately 23%, with a total loss of more than $9.3 million between January and November 2006," including but not limited to any analyses, calculations, presentations, Board materials, minutes, projections, predictions, communications with analysts, and records of sales of Lindane Lotion and Lindane Shampoo since January 1, 1995.

**RESPONSE:**

Morton Grove objects to this request to the extent it is duplicative of request # 17.

Subject to and without waiving its objections, Morton Grove states that it will produce

responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 19:**

Documents sufficient to identify annual, quarterly, and monthly prescription data, including but not limited to IMS data, for Lindane Lotion and Lindane Shampoo since January 1, 1995.

**RESPONSE:**

Morton Grove objects to this request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to admissible evidence.    Morton Grove

further objects to the length of the time period of this request.  Subject to and without waiving its

objections, Morton Grove states that it will produce documents in its possession, custody, or

control sufficient to identify Lindane prescription data as far back in time as records are

reasonably accessible.

**REQUEST NO. 20:**

Documents sufficient to identify any changes in the retail and wholesale price of Lindane Lotion and Lindane Shampoo since January 1, 1995.

**RESPONSE:**

Morton Grove objects to this request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Morton Grove further objects to the length of the time period specified in this request. Subject to and without waiving its objections, Morton Grove states that it will produce documents sufficient to identify the retail price of Lindane for as far back in time as records are reasonably accessible.

**REQUEST NO. 21:**

All documents reflecting communications between NPA and Alliant Pharmaceuticals relating to the sales of Lindane Lotion and Lindane Shampoo, including but not limited to discussions of sales and/or sales trends, sales projections, and actual sales data, from January 1, 2000 through present.

**RESPONSE:**

Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 22:**

All Morton Grove's audited financial statements from January 1, 2002 to present.

**RESPONSE:**

Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 23:**

Documents sufficient to identify all entities or persons who have marketed or sold Lindane Lotion and/or Lindane Shampoo for Morton Grove from January 1, 1995 to present, including each entity or person's name, address, telephone number and annual sales volume.

**RESPONSE:**

Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 24:**

Documents sufficient to identify all outside agencies, marketing companies, public relations firms, accountants, analysts, and/or consultants that Morton Grove has employed or used since January 1, 1995 to assist it in promoting sales of Lindane Lotion and Lindane Shampoo.

**RESPONSE:**

Morton Grove objects to this request on the basis that it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 25:**

Documents sufficient to identify all outside agencies, marketing companies, public relations firms, accountants, analysts, and/or consultants that Morton Grove has employed or used since January 1, 1995 to assist it in analyzing or accounting for Morton Grove's sales of Lindane Lotion and Lindane Shampoo.

**RESPONSE:**

Morton Grove objects to this request on the basis that it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 26:**

Documents sufficient to identify all outside agencies, marketing companies, public relations firms, lobbyists, law firms, attorneys, and/or consultants that Morton Grove has employed or used since January 1, 1995 to assist it in any local, state, administrative or federal legislative advocacy relating to Lindane Lotion and Lindane Shampoo or laws relating to the chemical lindane.

13

**RESPONSE:**

Morton Grove objects to this request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Morton Grove further objects to this request on the basis that it seeks documents protected by the attorney-client privilege and the attorney work product doctrine.

**REQUEST NO. 27:**

All documents reflecting communications with any advertising agencies, marketing companies, academics, health care professionals, consultants, or public relations firms employed or used by Morton Grove for the dissemination of information relating to Lindane Lotion, Lindane Shampoo and/or other pediculicidal products containing lindane.

**RESPONSE:**

Morton Grove objects to this request on the basis that it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 28:**

Documents sufficient to show the amount of money Morton Grove has spent on advertising, lobbying, public relations, disseminating information about, and/or otherwise promoting Lindane Lotion, Lindane Shampoo and/or other pediculicidal products containing lindane.

**RESPONSE:**

Morton Grove objects to this request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence in its possession, custody, or control. Morton Grove further objects to this request to the extent it seeks documents protected by the attorney-client privilege and the attorney work product doctrine. Subject to and without waiver of its objections, Morton Grove states that it will produce documents relating to

its advertising, public relations, and promotional efforts regarding Lindane Lotion and Lindane

Shampoo.

**REQUEST NO. 29:**

All documents relating to Morton Grove's allegation that consumers were misled or deceived by NPA's Statements, as alleged in paragraphs 44–48 of the Complaint, including but not limited to any communications from consumers relating to Morton Grove's allegation.

**RESPONSE:**

Subject to and without waiving its objections, Morton Grove states that it will produce

responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 30:**

All documents reflecting any communications, discussions, research, or investigations relating to NPA or NPA's LiceMeister Comb.

**RESPONSE:**

Subject to and without waiving its objections, Morton Grove states that it will produce

responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 31:**

All documents reflecting any communications between Morton Grove and any governmental entity, including but not limited to state and federal regulatory agencies and state and federal elected officials and their assistants, relating to Lindane Lotion, Lindane Shampoo, or NPA's LiceMeister Comb.

**RESPONSE:**

Morton Grove objects to this request on the basis that it is vague, ambiguous, overly

broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence.

Subject to and without waiving its objections, Morton Grove states that it will produce

responsive, non-privileged documents in its possession, custody, or control to the extent they

relate to the safety profile or effectiveness of Lindane Lotion or Lindane Shampoo.

**REQUEST NO. 32:**

All documents reflecting political contributions by Morton Grove, its executives, and directors since January 1, 2000.

**RESPONSE:**

Morton Grove objects to this request on the basis that it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence.

**REQUEST NO. 33:**

All documents reflecting any communications to or edits, corrections, or changes made or contemplated to the content of Wikipedia.org, Wikepedia.com, or the Wikimedia Foundation.

**RESPONSE:**

Morton Grove objects to this request on the basis that it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Morton Grove further objects to this request to the extent it seeks documents outside of its possession, custody, or control. Subject to and without waiving its objections, Morton Grove states that it does not possess non-privileged documents responsive to this request.

**REQUEST NO. 34:**

All documents relating to the content of lindane.com, including but not limited to documents relied on in creating the content, drafts of the content, and communications regarding the content.

**RESPONSE:**

Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 35:**

All documents reflecting communications, web-postings, marketing materials, promotional materials, information materials, advertising materials, or information disseminated by Morton Grove relating Lindane Lotion, Lindane Shampoo and/or other pediculicidal products containing lindane.

**RESPONSE:**

Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 36:**

All cease and desist letters sent by Morton Grove, or its attorneys, relating to Lindane Lotion, Lindane Shampoo, or pediculicidal products containing lindane.

**RESPONSE:**

Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 37:**

All documents reflecting any communications, discussions, research, or investigations relating to all persons and/or entities who are involved in efforts to ban the sale or use of Lindane Lotion, Lindane Shampoo, or pediculicidal products containing lindane.

**RESPONSE:**

Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 38:**

Documents sufficient to identify all persons or entities who sell lindane-containing products that can be purchased in the U.S., and their respective market shares.

**RESPONSE:**

Morton Grove objects to this request on the basis that it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence.

17

Dated:  October 1, 2007                Respectfully Submitted,

                                       **MORTON GROVE PHARMACEUTICALS, INC.**

                                       By:  _Cherish M Keller_
                                            One of Its Attorneys

W. Gordon Dobie
Timothy Rivelli
William C. O'Neil
Cherish M. Keller
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
T:  (312) 558-5600
F:  (312) 558-5700

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of October 2007, I caused to be served a copy of **Morton Grove Pharmaceuticals, Inc.'s Response to Defendant The National Pediculosis Association, Inc.'s First Set of Requests for Production of Documents and Things** to be served on counsel of record via Federal Express:

Richard M. Waris
James J. Sipchen
Amy J. Thompson
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive - Suite 2500
Chicago, Illinois 60606
T: (312) 578-7404
F: (312) 346-8242

Debbie L. Berman
Jennifer A. Hasch
Amanda S. Amert
Wade A. Thomson
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois 60611
T: (312) 222-9350
F: (312) 527-0484

*Christn keller*

# EXHIBIT C

# WINSTON & STRAWN LLP

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

99 GRESHAM STREET
LONDON EC2V 7NG

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

WRITER'S DIRECT DIAL NUMBER

(312) 558-8829

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

(312) 558-5600

FACSIMILE (312) 558-5700

www.winston.com

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

25 AVENUE MARCEAU
75116 PARIS, FRANCE

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5894

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

October 19, 2007

**VIA EMAIL**
Wade A. Thomson
Jenner & Block LLP
330 N. Wabash Ave.
Chicago, IL 60611

Re:    *Morton Grove v. NPA et al.*

Dear Wade:

I write in response to your six page October 18, 2007 letter wherein you attempt to memorialize our meet and conference held on October 16, 2007. This letter clarifies my understanding of certain aspects of that conference.

*Interrogatory No. 3.* I did not indicate, as you state, that this request validly seeks both Morton Grove's basis for its damages allegations at the time of the filing of the complaint and currently. Quite simply, the interrogatory is not written in a manner sufficient to elicit such information. As a practical matter, however, I believe there is little difference. As such, Morton Grove is willing to supplement its response this request on or before November 16, 2007. With regards to your comment regarding your expectation that Morton Grove's response be adequately detailed, I note that Morton Grove has made no representations regarding the level of detail that it is willing to provide in its supplementary response. Morton Grove's responses will be guided by our obligations under the Federal Rules rather than your expectations.

*Interrogatory No. 6.* Morton Grove is willing to provide a response to this interrogatory, as modified, by November 16, 2007.

*Interrogatory No. 7.* Initially, I note for the record that your attempt to recount my description of the distribution process is inaccurate. That said, Morton Grove is willing to provide a supplement response that more fully describes the distribution chain for Lindane Lotion and Shampoo preceding, during and after the company's relationship with Alliant. Your demand that we go back to 1995, however, is unduly burdensome.

**WINSTON & STRAWN** LLP

Wade A. Thomson
October 19, 2007
Page 2

     ***Document Request No. 20***.  Again, your summary of the bidding is not accurate, and, as I mentioned at the conference, your request is vague in that it fails to define what you mean by "wholesale" pricing.  In any event, in an effort to resolve this dispute without court intervention, I have contacted our client and we are willing to provide the following:  wholesale pricing (defined as the price Morton Grove sold Lindane Lotion or Shampoo to pharmaceutical wholesalers for) from 1999 to the present; and retail pricing (defined as the price Morton Grove sold Lindane Lotion or Shampoo to drug stores, and, in some cases, the price that pharmaceutical wholesalers sold Lindane Lotion or Shampoo to drug stores with whom Morton Grove had a pre-existing contract) from 2002 to the present.  Information prior to these periods either does not exist or would be extremely burdensome to compile.  In light our willingness to provide such information, I do not expect that you will serve a duplicative and harassing additional document request as threatened in your letter.

     ***Document Request No. 31***.  In response to this request, Morton Grove is willing to produce all communications with government entities or officials regarding lindane products or the LiceMiester comb that relate to the safety profile, effectiveness, or packaging of the products, with the exception that Morton Grove is not willing to produce documents related to any lobbying efforts it undertook with respect lindane as they are not relevant.

     ***Document Request No. 33.***  Morton Grove will produce, on or before November 16, 2007, documents reflecting communications to or edits to Wikipedia.org, Wikipedia.com or the Wikimedia Foundation made by Morton Grove on by any third-party acting on Morton Grove's behalf.

         Best regards,

         William C. O'Neil

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MORTON GROVE PHARMACEUTICALS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.: 06-CV-3815 |
| ) | |
| v. ) | Judge Bucklo |
| ) | Magistrate Judge Mason |
| JOHN FLIEGEL, M.D., WILLIAM B. WEIL, ) | |
| M.D., THE ECOLOGY CENTER, INC., and THE ) | **JURY TRIAL DEMANDED** |
| NATIONAL PEDICULOSIS ASSOCIATION, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT THE NATIONAL PEDICULOSIS**
**ASSOCIATION, INC.'S SECOND SET OF REQUESTS FOR**
**PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF**

Defendant the National Pediculosis Association ("NPA"), through its attorneys Jenner &

Block LLP, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, propounds the

following requests for production of documents and things upon Plaintiff Morton Grove

Pharmaceuticals, Inc. ("Morton Grove"), and requests responses be made within 30 days.

**DEFINITIONS AND INSTRUCTIONS**

1.    "NPA" shall mean defendant The National Pediculosis Association, Inc., its

predecessor, and its respective present and former officers, directors, employees, agents,

representatives and any other persons acting on its behalf.

2.    "Morton Grove" shall mean plaintiff Morton Grove Pharmaceuticals, Inc., and its

respective present and former subsidiaries, parents, affiliates, divisions, successors, assigns,

officers, directors, employees, agents, consultants (paid or unpaid), lobbyists, attorneys, advisors,

representatives and any other persons acting or purporting to act on their behalf.

3.    "Complaint" shall refer to Morton Grove's Second Amended Complaint, filed in the United States District Court for the Northern District of Illinois on June 19, 2007.

4.    "NPA's Statements" shall mean the allegedly defamatory, false, and/or misleading statements attributed to NPA in Morton Grove's Complaint.

5.    "Lindane Lotion" shall mean the lotion containing the chemical lindane manufactured by Morton Grove.

6.    "Lindane Shampoo" shall mean the shampoo containing the chemical lindane manufactured by Morton Grove.

7.    The term "lindane" shall mean the chemical lindane.

8.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these interrogatories any information which might otherwise be construed as outside their scope.

9.    The singular and the plural form shall be construed interchangeably so as to bring within the scope of these interrogatories any information which might otherwise be construed as outside their scope.

10.    "Relating to" shall mean concerning, consisting of, referring to, reflecting, regarding, supporting, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected to the subject matter discussed.

11.    The term "including" means "including, but not limited to."

2

12.    "Document" shall mean all writings, papers, or tangible things of any kind whatsoever, including but not limited to all originals and non-identical copies or reproductions of letters, memoranda, correspondence of any kind, handwritten notes, time records, pay slips, appointment books, notepads, notebooks, electronic mail, Electronically Stored Information ("ESI"), postcards, telegrams, facsimiles, telexes, films, photographs, recordings, tapes, transcriptions, books, records, ledgers, journals, and other things, whether prepared by handwriting, typing, printing, photostating, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds or symbols, or combinations thereof.

13.    These requests are deemed to be continuing so as to require supplemental productions, pursuant to Federal Rule of Civil Procedure 26(e), in the event that Morton Grove creates, discovers or obtains new or additional documents that are responsive to these requests.

14.    With respect to any Documents or portions of Documents withheld on a claim of privilege or work product protection from discovery, provide a statement setting forth as to each such Document:

        (a)    the type of Document;

        (b)    the date of the Document;

        (c)    the author(s) and recipient(s) of the Document;

        (d)    the subject matter of the Document; and

        (e)    the legal and factual basis for the privilege or protection claimed.

15.    When a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without disclosing the privileged material.

16.     If no Documents responsive to an individual numbered request are in the possession, custody or control of Morton Grove, please indicate this in a written response.

17.     For ESI, please do the following:

(a)     produce all documents as Group IV single page tiff format files imaged at 300 dpi. Name each tiff file with a unique name matching the Bates number labeled on the corresponding page. Group every 1000 tiffs into a new folder; do not create a separate folder for each document;

(b)     provide an image load file (Opticon file) that contains document boundaries;

(c)     produce the extracted, full text from the body of each document originally kept in electronic form as a .txt file named for the beginning bates number of the document, in the same directory as the image of the first page of the document;

(d)     any redacted, privileged material should be clearly labeled to show the redactions on the tiff image; and

e)     produce extracted metadata for each document in the form of a .dat file, and include the following fields:

| FIELDNAME | DESCRIPTION |
|---|---|
| BATES_BEGIN | The bates label of the first page of the document |
| BATES_END | The bates label of the last page of the document |
| ATTACH_BEGIN | The bates label of the first page of a family of documents |
| ATTACH_END | The bates label of the last page of a family of documents |
| TITLE | Subject of e-mail or file name of attachment/standalone file |
| DATE | Document Date or E-mail Sent Date or operating system Date Last Modified for attachments and standalone electronic files |
| TIME | E-mail sent time or operating system Time Last Modified for attachments and standalone electronic files |
| AUTHOR | Author of Document or E-mail |
| RECIPIENT | Recipient of Document or E-mail |
| CC | Copies |
| BCC | BCC (blind copies) |
| CUSTODIAN | Custodian(s) in whose files the document was found |
| FOLDER | Email Folder Information or the original file path of the native file, (for each location in which a duplicate was found) |
| MD5 | MD5Hash value |
| MESSAGE_ID | Unique e-mail message Identifier |
| NATIVE_FILE | The production path to any document produced in native form |

18.    Unless otherwise stated, these Requests call for the production of Documents dated or created during the time period January 1, 2003 to the present.

19.    "Wockhardt" shall mean the entity, Wockhardt Ltd., which purchased Morton Grove in October 2007, its agents, bankers, attorneys, or others who worked on Wockhardt's behalf in connection with its purchase of Morton Grove.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**Request No. 1:** All documents exchanged between Morton Grove or any person or entity working on Morton Grove's behalf, on the one hand, and Wockhardt or any person or entity working on Wockhardt's behalf, on the other hand, that relate to NPA.

**Request No. 2:** All documents reflecting communications between Morton Grove or any person or entity working on Morton Grove's behalf, on the one hand, and Wockhardt or any person or entity working on Wockhardt's behalf, on the other hand, that relate to NPA.

**Request No. 3:** All documents exchanged between Morton Grove or any person or entity working on Morton Grove's behalf, on the one hand, and any other potential purchaser of Morton Grove or any person or entity working on behalf of the potential purchaser(s), on the other hand, that relate to NPA.

**Request No. 4:** All documents reflecting communications between Morton Grove or any person or entity working on Morton Grove's behalf, on the one hand, and any other potential purchaser of Morton Grove or any person or entity working on behalf of the potential purchaser(s), on the other hand, that relate to NPA.

**Request No. 5:** All documents exchanged between Morton Grove or any person or entity working on Morton Grove's behalf on the one hand, and Wockhardt or any person or entity working on Wockhardt's behalf, on the other hand, that relate to the past, present or future sales of Lindane Lotion and/or Lindane Shampoo, including but not limited to forecasts, projections, balance sheets, profit/loss statements, profit margin statements or analyses.

**Request No. 6:** All documents reflecting communications between Morton Grove or any person or entity working on Morton Grove's behalf on the one hand, and Wockhardt or any person or entity working on Wockhardt's behalf, on the other hand, that relate to the past, present or future sales of Lindane Lotion and/or Lindane Shampoo, including but not limited to forecasts, projections, balance sheets, profit/loss statements, profit margin statements or analyses.

**Request No. 7:** All documents exchanged between Morton Grove or any person or entity working on Morton Grove's behalf, on the one hand, and any other potential purchaser of Morton Grove or any person or entity working on behalf of the potential purchaser(s), on the other hand, that relate to the past, present or future sales of Lindane Lotion and/or Lindane

Shampoo, including but not limited to forecasts, projections, balance sheets, profit/loss statements, profit margin statements or analyses.

**Request No. 8:** All documents reflecting communications between Morton Grove or any person or entity working on Morton Grove's behalf, on the one hand, and any other potential purchaser of Morton Grove or any person or entity working on behalf of the potential purchaser(s), on the other hand, that relate to the past, present or future sales of Lindane Lotion and/or Lindane Shampoo, including but not limited to forecasts, projections, balance sheets, profit/loss statements, profit margin statements or analyses.

**Request No. 9:** All documents exchanged between Morton Grove or any person or entity working on Morton Grove's behalf on the one hand, and Wockhardt or any person or entity working on Wockhardt's behalf, on the other hand, that relate to the past, present or future sales of Morton Grove's products other than Lindane Lotion and/or Lindane Shampoo, including but not limited to forecasts, projections, balance sheets, profit/loss statements, profit margin statements or analyses.

**Request No. 10:** All documents exchanged between Morton Grove or any person or entity working on Morton Grove's behalf, on the one hand, and any other potential purchaser of Morton Grove or any person or entity working on behalf of the potential purchaser(s), on the other hand, that relate to the past, present or future sales of Morton Grove's products other than Lindane Lotion and/or Lindane Shampoo, including but not limited to forecasts, projections, balance sheets, profit/loss statements, profit margin statements or analyses.

**Request No. 11:** All due diligence documents provided to Wockhardt or any potential purchaser of Morton Grove.

7

**Request No. 12:** Morton Grove's financials including balance sheets, profit/loss statements, forecasts, profit analysis, etc. from 1995 to the present.

**Request No. 13:** All documents exchanged between Morton Grove and its bankers or consultants, including but not limited to ABN Amro Bank NV and Vijay Karwal, relating to NPA.

**Request No. 14:** All documents reflecting communications between Morton Grove and its bankers or consultants, including but not limited to ABN Amro Bank NV and Vijay Karwal, relating to NPA.

**Request No. 15:** All documents reflecting communications between Morton Grove and its bankers or consultants, including but not limited to ABN Amro Bank NV and Vijay Karwal, relating to the past, present or future sales numbers of Lindane Lotion and/or Lindane Shampoo, including but not limited to forecasts, projections, balance sheets, profit/loss statements, profit margin statements, analyses or possible causes for a decline in sales.

**Request No. 16:** All documents reflecting communications between Morton Grove and its bankers or consultants, including but not limited to ABN Amro Bank NV and Vijay Karwal, relating to the past, present or future sales numbers of Morton Grove's products other than Lindane Lotion and/or Lindane Shampoo, including but not limited to forecasts, projections, balance sheets, profit/loss statements, profit margin statements, analyses or possible causes for a decline in sales.

**Request No. 17:** All documents relating to Tom Shwayder, Adelaide Herbert, and/or Amy Paller, including but not limited to any employment contracts, consulting agreements or any other type of arrangement, between any of them and Morton Grove.

**Request No. 18:** All documents used by, or provided to, Tom Shwayder, Adelaide Herbert, and/or Amy Paller, that relate to NPA or the content of lindane.com or lindanetruth.com or any other website.

