IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MORTON GROVE PHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE NATIONAL PEDICULOSIS ASSOCIATION, INC., <br><br> Defendant. | No.: 08-CV-1384 <br><br> Judge Bucklo <br> Magistrate Judge Mason <br><br> **JURY TRIAL DEMANDED** |

**MEMORANDUM IN SUPPORT OF DEFENDANT THE NATIONAL PEDICULOSIS ASSOCIATION, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATED TO ECOLOGY CENTER SETTLEMENT**

Despite the fact that plaintiff Morton Grove Pharmaceuticals, Inc. ("Morton Grove") alleges in its current complaint that its settlement with the Ecology Center -- a third-party non-profit organization Morton Grove previously sued as a co-defendant in the prior action -- is proof that statements made by defendant The National Pediculosis Association, Inc. ("NPA") are false, Morton Grove refuses to produce documents relating to the negotiation of that settlement. Morton Grove maintains that the settlement documents are not relevant or admissible and that the policy of encouraging settlement should protect them. NPA agrees that they are not relevant and will object to Morton Grove's efforts to use this settlement as evidence of anything. The Court, however, may not agree, and Morton Grove should not be permitted to use the parts of the settlement it likes as a sword but then use the fact that it is a settlement as a shield to prevent NPA from having full discovery. This is especially true here because the purported settlement consisted of the Ecology Center paying no money, making no admission of wrongdoing, and "clarifying" only certain statements, but not all statements over which Morton Grove had sued,

for only two weeks on its website. Therefore, the Court should compel Morton Grove to produce these documents.

## BACKGROUND

Morton Grove manufactures prescription-only headlice and scabies treatments that contain the chemical lindane. Lindane was banned for agricultural purposes by the Environmental Protection Agency in 2006 and has been banned for all purposes by the State of California since 2002. In 2003, the FDA required Morton Grove to put a Black Box warning on all of its lindane products. In recent years, Morton Grove has spent significant resources on a coordinated marketing, lobbying and litigation campaign, including law suits against non-profit organizations that have spoken out about the dangers of lindane, to boost its sales.

Defendant The National Pediculosis Association, Inc. ("NPA") is a 501(c)(3) non-profit organization. NPA began in 1983 as a parents group concerned about a lice outbreak in a Boston-area school. Since 1997, NPA has sold a LiceMeister® comb (a preventative non-prescription headlice comb) as part of its mission of protecting children from the misuse of potentially harmful lice treatments. Despite Morton Grove's unsubstantiated attacks on NPA's non-profit status, the federal government has recognized NPA as a 501(c)(3) tax-exempt organization since 1983, and NPA has received numerous awards and accolades for its public-interest work.

### A.    Morton Grove's Lawsuits Against Non-Profit Organizations

On July 14, 2006, Morton Grove sued the Ecology Center, Inc. ("Ecology Center"), a non-profit organization in Michigan, for statements it made about the dangers of lindane. On February 6, 2007, Morton Grove amended its complaint to include NPA and added a Lanham

2

Act false advertising claim against NPA, based on Morton Grove's assertion that NPA's non-prescription comb made it a competitor of Morton Grove's prescription-only products.

On November 30, 2007, Judge Bucklo granted NPA's motion to sever NPA from Ecology Center, despite Morton Grove's arguments that NPA and Ecology Center made "strikingly similar" statements and engaged in a "common attack campaign on Lindane medications." (*See* Case No. 06-CV03815, Dkt. No. 112, Morton Grove's Mem. Opp. to NPA's Mot. to Dismiss or Sever, at 4-5.)

### B.     Morton Grove Settles with Ecology Center

Between the time the case was severed and when Morton Grove re-filed its complaint against NPA, Morton Grove settled its suit against Ecology Center. NPA believes that Morton Grove waited almost four months before it re-filed its complaint against NPA so that it could use the settlement offensively against NPA in this litigation. (*See* Ex. 1, ¶ 13.)[1] Morton Grove repeatedly refers to its settlement with Ecology Center in the instant complaint as "evidence" that statements made by NPA are false. (Compl. ¶¶ 30-43.)

Ecology Center paid no money to Morton Grove as part of the settlement, and there was no admission of liability or wrongdoing. (Ex. 2.) Instead, Ecology Center only posted on its website for two weeks "clarifications" relating to some of the statements over which Morton Grove had sued. (*Id.*) Notably, however, Ecology Center did not "clarify" the majority of statements Morton Grove sued over, presumably because Morton Grove realized they were true or could not convince Ecology Center otherwise. In fact, while Morton Grove sued Ecology

---

[1] Despite the fact that Ecology Center publicly states that "The terms of the settlement are not confidential and are available from the Ecology Center upon request" (Ex. 2), Morton Grove has told NPA's counsel that the settlement terms are confidential and it has marked the settlement agreement "Confidential." Therefore, NPA is submitting the settlement agreement (Ex. 1) separately under seal. This example of Morton Grove's overuse of the "Confidential" designation is precisely why NPA objected to Morton Grove's protective order in this case.