**Request No. 19:** All documents reflecting communications by Morton Grove to any doctors, health professionals or organizations relating to requests for assistance in lobbying regarding Lindane Lotion, Lindane Shampoo or lindane, including writing letters to elected officials.

**Request No. 20:** All documents related to Morton Grove testimony regarding any local, state, administrative or federal legislative advocacy relating to Lindane Lotion and Lindane Shampoo or laws relating to the chemical lindane, including but not limited to documents relied upon for such testimony, materials distributed in connection with the testimony, and communications about the testimony.

**Request No. 21:** All documents related to Morton Grove lobbying strategy or campaigns regarding any local, state, administrative or federal legislative advocacy relating to Lindane Lotion and Lindane Shampoo or laws relating to the chemical lindane, including but not limited to documents relied upon for such strategy or campaigns, materials distributed in connection with such strategy or campaigns, and communications about such strategy or campaigns.

9

**Request No. 22:** All documents related to Morton Grove's public statement that "National Pediculosis Association (NPA), [is] a special interest group of non-healthcare professionals that directly profits from the sale of nit comb products." (*See* MGP001054-64; www.lindane.com/facts/; www.lindanetruth.com/facts/.)

**Request No. 23:** Documents sufficient to identify the date(s) of the first time the statements referenced in Document Request 20 were published or uttered.

**Request No. 22:** All documents related to Alliant Pharmaceutical's lobbying strategy or campaigns regarding any local, state, administrative or federal legislative advocacy relating to Lindane Lotion and Lindane Shampoo or laws relating to the chemical lindane, including but not limited to documents relied upon for such strategy or campaigns, materials distributed in connection with such strategy or campaigns, and communications about such strategy or campaigns. (*See, e.g.,* MGP 1371-72.)

Dated: November 20, 2007

Respectfully submitted,

THE NATIONAL PEDICULOSIS
ASSOCIATION, INC.

By: *Amanda S Amert*

One of Its Attorneys

Debbie L. Berman (#6205154)
Jennifer A. Hasch (#6272366)
Amanda S. Amert (#6271860)
Wade A. Thomson (#6282174)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484

*Attorneys for Defendant*
*The National Pediculosis Association, Inc.*

10

## CERTIFICATE OF SERVICE

I, Wade A. Thomson, hereby certify that on November 20, 2007, I caused copies of the foregoing **DEFENDANT THE NATIONAL PEDICULOSIS ASSOCIATION, INC.'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF** to be served upon the following via messenger:

> William Charles O'Neil
> WINSTON & STRAWN, LLP
> 35 West Wacker Drive
> 41st Floor
> Chicago, IL 60601
> Telephone: (312) 558-5600
> Facsimile: (312) 558-5700
>
> *Counsel for Plaintiff Morton Grove Pharmaceuticals, Inc.*
>
> James Joseph Sipchen
> PRETZEL & STOUFFER, CHTD.
> One South Wacker Drive
> Suite 2500
> Chicago, IL 60606
> Telephone: (312) 346-1973
> Facsimile: (312) 346-8242
>
> *Counsel for Defendants The Ecology Center, Inc.,*
> *and William B. Weil, M.D.*

Amanda S. Amert

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MORTON GROVE                                   )
PHARMACEUTICALS, INC.                          )
                                               )
             Plaintiff,                   )
                                               )    No: 06-CV-3815
   v.                                     )
                                               )    Judge Bucklo
THE NATIONAL PEDICULOSIS                       )    Magistrate Judge Mason
ASSOCIATION, INC., ECOLOGY                     )
CENTER, INC.,                                  )    **JURY TRIAL DEMANDED**
                                               )
             Defendants.                  )
                                               )
                                               )

### MORTON GROVE PHARMACEUTICALS, INC.'S AMENDED RESPONSE TO
### DEFENDANT THE NATIONAL PEDICULOSIS ASSOCIATION, INC.'S
### SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

Plaintiff Morton Grove Pharmaceuticals, Inc. ("Morton Grove"), by and through its

attorneys Winston & Strawn LLP, hereby responds to Defendant the National Pediculosis

Association, Inc.'s ("NPA's") Second Set of Requests for Production as follows:

### PRELIMINARY STATEMENT

In responding to the NPA's Requests for Production, Morton Grove does not concede the

relevancy, materiality, or admissibility of the Requests for Production or the subject(s) to which

the Requests for Production refer. Morton Grove's responses are made subject to, and without in

any way waiving or intending to waive, any objections as to the competency, relevancy,

materiality, privilege, or admissibility as evidence or for any other purpose, of any of the

documents produced or referred to, or of any of the responses given herein, or of the subject

matter thereof, in any proceeding. Such responses are made specifically subject to the right to

object to any discovery proceeding involving or relating to the subject matter of the Requests for Production.

## GENERAL OBJECTIONS

Each of these objections is incorporated into each and every one of Morton Grove's Responses as if fully set forth therein, and is in addition to any specific objections stated in response to a particular Request.

1.    Morton Grove objects to these requests for production to the extent that they seek disclosure of any protected or privileged information, including attorney-client communications and/or attorney work product. The inadvertent disclosure of such information or documents is not intended to be, and shall not be deemed to be, a waiver of any applicable protection or privilege.

2.    Morton Grove objects to these requests for production and their definitions and instructions to the extent they attempt to alter the scope of discovery under the Federal Rules of Civil Procedure, the Local Rules of this Court, and/or any applicable Standing Order.

3.    Morton Grove objects to these requests for production to the extent they are premature, overly broad, unduly burdensome, and/or calculated to harass, and to the extent they are not reasonably calculated to lead to the discovery of admissible evidence.

4.    Morton Grove objects to these requests for production to the extent they are vague and ambiguous and call for speculation outside the personal knowledge of Morton Grove's representatives.

5.    Morton Grove's response that it will produce documents responsive to any particular request should not be construed as meaning that documents responsive to that request exist. Such response means only that Morton Grove will produce documents requested by the

2

NPA if they are in Morton Grove's possession, custody, or control and are not subject to any applicable privilege.

      6.    Morton Grove objects to these requests for production to the extent they require Morton Grove to obtain documents and/or things from persons or entities over whom it has no control.

      7.    Morton Grove objects to the use of the term "communication" in these requests for production to the extent that term is not defined. Morton Grove will answer these requests for production as if "communication" is defined as it is in Morton Grove's requests for production to the NPA.

      8.    Morton Grove objects to these requests for production to the extent they seek legal conclusions and/or would require Morton Grove to reach a legal conclusion in order to prepare a response.

      9.    Morton Grove objects to these requests for production to the extent they seek documents in the public domain and, therefore, equally as accessible to the NPA.

      10.    Morton Grove reserves the right to assert all evidentiary objections under the Federal Rules of Evidence in connection with all documents it produces.

      11.    To the extent the document requests assume knowledge or conduct by Morton Grove that is without factual basis, Morton Grove, by answering these document requests, does not intend to imply, acknowledge, or concede that the conduct or knowledge assumed by a particular document request actually occurred.

      12.    Morton Grove's response to any of these requests for production does not constitute acquiescence or agreement to any definition proposed by the NPA, and is made without waiver of Morton Grove's right to object to such definition(s).

13.    Morton Grove expressly reserves the right to supplement its responses to these requests for production with additional documents as they become available to it in the course of the litigation.

## REQUESTS

**REQUEST NO. 1:**    All documents exchanged between Morton Grove or any person or entity working on Morton Grove's behalf, on the one hand, and Wockhardt or any person or entity working on Wockhardt's behalf, on the other hand, that relate to NPA.

**RESPONSE:**        Morton Grove objects on the basis that this request is vague, ambiguous, overly broad, and unduly burdensome. Morton Grove also objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Subject to and without waiver of its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 2:**    All documents reflecting communications between Morton Grove or any person or entity working on Morton Grove's behalf, on the one hand, and Wockhardt or any person or entity working on Wockhardt's behalf, on the other hand, that relate to NPA.

**RESPONSE:**        Morton Grove objects on the basis that this request is vague, ambiguous, overly broad, and unduly burdensome. Morton Grove also objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Subject to and without waiver of its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 3:**    All documents exchanged between Morton Grove or any person or entity working on Morton Grove's behalf, on the one hand, and any other potential purchaser of Morton Grove or any person or entity working on behalf of the potential purchaser(s), on the other hand, that relate to NPA.

4

**RESPONSE:**       Morton Grove objects on the basis that this request is vague, ambiguous, overly broad, and unduly burdensome.  Morton Grove also objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity.  Subject to and without waiver of its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 4:**    All documents reflecting communications between Morton Grove or any person or entity working on Morton Grove's behalf, on the one hand, and any other potential purchaser of Morton Grove or any person or entity working on behalf of the potential purchaser(s), on the other hand, that relate to NPA.

**RESPONSE:**       Morton Grove objects on the basis that this request is vague, ambiguous, overly broad, and unduly burdensome.  Morton Grove also objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity.  Subject to and without waiver of its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 5:**    All documents exchanged between Morton Grove or any person or entity working on Morton Grove's behalf on the one hand, and Wockhardt or any person or entity working on Wockhardt's behalf, on the other hand, that relate to the past, present or future sales of Lindane Lotion and/or Lindane Shampoo, including but not limited to forecasts, projections, balance sheets, profit/loss statements, profit margin statements or analyses.

**RESPONSE:**       Morton Grove objects on the basis that this request is vague, ambiguous, overly broad, and unduly burdensome.  Morton Grove objects on the basis that this request is repetitive and redundant of Requests contained in the NPA's First Set of Requests for Production.  Morton Grove also objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, attorney work product doctrine, or any other applicable

5

privilege or immunity. Subject to and without waiver of its objections, Morton Grove states that

it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 6:**    All documents reflecting communications between Morton Grove or any person or entity working on Morton Grove's behalf on the one hand, and Wockhardt or any person or entity working on Wockhardt's behalf, on the other hand, that relate to the past, present or future sales of Lindane Lotion and/or Lindane Shampoo, including but not limited to forecasts, projections, balance sheets, profit/loss statements, profit margin statements or analyses.

**RESPONSE:**        Morton Grove objects on the basis that this request is vague, ambiguous,

overly broad, and unduly burdensome. Morton Grove objects on the basis that this request is

repetitive and redundant of Requests contained in the NPA's First Set of Requests for

Production. Morton Grove also objects to this request to the extent it seeks documents or things

protected by the attorney-client privilege, attorney work product doctrine, or any other applicable

privilege or immunity. Subject to and without waiver of its objections, Morton Grove states that

it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 7:**    All documents exchanged between Morton Grove or any person or entity working on Morton Grove's behalf, on the one hand, and any other potential purchaser of Morton Grove or any person or entity working on behalf of the potential purchaser(s), on the other hand, that relate to the past, present or future sales or Lindane Lotion and/or Lindane Shampoo, including but not limited to forecasts, projections, balance sheets. profit/loss statements, profit margin statements or analyses.

**RESPONSE:**        Morton Grove objects on the basis that this request is vague, ambiguous,

overly broad, and unduly burdensome. Morton Grove objects on the basis that this request is

repetitive and redundant of Requests contained in the NPA's First Set of Requests for

Production. Morton Grove also objects to this request to the extent it seeks documents or things

protected by the attorney-client privilege, attorney work product doctrine, or any other applicable

privilege or immunity. Subject to and without waiver of its objections, Morton Grove states that

it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 8:**   All documents reflecting communications between Morton Grove or any person or entity working on Morton Grove's behalf, on the one hand, and any other potential purchaser of Morton Grove or any person or entity working on behalf of the potential purchaser(s), on the other hand, that relate to the past, present or future sales of Lindane Lotion and/or Lindane Shampoo, including but not limited to forecasts, projections, balance sheets, profit/loss statements, profit margin statements or analyses.

**RESPONSE:**      Morton Grove objects on the basis that this request is vague, ambiguous,

overly broad, and unduly burdensome.  Morton Grove objects on the basis that this request is

repetitive and redundant of Requests contained in the NPA's First Set of Requests for

Production.  Morton Grove also objects to this request to the extent it seeks documents or things

protected by the attorney-client privilege, attorney work product doctrine, or any other applicable

privilege or immunity.  Subject to and without waiver of its objections, Morton Grove states that

it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 9:**   All documents exchanged between Morton Grove or any person or entity working on Morton Grove's behalf on the one hand, and Wockhardt or any person or entity working on Wockhardt's behalf, on the other hand, that relate to the past, present or future sales of Morton Grove's products other than Lindane Lotion and/or Lindane Shampoo, including but not limited to forecasts, projections, balance sheets, profit/loss statements, profit margin statements or analyses.

**RESPONSE:**      Morton Grove objects on the basis that this request is vague, ambiguous,

overly broad, unduly burdensome, calculated to harass, and not reasonably calculated to lead to

the discovery of admissible evidence.  Morton Grove also objects to this request to the extent it

seeks documents or things protected by the attorney-client privilege, attorney work product

doctrine, or any other applicable privilege or immunity.

**REQUEST NO. 10:**  All documents exchanged between Morton Grove or any person or entity working on Morton Grove's behalf, on the one hand, and any other potential purchaser of Morton Grove or any person or entity working on behalf of the potential purchaser(s), on the other hand, that relate to the past, present or future sales of Morton Grove's products other than Lindane Lotion and/or Lindane Shampoo, including but not limited to forecasts, projections, balance sheets, profit/loss statements, profit margin statements or analyses.

**RESPONSE:**    Morton Grove objects on the basis that this request is vague, ambiguous, overly broad, unduly burdensome, calculated to harass, and not reasonably calculated to lead to the discovery of admissible evidence. Morton Grove also objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity.

**REQUEST NO. 11:** All due diligence documents provided to Wockhardt or any potential purchaser of Morton Grove.

**RESPONSE:**    Morton Grove objects on the basis that this request is overly broad, unduly burdensome, and calculated to harass. Morton Grove also objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity.

**REQUEST NO. 12:** Morton Grove's financials including balance sheets, profit/loss statements, forecasts, profit analysis, etc. from 1995 to the present.

**RESPONSE:**    Morton Grove objects on the basis that this request is vague, ambiguous, overly broad, and unduly burdensome. Morton Grove also objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Morton Grove further states that by agreement, it previously produced audited financial statements from 2002 to the present.

**REQUEST NO. 13:** All documents exchanged between Morton Grove and its bankers or consultants including but not limited to ABN Amro Bank NV and Vijay Karwal, relating to NPA.

**RESPONSE:**    Morton Grove objects on the basis that this request is vague, ambiguous, overly broad, and unduly burdensome. Morton Grove also objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Subject to and without waiver of its

8

objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 14:** All documents reflecting communications between Morton Grove and its bankers or consultants, including but not limited to ABN Amro Bank NV and Vijay Karwal, relating to NPA.

**RESPONSE:**      Morton Grove objects on the basis that this request is vague, ambiguous, overly broad, and unduly burdensome. Morton Grove also objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Subject to and without waiver of its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 15:** All documents reflecting communications between Morton Grove and its bankers or consultants, including but not limited to ABN Amro Bank NV and Vijay Karwal, relating to the past, present or future sales numbers of Lindane Lotion and/or Lindane Shampoo, including but not limited to forecasts, projections, balance sheets, profit/loss statements, profit margin statements, analyses or possible causes for a decline in sales.

**RESPONSE:**      Morton Grove objects on the basis that this request is vague, ambiguous, overly broad, and unduly burdensome. Morton Grove objects on the basis that this request is repetitive and redundant of Requests contained in the NPA's First Set of Requests for Production. Morton Grove also objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity. Subject to and without waiver of its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 16:** All documents reflecting communications between Morton Grove and its bankers or consultants, including but not limited to ABN Amro Bank NV and Vijay Karwal, relating to the past, present or future sales numbers of Morton Grove's products other than Lindane Lotion and/or Lindane Shampoo, including but not limited to forecasts, projections, balance sheets, profit/loss statements, profit margin statements, analyses or possible causes for a decline in sales.

**RESPONSE:**         Morton Grove objects on the basis that this request is vague, ambiguous,

overly broad, unduly burdensome, calculated to harass, and not reasonably calculated to lead to

the discovery of admissible evidence.  Morton Grove also objects to this request to the extent it

seeks documents or things protected by the attorney-client privilege, attorney work product

doctrine, or any other applicable privilege or immunity.

**REQUEST NO. 17:**  All documents relating to Tom Shwayder, Adelaide Herbert, and/or Amy
Paller, including but not limited to any employment contracts, consulting agreements or any
other type of arrangement, between any of them and Morton Grove.

**RESPONSE:**         Morton Grove objects on the basis that this request is vague, ambiguous,

overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of

admissible evidence.  Morton Grove also objects to this request to the extent it seeks documents

or things protected by the attorney-client privilege, attorney work product doctrine, or any other

applicable privilege or immunity.  Further objecting, Morton Grove is not familiar with "Tom

Shwayder" or "Adelaide Herbert."   Subject to and without waiver of its objections, Morton

Grove states that it will produce responsive, non-privileged documents in its possession, custody,

or control responsive to this request that relate to Tor Shwayder, Adelaide Hebert, and/or Amy

Paller.

**REQUEST NO. 18:**  All documents used by, or provided to, Tom Shwayder, Adelaide Herbert,
and/or Amy Paller, that relate to NPA or the content of lindane.com or lindanetruth.com or any
other website.

**RESPONSE:**         Morton Grove objects on the basis that this request is vague, ambiguous,

overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of

admissible evidence.  Morton Grove also objects to this request to the extent it seeks documents

or things protected by the attorney-client privilege, attorney work product doctrine, or any other

applicable privilege or immunity.  Further objecting, Morton Grove is not familiar with "Tom

10

Shwayder" or "Adelaide Herbert."  Subject to and without waiver of its objections, Morton

Grove states that it will produce responsive, non-privileged documents in its possession, custody,

or control responsive to this request that relate to Tor Shwayder, Adelaide Hebert, and/or Amy

Paller.

**REQUEST NO. 19:** All documents reflecting communications by Morton Grove to any
doctors, health professionals or organizations relating to requests for assistance in lobbying
regarding Lindane Lotion, Lindane Shampoo or lindane, including writing letters to elected
officials.

**RESPONSE:**      Morton Grove objects on the basis that this request is vague, ambiguous,

overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of

admissible evidence.  Morton Grove also objects to this request to the extent it seeks documents

or things protected by the attorney-client privilege, attorney work product doctrine, or any other

applicable privilege or immunity.

**REQUEST NO. 20:** All documents related to Morton Grove testimony regarding any local,
state, administrative or federal legislative advocacy relating to Lindane Lotion and Lindane
Shampoo or laws relating to the chemical lindane, including but not limited to documents relied
upon for such testimony, materials distributed in connection with the testimony, and
communications about the testimony.

**RESPONSE:**      Morton Grove objects on the basis that this request is vague, ambiguous,

overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of

admissible evidence.  Morton Grove specifically objects the term "testimony" as vague and

ambiguous.  Morton Grove further objects on the basis that this request is repetitive and

redundant of Requests contained in the NPA's First Set of Requests for Production.  Morton

Grove also objects to this request to the extent it seeks documents or things protected by the

attorney-client privilege, attorney work product doctrine, or any other applicable privilege or

immunity.  Subject to and without waiver of its objections, Morton Grove states that it will

produce responsive, non-privileged documents in its possession, custody, or control.

11

**REQUEST NO. 21:** All documents related to Morton Grove lobbying strategy or campaigns regarding any local, state, administrative or federal legislative advocacy relating to Lindane Lotion and Lindane Shampoo or laws relating to the chemical lindane, including but not limited to documents relied upon for such strategy or campaigns, materials distributed in connection with such strategy or campaigns, and communications about such strategy or campaigns.

**RESPONSE:**        Morton Grove objects on the basis that this request is vague, ambiguous,

overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of

admissible evidence.   Morton Grove objects on the basis that this request is repetitive and

redundant of Requests contained in the NPA's First Set of Requests for Production.   Morton

Grove also objects to this request to the extent it seeks documents or things protected by the

attorney-client privilege, attorney work product doctrine, or any other applicable privilege or

immunity.  Morton Grove further objects to the extent this request seeks documents that exceed

the scope of the parties' meet and confer agreement on this topic.  Subject to and without waiver

of its objections, Morton Grove states that it will produce all responsive, non-privileged

documents in its possession, custody, or control that it distributed in connection with any

lobbying campaign it conducted related to Lindane Lotion, Lindane Shampoo or the chemical

lindane.

**REQUEST NO. 22:** All documents related to Morton Grove's public statement that "National Pediculosis Association (NPA), [is] a special interest group of non-healthcare professionals that directly   profits   from   the   sale   of   nit   comb   projects."      (*See*   MGP001054-64; www.lindane.com/facts/; www.lindanetruth.com/facts/.)

**RESPONSE:**        Morton Grove objects on the basis that this request is vague, ambiguous,

overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of

admissible evidence. Morton Grove also objects to this request to the extent it seeks documents

or things protected by the attorney-client privilege, attorney work product doctrine, or any other

applicable privilege or immunity. Subject to and without waiver of its objections, Morton Grove

12

states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 23:**  Documents sufficient to identify the date(s) of the first time the statements referenced in Document Request 20 were published or uttered.

**RESPONSE:**      Morton Grove objects on the basis that this request is vague, ambiguous, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and calculated to harass.  Further, Morton Grove objects on the basis that this Request is particularly unclear, as no "statements" are referenced in Request 20, only the general term "testimony," which is vague and ambiguous.  Subject to and without waiver of its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control, to the extent they exist.

**REQUEST NO. 24:**  All documents related to Alliant Pharmaceutical's lobbying strategy or campaigns regarding any local, state, administrative or federal legislative advocacy relating to Lindane Lotion and Lindane Shampoo or laws relating to the chemical lindane, including but not limited to documents relied upon for such strategy or campaigns, materials distributed in connection with such strategy or campaigns, and communications about strategy or campaigns. (*See, e.g.,* MGP 1371-72).