3

Center for 16 statements (*see* 2007 Sec. Am. Compl. ¶¶ 33-35, Dkt. 89), Ecology Center only "clarified" 5 of those statements (as well as two other statements). (Exs. 2 and 3.)

Moreover, several of the statements that Ecology Center did *not* clarify are somewhat similar to the NPA statements Morton Grove is currently suing for. For example, Morton Grove sued Ecology Center for the statement, "An FDA approved lice comb is an effective, non-chemical approach to treat lice infestation (example: LiceMeister Comb produced by the National Pediculosis Association)" (Sec. Am. Compl. ¶ 33(b)), and Ecology Center did *not* "clarify" it. (Ex. 3.) Yet, Morton Grove is currently suing NPA for the statements "Be Sure You Provide A Non-Chemical Choice For Your Children" and "The Licemeister is the safe and cost effective way to win the war against head lice and keep the kids in school safe, lice and nit free." (Compl. ¶ 40). Also *compare* ¶ 35(c) of Sec. Am. Compl. *with* ¶ 37 of current Complaint.

### C. Morton Grove's Current Lawsuit Against NPA

In March 2008, almost four months after the cases were severed, Morton Grove finally re-filed its complaint against NPA. Morton Grove dropped its defamation claims, dropped some of the statements at issue and added others, and dropped its claims for damages.

In paragraphs 30, 35, 39, and 43 of the Complaint, while addressing NPA statements Morton Grove alleges are false, Morton Grove alleges that that "almost identical" statements were retracted by "NPA's former co-defendant, the Ecology Center." In each of these paragraphs, Morton Grove cites directly to Ecology Center's "clarifications."

It is significant to note that Ecology Center's posts are "clarifications" and not "retractions" as Morton Grove asserts. Moreover, despite the fact that Morton Grove attempts to make it appear that Ecology Center was somehow incorrect in its essential argument that lindane is dangerous, the settlement entails no admission of wrongdoing by Ecology Center. (Ex. 2.)

In addition to extensively referring to the settlement in its Complaint as supposed evidence of the falsity of NPA's statements, Morton Grove recently used it in its motion for a protective order and to quash a subpoena. (*See* Dkt. 44 at n.3).

### D.    Discovery Relating to Settlement Materials

Because of Morton Grove's use of the settlement in its complaint, on April 7, 2008, NPA requested documents regarding the settlement through Request No. 5 of its Third Set of Requests for Production of Document and Things:

> All documents relating to Morton Grove's settlement with the Ecology Center, Inc., including but not limited to settlement agreements, drafts or proposals exchanged between the parties, correspondence with the Ecology Center or others regarding the settlement, documents relating to paragraphs 30, 35, 39, and 43 and Morton Grove's complaint, and public statements made by Morton Grove about the settlement.

(Ex. 4.) Morton Grove objected stating, among other things, that responsive documents are not relevant, are protected by a "non-disclosure agreement" and would not be admissible in this action because of Federal Rule of Evidence 408. *Id.* Morton Grove agreed only to produce the final agreement and public statements about the final agreement, refusing to produce correspondence between the parties about the settlement negotiations and internal documents relating to the settlement. *See id.*

### E.    Attempts to Resolve Discovery Issues

On May 21, 2008, the parties met and conferred, and agreed that they were at an impasse and had satisfied their obligations under Local Rule 37.2. (Ex. 5, Decl. of W. Thomson ¶ 5.)

## ARGUMENT

Morton Grove wants to have its cake and eat it too. Namely, it wants to tout the Ecology Center settlement in its Complaint and use it against NPA as evidence of falsity of NPA's statements, but also wants to block NPA from discovery of the process through which the

5

settlement was reached. While NPA believes that Ecology Center's "clarifications" are irrelevant to the truth of NPA's statements, Morton Grove has forced the issue by using it offensively against NPA.[2] Because Morton Grove injected the settlement into this case, Morton Grove cannot now argue that the settlement is irrelevant and that policy reasons supporting settlements should shield Ecology Center settlement documents from discovery.[3]

## I.    THE COURT SHOULD GRANT NPA'S MOTION BECAUSE MORTON GROVE HAS PUT THE SETTLEMENT AT ISSUE

Under Federal Rule of Civil Procedure 26(b)(1), "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Therefore, "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." *Koken*, 2006 WL 1749689, *3 (granting defendants' motion to compel where plaintiff did not meet her burden to show that the requested discovery was "neither relevant nor reasonably likely to lead to the discovery of admissible evidence"). To meet its burden, Morton Grove "must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each discovery request is not relevant or is overly broad, burdensome or oppressive." *Burkybile v. Mitsubishi Motors Corp.*, No. 04 C 4932, 2006 WL 2325506, *6 n.6 (N.D. Ill. 2006).

A party cannot allege facts in its complaint and then attempt to prevent discovery of those facts. In *Hammond v. Air Line Pilots Assoc.*, No. 87 C 2792, 1987 WL 20421, *1 (N.D. Ill. Nov.

---

[2] During the parties May 21, 2008 meet and confer, NPA suggested that if Morton Grove really believes the settlement is not relevant, it should stipulate to not using it affirmatively in this case. Morton Grove refused. (Ex. 5, ¶ 6.)