**RESPONSE:**      Morton Grove objects on the basis that this request is vague, ambiguous, overly broad, and unduly burdensome.  Morton Grove objects on the basis that this request is repetitive and redundant of Requests contained in the NPA's First Set of Requests for Production.  Morton Grove also objects to this request to the extent it seeks documents or things protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity.  Further, Morton Grove objects to the degree to which this Request asks for documents not in Morton Grove's possession, custody, or control.  Subject to and without waiver of its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

13

Dated:  December 20, 2007          Respectfully Submitted,

**MORTON GROVE PHARMACEUTICALS, INC.**

By: _____

One of Its Attorneys

W. Gordon Dobie
Timothy Rivelli
William C. O'Neil
Cherish M. Keller
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
T: (312) 558-5600
F: (312) 558-5700

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December 2007, I caused to be served a copy of **Morton Grove Pharmaceuticals, Inc.'s Amended Response to Defendant The National Pediculosis Association, Inc.'s Second Set of Requests for Production of Documents and Things** to be served on counsel of record via e-mail and U.S. mail:

Richard M. Waris
James J. Sipchen
Amy J. Thompson
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive - Suite 2500
Chicago, Illinois 60606
T: (312) 578-7404
F: (312) 346-8242

Debbie L. Berman
Jennifer A. Hasch
Amanda S. Amert
Wade A. Thomson
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois 60611
T: (312) 222-9350
F: (312) 527-0484

15

# EXHIBIT F

# WINSTON & STRAWN LLP

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

99 GRESHAM STREET
LONDON EC2V 7NG

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

WRITER'S DIRECT DIAL NUMBER

(312) 558-5308
woneil@winston.com

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

(312) 558-5600

FACSIMILE (312) 558-5700

www.winston.com

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

25 AVENUE MARCEAU
75116 PARIS, FRANCE

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5894

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

January 14, 2008

**VIA EMAIL**
Wade A. Thomson
Jenner & Block LLP
330 N. Wabash Ave.
Chicago, IL 60611

Re:     *Morton Grove v. NPA et al.*

Dear Wade:

I write in response to your January 10, 2008 letter, specifically regarding our discussion related to the NPA's Second Set of Document Requests.

With respect to Request No. 11, you incorrectly stated that "Morton Grove will be producing [documents produced to Wockhardt during due diligence] that relate to NPA, lindane, this litigation, the aggregate value of Morton Grove, and management presentations (or similar presentations for investment bankers)." As drafted, Request No. 11 is patently overbroad and calls for the production of a myriad of documents irrelevant to this litigation, including, but not limited to, documents relating to leaseholds, environmental issues, and employment agreements. Morton Grove *proposed* producing the aforementioned as a compromise to resolving our dispute over the breadth of the NPA's request. You have not offered to narrow the request. If our proposal is not acceptable and you are not willing to make a proposal of your own, Morton Grove is willing to stand on its objections to the request as drafted.

With respect to Request No. 12, which seeks "Morton Grove's financials including balance sheets, profit/loss statements, forecasts, profit analysis, etc. from 1995 to the present," this request is also overbroad. Initially, I note this request is largely duplicative of Request No. 18 from the NPA's First Set of Document Requests, which seeks "[a]ll documents relating to Morton Grove's allegation in paragraph 36 of the Complaint that Defendant's statements have resulted in a 'decline in sales of Lindane . . .' including but not limited to any analyses, calculations, presentations, Board materials, minutes, projections, predictions, communications with analysts, and records of sales of Lindane Lotion and Lindane Shampoo since January 1, 1995." Morton Grove agreed to produce documents responsive to this request.

WINSTON & STRAWN LLP

Wade A. Thomson
January 2, 2008
Page 2

In addition, Morton Grove agreed to search its ESI for all documents with the word "lindane" in them, including its financial documents. In light of this, Request No. 12, which calls for virtually every single financial document created by Morton Grove's finance department for the last 13 years, is overbroad and harassing. If you are willing to narrow this request, the parties may be able to reach an agreement; if you are not, Morton Grove will stand upon its objections.

With respect to Request No. 19, which seeks documents reflecting communications by Morton Grove to certain third parties relating to requests for assistance in lobbying efforts, Morton Grove stands upon its objections. As you know, the NPA previously served numerous document requests relating to Morton Grove's lobbying efforts under the theory that what Morton Grove told members of the legislature about the truth or falsity of Defendant's statements was somehow relevant to this litigation even though Morton Grove has claimed no injury as a result of the legislative process. In this regard, we vehemently disagreed, but ultimately reached a compromise to produce the documents identified in the fourth paragraph of your October 30, 2007 letter. Request No. 19 seeks something far different – it seeks non-public documents related to Morton Grove's lobbying strategy. Morton Grove fails to see any possible connection between these documents and this litigation. In addition, Morton Grove hardly envisioned that once it agreed to the October 30, 2007 compromise, the NPA would pull an end-run on that compromise by serving new lobbying requests, such as this one. For these reasons, Morton Grove stands upon its objections to Request No. 19.

Best regards,

William C. O'Neil

cc:    Jim Sipchen
       W. Gordon Dobie
       Cherish Keller

# EXHIBIT G

# JENNER&BLOCK

December 13, 2007

Jenner & Block LLP          Chicago
One IBM Plaza               Dallas
Chicago, IL 60611-7603      New York
Tel 312 222-9350            Washington, DC
www.jenner.com

**VIA E-MAIL AND REGULAR MAIL**

Debbie L. Berman
Tel  312 923-2764
Fax  312 840-7764
dberman@jenner.com

Mr. Timothy Rivelli
Winston & Strawn LLP
35 W. Wacker
Chicago, IL 60601

**Re:   Morton Grove Pharmaceuticals v. National Pediculosis Association**

Dear Tim:

I am in receipt of your letter dated December 10, 2007. I know when we had spoken prior to receipt of your letter, you had suggested that we speak after December 17, 2007, when you are back in the office. Given that Morton Grove has agreed to supplement its production on December 17, 2007 and given that many statements in your letter seemed to be based upon an incomplete understanding of the events that have transpired, I thought that it would be best to respond to your letter because it may affect your client's supplementation.

With respect to Mr. Dobie, I am a little confused by your position that our understanding that Mr. Dobie is a lobbyist for Morton Grove and therefore may be a witness is "factually unfounded." As I detailed in my December 4, 2007 letter, our understanding is based upon documents prepared by agents of your client that were produced by your client in this litigation. Furthermore, as explained below, Morton Grove's lobbying efforts regarding lindane are relevant to at least three separate issues in this litigation. As I informed you in my prior letter, we need to determine the extent of Mr. Dobie's involvement so that we can evaluate if Mr. Dobie in fact will or may be a witness. We would like to make that evaluation before the hearing so that if there are any issues we can raise them with the Court at that time. Accordingly, enclosed is a notice for Mr. Dobie's deposition.

Your letter does not address the issues I raised concerning Interrogatories Nos. 3 and 4 which request the factual basis for Morton Grove's purported harms and damages so I assume that this will be addressed in your client's supplementation on December 17, 2007. We hope that this supplementation will finally provide us with the requested information. If not, I will assume that we are at an impasse after having gone round and round on this issue for months, and we will then seek assistance from the Court.

Your letter also does not address Morton Grove's position as articulated in Mr. O'Neill's November 30, 2007 letter that it is not required to identify and/or provide information regarding individuals who lobbied on Morton Grove's behalf but whose statements were not under oath. Please advise as to whether this is still Morton Grove's position.

Mr. Timothy Rivelli
December 13, 2007
Page 2

The majority of your letter focuses on discovery concerning Morton Grove's lobbyists and lobbying efforts. As a preliminary matter, I am a little surprised that we are rehashing this issue yet again. Initially your client refused to produce these materials and then agreed to produce the information only because we informed you that we were filing a motion to compel. Now your client is taking the position again that this information is not relevant and therefore will not be produced. Perhaps in hindsight we should have had the Court resolve this issue then. It would have saved a lot of wasted time and effort.

Your letter takes the position that NPA is not entitled to discovery about Morton Grove's lobbying activities concerning lindane for three reasons: (1) Morton Grove is not asserting a claim based on false statements made to legislators; (2) because NPA has not yet answered, the parties are not yet at issue and your client is not required "to anticipate the NPA's defenses"; and (3) in any event, NPA is not entitled to discovery on this issue because it relates solely to a public figure defense, and Morton Grove has decided that the public figure defense is not applicable here. I will address each of these points.

First, Morton Grove's argument that it is not asserting a claim predicated on any statements the NPA made to lobbyists is inapposite. Neither we nor our client have claimed that this is the justification for discovery into lobbyists. Instead, as we have explained in numerous calls and letters with your colleagues (the content of which you may not be aware), Morton Grove's lobbying efforts are relevant to at least three different issues in this lawsuit: (1) truth or falsity of the allegedly defamatory statements made by NPA; (2) whether NPA is Morton Grove's competitor within the meaning of the Lanham Act; and (3) Morton Grove's status a public figure.

In connection with its lobbying efforts, Morton Grove lobbyists took positions regarding the truth or falsity of statements -- many of which are identical or substantially similar to statements made by NPA that Morton Grove claims are defamatory and which serve as the basis for its claims for relief. We are entitled to know what Morton Grove's lobbyists said with respect to the truth or falsity of these statements and upon what they relied. Falsity is an element of each of Morton Grove's causes of action. Also, Morton Grove's lobbyists told legislators that NPA was not really a non-profit seeking to educate the public about the safety and efficacy of various head lice treatment options, but instead was simply a commercial competitor of Morton Grove. These statements go directly to one of the elements that Morton Grove must prove in connection with its Lanham Act claim. Finally, Morton Grove's lobbying efforts are directly relevant to its status of at least a limited purpose public figure in the public debate about the safety of various treatments for head lice. As discussed below, we are entitled to discovery on that defense despite Morton Grove's claims to the contrary.

Second, the claim in your letter that NPA is not entitled to discovery in connection with its public figure defense because NPA has not yet answered the complaint is incorrect as a matter of law and fact. I am unaware of any federal rule or case that prohibits a defendant from seeking discovery about potential defenses until it has filed an answer. This is especially true here where NPA wanted to wait to begin discovery until after the Court ruled on its motions, and it had

Mr. Timothy Rivelli
December 13, 2007
Page 3

answered. Morton Grove vehemently objected saying that there was no reason to wait. Morton Grove cannot have it both ways -- if it is entitled to discovery before NPA has answered so is NPA. Furthermore, the assertion in your letter that Morton Grove should not have to anticipate NPA's defenses rings hollow for several reasons not the least of which is that NPA raised the public figure defense in its motion to dismiss, and in its opposition, Morton Grove argued that it is not a public figure. Moreover, NPA explicitly requested that information in its discovery requests so Morton Grove did not have to anticipate anything.

Third, Morton Grove's claim that it does not have to respond to discovery about its status as a public figure because it has determined that the NPA's public figure defense is "not plausible" is entirely without merit. It is black letter law that NPA is entitled to discovery concerning its potential defenses regardless of what Morton Grove believes to be the merits of those defenses. It is the judge -- not the opposing party or its counsel -- who will decide the merits of those defenses. The erroneous assertions in your letter about the validity of NPA's public figure defense are irrelevant. It should be noted that in denying NPA's motion to dismiss, the Court simply held that Morton Grove had pled enough concerning actual malice to meet the low standard on a motion to dismiss with the clear understanding that this issue could be revisited on a motion for summary judgment once all of the facts were known to NPA. It is time to make those facts known.

I look forward to hearing from you about all of the issues raised in my letter upon your return. We intend to raise any outstanding issues at the hearing so we need resolution either way by the end of the month to give us sufficient time to prepare any needed motions to compel.

Very truly yours,

*Debbie*

Debbie L. Berman

DLB:aes
cc:     Amanda A. Amert
        Wade A. Thomson
        W. Gordon Dobie
        William C. O'Neil

Enclosure

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MORTON GROVE PHARMACEUTICALS, INC., ) | |
| ) | |
| Plaintiff, ) | No.: 06-CV-3815 |
| ) | |
| v. ) | Judge Bucklo |
| ) | Magistrate Judge Mason |
| THE NATIONAL PEDICULOSIS ASSOCIATION, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

**NOTICE OF DEPOSITION**

**PLEASE TAKE NOTICE** that Defendant National Pediculosis Association, Inc.

("NPA") will take the deposition of W. Gordon Dobie on January 15, 2007, at 9:00 a.m. at the

offices of Jenner & Block LLP, 330 N. Wabash Avenue, Suite 4000, Chicago, Illinois 60611

pursuant to Federal Rule of Civil Procedure 30(a)(1). The deposition(s) will continue from day

to day thereafter until completed, will be videotaped, and shall be taken before a duly certified

court reporter and notary public or other person authorized by law to administer oaths. You are

invited to attend and cross examine.

Dated:  December 12, 2007

Respectfully submitted,

THE NATIONAL PEDICULOSIS
ASSOCIATION, INC.

By: _____
One of Its Attorneys

Debbie L. Berman (#67205154)
Amanda S. Amert (#6271860)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484

## CERTIFICATE OF SERVICE

I, Debbie L. Berman, hereby certify that on December 12, 2007, I caused copies of the

foregoing Notice of Deposition to be served upon the following via U.S. Mail:

Timothy Joseph Rivelli
W. Gordon Dobie
William Charles O'Neill
WINSTON & STRAWN, LLP
35 West Wacker Drive
41st Floor
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Debbie L. Berman

# EXHIBIT H

# WINSTON & STRAWN LLP

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND
————
BUCKLERSBURY HOUSE
3 QUEEN VICTORIA STREET
LONDON, EC4N 8NH
————
333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703
————
(312) 558-5600
————
FACSIMILE (312) 558-5700
————
www.winston.com

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193
————
21 AVENUE VICTOR HUGO
75116 PARIS, FRANCE
————
101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5894
————
1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

TIMOTHY J. RIVELLI
(312) 558-5817
trivelli@winston.com

December 19, 2007

**BY E-MAIL**

Ms. Debbie L. Berman
Jenner & Block LLP
One IMB Plaza
Chicago, IL 60611-7603

     Re:   *Morton Grove v. NPA*

Dear Ms. Berman:

   I write in response to your December 13, 2007 letter.

   I would like to clear up a few points regarding your efforts to depose my partner, Mr. Dobie. As you know, Morton Grove has identified numerous individuals on its Rule 26(a) disclosures. As such, I explained in our phone conversation on this topic that I viewed your decision to begin oral discovery with Mr. Dobie's deposition as tantamount to harassment. You explained that you simply wanted to better understand Mr. Dobie's role in Morton Grove's lobbying activities and wanted to identify any potential problems with Winston & Strawn's representation of Morton Grove in this matter early-on in the proceeding. This letter addresses your concerns.

   First, we suggest that your "understanding that Mr. Dobie is a lobbyist for Morton Grove" is incorrect. I believe that there are two documents in Morton Grove's production that mention Mr. Dobie (MGP004833 and MGP004855). These documents refer to two meetings that Mr. Dobie attended with members of the Michigan legislature *and* Morton Grove's Michigan lobbyist, Ms. Jody Vanderveen. Mr. Dobie is Morton Grove's outside general counsel and attended these meetings as an attorney for Morton Grove.

   Second, I am familiar with Illinois Rule of Professional Conduct 3.7 and so is Mr. Dobie. We do not believe there are any issues with respect to Winston & Strawn or Mr. Dobie handling this representation.

WINSTON & STRAWN LLP

Ms. Debbie L. Berman
December 19, 2007
Page 2

The balance of your letter is focused on the relevance of discovery relating to Morton Grove's lobbying efforts to this litigation. At the outset, as we discussed, we entered into a compromise already on this point and have produced the documents identified in the fourth paragraph of Mr. Thomson's October 30, 2007 letter. Notwithstanding our production, I think you understand that it is Morton Grove's position that such information is not relevant to any claim or defense in this litigation. Morton Grove is *not* claiming any injury as a result of Defendants' statements made through the legislative or lobbying process. Furthermore, we have invited you to make a showing that Morton Grove's correspondence and individual meetings with members of state legislators, which have not been reported in the media, transformed Morton Grove into a "limited purpose public figure" on the issue of the truth or falsity of the NPA's statements, which were made in an entirely different context and through an entirely different medium.

As I re-read our recent correspondence, you have asserted your position as to why this material is relevant and we have noted our views as to why we disagree. Irrespective of our differing positions, Morton Grove previously produced the agreed-upon documents on this topic. As such, I do not believe we have a dispute on this point at this time.

Finally, as Mr. O'Neil's November 30, 2007 letter makes clear, Mr. Tennessen is the only lobbyist who has given any testimony, sworn or unsworn, before any legislative body on Morton Grove's behalf. I hope this alleviates the confusion expressed in paragraph four of your December 13, 2007 letter.

Sincerely yours,

Timothy J. Rivelli

cc:    W. Gordon Dobie
       Wm. C. O'Neil

# EXHIBIT I

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

NORTHERN                    DISTRICT OF                    ILLINOIS

Morton Grove Pharmaceuticals, Inc.

V.

The National Pediculosis Association

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  08 C 1384 (N.D. ILL)

TO:  closerlook, inc.
     212 West Superior Street, Suite 300
     Chicago, Illinois  60610

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION    Jenner & Block LLP, 330 N. Wabash Avenue, Chicago, IL  60611 | DATE AND TIME 6/26/2008 9:00 am |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED RIDER.

| PLACE    Jenner & Block LLP, 330 N. Wabash Avenue, Chicago, IL  60611 | DATE AND TIME 5/22/2008 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _[signature]_   (Atty for NPA, Defendant) | 4/30/2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Wade A. Thomson, Jenner & Block LLP, 330 N. Wabash Avenue, Chicago, Illinois  60611    (312) 222-9350

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | *CLOSERLOOK INC* ~~4.23~~ 4.23.08 | *212 W. Superior St* *Chicago, Il 6018* |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| *Cindy Coakes (Comptroller)* | *Corporate* |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| *Juan Acevedo* | *Process server* |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

| Executed on | *4-30-08* | |
|---|---|---|
| | DATE | SIGNATURE OF SERVER |

*10700 W. Higgins Rd 200*
ADDRESS OF SERVER

*Rosemont Il 60018*

---

**Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:**

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## RIDER

## DEFINITIONS

1.    "NPA" shall mean defendant The National Pediculosis Association, Inc., its predecessor, and its respective present and former officers, directors, employees, agents, representatives and any other persons acting on its behalf.

2.    "Morton Grove" shall mean plaintiff Morton Grove Pharmaceuticals, Inc., and its respective present and former subsidiaries, parents, affiliates, divisions, successors, assigns, officers, directors, employees, agents, consultants (paid or unpaid), advisors, representatives and any other persons acting or purporting to act on their behalf.

3.    "Closerlook" shall mean Closerlook, Inc. and its respective present and former subsidiaries, parents, affiliates, divisions, successors, assigns, officers, directors, employees, agents, consultants (paid or unpaid), advisors, representatives and any other persons acting or purporting to act on their behalf.

4.    "Lindane Lotion" shall mean the lotion containing the chemical lindane manufactured by Morton Grove.

5.    "Lindane Shampoo" shall mean the shampoo containing the chemical lindane manufactured by Morton Grove.

6.    The term "lindane" shall mean the chemical lindane.

7.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these interrogatories any information which might otherwise be construed as outside their scope.

8.      The singular and the plural form shall be construed interchangeably so as to bring within the scope of these interrogatories any information which might otherwise be construed as outside their scope.

9.      "Relating to" shall mean concerning, consisting of, referring to, reflecting, regarding, supporting, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected to the subject matter discussed.

10.     The term "including" means "including, but not limited to."

11.     "Document" shall mean all writings, papers, or tangible things of any kind whatsoever, including but not limited to all originals and non-identical copies or reproductions of letters, memoranda, correspondence of any kind, handwritten notes, time records, pay slips, appointment books, notepads, notebooks, electronic mail, Electronically Stored Information ("ESI"), postcards, telegrams, facsimiles, telexes, films, photographs, recordings, tapes, transcriptions, books, records, ledgers, journals, and other things, whether prepared by handwriting, typing, printing, photostating, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds or symbols, or combinations thereof.

12.     With respect to any Documents or portions of Documents withheld on a claim of privilege or work product protection from discovery, provide a statement setting forth as to each such Document:

         (a)      the type of Document;

         (b)      the date of the Document;

-2-

(c)    the author(s) and recipient(s) of the Document;

(d)    the subject matter of the Document; and

(e)    the legal and factual basis for the privilege or protection claimed.

13.    When a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without disclosing the privileged material.

14.    If no Documents responsive to an individual numbered request are in the possession, custody or control of Closerlook, please indicate this in a written response.

15.    For ESI, please do the following:

(a)    produce all documents as Group IV single page tiff format files imaged at 300 dpi. Name each tiff file with a unique name matching the Bates number labeled on the corresponding page. Group every 1000 tiffs into a new folder; do not create a separate folder for each document;

(b)    provide an image load file (Opticon file) that contains document boundaries;

(c)    produce the extracted, full text from the body of each document originally kept in electronic form as a .txt file named for the beginning bates number of the document, in the same directory as the image of the first page of the document;

(d)    any redacted, privileged material should be clearly labeled to show the redactions on the tiff image; and

(e)    produce extracted metadata for each document in the form of a .dat file, and include the following fields:

| FIELDNAME | DESCRIPTION |
|---|---|
| BATES_BEGIN | The bates label of the first page of the document |
| BATES_END | The bates label of the last page of the document |
| ATTACH_BEGIN | The bates label of the first page of a family of documents |
| ATTACH_END | The bates label of the last page of a family of documents |
| TITLE | Subject of e-mail or file name of attachment/standalone file |
| DATE | Document Date or E-mail Sent Date or operating system Date Last Modified for attachments and standalone electronic files |
| TIME | E-mail sent time or operating system Time Last Modified for attachments and standalone electronic files |
| AUTHOR | Author of Document or E-mail |
| RECIPIENT | Recipient of Document or E-mail |
| CC | Copies |
| BCC | BCC (blind copies) |
| CUSTODIAN | Custodian(s) in whose files the document was found |
| FOLDER | Email Folder Information or the original file path of the native file, (for each location in which a duplicate was found) |
| MD5 | MD5Hash value |
| MESSAGE_ID | Unique e-mail message Identifier |
| NATIVE_FILE | The production path to any document produced in native form |

16.    Unless otherwise stated, this subpoena calls for the production of documents

dated or created during the time period January 1, 2000 to the present.