[3] While Morton Grove has claimed that its settlement negotiations are subject to a confidentiality agreement (Ex. 4), Ecology Center has publicly stated otherwise. (Ex. 2). To the extent there is a viable non-disclosure agreement at issue, that does not shield its discovery from this case, unless and until Morton Grove seeks a protective order, which it does not deserve given its cavalier use of the settlement in this case.

20, 1987), plaintiffs alleged in their complaint that union members were pressured to approve proposed agreements between union and management in a secret vote. When the defendants inquired as to how plaintiffs voted, the plaintiffs argued that that information was covered by a qualified privilege. The court rejected this argument, finding that the plaintiffs had put the matter "in issue" through the allegations about the vote in their complaint. "Under established principles, a party may not hide behind a privilege when he has placed in issue the contents of the matter of the privilege." *Id.*

Morton Grove clearly is attempting to put its settlement with Ecology Center at issue in this lawsuit in connection with one of the key issues in the case: whether statements made by NPA are false. In its complaint, Morton Grove states that the settlement with Ecology Center is evidence that NPA's statements are false. Although NPA disagrees, it is nevertheless entitled to test the validity of that purported evidence. For example, NPA is entitled to inquire into what led up to the final settlement agreement, including what Morton Grove did to entice Ecology Center to settle (especially in light of the Ecology Center's continued campaign against lindane[4]), and why Morton Grove was not able to persuade Ecology Center to clarify all of the statements at issue or whether it even attempted to get Ecology Center to do so.

Because Morton Grove put its settlement with Ecology Center at issue, it cannot try to avoid full discovery of the settlement.

## II. RULE 408 DOES NOT PREVENT DISCOVERY OF SETTLEMENT MATERIALS

Morton Grove incorrectly asserts that Federal Rule of Evidence 408 allows it to withhold settlement documents from NPA. Rule 408 is not a bar to discovery of settlement materials.

---

[4] *See, e.g.,* Ex. 2 ("We strongly support legislation to phase out pharmaceutical use of lindane"); Ex. 6, May 15, 2008 Ecology Center press release discussing the Michigan House of Representatives' recent passage of a bill limiting lindane use.)

7

*McNally Tunnelling Corp. v. City of Evanston,* No. 00 C 6979, 2001 WL 1246630, *1 (N.D. Ill. Oct. 18, 2001) (granting motion to compel settlement agreement and holding "Rule 408 is concerned solely with admissibility of evidence, it does not limit the discovery of evidence"); *The Thermos Co. v. Starbucks Corp.,* No. 96 C 3833, 1998 WL 781120, *5 (N.D. Ill. Nov. 3, 1998) (granting motion to compel and holding that "[a]lthough documents produced in settlement negotiations may be found inadmissible at trial, they are nonetheless discoverable.")

Rule 408, which primarily deals with *admissibility* of evidence, provides that evidence of the following is not admissible when offered to prove liability for or amount of a claim or to impeach prior inconsistent statements:

> (1) furnishing or offering or promising to furnish—or accepting or offering or promising to accept—a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or statements made in compromise negotiations regarding the claim…

But evidence from settlement negotiations can be admitted to show bias, prejudice of a witness, rebuttal, impeachment, knowledge of intent, and estoppel, among other things. *See Zurich Am. Ins. Co. v. Watts Industs.,* 417 F.3d 682, 689 (7th Cir. 2005). Moreover, courts lean toward admitting settlement negotiation material "when the settlement communications at issue arise out of a dispute distinct from the one for which the evidence is being offered." *Id.* (admitting settlement letter from an action that was "not totally unrelated" to the action at bar).

Where, as here, parties have attempted to use settlement matters offensively, courts have denied their attempts to use Rule 408 as a shield. In *Thompson v. Safeway Ins.,* No. 01 C 3260, 2002 WL 500547, *2 (N.D. Ill. Apr. 2, 2002), plaintiff argued that defendant had engaged in undue delay and bad faith in regards to her health benefits coverage claim. Defendant attached to its motion for summary judgment materials generated in the course of settlement discussions

with plaintiff. Plaintiff sought to strike these materials under Rule 408. The court denied plaintiff's motion: "It would be an abuse of Rule 408 to allow a plaintiff during compromise negotiations to complicate and delay resolution of the matter, point to that delay as evidence of defendant's bad faith, and then prevent the defendant from explaining its actions because settlement discussions were involved." *Id.*

Because Morton Grove has offensively employed the settlement, it cannot hide behind Rule 408.

## CONCLUSION

For the reasons stated above, this Court should grant NPA's motion to compel and enter an order requiring Morton Grove to produce all non-privileged documents that are responsive to Request No. 5 of NPA's Third Set of Requests for the Production of Documents and Things within 14 days.

Dated:  June 5, 2008                                          Respectfully submitted,

                                                              THE NATIONAL PEDICULOSIS
                                                              ASSOCIATION, INC.

                                                              By:   s/ Debbie L. Berman
                                                                    One of Its Attorneys

Debbie L. Berman (#67205154)
Amanda S. Amert (#6271860)
Wade A. Thomson (#6282174)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484