## DOCUMENTS SUBPOENAED

1.    All documents relating to lindane, Lindane Lotion, or Lindane Shampoo.

2.    All documents relating to lindane.com, including but not limited to documents
concerning the decision to launch lindane.com, documents relied on in creating the content,
drafts of the content, and communications regarding the content.

3.    All documents reflecting all contemplated causes for any changes in the sales
volume or profitability of Lindane Lotion and/or Lindane Shampoo, including but not limited to
any analyses, calculations, presentations, competitive analyses, projections, predictions,
communications with analysts, and records of sales of Lindane Lotion and Lindane Shampoo.

4.    Documents sufficient to show the amount of money Closerlook has spent on, and
has been paid for, advertising, lobbying, public relations, disseminating information about,
and/or otherwise promoting Lindane Lotion and/or Lindane Shampoo.

-4-

5.    All documents reflecting any communications, discussions, research, lawsuits or investigations relating to NPA or NPA's LiceMeister® Comb.

6.    All documents relating to statements made about NPA on lindane.com (such as the statement(s) found at http://www.lindane.com/facts/), including but not limited to all documents relied upon for the statements.

7.    All documents reflecting communications with any advertising agencies, medical experts, outside agencies, marketing companies, public relations firms, accountants, analysts, lobbyists, law firms, attorneys, consultants, marketing companies, academics, health care professionals, or public relations firms that Closerlook has employed or used to assist it in its work for Morton Grove relating to Lindane Lotion and/or Lindane Shampoo.

8.    All contracts or agreements between Closerlook and Morton Grove.

9.    All communications with any state, local or federal governmental agency, body, or elected officials or their assistants, including but not limited to United States Food and Drug Administration ("FDA"), United States Environmental Protection Agency ("EPA"), United States Centers for Disease Control ("CDC"), and United States Agency for Toxic Substances and Disease Registry ("ATSDR"), regarding lindane, Lindane Lotion, or Lindane Shampoo.

10.    All documents regarding FDA's December 13, 2007 Warning Letter to Morton Grove, including but not limited to any communications, responses, drafts of responses, or documents reflecting actions taken in response.

11.    All documents relating to potential side effects, harms, injuries, death(s), symptoms, or other health or public safety risks involving the chemical lindane, Lindane Lotion,

Lindane Shampoo and/or other pediculicidal products containing lindane, including but not limited to any analyses, testing, studies, research, development reports or evaluations.

12.    All documents concerning allegations, accusations, overuse and/or misuse by consumers, or complaints about the health or public safety risks involving Lindane Lotion, Lindane Shampoo and/or other pediculicidal products containing lindane.

13.    All documents relating to marketing, lobbying, or advertising plans for Lindane Lotion and/or Lindane Shampoo, including any presentations prepared for Morton Grove.

## DEPOSITION TOPICS

1.     Communications, discussions, research, lawsuits, or investigations relating to NPA or NPA's LiceMeister® Comb, including statements made about NPA on lindane.com.

2.     Terms and conditions of Closerlook and Morton Grove's relationship relating to lindane, Lindane Lotion, or Lindane Shampoo, including amounts paid to Closerlook for its work for Morton Grove.

3.     The decision to launch, content, construction, research, and editing for lindane.com.

4.     Contemplated reasons or causes for any changes in the sales volume or profitability of Lindane Lotion and/or Lindane Shampoo.

5.     Communications with any state, local or federal governmental agency, body, or elected official or their assistants, including but not limited to the FDA, the EPA, the CDC and the ATSDR regarding lindane, Lindane Lotion, or Lindane Shampoo.

6.     FDA's December 13, 2007 Warning Letter to Morton Grove, and any responses or actions taken in response.

7.     Communications with any advertising agencies, medical experts, outside agencies, marketing companies, public relations firms, accountants, analysts, lobbyists, law firms, attorneys, consultants, marketing companies, academics, health care professionals, or public relations firms that Closerlook has employed or used to assist it in its work for Morton Grove relating to Lindane Lotion and/or Lindane Shampoo.

-7-

8.      Potential side effects, harms, injuries, death(s), symptoms, or other health or public safety risks involving the chemical lindane, Lindane Lotion, Lindane Shampoo and/or other pediculicidal products containing lindane, including but not limited to any analyses, testing, studies, research, development reports or evaluations.

9.      Overuse and/or misuse by consumers of Lindane Lotion and/or Lindane Shampoo.

10.     Allegations, accusations, or complaints about the health or public safety risks involving Lindane Lotion and/or Lindane Shampoo and/or other pediculicidal products containing lindane.

11.     Any local, state, administrative or federal legislative advocacy by Morton Grove or Closerlook relating to Lindane Lotion and/or Lindane Shampoo.

12.     Communications, discussions, research, or investigations relating to all persons and/or entities who are involved in or suspected of being involved in efforts to ban or otherwise restrict the sale or use of Lindane Lotion, Lindane Shampoo, or pediculicidal products containing lindane.

# EXHIBIT J



Mark E. Abraham
Direct Dial: 312.899.1601
mabraham@gouldratner.com

222 North LaSalle Street
Suite 800
Chicago, Illinois 60601
T: 312.236.3003
F: 312.236.3241
www.gouldratner.com

May 14, 2008

## VIA FACSIMILE AND REGULAR MAIL

Wade A. Thomson
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, Illinois 60611

        Re:    Objection to Subpoena to closerlook, inc.
               08 C 1384

Dear Mr. Thomson:

        Please be advised that Gould & Ratner LLP represents closerlook, inc. ("closerlook") in connection with the subpoena that you served in the above matter on behalf of The National Pediculosis Association ("NPA"). While my client is in the process of determining what responsive documents it has in response to the subpoena, in order to preserve my client's rights, closerlook sets forth its general objections and reserves its right to make further specific objections to the subpoena.

        1.      closerlook objects to the "Rider" definitions, instructions and document requests to the extent they impose requirements that are inconsistent with or exceed those specified by the Federal Rules of Civil Procedure and applicable local rules.

        2.      closerlook objects to the document requests to the extent they are overly broad, onerous, unduly burdensome and would further require closerlook to undergo an undue burden and expense to gather all of the information and documents requested.

        3.      closerlook objects to the document requests to the extent they are vague and ambiguous and overly broad as to time and scope.

        4.      closerlook objects to the document requests to the extent they are protected by the attorney/client privilege, the work product privilege and/or any other applicable privilege.

        5.      closerlook objects to the document requests to the extent they are irrelevant and/or not reasonably calculated to lead to admissible evidence.

/399574.v 1



Wade A. Thomson
Jenner & Block LLP
May 13, 2008
Page 2

6.       closerlook objects to the document requests to the extent the requested documents
are already in the possession of NPA, are available in the public domain, and would cause undue
burden and expense on closerlook to duplicate such documents.

7.       closerlook objects to the document requests to the extent they seek trade secrets,
confidential information, research, development or commercial information in the possession of
closerlook pursuant to confidentiality and non-disclosure restrictions imposed by contract or law.

8.       closerlook objects pursuant to F.R.C.P. Rule 26(b)(2)(B), to the extent the
subpoena would require retrieval of electronically stored information, including but not limited
to data stored on servers and/or back up media, not reasonably accessible because of undue
burden or cost.

9.       The subpoena does not comply with Federal Rule of Civil Procedure 45(a)(1)(B)
or Federal Rule of Civil Procedure 45(b)(1).

Subject to the above general objections, closerlook is in the process of ascertaining what
responsive documents it has in its possession to comply with the subpoena.

Very truly yours,

GOULD & RATNER

Mark E. Abraham

cc:   Paul W. Carroll
      Brian Gilbert
      William O'Neil

# EXHIBIT K

# *Points of* VIEW ON LINDANE

## Medical & Scientific Opinions

Jocelyn Elders, MD. Former US Surgeon General and Director of Health for the State of Arkansas. Distinguished Professor of Pediatrics and Public Health at the University of Arkansas for Medical Sciences. February 18, 2008.

Len I. Sweet, PhD, MPH, Msc. Senior Health Scientist, Chemrisk. University of Michigan Alum of Toxicology, Environmental Science and Public Health Graduate Programs. February 23, 2008.

Tor Shwayder, MD, Director, Pediatric Dermatology; Director, Dermatology Residency Program, Henry Ford Hospital, Detroit, Michigan, June 2007.

Adelaide A. Herbert, MD, Professor of Pediatrics and Dermatology, The University of Texas Medical Shool at Houston; President, Society for Pediatric Dermatology, May 2007

Amy S. Paller, MD, Walter J. Hamlin Professor and Chair, Dept. of Dermatology, Professor of Pediatrics, Feinberg School of Medicine, Northwestern University, May 2007

Amy S. Paller, MD, Walter J. Hamlin Professor and Chair, Dept. of Dermatology, Professor of Pediatrics, Feinberg School of Medicine, Northwestern University, May 2005

Medical Society of the State of New York, March 2007

Medical Society of the State of New York, June 2005

Pharmacists Society of the State of New York, April 2006

U.S. Food and Drug Administration's (FDA) Response to Citizen's Petition, 1997

U.S. FDA Assessment Memorandum on Lindane, posted 2003

U.S. Centers for Disease Control and Prevention (CDC) Sexually Transmitted Disease Treatment Guidelines

U.S. Environmental Protection Agency (EPA) Evaluation of Carcinogenic Potential of Lindane, 2001

U.S. EPA Reregistration Eligibility Decision (RED), 2002

U.S. EPA Revised Assessment of Risk From Use of Lindane For Treatment of Lice and Scabies, July 2002

U.S. EPA Response to Comments on the 2002 Lindane RED, July 2006

World Health Organization Background Document on Lindane for Drinking-Water Quality Guidelines, 2004

Please See Important Safety Information for Lindane Lotion and Shampoo

*Information* DOWNLOADS

*Points of View on Lindane:*

FOOD AND DRUG ADMINISTRATION

ENVIRONMENTAL PROTECTION AGENCY

CENTERS FOR DISEASE CONTROL AND PREVENTION

MEDICAL & SCIENTIFIC OPINIONS

Commitment to Public Health and Safety | Lindane Prescribing Information | FDA Information on Lindane

Copyright © 2007 Morton Grove Pharmaceuticals, Inc.

Google Site Stats - send feedback

# THE UNIVERSITY *of* TEXAS
## HEALTH SCIENCE CENTER AT HOUSTON
### MEDICAL SCHOOL

DEPARTMENT OF DERMATOLOGY

6655 Travis, Suite 980
Houston, Texas 77030

713 500 8320
713 500 8321 *fax*

May 25, 2007

The Honorable Rebekah Warren
Chair of Great Lakes and Environment
      & Honorable Members of the Committee
P. O. Box 30014
Lansing, MI  48909

RE:    House Bill 4569

Dear Chairman Warren and Honorable Members of the Committee:

As a Board-certified pediatric dermatologist, I have grave concerns regarding House Bill 4569 in front of the Michigan State Legislature. It is my understanding that this bill is being put forth to prevent the use of the medication Lindane to treat scabies or lice. This medication has been available since the 1950s and has a long track record of safety. Many thousands of patients have been successfully treated with Lindane. Few medications that have been on the market for this length of time can demonstrate the outstanding safety and efficacy of this medication.

Additionally, the recent medical literature supports the fact that many of the over-the-counter products used to treat head lice have become increasingly less effective over time. As a result, many patients are currently being treated with the prescription-only medication Lindane with excellent outcomes. The loss of this medication will force physicians to use more expensive and more potent medications with a greater risk of potential toxicity for both children and adults.

I have enclosed some photographs of a two-year-old girl who was previously treated for scabies with oral Ivermectin, one of the most potent medications on the market. The patient failed Ivermectin therapy and

*Located in the Texas Medical Center*

May 25, 2007
Page -2-

was subsequently treated successfully with Lindane. This case represents only one example of the many reasons why this medication should remain in our formularies.

Although Lindane is considered "second-line" therapy for scabies and lice, its value cannot be underestimated. Those of us particularly in the pediatric dermatology community would not like to see this medication removed from our medical armamentarium. The loss of this drug would inhibit our ability to effectively treat those patients for whom first-line therapy is either ineffective or not indicated.

As the current President of the Society for Pediatric Dermatology, I can strongly attest to the value of Lindane for pediatric patients who suffer from scabies and lice. I have personally used this medication many times during my 21-year career in pediatric dermatology, and believe that it is both safe and effective when used according to the package insert.

Additionally, I trust you are aware that the concentration of medical lindane used on humans differs vastly from that used for agricultural purposes. The 2% lindane that is prescribed for scabies and lice in humans poses minimal risk to the environment. Concentrations of lindane used in farming may range from 10 – 20%. This higher formulation of lindane is currently being phased out, and will soon no longer be used in agricultural applications in the United States.

I would be happy to provide additional information in support of the ongoing availability of Lindane for physicians in the Michigan area. If you have any further questions on this matter, please do not hesitate to contact me directly.

Sincerely Yours,

Adelaide A. Hebert, M.D.
Professor of Dermatology
President, Society for Pediatric Dermatology

AAH:drc
enclosures

# EXHIBIT L

# Ban Lindane Network

## State Strategy Call
## March 30, 2006
Submitted by: Lauren Zajac, Ecology Center

## Participants
Tina Cosentino, PANNA
Tracey Easthope, Ecology Center (Michigan)
Jon Fliegel, Michigan Chapter of American Academy of Pediatrics
Indra Frank, Hoosier Environmental Council (Indiana)
Ann Heil, Los Angeles Sanitation District (California)
Bill Weil, Michigan Chapter of American Academy of Pediatrics
Christian Werwaiss, Citizens Environmental Council (New York)
Lauren Zajac, Ecology Center (Michigan)

## Update: Information from Mark Miller
- Mark did a physician survey after the ban—final report not yet complete (likely in 6-8 months). Preliminary analysis shows a change in prescribing practices. No big complaints from the medical community. Most physicians who were using lindane were older and unaware of the new FDA warnings.
- Institutional scabies outbreaks in CA are treated with ivermectin (oral treatment). This is not a FDA-approved use of the drug, but its use for scabies is becoming more common. To treat scabies, there are fewer alternatives compared to lice treatments, however there is NO evidence that supports lindane is necessary (especially given its toxicity and lack of effectiveness).
- One of the strongest arguments for banning lindane→ documented poisonings. More lindane poisonings reported to TESS database than three alternatives combined—and lindane is used in much lower numbers! (Refer to *Mortality and Morbidity Weekly Report* 6/3/05.)
- For state campaigns, it is advantageous if alternatives are covered by Medicaid.
- Large lindane stockpile in New Jersey (US no longer importing it).
- Lindane has become the most expensive treatment option (for cost comparisons, see *American Journal of Managed Care* 2004; 10(9):S277-282)
- When lindane is manufactured, the alpha and beta isomers are by-products (both are longer lived in the environment).

## Updates: Current State Campaigns
- New York
  - Bill is in the Assembly Health Committee with more than 30 sponsors (bi-partisan). Original sponsor is Republican who has an impacted child in his district. Situation looks good in the Assembly, so campaign is focusing efforts in the Senate.
  - Citizens Environmental Council is canvassing about the issue.
  - Lindane Bill stalled last year because a nurse on the Health Committee opposed it.
- Indiana
  - Discussing strategy to introduce legislation; will meet with legislators to discuss.
- Illinois
  - No current legislative strategy.
- Alaska

NPA 44014

- o Trying to find a Republican sponsor. Working in a school district to pass resolution about safe lice treatment.
- Maine
  - o Completed analysis on state lindane use—found use to be low in general, with largest use in jails. In 2004, lindane was removed from the list of jail treatment options.
- Michigan
  - o Bill is in the House Health Policy Committee. Meeting with representatives in April to gather bi-partisan support; will ask for a hearing on the bill before the summer break.
  - o Widespread support of medical community.
  - o Lindane use in Michigan has declined in past two years because Medicaid changed status of lindane to "prior approval" required.

## California Ban Information (Ann Heil)

- In 1998, new water standards for lindane were adopted in California. (19 ppt for existing/potential drinking water sources; 63 ppt for other water bodies). Discharges in Los Angeles county were much over the limit, and it is expensive to remove ($4000 per lindane dose).
- EPA provided money for outreach about lindane, and usage decreased by 50%.
- A bill to ban pharmaceutical lindane was introduced by a representative whose wife received the outreach materials. The bill ran unopposed. No lobbyist from pharmaceutical company.
- As a result of the ban, water levels dropped dramatically and the prescribing practices of physicians changed. No negative impacts reported by the medical community.
- For more information on the bill: www.leginfo.ca.gov (see AB 2318)

## Opposition

- In NY, a common opposition argument involves the "necessity" of lindane to treat scabies. Current bill includes amendment that allows for lindane scabies treatment ONLY in a physician's office.
- Other common opposition in NY includes:
  - o A bill should not limit ability of physician to treat patients
  - o State should not regulate an FDA-approved drug (*however, many drugs that were once FDA approved are no longer approved because of harmful effects*)
- Lobbyist is NY (Kerry Marsh) also wrote checks to Health Policy Committee members.
- Arguments heard in MI (for responses, see Frequently Asked Questions document)
  - o Lindane is only a second line therapy
  - o There is increased resistance among other treatments
  - o A complete ban puts people at risk because it removes a viable option from the market.
  - o Lindane is needed for scabies—a painful, dangerous condition.
  - o Lindane is safe if used properly.
  - o It is not regulated in Canada, so people will drive there and buy it.

## Action Items

- Circulate Maine lindane analysis, information about ban for jail use in Maine (Tina)
- Circulate updated FAQ document (Lauren)

## Next Call: Friday May 5, 3pm Eastern

From: npa@headlice.org
Sent: Wednesday, April 05, 2006 2:24 AM
To: 'jane@headlice.org'
Subject: FW: Lindane State Strategy Call Notes and updated FAQ document

Attachments: LindaneStateCallNotes33006.doc; Lindane FAQ.doc;
ATT00004.txt


-----Original Message-----
From: Lauren Zajac [mailto:lauren@ecocenter.org]
Sent: Tuesday, April 04, 2006 6:21 PM
To: Christian Werwaiss; Ann Heil; Tracey Easthope; Indra Frank; Lauren Zajac;
pkmiller@akaction.net; rschnapp@frontiernet.net; Kristin Schafer;
cecbobbi@igc.org; shawna@akaction.net; sdiver@toxicfreelegacy.org;
willsugg@yahoo.com; Tina Cosentino; rrosenberg@spcpweb.org;
veronica@ncconservationnetwork.org; rkerzee@spcpweb.org; pdickey@watoxics.org;
npa@headlice.org; midwestdemocracy@yahoo.com; alicepercy@meepi.org
Subject: Lindane State Strategy Call Notes and updated FAQ document

Hello,

Here are the notes from the Lindane state strategy call on 3/30.  Also,
I am attaching an updated "Frequently Asked Questions" document--basic
lindane information and responses to most common opposition arguments.

The next strategy call will be Friday, May 5 at 3pm Eastern.


~Lauren

NPA 44013

# EXHIBIT M

[ SEARCH BLOG ] [ FLAG BLOG ] Next Blog»      Create Blog | Sign In

# Lubetkin's Other Blog

This is Steve Lubetkin's primary blog, where he comments on journalism, communications, and public relations issues of importance, and encourages a dialogue with readers. Steve is a veteran public relations practitioner and a long-time national leader in the Public Relations Society of America.

Friday, June 16, 2006

## Memo to NPA: Will you ever stop scratching this one?

The Wall Street Journal, stirring up what appears to be a liberal political vendetta against "No Child Left Behind" (NCLB) laws, argued the case on behalf of a nonprofit organization that arguably has made millions of dollars selling parents, legislators, and educators on a goofy (but personally profitable for the organization) theory about how best to control head lice.



**Louse Head**

The page one Journal story, "Kink in Federal Law Is Prompting Schools To Stop Picking Nits," (subscription may be required to view story) fronted the point of view of the so-called "National Pediculosis Association," registered as a 501(c)3 nonprofit, claiming that it has the best interests of children and wants to protect them from "toxic" chemicals used to combat the common, and relatively harmless, infestations of head lice that kids sometimes get, either at school or at camp.

NPA is now arguing that NCLB laws give schools extra credit for good attendance rates, so schools are, in NPA's view, getting lax on keeping kids out of school when they have nits in their hair from head lice.

"Nits" are the empty egg casings left behind after the lice hatch. By themselves they are harmless, and most reputable medical experts now say that school policies requiring children to be completely free of these nits before being allowed back in school, are based on superstition, fear, prejudice, and no scientific facts about how to control lice.

NPA wants schools to adopt no-nits policies again, mainly because NPA wants to sell desperate and uninformed parents a special "nit comb" so they can spend hours picking through the kids' hair for these lifeless protein globules that are very difficult, if not impossible, to detach from the hair shafts.

The Journal story reported on NPA's righteous indignation about NCLB, but the story completely omitted interviews conducted with public health experts at the Harvard University School of Public Health, one of whom confided in me that they spent hours with the reporter and repeatedly told him that "no nits" policies were ill-advised.



**Professional Podcasts**



ProfessionalPodcasts.com

We produce Internet audio and video. Visit our website for more information.

**PodcastSteve'sTwitter Updates**

I'm at Atlantic City, NJ, USA - http://bkite.com/00fuM about 6 hours ago

Photo shoot in AC 2day...Dr. Oz speaking @ 1st Tee Women's Forum, sponsored by our client, Wal-Mart http://tinyurl.com/6ywuro about 12 hours ago

@LDpodcast I guess you won't...where were you? about 12 hours ago

Checking out ComOne Phoenix wi-fi radio. Connects to your net and streams Internet radio from anywhere in your hot zone. 1 day ago

Checking out ComOne Phoenix wi-fi radio. Connects to your net and streams Internet radio

The story also ignored the fact that in its 2000 federal 990 tax return, NPA reported nearly $2 million in revenue from the sales of nit combs. Talk about vested interests!

The bottom line is that NPA is not a public-benefit nonprofit group. It is really just a clever mail order scheme taking advantage of the tax laws and using its ability to reopen debate on a scientifically closed medical issue with emotion and junk science -- so that it can sell more of its hair care product.

Happily, however, nit comb sales are plummeting as people become better educated about what a non-issue head lice and nits really are from a medical standpoint.

NPA's 2004 Form 990 seems to report less than $200,000 in sales from nit combs. That's good, considering they avoid taxes while paying their executive director over $100,000.

Unless they are hiding the nit comb sales somewhere else.

I haven't had a chance to study the 23-page form at length yet. But there's more interesting stuff revealed -- except if you read the Journal article. It doesn't mention the fact that NPA's 990 form lists no expenses for lobbying on public issues, and yet their website crows about their efforts to have various pesticides banned or restricted by state legislators.

The bottom line, NPA is abusing the 501(c)3 shield. It's conducting lobbying efforts to reduce the use of effective treatments, and arguing a political case against NCLB to try to foster regulations that would improve its abilities to sell more nit combs.

To me, that's lobbying, and their Form 990 is seriously deficient by not reporting expenses for pestering government officials at every level in hopes of selling more combs.

I wrote a letter to the editor of the Journal about this seriously unbalanced and medically flawed story. They haven't published my letter (what a surprise!).

So that's why I'm publishing it here in a slightly amplified form with relevant hyperlinks, and copying it to Robert Tomsho, the reporter who produced the story:

To the editor:

Robert Tomsho's story in the June 1 Journal , about efforts to revive the medieval and medically unnecessary practice of torturing children by barring them from schools until you have methodically removed every empty egg case from long-dead lice (the receptacles are called "nits"), fails to mention important information that your readers will appreciate .

The National Pediculosis Association, despite its registration as a nonprofit corporation, generates more than $2 million a year in revenue from the sales of "nit combs" ostensibly to help parents rid their children of this "terrible scourge," according to the organization's own IRS 990 form. [2000 form; sales have declined dramatically as noted above.]

Thus, NPA has a strong, financial interest in seeing that school districts enforce ill-advised "no-nits" policies, so that desperate and ignorant parents will purchase NPA's combs. NPA also advocates laws against the more useful and effective prescription anti-lice shampoos and creams -- which, if more widely prescribed, would certainly cut into nit comb sales.

NPA persists in fighting this battle in favor of antiquated treatment

from anywhere in your hot zone.

1 day ago

follow me on Twitter

**LinkedIn Profile**



**At The Roundtable - MediaWeek magazine**



**stevelubetkin**
A veteran of more than 25 years in corporate communications and media relations, now the leading producer of business podcasts in the Northeast. Professional Podcasts LLC produces p

Join me @ At The Roundtable

Powered by Leverage Software

**Blog Archive**

▼ 2008 (26)

  ▼ May (4)

   LOBP Podcast #37: Audio from An Evening with Peter...

   River Communications Group: Peter Shankman, 5/12/0...

   Mobile post sent by stevelubetkin using Utterz. ...

   As Woody Allen said...

  ► April (4)

  ► March (6)

  ► February (7)

  ► January (5)

► 2007 (80)

► 2006 (47)

► 2005 (87)

**About Me**



**STEVE LUBETKIN**

Steven is the managing partner of Lubetkin & Co. LLC, a diversified public relations, Internet broadcasting, and communications consulting practice, and its Professional Podcasts LLC subsidiary, which produces audio and video podcasts. His career includes

modalities, even though such policies are frowned upon by most major medical authorities, including the American Academy of Pediatrics , the National Association of School Nurses, which specifically states in its policy, "Data does not support school exclusion for nits. Because no disease process is associated with head lice, schools are not advised to exclude students when nits remain after appropriate lice treatment, although further monitoring for signs of re-infestation is appropriate," [emphasis was already in the statement] and the previously mentioned Harvard University School of Public Health, among many others.

There is no medical need to eliminate empty egg cases from childrens' hair if there is no evidence of live infestation -- and even live lice are not known to be medically harmful, just unsightly to the squeamish.

The article should have reflected medical reality, not merely used the opportunity to raise questions about the "No Child Left Behind" law. The "nit-picking" fanatics have been terrorizing children and causing extraordinary and unnecessary absenteeism for years.

Don't encourage your readers to disregard medical facts because someone wants to sell them a $9.95 nit comb.

[End of letter text]

_____

And that goes for all of you reading this.

Fight ignorant school officials who try to tell you no-nits policies are appropriate. These idiotic policies are costing your children countless days out of school, and only enriching the people who sell these stupid combs.

Posted by Steve Lubetkin at 9:13 AM  ✉

## 0 comments:

Post a Comment

Newer Post                Home                Older Post
Subscribe to: Post Comments (Atom)

senior executive positions in corporate communications at Bank of America, FleetBoston Financial, and Summit Bank. He has also held a wide range of management positions in public relations, and corporate and internal communications, at Standard & Poor's, the world's largest bond rating agency; Unisys Corporation, a technology firm, and Consolidated Rail Corporation, one of the nation's largest freight railroads. Steve has held a wide range of leadership positions in PRSA, including a three-year term on the National Board of Directors.

View my complete profile

**Google Analytics**

# EXHIBIT N


**CHUBB**

## Chubb Commercial Excess And Umbrella Insurance

### Declarations

***Chubb Group of Insurance Companies***
***15 Mountain View Road***
***Warren, NJ 07059***

Named Insured and Mailing Address

NATIONAL PEDICULOSIS ASSOCIATION, INC.
50 KEARNEY ROAD
NEEDHAM, MA 02494

*Policy Number*     7985-64-73

*Issued by the stock insurance company*
*indicated below, herein called the company.*

**FEDERAL INSURANCE COMPANY**

*Producer No.* 0060915

*Incorporated under the laws of Indiana*

*Producer*     RODMAN INSURANCE AGENCY INC
145 ROSEMARY STREET, #A
NEEDHAM, MA 02494-0000

### Policy Period

From:   JUNE 20, 2006          To:    JUNE 20, 2007
12:01 A.M. standard time at the Named Insured's mailing address shown above.

### Premium

$       5,125.00

### Limits Of Insurance

| | | |
|---|---|---|
| Excess Coverage Other Aggregate Limit (as applicable) | $ | 5,000,000. |
| Umbrella Coverages Aggregate Limit | $ | 5,000,000. |
| Products Completed Operations Aggregate Limit | $ | 5,000,000. |
| Advertising Injury and Personal Injury Aggregate Limit | $ | 5,000,000. |
| Each Occurrence Limit | $ | 5,000,000. |

### Authorization

In Witness Whereof, the company issuing this policy has caused this policy to be signed by its authorized officers, but this policy shall not be valid unless also signed by a duly authorized representative of the company.

**FEDERAL INSURANCE COMPANY**

*W. Andrew Macan*
Secretary

*Thomas F. Motamed*
President

Authorized Representative

*Robert Hamburger*

July 7, 2006

**NPA 16660**

*Chubb Commercial Excess And Umbrella Insurance*



**CHUBB**

## Chubb Commercial Excess And Umbrella Insurance

### Schedule Of Forms

| | | |
|---|---|---|
| Policy Period | JUNE 20, 2006 | to  JUNE 20, 2007 |
| Effective Date | June 20, 2006 | |
| Policy Number | 7985-64-73 | |
| Insured | NATIONAL PEDICULOSIS ASSOCIATION, INC. | |
| Name of Company | FEDERAL INSURANCE COMPANY | |
| Date Issued | July 7, 2006 | |

Form Number

As of the effective date printed above, this is the Schedule Of Forms applicable to this policy:

| | Form Number | |
|---|---|---|
| IMPORTANT NOTICE - OFAC | 99-10-0792 | (09/04) |
| FEDERAL INS. CO. - UMBRELLA DECLARATION | 07-02-0817 | (07/01) |
| CHUBB COMMERCIAL EXCESS & UMBRELLA INSURANCE | 07-02-0815 | (07/01) |
| COMPLIANCE WITH APPLICABLE TRADE SANCTIONS | 07-02-1988 | (02/04) |
| SILICON, SILICA AND SILICATE POLICY EXCL | 07-02-1941 | (09/02) |
| EXCLUSION OF CERTIFIED ACTS OF TERRORISM | 07-02-1958 | (01/03) |
| BIOLOGICAL AGENTS EXCL. | 07-02-1692 | (09/02) |
| CARE, CONTROL OR CUSTODY - POLICY EXCLUSION | 07-02-0837 | (07/01) |
| CONTRACTUAL LIABILITY EXCL. COV. B | 07-02-0839 | (07/01) |
| FOREIGN LIABILITY EXCL. BI/PD/AI/PI COV. B | 07-02-0861 | (07/01) |
| INTELLECTUAL PROPERTY LAWS OR RIGHTS | 07-02-1146 | (07/01) |
| LEAD EXCLUSION | 07-02-1153 | (07/01) |
| PROFESSIONAL SERVICES EXCL | 07-02-0864 | (07/01) |
| POLLUTION EXCL. - EXCESS FOLLOW-FORM COV. A | 07-02-0885 | (07/01) |
| SUPPLEMENTARY PAYMENTS | 07-02-0845 | (07/01) |
| SEXUAL ABUSE OR MOLESTATION POLICY EXCLUSIONS | 07-02-0897 | (06/02) |
| SCHEDULE OF UNDERLYING INSURANCE | 07-02-0922 | (07/01) |

NPA 16661



# Chubb Commercial Excess And Umbrella Insurance

## Schedule Of Underlying Insurance

**Effective date:** JUNE 20, 2006

**Policy Number:** 7985-64-73

**Insured:** NATIONAL PEDICULOSIS ASSOCIATION, INC.

| Description | Limits |
|---|---|

### Employers Liability

| | | | |
|---|---|---|---|
| Insurer: | TRAVELERS CAS & SURETY OF AMER | | Coverage B - Employer's Liability |
| | | | Bodily Injury By Accident |
| | | $ 500,000. | Each Accident |
| Policy No.: | 7PUJB925X372602 | | Bodily Injury By Disease |
| Policy Period: | 11/08/2005 | $ 500,000. | Policy Limit |
| to: | 11/08/2006 | $ 500,000. | Each Employee |

### Commercial General Liability

| | | | |
|---|---|---|---|
| Insurer: | PENN AMERICA | $ 1,000,000. | Each Occurrence |
| | | $ 2,000,000. | General Aggregate |
| Policy No.: | PAC6303438 | $ 1,000,000. | Products/Completed Operations Aggregate |
| Policy Period: | 06/20/2006 | | |
| to: | 06/20/2007 | $ 1,000,000. | Personal and Advertising Injury (aggregate when applicable) |

Occurrence

### Automobile Liability

| | | | |
|---|---|---|---|
| Insurer: | COMMERCE INSURANCE COMPANY | $ 1,000,000. | Each Accident |
| | | or | |
| Policy No.: | 06MMYP6499 | Bodily Injury Liability | |
| Policy Period: | 06/20/2006 | | Each Person |
| to: | 06/20/2007 | | Each Accident |
| | | Property Damage Liability | |
| | | | Each Accident |

### Authorization

All other terms and conditions remain unchanged.

*Authorized Representative*
July 7, 2006

*Robert Hamburger*


**CHUBB**

### *Chubb Commercial Excess And Umbrella Insurance*

## Table Of Contents

| Section | Page No. |
|---|---|
| Coverage/Excess Follow-Form Coverage A | 3 |
| Coverages/Umbrella Coverage B | 3 |
| Investigation, Defense And Settlements | 5 |
| Supplementary Payments | 5 |
| Coverage Territory | 6 |
| Who Is An Insured/Excess Follow-Form Coverage A | 6 |
| Who Is An Insured/Umbrella Coverage B | 6 |
| Limits Of Insurance | 8 |
| When Excess Follow-Form Coverage A Applies (Drop Down) | 10 |
| Exclusions/Excess Follow-Form Coverage A | 10 |
| Exclusions/Umbrella Coverage B | 11 |
| Policy Exclusions | 17 |
| Conditions | 19 |
| Definitions/Umbrella Coverage B | 25 |
| Policy Definitions | 29 |

*THIS PAGE INTENTIONALLY LEFT BLANK*

**NPA 16664**



**CHUBB**

## *Chubb Commercial Excess And Umbrella Insurance*

### *Contract*

Please read the entire policy carefully. The terms and conditions of this insurance include the various sections of this contract: Coverages; Investigation, Defense And Settlements; Supplementary Payments; Coverage Territory; Who Is An Insured; Limits Of Insurance; When Excess Follow-Form Coverage A Applies (Drop Down); Exclusions; Conditions and Definitions, as well as the Declarations and any Endorsements and Schedules made a part of this insurance.

Throughout this contract the words "you" and "your" refer to the Named **Insured** shown in the Declarations and other persons or organizations qualifying as a Named **Insured** under this contract. The words "we," "us" and "our" refer to the Company providing this insurance.

In addition to the Named **Insured**, other persons or organizations may qualify as **insureds**. Those persons or organizations and the conditions under which they qualify are identified in the Who Is An Insured section of this contract.

Words and phrases that appear in **bold** print have special meanings and are defined in the Definitions section of this contract.

---

*Coverage/*
*Excess Follow–Form*
*Coverage A*

Subject to all of the terms and conditions applicable to Excess Follow-Form Coverage A, we will pay, on behalf of the **insured**, that part of **loss** to which this coverage applies, which exceeds the applicable **underlying limits**.

This coverage applies only if the triggering event that must happen during the policy period of the applicable **underlying insurance** happens during the policy period of this insurance.

This coverage will follow the terms and conditions of **underlying insurance** described in the Schedule Of Underlying Insurance, unless a term or condition contained in this coverage:

- differs from any term or condition contained in the applicable **underlying insurance**; or

- is not contained in the applicable **underlying insurance**.

With respect to such exceptions described above, the terms and conditions contained in this coverage will apply, to the extent that such terms and conditions provide less coverage than the terms and conditions of the applicable **underlying insurance**.

This coverage does not apply to any part of **loss** within **underlying limits**, or any related costs or expenses.

We have no obligation under this insurance with respect to any claim or **suit** settled without our consent.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

---

*Coverages/*
*Umbrella Coverage B*

*Bodily Injury And*
*Property Damage*
*Liability Coverage*

Subject to all of the terms and conditions applicable to Umbrella Coverage B, we will pay, on behalf of the **insured**, **loss** by reason of liability:

- imposed by law; or

- assumed in an **insured contract**;

---

*Coverages/*
**Umbrella Coverage B**

*Bodily Injury And*
*Property Damage*
*Liability Coverage*
*(continued)*

for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

This coverage applies only to such **bodily injury** or **property damage** that occurs during the policy period.

Damages for **bodily injury** include damages claimed by a person or organization for care or loss of services resulting at any time from the **bodily injury**.

This coverage does not apply to any part of:

A.    **loss** to which **underlying insurance** would apply, regardless of whether or not:

  1.    **underlying insurance** is available; and

  2.    the applicable **underlying limits** have been exhausted;

B.    **loss** to which **underlying limits** apply; or

C.    any costs or expenses related to **loss** as described in paragraphs A. or B. above.

We have no obligation under this insurance with respect to any claim or **suit** settled without our consent.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

*Advertising Injury And*
*Personal Injury*
*Liability Coverage*

Subject to all of the terms and conditions applicable to Umbrella Coverage B, we will pay, on behalf of the **Insured**, **loss** because of liability:

•    imposed by law; or

•    assumed in an **insured contract**;

for **advertising injury** or **personal injury** to which this coverage applies.

This coverage applies only to such **advertising injury** or **personal injury** caused by an offense that is first committed during the policy period.

This coverage does not apply to any part of:

A.    **loss** to which **underlying insurance** would apply, regardless of whether or not:

  1.    **underlying insurance** is available; and

  2.    the applicable **underlying limits** have been exhausted;

B.    **loss** to which **underlying limits** apply; or

C.    any costs or expenses related to **loss** as described in paragraphs A. or B. above.

We have no obligation under this insurance with respect to any claim or **suit** settled without our consent.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

**NPA 16666**



## Chubb Commercial Excess And Umbrella Insurance

| | |
|---|---|
| **Investigation, Defense And Settlements** | Subject to all of the terms and conditions of this insurance, we will have the right and duty to defend the **insured**: |

- under Excess Follow-Form Coverage A, against a **suit** in connection with **loss** to which such coverage applies, if the applicable **underlying limits** have been exhausted by payment of judgments, settlements or related costs or expenses (if such costs or expenses reduce such limits); or

- under Umbrella Coverage B, against a **suit** to which such coverage applies, even if such **suit** is false, fraudulent or groundless.

We have no duty to defend any person or organization against any claim or **suit**:

- to which this insurance does not apply; or

- if any other insurer has a duty to defend.

When we have the duty to defend, we may, at our discretion, investigate any occurrence or offense and settle any claim or **suit**. In all other cases, we may, at our discretion, participate in the investigation, defense and settlement of any occurrence, offense, claim or **suit**.

Our duty to defend any person or organization ends when we have used up the applicable Limit Of Insurance.

| | |
|---|---|
| **Supplementary Payments** | Subject to all of the terms and conditions of this insurance, under Excess Follow-Form Coverage A or Umbrella Coverage B: |

A.   we will pay, with respect to a claim we investigate or settle, or a **suit** against an **insured** we defend:

1.   the expenses we incur.

2.   the cost of:

    a.   bail bonds; or

    b.   bonds required to:

        (1)   appeal judgments; or

        (2)   release attachments;

    but only for bond amounts within the available Limit Of Insurance. We do not have to furnish these bonds.

3.   reasonable expenses incurred by the **insured** at our request to assist us in the investigation or defense of such claim or **suit**, including actual loss of earnings up to $1000 a day because of time off from work.

4.   costs taxed against the **insured** in the **suit**, except any:

    a.   attorney fees or litigation expenses; or

    b.   other loss, cost or expense;

    in connection with any injunction or other equitable relief.

5.   prejudgment interest awarded against the **insured** on that part of a judgment we pay. If we make an offer to pay the applicable Limit Of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**NPA 16667**

**Supplementary Payments** (continued)

6. interest on the full amount of a judgment that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit Of Insurance.

B. Supplementary Payments does not include any fine or other penalty.

C. Supplementary Payments will not reduce the Limits Of Insurance.

Our obligation to make these payments ends when we have used up the applicable Limit Of Insurance.

## Coverage Territory

**Excess Follow–Form Coverage A**

With respect to Excess Follow-Form Coverage A, this insurance applies anywhere that the applicable **underlying insurance** applies.

**Umbrella Coverage B**

With respect to Umbrella Coverage B, this insurance applies anywhere.

## Who Is An Insured/ Excess Follow–Form Coverage A

With respect to Excess Follow-Form Coverage A, the following persons and organizations qualify as **insureds**:

• the Named **Insured** shown in the Declarations; and

• other persons or organizations qualifying as an insured in **underlying insurance**, but not beyond the extent of any limitation imposed under any contract or agreement.

## Who Is An Insured/ Umbrella Coverage B

With respect to Umbrella Coverage B, the following persons and organizations qualify as **insureds**.

**Sole Proprietorships**

If you are an individual, you and your spouse are **insureds**; but you and your spouse are **insureds** only with respect to the conduct of a business of which you are the sole owner.

If you die:

• persons or organizations having proper temporary custody of your property are **insureds**; but they are **insureds** only with respect to the maintenance or use of such property and only for acts until your legal representative has been appointed; and

• your legal representatives are **insureds**; but they are **insureds** only with respect to their duties as your legal representatives. Such legal representatives will assume your rights and duties under this insurance.

**Partnerships Or Joint Ventures**

If you are a partnership (including a limited liability partnership) or a joint venture, you are an **insured**. Your members, your partners and their spouses are **insureds**; but they are **insureds** only with respect to the conduct of your business.

**NPA 16668**



**CHUBB**

### *Chubb Commercial Excess And Umbrella Insurance*

*Who Is An Insured/*
*Umbrella Coverage B*
(continued)

*Limited Liability Companies*

If you are a limited liability company, you are an **insured**. Your members and their spouses are **insureds**; but they are **insureds** only with respect to the conduct of your business. Your managers are **insureds**; but they are **insureds** only with respect to their duties as your managers.

*Other Organizations*

If you are an organization (including a professional corporation) other than a partnership, joint venture or limited liability company, you are an **insured**. Your directors and **officers** are **insureds**; but they are **insureds** only with respect to their duties as your directors or **officers**. Your stockholders and their spouses are **insureds**; but they are **insureds** only with respect to their liability as your stockholders.

*Employees*

Your **employees** are **insureds**; but they are **insureds** only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

*Volunteers*

Persons who are volunteer workers for you are **insureds**; but they are **insureds** only for acts within the scope of their activities for you and at your direction.

*Real Estate Managers*

Persons (other than your **employees**) or organizations while acting as your real estate managers are **insureds**; but they are **insureds** only with respect to their duties as your real estate managers.

*Lessors Of Equipment*

Persons or organizations from whom you lease equipment are **insureds**; but they are **insureds** only with respect to the maintenance or use by you of such equipment and only if you are contractually obligated to provide them such insurance as is afforded by this contract.

However, no such person or organization is an **insured** with respect to any:

- damages arising out of their sole negligence; or

- **occurrence** that occurs, or offense that is committed, after the equipment lease ends.

*Lessors Of Premises*

Persons or organizations from whom you lease premises are **insureds**; but they are **insureds** only with respect to the ownership, maintenance or use of that particular part of such premises leased to you and only if you are contractually obligated to provide them with such insurance as is afforded by this contract.

However, no such person or organization is an **insured** with respect to any:

- damages arising out of their sole negligence;

- **occurrence** that occurs, or offense that is committed, after you cease to be a tenant in the premises; or

- structural alteration, new construction or demolition operations performed by or on behalf of them.

**NPA 16669**

## Who Is An Insured/
## Umbrella Coverage B
(continued)

**Subsidiary Or Newly Acquired Or Formed Organizations**

If there is no other insurance available, the following organizations will qualify as named **insureds**:

- a subsidiary organization of the first named **insured** shown in the Declarations of which, at the beginning of the policy period and at the time of loss, such first named **insured** controls, either directly or indirectly, more than fifty (50) percent of the interests entitled to vote generally in the election of the governing body of such organization; or

- a subsidiary organization of the first named **insured** shown in the Declarations that such first named **insured** acquires or forms during the policy period, if at the time of loss such first named **insured** controls, either directly or indirectly, more than fifty (50) percent of the interests entitled to vote generally in the election of the governing body of such organization.

**Limitations On Who Is An Insured**

With respect to Umbrella Coverage B, the following limitations apply to Who Is An Insured.

A.  Except to the extent provided under the Subsidiary Or Newly Acquired Or Formed Organizations provision, no person or organization is an **insured** with respect to the conduct of any person or organization that is not shown as a named **insured** in the Declarations.

B.  No person or organization is an **insured** with respect to the:

  1.  ownership, maintenance or use of any assets; or

  2.  conduct of any person or organization whose assets, business or organization;

  you acquire, either directly or indirectly, for any:

  - **bodily injury** or **property damage** that occurred; or

  - **advertising injury** or **personal injury** arising out of an offense first committed;

  in whole or in part, before you, directly or indirectly, acquired such assets, business or organization.

C.  No person or organization is an **insured** with respect to the conduct of any partnership (including any limited liability partnership), joint venture or limited liability company that is not shown as a named **insured** in the Declarations.

**Limits Of Insurance**

With respect to all coverages under this contract, the Limits Of Insurance shown in the Declarations and the rules below fix the most we will pay, regardless of the number of:

- **insureds**;

- claims made or **suits** brought;

- persons or organizations making claims or bringing **suits**;

- vehicles involved; or

- coverages provided in this contract.

NPA 16670



## *Chubb Commercial Excess And Umbrella Insurance*

**Limits Of Insurance**
(continued)

The aggregate limits apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months (starting with the beginning of the policy period shown in the Declarations), provided the applicable aggregate limits in **underlying insurance** apply in such manner. If the aggregate limits in **underlying insurance** do not so apply, the applicable aggregate limits of this insurance will apply to the entire policy period and not separately to any portion (whether annual or otherwise) thereof.

If the policy period is extended after issuance, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**Excess Coverage Other Aggregate Limit**

Subject to the Each Occurrence Limit, the Excess Coverage Other Aggregate Limit is the most we will pay for the sum of loss under Excess Follow-Form Coverage A, except **loss**:

- included in the products-completed operations hazard;

- arising out of advertising injury or personal injury; or

- otherwise covered by **underlying insurance**, but to which no aggregate limit in such **underlying insurance** applies.

The Excess Coverages Other Aggregate Limit will apply separately to **loss** in the same manner as each aggregate limit so applies in each coverage or policy described in the Schedule Of Underlying Insurance.

**Umbrella Coverages Aggregate Limit**

Subject to the Each Occurrence Limit, the Umbrella Coverages Aggregate Limit is the most we will pay for the sum of **loss** under Umbrella Coverages, except **loss**:

- included in the **products-completed operations hazard**; or

- arising out of **advertising injury** or **personal injury**.

**Products–Completed Operations Aggregate Limit**

Subject to the Each Occurrence Limit, the Products-Completed Operations Aggregate Limit is the most we will pay for the sum of **loss** included in the products-completed operations hazard, even if such **loss** is or otherwise would be covered in whole or in part under more than one coverage.

**Advertising Injury And Personal Injury Aggregate Limit**

The Advertising Injury And Personal Injury Aggregate Limit is the most we will pay for the sum of **loss** for advertising injury and personal injury, even if such **loss** is or otherwise would be covered in whole or in part under more than one coverage.

**Each Occurrence Limit**

The Each Occurrence Limit is the most we will pay for the sum of **loss** arising out of any one occurrence, even if such **loss** is or otherwise would be covered in whole or in part under more than one coverage.

Any amount paid for **loss** will reduce the amount of the applicable aggregate limit available for any other payment.

If the applicable aggregate limit has been reduced to an amount that is less than the Each Occurrence Limit, the remaining amount of such aggregate limit is the most that will be available for any other payment.

| **When Excess Follow-Form Coverage A Applies (Drop Down)** | Subject to all of the terms and conditions of this insurance, with respect to Excess Follow-Form Coverage A, if the applicable **underlying limits** are: |

- reduced by payment of judgments, settlements or related costs or expenses (if such costs or expenses reduce such limits), Excess Follow-Form Coverage A will drop down to apply in excess of the remaining amount of the applicable **underlying limits**; or

- exhausted by payment of judgments, settlements or related costs or expenses (if such costs or expenses reduce such limits), Excess Follow-Form Coverage A will apply in the same manner as the applicable **underlying insurance** would have applied but for such exhaustion.

| **Exclusions/ Excess Follow-Form Coverage A** | With respect to Excess Follow-Form Coverage A, the following exclusions apply. |

**Pollution**

A.  This insurance does not apply to any liability or loss, cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**, other than as described in paragraph C. below.

B.  Paragraph A. above does not apply to:

1.  bodily injury or property damage included in the products-completed operations hazard;

2.  bodily injury or property damage:

   a.  caused by the escape of operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of mobile equipment or its parts;

   b.  if sustained within a building and caused by the release of gaseous irritants or contaminants from materials brought into that building, in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

   c.  resulting from your other ongoing contracting operations;

3.  bodily injury if sustained within a building and caused by the escape of gaseous irritants or contaminants from equipment used to heat that building;

4.  bodily injury or property damage caused by heat, smoke or fumes from a **hostile fire**; or

5.  bodily injury or property damage resulting from the ownership, maintenance or use of an auto.

C.  This insurance does not apply to any liability or loss, cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

1.  which are or were at any time transported, handled, stored, disposed of, processed or treated as waste by or for any:

   a.  **insured**; or

   b.  person or organization for whom any **insured** may be legally responsible.

2.  at or from any premises, site or location:

   a.  which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste; or

**NPA 16672**



### Chubb Commercial Excess And Umbrella Insurance

---

**Exclusions/
Excess Follow-Form
Coverage A**

*Pollution
(continued)*

    b.   on which any **insured** or any contractor or subcontractor working directly or indirectly on any **insured**'s behalf is performing operations, if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**.

D.   This insurance does not apply to any loss, cost or expense arising out of any:

    1.   request, demand, order, or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

    2.   claim or proceeding by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

Paragraph D. above does not apply to the liability for damages, for property damage, that the **insured** would have in the absence of such request, demand, order or regulatory or statutory requirement, or such claim or proceeding by or on behalf of a governmental authority.

This exclusion applies regardless of whether or not the pollution was accidental, expected, gradual, intended, preventable or sudden.

---

**Obligations Of Underlying
Insurance**

This insurance does not apply to any liability or loss, cost or expense for which the liability or obligation under **underlying insurance** is by law unlimited.

---

**Underlying Insurance
Exclusions**

Notwithstanding anything to the contrary set forth in any other provision of this contract, this insurance does not apply to any liability or loss, cost or expense to which the terms and conditions of **underlying insurance** do not apply.

---

**Exclusions/
Umbrella Coverage B
Bodily Injury/
Property Damage**

With respect to Umbrella Coverage B, Bodily Injury And Property Damage Liability Coverage, the following exclusions apply.

*Aircraft: Owned Or Rented
Without Crew*

This insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, use (use includes operation and **loading or unloading**) or entrustment to others of any aircraft owned or operated by or loaned or rented to any **insured**.

This exclusion does not apply to an aircraft that is:

•   loaned or rented to you with a paid, trained crew; and

•   not owned, in whole or in part, by any **insured**.

---

NPA 16673

**Exclusions/**
**Umbrella Coverage B**
**Bodily Injury/**
**Property Damage**
(continued)

| | |
|---|---|
| *Autos: U.S.A., Canada Or Puerto Rico* | This insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, use (use includes operation and **loading or unloading**) or entrustment to others of any **auto** owned or operated by or loaned or rented to any **insured**. |
| | This exclusion does not apply to **bodily injury** or **property damage** caused by an **occurrence** that takes place outside of the United States of America (including its possessions or territories), Canada and Puerto Rico. |

| | |
|---|---|
| *Damage To Impaired Property Or Property Not Physically Injured* | This insurance does not apply to **property damage** to: |

- **impaired property**; or
- property that has not been physically injured;

arising out of any:

- defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or
- delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms and conditions.

This exclusion does not apply to the loss of use of other tangible property resulting from sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

| | |
|---|---|
| *Damage To Insureds Property* | This insurance does not apply to **property damage** to any property: |

- owned by you; or
- of any **insured**, that is in the care, control or custody of any other **insured**.

| | |
|---|---|
| *Damage To Your Product* | This insurance does not apply to **property damage** to **your product** arising out of it or any part of it. |

| | |
|---|---|
| *Damage To Your Work Or Related Property* | This insurance does not apply to **property damage** to: |

- **your work** arising out of it or any part of it;
- that particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the **property damage** arises out of those operations; or
- that particular part of any property that must be restored, repaired or replaced because your **work** was incorrectly performed on it.

**NPA 16674**



### Chubb Commercial Excess And Umbrella Insurance

**Exclusions/**
**Umbrella Coverage B**
**Bodily Injury/**
**Property Damage**
(continued)

**Expected Or Intended Injury**

This insurance does not apply to **bodily injury** or **property damage** arising out of an act that:

- is intended by the **insured**; or

- would be expected from the standpoint of a reasonable person in the circumstances of the **insured**;

to cause **bodily injury** or **property damage**, even if the actual **bodily injury** or **property damage** is of a different degree or type than intended or expected.

This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or tangible property.

**Loss In Progress**

This insurance does not apply to **bodily injury** or **property damage** that is a change, continuation or resumption of any **bodily injury** or **property damage** known by you, prior to the beginning of the policy period, to have occurred.

**Bodily injury** or **property damage** will be deemed to be known by you:

A.    if such injury or damage is known by, or should have been known from the standpoint of a reasonable person in the circumstances of:

    1.    you;

    2.    any of your directors, managers, members, **officers** (or their designees) or partners (whether or not an **employee**); and

B.    when any person described in paragraph A. above:

    1.    reports all, or any part, of any such injury or damage to us or any other insurer;

    2.    receives a claim or a demand for damages because of any such injury or damage; or

    3.    becomes aware that any such injury or damage has occurred or has begun to occur.

**Watercraft: Owned**

This insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, use (use includes operation and **loading or unloading**) or entrustment to others of any watercraft owned or operated by or loaned or rented to any **insured**.

This exclusion does not apply to a watercraft:

- while ashore on premises owned by or rented to you; or

- that is not owned, in whole or in part, by any **insured**.

| | |
|---|---|
| **Exclusions/ Umbrella Coverage B Advertising Injury/ Personal Injury** | With respect to Umbrella Coverage B, Advertising Injury And Personal Injury Liability Coverage, the following exclusions apply. |

*Breach Of Contract*

This insurance does not apply to **advertising injury** or **personal injury** arising out of breach of contract.

*Continuing Offenses*

This insurance does not apply to **advertising injury** or **personal injury** that arises out of that part of an offense that continues or resumes after the later of the end of the policy period of:

A.   this insurance; or

B.   a subsequent, continuous renewal or replacement of this insurance, that:

    1.   is issued to you by us or by an affiliate of ours;

    2.   remains in force while the offense continues; and

    3.   would otherwise apply to **advertising injury** and **personal injury**.

*Crime Or Fraud*

This insurance does not apply to **advertising injury** or **personal injury** arising out of any criminal or fraudulent conduct committed by or with the consent or knowledge of the **insured**.

*Expected Or Intended Injury*

This insurance does not apply to **advertising injury** or **personal injury** arising out of an offense, committed by or behalf of the **insured**, that:

•   is intended by such **insured**; or

•   would be expected from the standpoint of a reasonable person in the circumstances of such **insured**;

to cause injury.

*Failure To Conform To Representations Or Warranties*

This insurance does not apply to **advertising injury** or **personal injury** arising out of the failure of goods, products or services to conform with any electronic, oral, written or other representation or warranty of durability, fitness, performance, quality or use.

*Internet Activities*

This insurance does not apply to **advertising injury** or **personal injury** arising out of:

•   controlling, creating, designing or developing of another's Internet site;

•   controlling, creating, designing, developing, determining or providing the content or material of another's Internet site;

•   controlling, facilitating or providing, or failing to control, facilitate or provide, access to the Internet or another's Internet site; or

•   publication of content or material on or from the Internet, other than material developed by you or at your direction.

*Prior Offenses*

This insurance does not apply to **advertising injury** or **personal injury** arising out of any offense first committed before the beginning of the policy period.

**NPA 16676**



## *Chubb Commercial Excess And Umbrella Insurance*

---

**Exclusions/**
**Umbrella Coverage B**
**Advertising Injury/**
**Personal Injury**
(continued)

**Publications With**
**Knowledge Of Falsity**

This insurance does not apply to **advertising injury** or **personal injury** arising out of any electronic, oral, written or other publication of material by or with the consent of the **insured**:

- with knowledge of its falsity; or

- if a reasonable person in the circumstances of such **insured** would have known such material to be false.

---

**Wrong Description Of**
**Prices**

This insurance does not apply to **advertising injury** or **personal injury** arising out of the wrong description of the price of goods, products or services.

---

**Exclusions/**
**Umbrella Coverage B**
**Bodily Injury/**
**Property Damage/**
**Advertising Injury/**
**Personal Injury**

With respect to Umbrella Coverage B, Bodily Injury And Property Damage Liability Coverage and Advertising Injury And Personal Injury Liability Coverage, the following exclusions apply.

**Employee Or Worker Injury**

A.  This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** sustained by an **employee** or **temporary worker** of the **insured** arising out of and in the course of:

   1.  employment by the **insured**; or

   2.  performing duties related to the conduct of the **insured**'s business.

B.  This insurance does not apply to **bodily injury, property damage, personal injury** or **advertising injury** sustained by the brother, child, parent, sister or spouse of such injured person, as a consequence of any injury or damage described in paragraph A. above.

This exclusion applies:

- whether the **insured** may be liable as an employer or in any other capacity; and

- to any obligation to share damages with or repay someone else who must pay damages because of any injury or damage described in paragraphs A. or B. above.

---

**Enhancement,**
**Maintenance Or Prevention**
**Expenses**

This insurance does not apply to any loss, cost or expense incurred by you or others for any:

A.  enhancement or maintenance of any property; or

B.  prevention of any injury or damage to any:

   1.  person or organization; or

   2.  property you own, rent or occupy.

---

**Exclusions/**
**Umbrella Coverage B**
**Bodily Injury/**
**Property Damage/**
**Advertising Injury/**
**Personal Injury**
(continued)

| | |
|---|---|
| *Intellectual Property Laws Or Rights* | This insurance does not apply to any actual or alleged **bodily injury, property damage, advertising injury** or **personal injury** arising out of, giving rise to or in any way related to any actual or alleged: |

- assertion; or

- infringement or violation;

by any person or organization (including any **insured**) of any **intellectual property law or right**, regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation.

This exclusion applies, unless such injury:

- is caused by an offense described in the definition of **advertising injury**; and

- does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement or violation of any **intellectual property law or right**, other than one described in the definition of **advertising injury**.

| | | |
|---|---|---|
| *Pollution* | A. | This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**. |
| | B. | This insurance does not apply to any loss, cost or expense arising out of any: |

    1.   request, demand, order or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

    2.   claim or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

This exclusion applies regardless of whether or not the pollution was accidental, expected, gradual, intended, preventable or sudden.

| | |
|---|---|
| *Recall Of Products, Work Or Impaired Property* | This insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: |

- **your product**;

- **your work**; or

- **impaired property**;

**NPA 16678**



**CHUBB**

### *Chubb Commercial Excess And Umbrella Insurance*

---

*Exclusions/*
*Umbrella Coverage B*
*Bodily Injury/*
*Property Damage/*
*Advertising Injury/*
*Personal Injury*

*Recall Of Products, Work*
*Or Impaired Property*
*(continued)*

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

---

*Policy Exclusions*

With respect to all coverages under this contract, the following exclusions apply.

*Asbestos*

A.   This insurance does not apply to any liability or loss, cost or expense arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **asbestos**.

B.   This insurance does not apply to any loss, cost or expense arising out of any:

    1.   request, demand, order or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **asbestos**; or

    2.   claim or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **asbestos**.

---

*Coverages/ Laws, Various*

This insurance does not apply to any liability or loss, cost or expense or obligation of any **insured** under any:

- medical expenses or payments coverage;
- no-fault law;
- personal injury protection coverage;
- underinsured or uninsured financial responsibility law;
- workers' compensation, disability benefits or unemployment compensation law; or
- similar coverage or law.

---

*Employee Retirement*
*Income Security Laws*

This insurance does not apply to any liability or loss, cost or expense or obligation of any **insured** under the United States of America Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974 or any similar law, as now constituted or hereafter amended.

---

*Employment-Related*
*Practices*

A.   This insurance does not apply to any liability or loss, cost or expense in connection with any damages sustained at any time by any person, whether or not sustained in the course of employment by any **insured**, arising out of any employment-related act, omission, policy, practice or representation directed at such person, occurring in whole or in part at any time, including any:

    1.   arrest, detention or imprisonment;

**NPA 16679**

---

---

## Policy Exclusions

**Employment-Related Practices (continued)**

2.      breach of any express or implied covenant;

3.      coercion, criticism, humiliation, prosecution or retaliation;

4.      defamation or disparagement;

5.      demotion, discipline, evaluation or reassignment;

6.      discrimination, harassment or segregation;

7.      a.      eviction; or

       b.      invasion or other violation of any right of occupancy;

8.      failure or refusal to advance, compensate, employ or promote;

9.      invasion or other violation of any right of privacy or publicity;

10.      termination of employment; or

11.      other employment-related act, omission, policy, practice, representation or relationship in connection with any **insured** at any time.

B.      This insurance does not apply to any liability or loss, cost or expense in connection with any damages sustained at any time by the brother, child, parent, sister or spouse of such person at whom any employment-related act, omission, policy, practice or representation is directed, as described in paragraph A. above, as a consequence thereof.

This exclusion applies:

•      whether the **insured** may be liable as an employer or in any other capacity; and

•      to any obligation to share damages with or repay someone else who must pay damages because of any of the foregoing.

---

**Nuclear Energy**

A.      This insurance does not apply to any liability or loss, cost or expense:

1.      with respect to which any **insured** under this policy also has status as an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would have had status as an insured under any such policy but for its termination upon exhaustion of its limit of insurance; or

2.      arising out of the **nuclear hazardous properties** of **nuclear material** and with respect to which:

       a.      any person or organization is required to maintain financial protection pursuant to the United States of America Atomic Energy Act of 1954, or any law amendatory thereof; or

       b.      the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.      This insurance does not apply to any liability or loss, cost or expense arising out of the **nuclear hazardous properties** of **nuclear material**:

1.      if the **nuclear material**:

       a.      is at any **nuclear facility** owned by, or operated by or on behalf of, any **insured**;

NPA 16680

---



**CHUBB**

*Chubb Commercial Excess And Umbrella Insurance*

## Policy Exclusions

**Nuclear Energy**
**(continued)**

    b.    has been discharged or dispersed therefrom; or is contained in **nuclear spent fuel** or **nuclear waste** at any time transported, handled, stored, disposed of, processed, treated, possessed or used by or on behalf of any **insured**; or

    2.    in any way related to the furnishing by any **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**. But if such facility is located within the United States of America (including its possessions or territories) or Canada, this subparagraph 2. applies only to **nuclear property damage** to such **nuclear facility** and any property thereat.

## Conditions

With respect to all coverages under this contract, the following conditions apply.

**Appeals**

We may, at our discretion, initiate or participate in an appeal of a judgment, if such judgment may result in a payment under this insurance.

If we initiate or participate in an appeal, we will pay our costs of the appeal. But in no case will the amount we pay for **loss** exceed the Limits Of Insurance.

**Audit Of Books And Records**

We may audit your books and records as they relate to this insurance at any time during the term of this policy and up to three years afterwards.

**Bankruptcy**

Bankruptcy or insolvency of the **insured** or of the **insured**'s estate will not relieve us of our obligations under this insurance.

**Cancellation**

The first named **insured** may cancel this policy or any of its individual coverages at any time by sending us a written request or by returning the policy and stating when thereafter cancellation is to take effect.

We may cancel this policy or any of its individual coverages at any time by sending to the first named **insured** a notice sixty (60) days, twenty (20) days in the event of non-payment of premium, in advance of the cancellation date. Our notice of cancellation will be mailed to the first named **insured**'s last known address and will indicate the date on which coverage is terminated. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

The earned premium will be computed on a pro rata basis. Any unearned premium will be returned as soon as practicable.

**Changes**

This policy can only be changed by a written endorsement that becomes part of this policy. The endorsement must be signed by one of our authorized representatives.

**Compliance By Insureds**

We have no duty to provide coverage under this policy unless you and any other involved **insured** have fully complied with all of the terms and conditions of the policy.

**NPA 16681**

## Conditions
(continued)

**Conformance**

Any terms of this insurance which are in conflict with the applicable statutes of the State in which this policy is issued are amended to conform to such statutes.

**Disclosures And Representations**

We have issued this insurance:

- Based upon representations you made to us; and

- in reliance upon your representatives.

Unintentional failure of an employee of the **insured** to disclose a hazard or other material information will not violate this condition, unless an officer (whether or not an employee) of any **insured** or an officer's designee knows about such hazard or other material information.

**Duties In The Event Of Occurrence, Offense, Claim Or Suit**

A.  You must see to it that we and any insurers of **underlying insurance** are notified as soon as practicable of any occurrence or offense that may result in a claim, if the claim may involve us or other insurers. To the extent possible, notice should include:

    1.  how, when and where the occurrence or offense happened;

    2.  the names and addresses of any injured persons and witnesses; and

    3.  the nature and location of any injury or damage arising out of the occurrence or offense.

Notice of an occurrence or offense is not notice of a claim.

B.  If a claim is made or **suit** is brought against any **insured**, you must:

    1.  immediately record the specifics of the claim or **suit** and the date received;

    2.  notify us and any other insurers as soon as practicable; and

    3.  see to it that we receive written notice of the claim or **suit** as soon as practicable.

C.  You and any other involved **insured** must:

    1.  immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

    2.  authorize us to obtain records and other information;

    3.  cooperate with us and any other insurers in the:

        a.  investigation or settlement of the claim; or

        b.  defense against the **suit**; and

    4.  assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of loss to which this insurance may also apply.

D.  No **insureds** will, except at that **insured**'s own cost, make any payment, assume any obligation or incur any expense without our consent.

E.  Notice given by or on behalf of:

    1.  the **insured**;

**NPA 16682**



**CHUBB**

### *Chubb Commercial Excess And Umbrella Insurance*

## *Conditions*

*Duties In The Event Of Occurrence, Offense, Claim Or Suit (continued)*

    2.    the injured person; or

    3.    any other claimant;

to a licensed agent of ours with particulars sufficient to identify the **insured** shall be deemed notice to us.

F.    Knowledge of an occurrence or offense by an agent or employee of the **insured** will not constitute knowledge by the **insured**, unless an officer (whether or not an employee) of any **insured** or an officer's designee knows about such occurrence or offense.

G.    Failure of an agent or employee of the **insured**, other than an officer (whether or not an employee) of any **insured** or an officer's designee, to notify us of an occurrence or offense which such person knows about will not affect the insurance afforded to you.

H.    If a claim or loss does not reasonably appear to involve either this insurance or any **underlying insurance**, but it later develops into a claim or loss to which this insurance applies, the failure to report it to us will not violate this condition, provided the **insured** gives us immediate notice as soon as the **insured** is aware that this insurance may apply to such claim or loss.

*First Named Insured*

The person or organization first named in the Declarations is primarily responsible for payment of all premiums. The first named **insured** will act on behalf of all other named **insureds** for the giving and receiving of notice of cancellation or nonrenewal and the receiving of any return premiums that become payable under this policy.

*Inspections And Surveys*

We may:

•    make inspections and surveys at any time;

•    give you reports on the conditions we find; and

•    recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

•    are safe or healthful; or

•    comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization, which makes insurance inspections, surveys, reports or recommendations for us.

*Joint Duties In Non-Admitted Jurisdictions*

With respect to an occurrence, offense, claim or **suit**, to which this insurance applies, that arises in a **non-admitted jurisdiction**:

A.    we have no duty to defend any person or organization against any claim or **suit**; but we may, at our discretion, assume control of or participate in any investigation, defense, settlement or recovery proceedings.

B.    you and any other **insured** must:

**NPA 16683**

## Conditions

**Joint Duties In Non-Admitted Jurisdictions (continued)**

1. make such investigation, defense or settlement as we deem reasonable;

2. obtain our approval for any payment; and

3. effect approved payments to others, in accordance with the terms and conditions of this insurance.

C. we will reimburse funds to the **insured** for payments approved by us for:

1. **loss**; and

2. expenses and other payments;

to which this insurance applies.

D. we will make those reimbursements:

1. in a jurisdiction that is mutually acceptable; and

2. until we have used up the applicable Limits Of Insurance.

---

**Legal Action Against Us**

No person or organization has a right under this insurance to:

- join us as a party or otherwise bring us into a **suit** seeking damages from an **insured**; or

- sue us on this insurance unless all of the terms and conditions of this insurance have been fully complied with.

A person or organization may sue us to recover on an **agreed settlement** or on a final judgment against an **insured** obtained after an actual:

- trial in a civil proceeding; or

- arbitration or other alternative dispute resolution proceeding;

but we will not be liable for damages that are not payable under the terms and conditions of this insurance or that are in excess of the applicable Limits Of Insurance.

---

**Maintenance Of Underlying Insurance And Underlying Limits**

We have issued this insurance in reliance upon representations made by you about **underlying insurance** and **underlying limits**. You must see to it that:

- **underlying insurance** is and remains valid and in full force and effect.

- **underlying insurance** will not be cancelled, non-renewed or rescinded without replacement by coverage to which we agree.

- the terms and conditions of **underlying insurance** will not materially change, unless we agree otherwise.

- the terms and conditions of renewals or replacements of **underlying insurance**, shown in the Schedule Of Underlying Insurance, will be materially the same as the prior coverage, unless we agree otherwise.

- the **underlying limits** are and remain available, regardless of any bankruptcy, insolvency or other financial impairment of any insurer or any other person or organization.

- the **underlying limits**, shown in the Schedule Of Underlying Insurance, will not be reduced or exhausted, except for the reduction or exhaustion by payment of judgments, settlements or related costs or expenses (if such costs or expenses reduce such limits).

**NPA 16684**



**CHUBB**

### *Chubb Commercial Excess And Umbrella Insurance*

### *Conditions*

| | |
|---|---|
| *Maintenance Of Underlying Insurance And Underlying Limits* (continued) | Failure to comply with this condition will not invalidate this insurance. But in the case of any such failure, our obligation or liability will not exceed that which would have applied absent any failure to comply with this condition. |
| | You must notify us as soon as practicable if any **underlying insurance** is no longer valid or in full force or effect. |

| | |
|---|---|
| *Other Insurance* | If other valid and collectable insurance is available to the **insured** for loss we would otherwise cover under this insurance, our obligations are limited as follows. |
| | This insurance is excess over any **other insurance**, whether primary, excess, contingent or on any other basis. |
| | We will have no duty to defend the **insured** against any **suit** if any provider of any other insurance has a duty to defend such **insured** against such **suit**. |
| | We will pay only our share of the amount of **loss**, if any, that exceeds the sum of the total: |
| | • amount that all **other insurance** would pay for loss in the absence of this insurance; and |
| | • of all deductible and self-insured amounts under all **other insurance**. |
| | This insurance is not subject to the terms or conditions of any **other insurance**. |

| | |
|---|---|
| *Separation Of Insureds* | Except with respect to the Limits Of Insurance, and any rights or duties specifically assigned in this insurance to the first named **insured**, this insurance applies: |
| | • as if each named **insured** were the only named **insured**; and |
| | • separately to each **insured** against whom claim is made or **suit** is brought. |

| | |
|---|---|
| *Titles Of Paragraphs* | The titles of the various paragraphs of this policy and endorsements, if any, attached to this policy are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provisions to which they relate. |

| | |
|---|---|
| *Transfer Of Rights And Duties* | Your rights and duties under this insurance may not be transferred without our written consent. However, if you die, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative, or to anyone having temporary custody of your property until your legal representative has been appointed. |

| | |
|---|---|
| *Transfer Or Waiver Of Rights Of Recovery Against Others* | We will waive the right of recovery we would otherwise have had against another person or organization for loss to which this insurance applies, provided the **insured** has waived their rights of recovery against such person or organization in a contract or agreement that is executed before loss. |
| | To the extent that the **insured**'s rights to recover all or part of any payment made under this insurance have not been waived, those rights are transferred to us. The **insured** must do nothing after loss to impair them. At our request, the **insured** will bring **suit** or transfer those rights to us and help us enforce them. |

**NPA 16685**

## Conditions

**Transfer Or Waiver Of Rights Of Recovery Against Others (continued)**

Any amount recovered will be apportioned as follows:

- first, we shall receive all amounts recovered until we have been fully reimbursed for all amounts we have incurred, including costs or expenses of such recovery proceedings.

- Then, you are entitled to claim for any further amount recovered.

**When We Do Not Renew**

If we decide not to renew this policy, we will mail or deliver to the first named **insured** stated in the Declarations written notice of the nonrenewal not less than sixty (60) days before the expiration date. If notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice.

**NPA 16686**


**CHUBB**

### *Chubb Commercial Excess And Umbrella Insurance*

| | |
|---|---|
| **Definitions/**<br>***Umbrella Coverage B*** | WITH RESPECT TO UMBRELLA COVERAGE B, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW. |
| *Advertisement* | **Advertisement** means an electronic, oral, written or other notice, about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services. |
| | **Advertisement** does not include any e-mail address, Internet domain name or other electronic address or metalanguage. |

*Advertising Injury*

**Advertising injury** means injury, other than **bodily injury**, **property damage** or **personal injury**, sustained by a person or organization and caused by an offense of infringing, in that particular part of your **advertisement** about your goods, products or services, upon their:

* copyrighted **advertisement**; or

* registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title.

*Auto*

**Auto** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But **auto** does not include mobile equipment.

*Bodily Injury*

**Bodily injury** means physical:

* injury;

* sickness; or

* disease;

sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time. All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it.

*Employee*

**Employee** includes a **leased worker**. **Employee** does not include a **temporary worker**.

*Impaired Property*

**Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

* it incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

* you have failed to fulfill the terms or conditions of a contract or agreement;

if such property can be restored to use by:

* the repair, replacement, adjustment or removal of **your product** or **your work**; or

* your fulfilling the terms or conditions of the contract or agreement.

**NPA 16687**

| | |
|---|---|
| **Definitions/**<br>***Umbrella Coverage B***<br>(continued) | **WITH RESPECT TO UMBRELLA COVERAGE B, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW.** |

*Insured Contract*

**Insured contract** means an oral or written contract or agreement pertaining to your business, in which you assume the tort liability of another person or organization to pay damages, to which this insurance applies, sustained by a third person or organization, provided the injury or damage occurs, or is caused by an offense that is first committed, after the execution of such contract or agreement.

---

*Intellectual Property Law Or Right*

**Intellectual property law or right** means any:

- certification mark, copyright, patent or trademark (including collective or service marks);

- right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;

- other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or

- other judicial or statutory law concerning piracy, unfair competition or other similar practices.

---

*Leased Worker*

**Leased worker** means a person leased to a party by a labor leasing firm, in a contract or agreement between such party and the labor leasing firm, to perform duties related to the conduct of the party's business. **Leased worker** does not include a **temporary worker**.

---

*Loading Or Unloading*

**Loading or unloading:**

A.    means the handling of property:

    1.    after it is moved from the place where it is accepted for movement into or onto an aircraft, **auto** or watercraft;

    2.    while it is in or on an aircraft, **auto** or watercraft; or

    3.    while it is being moved from an aircraft, **auto** or watercraft to the place where it is finally delivered.

B.    does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, **auto** or watercraft.

---

*Occurrence*

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

---

*Officer*

**Officer** means a person holding any of the officer positions created by an organization's charter, constitution, by-laws or any other similar governing document.

---

**NPA 16688**



### *Chubb Commercial Excess And Umbrella Insurance*

---

| | |
|---|---|
| **Definitions/**<br>**Umbrella Coverage B**<br>(continued) | WITH RESPECT TO UMBRELLA COVERAGE B, ~~WHEN USED WITH RESPECT TO~~ INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW. |

*Personal Injury*

**Personal injury** means injury, other than **bodily injury**, **property damage** or **advertising injury**, caused by an offense of:

A.  false arrest, false detention or other false imprisonment;

B.  malicious prosecution;

C.  wrongful entry into, wrongful eviction of a person from or other violation of a person's right of private occupancy of a dwelling, premises or room that such person occupies, if commited by or on behalf of its landlord, lessor or owner;

D.  electronic, oral, written or other publication of material that:

    1.  libels or slanders a person or organization (which does not include disparagement of goods, products, property or services); or

    2.  violates a person's right of privacy;

E.  discrimination, harrassment or segregation based on a person's protected human characteristics as established by law.

---

*Products-Completed*
*Operations Hazard*

**Products-completed operations hazard:**

A.  includes all **bodily injury** and **property damage** taking place away from premises owned or occupied by or loaned or rented to you and arising out of **your product** or **your work**, except:

    1.  products that are still in your physical possession; or

    2.  work that has not yet been completed or abandoned.

    **Your work** will be deemed completed when:

    •  all of the work called for in your contract or agreement has been completed.

    •  all of the work to be performed at the site has been completed, if your contract or agreement calls for work at more than one site.

    •  that part of the work completed at a site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

B.  does not include **bodily injury** or **property damage** arising out of:

    1.  the transportation of property, unless the injury or damage results from a condition in or on a vehicle not owned or operated by or loaned or rented to you and that condition was created by the **loading or unloading** of that vehicle by any **insured**;

    2.  the existence of tools, uninstalled equipment or abandoned or unused materials; or

<b>NPA 16689</b>

---

| **Definitions/** **Umbrella Coverage B** | **WITH RESPECT TO UMBRELLA COVERAGE B, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW.** |
|---|---|

**Products-Completed Operations Hazard (continued)**

    3.    products or operations for which the classification in our rules indicates that such products or operations are not subject to the Products-Completed Operations Aggregate Limits Of Insurance.

---

**Property Damage**

**Property damage** means:

- physical injury to tangible property, including resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

Tangible property does not include any software, data or other information that is in electronic form.

---

**Temporary Worker**

**Temporary worker** means a person who is furnished to a party to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions.

---

**Your Product**

**Your product:**

A.    means any:

    1.    goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        a.    you;

        b.    others trading under your name; or

        c.    a person or organization whose assets or business you have acquired; and

    2.    containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

B.    includes:

    1.    representations or warranties made at any time with respect to the durability, fitness, performance, quality or use of **your product**; and

    2.    the providing of or failure to provide instructions or warnings.

C.    does not include vending machines or other property loaned or rented to or located for the use of others but not sold.

---

**Your Work**

**Your work:**

A.    means any:

    1.    work or operations performed by:

        a.    you or on your behalf; or

        b.    a person or organization whose assets or business you have acquired; and

**NPA 16690**



**Chubb Commercial Excess And Umbrella Insurance**

| | |
|---|---|
| **Definitions/**<br>**Umbrella Coverage B** | WITH RESPECT TO UMBRELLA COVERAGE B, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW. |

*Your Work*
*(continued)*

    2.    materials, parts or equipment furnished in connection with such work or operations.

B.    includes:

    1.    representations or warranties made at any time with respect to the durability, fitness, performance, quality or use of **your work**; and

    2.    the providing of or failure to provide instructions or warnings.

---

**Policy Definitions**

WITH RESPECT TO ALL COVERAGES UNDER THIS CONTRACT, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW.

*Agreed Settlement*

**Agreed settlement** means a settlement and release of liability signed by us, the **insured** and the claimant or the claimant's legal representative.

*Asbestos*

**Asbestos** means asbestos in any form, including its presence or use in any alloy, by-product or other material or waste. Waste includes material to be recycled, reconditioned or reclaimed.

*Hostile Fire*

**Hostile fire** means one, which becomes uncontrollable or breaks out from where it was intended to be.

*Insured*

**Insured** means a person or an organization qualifying as an **insured** in the Who Is An Insured sections of this contract.

*Loss*

**Loss:**

•    means damages that the **insured** becomes legally obligated to pay because of injury or damage.

•    does not include sums properly deducted for recoveries or salvage.

*Non-Admitted Jurisdiction*

**Non-admitted jurisdiction** means any jurisdiction where we are:

•    not licensed or permitted by law to issue insurance; or

•    prevented by law or otherwise from investigating, defending or settling an occurrence, offense, claim or **suit**.

NPA 16691

| | |
|---|---|
| ***Policy Definitions***<br>(continued) | WITH RESPECT TO ALL COVERAGES UNDER THIS CONTRACT, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW. |

*Nuclear Facility*

**Nuclear facility** means any:

A.    **nuclear reactor**;

B.    equipment or device designed or used for:

    1.    separating the isotopes of plutonium or uranium;

    2.    processing or utilizing **nuclear spent fuel**; or

    3.    handling, processing or packaging **nuclear waste**;

C.    equipment or device used for the processing, fabricating or alloying of **nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than:

    1.    twenty-five (25) grams of plutonium or uranium 233, or any combination thereof; or

    2.    two-hundred-fifty (250) grams of uranium 235; or

D.    structure, basin, excavation, premises or place prepared or used for the storage or disposal of **nuclear waste**;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

*Nuclear Hazardous Properties*

**Nuclear hazardous properties** include radioactive, toxic or explosive properties.

*Nuclear Material*

**Nuclear material** means **by-product material**, **source material** or **special nuclear material**.

**By-product material**, **source material** and **special nuclear material** have the meanings given them in the United States of America Atomic Energy Act of 1954 or in any law amendatory thereof.

*Nuclear Property Damage*

**Nuclear property damage** includes all forms of radioactive contamination of property.

*Nuclear Reactor*

**Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

*Nuclear Spent Fuel*

**Nuclear spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**.

**NPA 16692**



**CHUBB**

*Chubb Commercial Excess And Umbrella Insurance*

---

| | |
|---|---|
| **Policy Definitions**<br>*(continued)* | WITH RESPECT TO ALL COVERAGES UNDER THIS CONTRACT, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW. |
| **Nuclear Waste** | **Nuclear waste** means any waste material: |

- containing **nuclear material**, other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and

- resulting from the operation by any person or organization of any **nuclear facility** described in subparagraphs A. or B. of the definition of **nuclear facility**.

---

| | |
|---|---|
| **Other Insurance** | **Other insurance** means any insurance affording coverage that this insurance would also afford. **Other insurance** includes any type of self-insurance or other mechanism arranged for funding of loss. |
| | **Other insurance** does not include **underlying insurance** or insurance negotiated specifically to apply in excess of this insurance. |

---

| | |
|---|---|
| **Pollutants** | **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. |

---

| | |
|---|---|
| **Suit** | **Suit** means a civil proceeding in which damages, to which this insurance applies, are sought. **Suit** includes an arbitration or other dispute resolution proceeding in which such damages are sought and to which the **insured** must submit or does submit with our consent. |

---

| | |
|---|---|
| **Underlying Insurance** | **Underlying insurance** means the coverages for the hazards described in the Schedule Of Underlying Insurance and the next renewal or replacement insurance thereof. |

---

| | |
|---|---|
| **Underlying Limits** | **Underlying limits** means the sum of amounts: |

A.  shown for the hazards described in the Schedule Of Underlying Insurance, consisting of amounts:

    1.  available under applicable **underlying insurance**; and

    2.  any **insured** must pay because **underlying insurance**, as represented by you, is not available, regardless of the reason;

B.  available under any applicable antecedent, renewal or replacement of **underlying insurance**;

C.  of any allocation, deductible, participation, retention or other self-insurance applicable to the insurance described in paragraphs A. and B. above; and

D.  any reinstatement of limits or supplemental or other limits available under the insurance described in paragraphs A. and B. above.

NPA 16693

| Policy Definitions | WITH RESPECT TO ALL COVERAGES UNDER THIS CONTRACT, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW. |
|---|---|
| *Underlying Limits* (continued) | If amounts available under the applicable **underlying insurance**, described in the Schedule Of Underlying Insurance, are greater or less than the amount, shown in such Schedule, then the greater of such amounts shall apply in the computation of **underlying limits**. |

**NPA 16694**



**CHUBB**

### *Chubb Commercial Excess And Umbrella Insurance*

*Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 20, 2006     *To*   JUNE 20, 2007 |
| *Effective Date* | June 20, 2006 |
| *Policy Number* | 7985-64-73 |
| *Insured* | NATIONAL PEDICULOSIS ASSOCIATION, INC. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | July 7, 2006 |

Under Conditions, the following condition is added to the policy:

**Conditions**

**Compliance With Applicable Trade Sanctions**

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

All other terms and conditions remain unchanged.

*Authorized Representative*

July 7, 2006

---

NPA 16695



CHUBB

### *Chubb Commercial Excess And Umbrella Insurance*

*Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 20, 2006          To     JUNE 20, 2007 |
| *Effective Date* | June 20, 2006 |
| *Policy Number* | 7985-64-73 |
| *Insured* | NATIONAL PEDICULOSIS ASSOCIATION, INC. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | July 7, 2006 |

Under Policy Exclusions, the following exclusion is added:

### *Policy Exclusions*

*Silicon, Silica And Silicate*

**A.** This insurance does not apply to any liability or loss, cost or expense arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **Silicon**.

**B.** This insurance does not apply to any loss, cost or expense arising out of any:

1. request, demand, order or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Silicon**; or

2. claim or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Silicon**.

Under Policy Definitions, the following definition is added:

### *Policy Definitions*

*Silicon*

**Silicon** means the element Silicon, including silica and other silicate compounds, or its presence or use in any other alloy, by-product, compound or other material or waste. Waste includes material to be recycled, reconditioned or reclaimed.

All other terms and conditions remain unchanged.

*Authorized Representative*          *Robert Hamburger*

July 7, 2006

*Chubb Commercial Excess And Umbrella Insurance*     *Policy Exclusions – Silicon, Silica And Silicate*     *last page*
Form 07-02-1941 (Ed. 9-02)     *Endorsement*     *Page 1*

NPA 16696



**CHUBB**

### *Chubb Commercial Excess And Umbrella Insurance*

*Endorsement*

| | | | |
|---|---|---|---|
| Policy Period | JUNE 20, 2006 | *To* | JUNE 20, 2007 |
| Effective Date | June 20, 2006 | | |
| Policy Number | 7985-64-73 | | |
| Insured | NATIONAL PEDICULOSIS ASSOCIATION, INC. | | |
| Name of Company | FEDERAL INSURANCE COMPANY | | |
| Date Issued | July 7, 2006 | | |

A new section titled Terrorism Provisions is added to the end of this contract.

## Terrorism Provisions

**Certified Act Of Terrorism Exclusion**

This insurance does not apply to any loss, cost or expense arising, directly or indirectly, out of a **certified act of terrorism**.

**Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this policy, such as losses excluded by the Nuclear Energy exclusion.

A new section titled Terrorism Definitions is added.

## Terrorism Definitions

**Certified Act Of Terrorism**

**Certified act of terrorism** means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act:

A.   of terrorism, a violent act or an act that is dangerous to human life, property or infrastructure; and

B.   that results in damage:

  1.   within the **United States**; or

  2.   outside of the **United States** in the case of:

    a.   an air carrier or vessel as described in the **terrorism law**; or

    b.   the premises of a mission of the United States of America,

Chubb Commercial Excess And Umbrella Insurance          Exclusion Of Certified Acts Of Terrorism                    *continued*
Form 07-02-1958 (Ed. 1-03)                                              *Endorsement*                                          *Page 1*
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

NPA 16697

## Terrorism Definitions

**Certified Act Of Terrorism**
**(continued)**

which was committed by an individual or individuals acting on behalf of any foreign person or foreign interest as part of an effort to:

- coerce the civilian population; or

- influence the policy or affect the conduct of the Government,

of the **United States**.

**Certified act of terrorism** does not include an act that:

- is committed as part of the course of a war declared by the Congress of the **United States**; or

- does not result in property and casualty insurance losses that exceed $5 million in the aggregate.

---

**State**

**State** means any state of the United States of America, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands, and any territory or possession of the United States of America.

---

**Terrorism Law**

**Terrorism law** means the "Terrorism Risk Insurance Act of 2002" (Pub.L.107-297) of the United States of America.

---

**United States**

**United States** means:

- a **state**; and

- the territorial sea and the continental shelf of the United States of America, as described in the **terrorism law**.

All other terms and conditions remain unchanged.

Authorized Representative

*Robert Hamburger*

July 7, 2006

---



**CHUBB**

### *Chubb Commercial Excess And Umbrella Insurance*

*Endorsement*

| | | |
|---|---|---|
| *Policy Period* | JUNE 20, 2006 | *To* JUNE 20, 2007 |
| *Effective Date* | June 20, 2006 | |
| *Policy Number* | 7985-64-73 | |
| *Insured* | NATIONAL PEDICULOSIS ASSOCIATION, INC. | |
| | | |
| *Name of Company* | FEDERAL INSURANCE COMPANY | |
| *Date Issued* | July 7, 2006 | |

---

Under Policy Exclusions, the following exclusion is added:

## *Policy Exclusions*

**Biological Agents**

A.   This insurance does not apply to any liability or loss, cost or expense arising out of the actual, alleged, or threatened contaminative, pathogenic, toxic or other hazardous properties of **biological agents**.

B.   This insurance does not apply to any loss, cost or expense arising out of any:

1.   request, demand, order or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any **biological agents**; or

2.   claim or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any **biological agents**.

---

Under Policy Definitions, the following definition is added:

## *Policy Definitions*

**Biological Agents**

**Biological Agents** means any:

A.   1.   bacteria;

2.   mildew, mold or other fungi;

NPA 16699

---

## *Policy Definitions*

*Biological Agents*
*(continued)*

    3.    other microorganisms; or

    4.    mycotoxins, spores or other by-products of any of the foregoing;

B.    viruses or other pathogens (whether or not a microorganism); or

C.    colony or group of any of the foregoing.

All other terms and conditions remain unchanged.

Authorized Representative

July 7, 2006

**NPA 16700**



**CHUBB**

## *Chubb Commercial Excess And Umbrella Insurance*

### *Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 20, 2006    *To*   JUNE 20, 2007 |
| *Effective Date* | June 20, 2006 |
| *Policy Number* | 7985-64-73 |
| *Insured* | NATIONAL PEDICULOSIS ASSOCIATION, INC. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | July 7, 2006 |

---

**Policy Exclusions**

Under Policy Exclusions, the following exclusion is added:

*Care, Control Or Custody*

This insurance does not apply to property damage to property described below, if the property is in the care, control or custody of the **insured**.

Description of Property:

**REAL & PERSONAL**

All other terms and conditions remain unchanged.

*Authorized Representative*
July 7, 2006

*[signature: Robert Hamburger]*

**NPA 16701**


**CHUBB**

### *Chubb Commercial Excess And Umbrella Insurance*

#### *Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 20, 2006     *To*    JUNE 20, 2007 |
| *Effective Date* | June 20, 2006 |
| *Policy Number* | 7985-64-73 |
| *Insured* | NATIONAL PEDICULOSIS ASSOCIATION, INC. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | July 7, 2006 |

Under Exclusions/Umbrella Coverage B, Bodily Injury/Property Damage/Advertising Injury/Personal Injury, the following exclusion is added:

**Exclusions/
Umbrella Coverage B
Bodily Injury/
Property Damage/
Advertising Injury/
Personal Injury**

**Contractual Liability**

This insurance does not apply to **bodily injury**, **property damage**, **advertising injury** or **personal injury** arising out of any liability assumed in any contract which is an **insured contract**.

All other terms and conditions remain unchanged.

Authorized Representative    *[signature: Robert Hamburger]*

July 7, 2006

**NPA 16702**

---

| | | |
|---|---|---|
| Chubb Commercial Excess And Umbrella Insurance | Exclusions/Umbrella Coverage B – Contractual Liability | last page |
| Form 07-02-0839 (Rev. 7-01) | Endorsement | Page 1 |



**CHUBB**

### *Chubb Commercial Excess And Umbrella Insurance*

## Endorsement

| | |
|---|---|
| *Policy Period* | JUNE 20, 2006 *To* JUNE 20, 2007 |
| *Effective Date* | June 20, 2006 |
| *Policy Number* | 7985-64-73 |
| *Insured* | NATIONAL PEDICULOSIS ASSOCIATION, INC. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | July 7, 2006 |

---

**Exclusions/
Umbrella Coverage B
Bodily Injury/
Property Damage/
Advertising Injury/
Personal Injury**

Under Exclusions/Umbrella Coverage B Bodily Injury/Property Damage/Advertising Injury/Personal Injury, the following exclusion is added:

*Foreign Liability*

This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of an **occurrence** outside the United States of America, its territories or possessions, Canada or Puerto Rico.

All other terms and conditions remain unchanged.

Authorized Representative

July 7, 2006

Chubb Commercial Excess And Umbrella Insurance

Form 07-02-0861 (Rev. 7-01)

Exclusions/Umbrella Coverage B – Foreign Liability

Endorsement

last page

Page 1

NPA 16703

## Policy Exclusions

| | |
|---|---|
| *Intellectual Property Laws Or Rights (continued)* | • does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement or violation of **any intellectual property law or right**, other than one described in the definition of **advertising injury**. |

### Definitions/ Umbrella Coverage B

Under Definitions/Umbrella Coverage B, the following definitions are deleted:

Advertisement

Advertising Injury

Intellectual Property Law Or Right

### Policy Definitions

Under Policy Definitions, the following definitions are added:

*Advertisement*

**Advertisement** means an electronic, oral, written or other notice, about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services.

**Advertisement** does not include any e-mail address, Internet domain name or other electronic address or metalanguage.

*Advertising Injury*

**Advertising Injury** means injury, other than **bodily injury**, **property damage** or **personal injury**, sustained by a person or organization and caused by an offense of infringing, in that particular part of your **advertisement** about your goods, products or services, upon their:

• copyrighted **advertisement**; or

• registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title.

*Intellectual Property Law Or Right*

**Intellectual property law or right** means any:

• certification mark, copyright, patent or trademark (including collective or service marks);

• right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;

• other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or

*Chubb Commercial Excess And Umbrella Insurance*
*Form 07-02-1146 (Rev. 7-01)*

*Policy Exclusions – Intellectual Property Laws Or Rights*
*Endorsement*

*continued*

*Page 2*

NPA 16704


**CHUBB**

## *Chubb Commercial Excess And Umbrella Insurance*

### *Endorsement*

| | | | |
|---|---|---|---|
| *Policy Period* | JUNE 20, 2006 | *To*   JUNE 20, 2007 | |
| *Effective Date* | June 20, 2006 | | |
| *Policy Number* | 7985-64-73 | | |
| *Insured* | NATIONAL PEDICULOSIS ASSOCIATION, INC. | | |
| *Name of Company* | FEDERAL INSURANCE COMPANY | | |
| *Date Issued* | July 7, 2006 | | |

---

**Exclusions/
Umbrella Coverage B
Bodily Injury/
Property Damage/
Advertising Injury/
Personal Injury**

*Intellectual Property
Laws Or Rights*

Under Exclusions/Umbrella Coverage B Bodily Injury/Property Damage/Advertising Injury/Personal Injury, the exclusions titled Intellectual Property Laws Or Rights is deleted.

---

## *Policy Exclusions*

*Intellectual Property
Laws Or Rights*

Under Policy Exclusions, the following exclusion is added:

This insurance does not apply to any actual or alleged liability or loss, cost or expense arising out of, giving rise to or in any way related to any actual or alleged:

- assertion; or

- infringement or violation

by any person or organization (including any **insured**) or any **intellectual property law or right**, regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation.

This exclusion applies, unless such injury:

- is caused by an offense described in the definition of **advertising injury**; and

**NPA 16705**



**CHUBB**

### *Chubb Commercial Excess And Umbrella Insurance*

*Endorsement*

| | |
|---|---|
| *Effective Date* | June 20, 2006 |
| *Policy Number* | 7985-64-73 |

---

**Policy Definitions**

*Intellectual Property
Law Or Right
(continued)*

- other judicial or statutory law concerning piracy, unfair competition or other similar practices.

All other terms and conditions remain unchanged.

Authorized Representative

July 7, 2006


**CHUBB**

## Chubb Commercial Excess And Umbrella Insurance

### Endorsement

| | | | |
|---|---|---|---|
| Policy Period | JUNE 20, 2006 | To | JUNE 20, 2007 |
| Effective Date | June 20, 2006 | | |
| Policy Number | 7985-64-73 | | |
| Insured | NATIONAL PEDICULOSIS ASSOCIATION, INC. | | |
| Name of Company | FEDERAL INSURANCE COMPANY | | |
| Date Issued | July 7, 2006 | | |

---

**Policy Exclusions**

Under Policy Exclusions, the following exclusion is added:

**Lead**

This insurance does not apply to any liability or loss, cost or expense arising out of:

A. the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **Lead**; or

B. 1. any request, demand, order or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Lead**; or

2. any claim or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Lead**.

---

**Policy Definitions**

Under Policy Definitions, the following Definition is added:

**Lead**

**Lead** means the element lead in any form, including its use or presence in any alloy, compound, by-product, or other material or waste. Waste includes materials to be disposed of, recycled, reconditioned or reclaimed.

All other terms and conditions remain unchanged.

Authorized Representative

*[signature: Robert Hamburger]*

July 7, 2006

**NPA 16707**

---



**CHUBB**

## *Chubb Commercial Excess And Umbrella Insurance*

### *Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 20, 2006            *To*    JUNE 20, 2007 |
| *Effective Date* | June 20, 2006 |
| *Policy Number* | 7985-64-73 |
| *Insured* | NATIONAL PEDICULOSIS ASSOCIATION, INC. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | July 7, 2006 |

---

**Policy Exclusions**

Under Policy Exclusions, the following exclusion is added:

**Professional Services**

This insurance does not apply to any liability or loss, cost or expense arising out of the rendering or failing to render professional service or advice, whether or not that service or advice is ordinary to the **insured**'s profession, regardless of whether a claim or **suit** is brought by a client or any other person or organization.

All other terms and conditions remain unchanged.

**Authorized Representative**
July 7, 2006

*Robert Hamburger*

**NPA 16708**



**CHUBB**

### *Chubb Commercial Excess And Umbrella Insurance*

*Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 20, 2006    To    JUNE 20, 2007 |
| *Effective Date* | June 20, 2006 |
| *Policy Number* | 7985-64-73 |
| *Insured* | NATIONAL PEDICULOSIS ASSOCIATION, INC. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | July 7, 2006 |

Under Exclusions/Excess Follow-Form Coverage A, the exclusion titled Pollution is deleted and replaced with the following:

**Exclusions/
Excess Follow-Form
Coverage A**

*Pollution*

This insurance does not apply to any liability or loss, cost or expense arising out of:

A.    the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**.

B.    1.    any request, demand, order or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

2.    any claim or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

This exclusion applies regardless of whether or not the pollution was accidental, expected, gradual, intended, preventable or sudden.

All other terms and conditions remain unchanged.

*Authorized Representative*

July 7, 2006

NPA 16709



**CHUBB**

### *Chubb Commercial Excess And Umbrella Insurance*

---

*Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 20, 2006          *To*   JUNE 20, 2007 |
| *Effective Date* | June 20, 2006 |
| *Policy Number* | 7985-64-73 |
| *Insured* | NATIONAL PEDICULOSIS ASSOCIATION, INC. |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | July 7, 2006 |

---

**Supplementary Payments**

Supplementary Payments is deleted in its entirety and replaced by the following:

Subject to all of the terms and conditions of this insurance, under Excess Follow-Form Coverage A or Umbrella Coverage B:

A.   we will pay, with respect to a claim we investigate or settle, or a **suit** against an **insured** we defend:

    1.   the expenses we incur.

    2.   the cost of:

        a.   bail bonds; or

        b.   bonds required to:

            (1)   appeal judgments; or

            (2)   release attachments;

    but only for bond amounts within the available Limit Of Insurance. We do not have to furnish these bonds.

    3.   reasonable expenses incurred by the **insured** at our request to assist us in the investigation or defense of such claim or **suit**, including actual loss of earnings up to $1000 a day because of time off from work.

    4.   costs taxed against the **insured** in the **suit**, except any:

        a.   attorney fees or litigation expenses; or

        b.   other loss, cost or expense;

    in connection with any injunction or other equitable relief.

    5.   prejudgment interest awarded against the **insured** on that part of a judgment we pay. If we make an offer to pay the applicable Limit Of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

---

NPA 16710

**Supplementary
Payments**
(continued)

    6.    interest on the full amount of a judgment that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit Of Insurance.

B.    Supplementary Payments does not include any fine or other penalty

C.    under Excess Follow-Form Coverage A, if supplementary payments of the applicable **underlying insurance**:

    •    reduce the limits of **underlying insurance**, then Supplementary Payments made under this coverage will reduce the Limits Of Insurance of this insurance.

    •    do not reduce the limits of **underlying insurance**, then Supplementary Payments made under this coverage will not reduce the Limits Of Insurance of this insurance.

D.    under Umbrella Coverage B, Supplementary Payments will not reduce the Limits Of Insurance.

Our obligation to make these payments ends when we have used up the applicable Limit Of Insurance.

All other terms and conditions remain unchanged.

*Authorized Representative*

July 7, 2006


**CHUBB**

## *Chubb Commercial Excess And Umbrella Insurance*

### *Endorsement*

| | | | |
|---|---|---|---|
| *Policy Period* | JUNE 20, 2006 | *To* | JUNE 20, 2007 |
| *Effective Date* | June 20, 2006 | | |
| *Policy Number* | 7985-64-73 | | |
| *Insured* | NATIONAL PEDICULOSIS ASSOCIATION, INC. | | |
| *Name of Company* | FEDERAL INSURANCE COMPANY | | |
| *Date Issued* | July 7, 2006 | | |

---

**Policy Exclusions**

Under Policy Exclusions, the following exclusion is added:

*Sexual Abuse Or Molestation*

This insurance does not apply to any liability or loss, cost or expense arising out of:

A.    the actual or threatened abuse or molestation by anyone of any person while in the care, control or custody of any **insured**; or

B.    any retention, employment, investigation, supervision or reporting to or failure to report to the proper authorities of a person for whom any **insured** is or ever was legally responsible and whose conduct would be excluded by paragraph A. above.

All other terms and conditions remain unchanged.

Authorized Representative
July 7, 2006

---

NPA 16712

# EXHIBIT O

## The Ecology Center's Clarification of Statements Regarding Lindane

(1)    *In the FDA's Adverse Event Reporting System, 20% of those reporting health effects due to lindane used the product according to the directions.*

**CLARIFICATION:** The 2002 FDA review of 50 years of adverse event reports relating to lindane medications identified 488 reports. Of those 488 reports, 74 were classified as serious. Of the 74 serious cases, "Forty-three (58%) described misuse of lindane," while "14 cases reported using lindane according to the label." Based on this report, the FDA concluded that, "[i]n all age groups, adverse events occurred mainly in patients who appeared to have misapplied or orally ingested lindane."

(2)    *Fourteen other deaths have been attributed to lindane, but have not been confirmed. All of these 14 deaths involved topical application; in 5 cases use was in accordance with directions.*

**CLARIFICATION:** The statement should have read that fourteen other deaths have been associated with (not attributed to) lindane. In this FDA report, only two deaths were attributed to lindane, one in an adult and one in an infant, each involving misuse of the product.

(3)    *The use of pediculicidal shampoos (including lindane) was associated with increased risk of childhood leukemia, with odds ratios of 1.5 (95% CI 0.9 to 2.5) for use of pesticide in one head lice episode and 1.9 (95% CI 1.1 to 3.3) for use of pesticide in two or more episodes.*

**CLARIFICATION:** Six of the 568 children participating in this study were treated with lindane shampoo. The authors concluded that leukemia was "significantly associated with maternal home insecticide use during pregnancy and during childhood, with garden insecticide use, and fungicide use during childhood." With respect to insecticidal shampoo treatment (e.g., permethrin, malathion, lindane, etc.), the authors determined that the issue "requires further study." The reported 95% confidence interval for lindane was CI 0.5 to 8.7.

(4)    *Lindane is acutely toxic to the nervous system and can cause numbness, motor restlessness, anxiety, tremors, cramps and unconsciousness.*

**CLARIFICATION:** Although acute side effects, such as those noted above, have been reported for lindane, the majority of such events have resulted from oral ingestion (which is not how lindane medications are directed to be applied).

(5)    *One dose of lindane can contaminate 6 million gallons of water.*

**CLARIFICATION:** This statement is from the publication Environmental Quality Management, (Winter, 2002; pp. 89-95), citing a Los Angeles County Sanitation District calculation. In 2002, the EPA concluded that "the Agency does not have risk concerns for concentrations of lindane in surface water used as a source of drinking water from consumer use for both lice and scabies."

(6)     *Lindane is classified as a possible cancer-causing agent by the EPA*

**CLARIFICATION**:  While it is possible to access a page on the EPA website which posts this sentence (based on an older EPA assessment), current information on the EPA website notes that the EPA updated the cancer classification of lindane in 2003 to "suggestive evidence of carcinogenicity, but not sufficient to assess cancer risk to humans."  The above statement remains attributable to the position of the International Agency for Research on Cancer based on a 1987 monograph.

(7)     *Due to its toxicity, the FDA recommends not using lindane to treat individuals weighing less than 110 pounds- this corresponds to most children on whom lindane is used.*

**CLARIFICATION:** The FDA-approved prescription labeling for both Lindane Lotion and Lindane Shampoo states in a boxed warning that these medications "should be used with caution in infants, children, the elderly, and individuals with other skin conditions and those who weigh <110 lbs (50kg) as they may be at risk of serious neurotoxicity."  Lindane Lotion and Lindane Shampoo are FDA approved as second-line medications for the treatment of scabies, pubic lice (crabs) and head lice.

# EXHIBIT P

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| MORTON GROVE PHARMACEUTICALS, INC. | ) ) ) | |
| Plaintiff, | ) ) ) | No: 08-CV-1384 |
| v. | ) ) | Judge Bucklo |
| THE NATIONAL PEDICULOSIS ASSOCIATION, INC., | ) ) ) | Magistrate Judge Mason |
| Defendant. | ) ) ) ) | |

## AFFIDAVIT OF RALPH J. HODOSH

I, Ralph J. Hodosh, Ph.D., being first duly sworn under oath, do depose and state that I am over the age of 18 and have personal knowledge of the information contained in this affidavit, and that if I am called to testify as a witness in this matter, I would testify competently as follows:

1.    I am the Director of Regulatory Affairs at Morton Grove Pharmaceuticals, Inc. ("Morton Grove"). In my position, I oversee the company's regulatory matters, including matters relating to advertising for our pharmaceutical products. I have responsibility on an ongoing basis for all regulatory matters, including those that occurred in part or in whole before I held my current position.

2.    Morton Grove sells two products containing the active pharmaceutical ingredient lindane, Lindane Lotion and Lindane Shampoo. These are two FDA-approved second-line treatments for lice and scabies.

3.     It has come to the company's attention that special interest groups, including the National Pediculosis Association, Inc. ("NPA"), have aggressively supported legislation in several states, including Illinois, to ban these FDA-approved medications.

4.     Morton Grove has responded to these efforts by, among other things, enlisting the services of its own lobbyists and creating a website to be used for lobbying purposes.    This website is accessible via the web addresses www.lindane.com and www.lindanetruth.com.

5.     The website was specifically created to counter multi-state efforts to ban Lindane medications by special interest groups, like the NPA, who have aggressively promoted false and/or misleading information about the safety of these medications. The website provides accurate information about lindane as a means of refuting these false and/or misleading claims; it is directed at providing legislative and healthcare decision makers with accurate scientific and medical facts, with the support of credible and authoritative subject matter experts.

6.     This website is targeted to the policy issue audience.  The primary target audience for the website is legislators—Morton Grove's objective is to drive high-quality, issue-related traffic to this website to address key legislative concerns.  The secondary target audience is healthcare professionals, including medical groups and associations.  This targeting has been accomplished by implementing search engine optimization technology and a detailed search engine strategy, which make it more likely that individuals looking for issue-based information on lindane will be directed to the this website, compared with those looking for general treatment options.  Notably, the number of visits that the website receives on a monthly basis is diminutive. For instance, in April 2008, there were less than 3600 visits.

2

7.    The website was never intended to be, nor is it, a vehicle for the promotion or advertisement of Lindane medications. A fire-wall was specifically implemented in the process of creating the website to block all connections to sales and marketing personnel at Morton Grove. Indeed, some of the information would potentially be a deterrent to use, such as the section on carcinogenic risks and water contamination issues, and such discussions would not be appropriate within the context of a promotional campaign. The website is purely educational and non-promotional; nowhere does it propose a commercial transaction or endorse a product. Accordingly, Lindane medications cannot be bought on the website, and the website does not link to Morton Grove's promotional website or any websites where Lindane medications may be purchased.

8.    Further, a scientific advisory board made up of leading medical thought leaders in toxicology, dermatology, and pediatric medicine provided an independent review of the website and certainly would not have endorsed a commercial website. The Advisory Board consists of Amy Paller, MD, Walter J. Hamlin Professor and Chair, Department of Dermatology, Professor of Pediatrics, Feinberg School of Medicine at Northwestern University; Adelaide Ann Hebert, MD, Professor, Department of Dermatology and Pediatrics at the University of Texas Medical School at Houston; and Shayne Gad, PhD, DABT, ATS Principal, Gad Consulting, Adjunct Professor of Toxicology at Duke University Medical Center.

FURTHER THE AFFIANT SAYETH NOT

I declare under penalty of perjury that the foregoing is true and correct.

_____
Ralph J. Hodosh, Ph.D.

Executed on this 22 day of May, 2008

"OFFICIAL SEAL"
CYNTHIA K. LONGO
Notary Public, State of Illinois
My Commission Expires 03/05/2011

Cynthia Khongo  05/22/2008

3