# Exhibit 1

**EXHIBIT 1 IS FILED SEPARATELY UNDER SEAL
PURSUANT TO THE PROTECTIVE ORDER ENTERED ON APRIL 22, 2008**

# Exhibit 2



**E C O L O G Y**
**C E N T E R**

Working for a safer environment where people live, work and play.

| Take Action | Donate Now | Events | About Us | Membership | Newsletters | Press | Publications | Links | Contact Us |

Clean Car Campaign

Environmental Education

Greening Chemistry

Greening Healthcare

Safe Kids, Homes, Towns

Save Land, Build Community

Trash & Recycling

Ecology Center Campaigns

[Search]



**recycle ann arbor**
Our recycling affiliate

**amazon.com®**
Ecology Center Bookstore

<< Back to Main Press Page

## Drug Company Drops SLAPP Suit Against Ecology Center

### Children's health advocates call for immediate legislative action to restrict lindane

March 12, 2008

The Ecology Center announced today an end to the SLAPP suit filed against it by Morton Grove Pharmaceuticals. After nearly two years of litigation where the company alleged at least $9.3 million in damages, the parties entered into a settlement in which Morton Grove drops its lawsuit and the Ecology Center makes no payment to the company, nor any admission of liability.

"We consider this outcome an unqualified victory," said Mike Garfield, Director of the Ecology Center. "We're glad to be able once again to focus 100% of our efforts on protecting public health and the environment."

In early 2006, the Ecology Center, medical professionals, and other environmental organizations launched a campaign to urge the Michigan Legislature to restrict the use of pharmaceutical lindane. Lindane is a chemical ingredient that has been banned for all uses in 52 countries and the state of California due to concerns about public health and the environment. In 2006, lindane was voluntarily withdrawn for use in U.S. agriculture. Lindane is also no longer used in the U.S. in the military and on livestock and pets. Yet, lindane can be used in Michigan for prescription treatments for head lice and scabies.

Morton Grove Pharmaceuticals filed suit in July 2006 in U.S. District Court in Chicago charging the Ecology Center, one of its employees, and two members of the Michigan Chapter of the American Academy of Pediatrics with defamation, tortious interference, trade disparagement, and deceptive trade practices.

Despite those allegations, the settlement requires the Ecology Center to:

- Make no financial payment to Morton Grove;
- Make no admission of liability; and
- Post seven minor clarifications of previous statements on lindane on its website for two weeks -- clarifications similar to ones the Center offered to make when first threatened with the SLAPP suit almost two years ago.

The terms of the settlement are not confidential and are available from the Ecology Center upon request.

"We strongly support legislation to phase out pharmaceutical use of lindane," said Sheila Gahagan, M.D., M.P.H., immediate past-president of the American Academy of Pediatrics (Michigan Chapter). "The lawsuit was an unfortunate and intentional diversion to the important work of protecting children's health."

The Ecology Center's Garfield added, "From the outset, we viewed Morton Grove's lawsuit as a baseless tactic designed to stifle public debate. Instead of engaging in a public discussion with the Michigan Legislature on this important public issue, the company instead tried to silence us."

House Bill 4569, introduced by Rep. Ted Hammon, would restrict pharmaceutical use of lindane in the State of Michigan. Major health professional organizations in Michigan support the bill, including the Michigan Chapter of the American Academy of Pediatrics, the Michigan Nurses Association, the Michigan Association of School Nurses, the Michigan Pharmacists Association, and the Wayne County Medical Society. The Michigan Department of Community Health does not recommend lindane use for either head lice or scabies.

"The state's most prestigious medical authorities are calling for a restriction on the ingredient lindane," said Tracey Easthope, MPH, Environmental Health Director of the Ecology Center. "The Michigan Legislature should act now to protect the public from this toxic pesticide."

Michigan's House Committee on Great Lakes and the Environment is currently taking testimony on HB 4569 and is expected to vote on the bill in the next few weeks.

# # #

*For questions regarding this statement, please contact:*

Mike Garfield, 734-761-3186 x104 or **michaelg@ecocenter.org**

Tracey Easthope, 734-761-3186 x109 or **tracey@ecocenter.org**

**Back to Top**

Take Action     Donate     Events     About     Membership     Newsletters     Press     Publications     Links     Contact
117 N. Division St., Ann Arbor, MI 48104-1580 USA • phone 734·761·3186 • fax 734·663·2414 •    **info@ecocenter.org**

# Exhibit 3

**The Ecology Center's Clarification of Statements Regarding Lindane**

(1)    *In the FDA's Adverse Event Reporting System, 20% of those reporting health effects due to lindane used the product according to the directions.*

CLARIFICATION:  The 2002 FDA review of 50 years of adverse event reports relating to lindane medications identified 488 reports.  Of those 488 reports, 74 were classified as serious. Of the 74 serious cases, "Forty-three (58%) described misuse of lindane," while "14 cases reported using lindane according to the label."  Based on this report, the FDA concluded that, "[i]n all age groups, adverse events occurred mainly in patients who appeared to have misapplied or orally ingested lindane."

(2)    *Fourteen other deaths have been attributed to lindane, but have not been confirmed.  All of these 14 deaths involved topical application; in 5 cases use was in accordance with directions.*

CLARIFICATION:  The statement should have read that fourteen other deaths have been associated with (not attributed to) lindane.  In this FDA report, only two deaths were attributed to lindane, one in an adult and one in an infant, each involving misuse of the product.

(3)    *The use of pediculicidal shampoos (including lindane) was associated with increased risk of childhood leukemia, with odds ratios of 1.5 (95% CI 0.9 to 2.5) for use of pesticide in one head lice episode and 1.9 (95% CI 1.1 to 3.3) for use of pesticide in two or more episodes.*

CLARIFICATION:  Six of the 568 children participating in this study were treated with lindane shampoo.  The authors concluded that leukemia was "significantly associated with maternal home insecticide use during pregnancy and during childhood, with garden insecticide use, and fungicide use during childhood."  With respect to insecticidal shampoo treatment (e.g., permethrin, malathion, lindane, etc.), the authors determined that the issue "requires further study."  The reported 95% confidence interval for lindane was CI 0.5 to 8.7.

(4)    *Lindane is acutely toxic to the nervous system and can cause numbness, motor restlessness, anxiety, tremors, cramps and unconsciousness.*

CLARIFICATION:  Although acute side effects, such as those noted above, have been reported for lindane, the majority of such events have resulted from oral ingestion (which is not how lindane medications are directed to be applied).

(5)    *One dose of lindane can contaminate 6 million gallons of water.*

CLARIFICATION:  This statement is from the publication Environmental Quality Management, (Winter, 2002; pp. 89-95), citing a Los Angeles County Sanitation District calculation.  In 2002, the EPA concluded that "the Agency does not have risk concerns for concentrations of lindane in surface water used as a source of drinking water from consumer use for both lice and scabies."

(6)    *Lindane is classified as a possible cancer-causing agent by the EPA*

**CLARIFICATION:**  While it is possible to access a page on the EPA website which posts this sentence (based on an older EPA assessment), current information on the EPA website notes that the EPA updated the cancer classification of lindane in 2003 to "suggestive evidence of carcinogenicity, but not sufficient to assess cancer risk to humans."  The above statement remains attributable to the position of the International Agency for Research on Cancer based on a 1987 monograph.

(7)    *Due to its toxicity, the FDA recommends not using lindane to treat individuals weighing less than 110 pounds- this corresponds to most children on whom lindane is used.*

**CLARIFICATION:** The FDA-approved prescription labeling for both Lindane Lotion and Lindane Shampoo states in a boxed warning that these medications "should be used with caution in infants, children, the elderly, and individuals with other skin conditions and those who weigh <110 lbs (50kg) as they may be at risk of serious neurotoxicity."  Lindane Lotion and Lindane Shampoo are FDA approved as second-line medications for the treatment of scabies, pubic lice (crabs) and head lice.

# Exhibit 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MORTON GROVE | ) | |
| PHARMACEUTICALS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No: 08-CV-1384 |
| | ) | |
| v. | ) | |
| | ) | Judge Bucklo |
| THE NATIONAL PEDICULOSIS | ) | Magistrate Judge Mason |
| ASSOCIATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MORTON GROVE PHARMACEUTICALS, INC.'S RESPONSE TO**
**DEFENDANT THE NATIONAL PEDICULOSIS ASSOCIATION, INC.'S**
**THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

Plaintiff Morton Grove Pharmaceuticals, Inc. ("Morton Grove"), by and through its

attorneys Winston & Strawn LLP, hereby responds to Defendant the National Pediculosis

Association, Inc.'s ("NPA's") Third Set of Requests for Production as follows:

**PRELIMINARY STATEMENT**

In responding to the NPA's Requests for Production, Morton Grove does not concede the

relevancy, materiality, or admissibility of the Requests for Production or the subject(s) to which

the Requests for Production refer. Morton Grove's responses are made subject to, and without in

any way waiving or intending to waive, any objections as to the competency, relevancy,

materiality, privilege, or admissibility as evidence or for any other purpose, of any of the

documents produced or referred to, or of any of the responses given herein, or of the subject

matter thereof, in any proceeding. Such responses are made specifically subject to the right to

object to any discovery proceeding involving or relating to the subject matter of the Requests for

Production.

## GENERAL OBJECTIONS

Each of these objections is incorporated into each and every one of Morton Grove's Responses as if fully set forth therein, and is in addition to any specific objections stated in response to a particular Request.

1.      Morton Grove objects to these requests for production to the extent that they seek disclosure of any protected or privileged information, including attorney-client communications and/or attorney work product.  The inadvertent disclosure of such information or documents is not intended to be, and shall not be deemed to be, a waiver of any applicable protection or privilege.

2.      Morton Grove objects to these requests for production and their definitions and instructions to the extent they attempt to alter the scope of discovery under the Federal Rules of Civil Procedure, the Local Rules of this Court, and/or any applicable Standing Order.

3.      Morton Grove objects to these requests for production to the extent they are premature, overly broad, unduly burdensome, and/or calculated to harass, and to the extent they are not reasonably calculated to lead to the discovery of admissible evidence.

4.      Morton Grove objects to these requests for production to the extent they are vague and ambiguous and call for speculation outside the personal knowledge of Morton Grove's representatives.

5.      Morton Grove's response that it will produce documents responsive to any particular request should not be construed as meaning that documents responsive to that request exist.  Such response means only that Morton Grove will produce documents requested by the NPA if they are in Morton Grove's possession, custody, or control and are not subject to any applicable privilege.

6.  Morton Grove objects to these requests for production to the extent they require Morton Grove to obtain documents and/or things from persons or entities over whom it has no control.

7.  Morton Grove objects to these requests for production to the extent they seek legal conclusions and/or would require Morton Grove to reach a legal conclusion in order to prepare a response.

8.  Morton Grove objects to these requests for production to the extent they seek documents in the public domain and, therefore, equally as accessible to the NPA.

9.  Morton Grove objects to these requests for production to the extent that they highly duplicative of prior requests issued in this action.

10.  Morton Grove reserves the right to assert all evidentiary objections under the Federal Rules of Evidence in connection with all documents it produces.

11.  To the extent the document requests assume knowledge or conduct by Morton Grove that is without factual basis, Morton Grove, by answering these document requests, does not intend to imply, acknowledge, or concede that the conduct or knowledge assumed by a particular document request actually occurred.

12.  Morton Grove's response to any of these requests for production does not constitute acquiescence or agreement to any definition proposed by the NPA, and is made without waiver of Morton Grove's right to object to such definition(s).

13.  Morton Grove expressly reserves the right to supplement its responses to these requests for production with additional documents as they become available to it in the course of the litigation.

## REQUESTS

**REQUEST NO. 1:**   All documents relied upon or referred to in the Complaint or in the preparation of the Complaint (to the extent not already produced).

**RESPONSE:**        Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control, to the extent they have not already been produced.

**REQUEST NO. 2:**   All documents relating to Morton Grove's public statements that NPA "holds itself out as a nonprofit health organization but actually makes its money by marketing a competitive medical device to lindane shampoo without employing a single licensed healthcare professional." (*See* www.lindane.com/facts/; www.lindanetruth.com/facts/ as of April 6, 2008.)

**RESPONSE:**        Morton Grove objects to this request on the basis that it is redundant of other requests for production served by NPA.  Morton Grove further objects to this request because it seeks documents already in the NPA's possession, custody, or control.  Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control, to the extent they have not already been produced and are not publicly available to NPA (e.g., content of www.headlice.org or www.lindane.org).

**REQUEST NO. 3:**   Organizational charts listing Morton Grove's employees (current and former), officers, directors, board members (advisory or otherwise) and consultants.

**RESPONSE:**        Morton Grove objects on the basis that this request asks for documents not currently in existence.  Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

4

**REQUEST NO. 4:**    All documents relating to the U.S. Food and Drug Administration's December 13, 2007 Warning Letter to Morton Grove, including but not limited to any responses, drafts of responses, documents reflecting actions taken in response, or communications regarding the FDA Warning Letter or actions taken in response thereto.

**RESPONSE:**        Morton Grove objects to this request on the basis that it is redundant of

other requests for production served by NPA.  Subject to and without waiving its objections,

Morton Grove states that it will produce responsive, non-privileged documents in its possession,

custody, or control.

**REQUEST NO. 5:**    All documents relating to Morton Grove's settlement with the Ecology Center, Inc., including but not limited to settlement agreements, drafts or proposals exchanged between the parties, correspondence with the Ecology Center or others regarding the settlement, documents relating to paragraphs 30, 35, 39, and 43 of Morton Grove's complaint, and public statements made by Morton Grove about the settlement.

**RESPONSE:**        Morton Grove objects to this request because it seeks documents protected

by the attorney-client privilege and by a non-disclosure agreement.  Morton Grove also objects

to this request to the extent it seeks documents that are not relevant to this action or admissible in

this action.  Subject to and without waiving its objections, Morton Grove states that it will

produce the final settlement agreement between Morton Grove and the Ecology Center, Inc., the

related court filing, the document posted to the Ecology Center, Inc.'s website as a result of the

settlement, and any written public statements made by Morton Grove regarding the settlement.

**REQUEST NO. 6:**    All documents relating to Morton Grove's allegation that NPA's statements were false statements of fact in a commercial advertisement about its own or another product.

**RESPONSE:**        Morton Grove objects to this request because it seeks documents already

in the NPA's possession, custody, or control.  Subject to and without waiving its objections,

Morton Grove states that it will produce responsive, non-privileged documents in its possession,

custody, or control, to the extent they have not already been produced.  Morton Grove also notes

that this subject will likely be addressed by expert testimony at a future point in this action.

**REQUEST NO. 7:**   All documents relating to Morton Grove's allegations that NPA's statements actually deceived or are likely to deceive a substantial segment of the public.

**RESPONSE:**       Morton Grove objects to this request because it seeks documents already

in the NPA's possession, custody, or control.  Subject to and without waiving its objections,

Morton Grove states that it will produce responsive, non-privileged documents in its possession,

custody, or control, to the extent they have not already been produced.  Morton Grove also notes

that this subject will likely be addressed by expert testimony at a future point in this action

**REQUEST NO. 8:**   All documents relating to Morton Grove's allegation that NPA's statements were material or likely to influence the purchasing decisions of consumers.

**RESPONSE:**       Morton Grove objects to this request because it seeks documents already

in the NPA's possession, custody, or control.  Subject to and without waiving its objections,

Morton Grove states that it will produce responsive, non-privileged documents in its possession,

custody, or control, to the extent they have not already been produced.  Morton Grove also notes

that this subject will likely be addressed by expert testimony at a future point in this action

**REQUEST NO. 9:**   All documents relating to Morton Grove's allegations that Morton Grove has been or is likely to be injured as a result of NPA's statements, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

**RESPONSE:**       Morton Grove objects to this request because it seeks documents already

in the NPA's possession, custody, or control.  Subject to and without waiving its objections,

Morton Grove states that it will produce responsive, non-privileged documents in its possession,

custody, or control, to the extent they have not already been produced.

**REQUEST NO. 10:**  All documents relating to Morton Grove's allegations contained in paragraph 2 of its Complaint.

**RESPONSE:**       Morton Grove objects to this request because it seeks documents already

in the NPA's possession, custody, or control.  Subject to and without waiving its objections,

Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control, to the extent they have not already been produced.

**REQUEST NO. 11:** All documents relating to Morton Grove's allegations contained in paragraph 6 of its Complaint.

**RESPONSE:**       Morton Grove objects to this request because it is redundant of other requests for production served by NPA. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 12:** All documents relating to Morton Grove's allegations contained in paragraph 11 of its Complaint.

**RESPONSE:**       Morton Grove objects to this request because it seeks documents already in the NPA's possession, custody, or control. Morton Grove also objects to this request on the basis that it is redundant of other requests for production served by NPA. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control, to the extent they have not already been produced.

**REQUEST NO. 13:** All documents relating to Morton Grove's allegations contained in paragraph 13 of its Complaint.

**RESPONSE:**       Morton Grove objects to this request because it seeks documents already in the NPA's possession, custody, or control. Morton Grove objects to this request on the basis that it is redundant of other requests for production served by NPA. Morton Grove also objects to this request because it is unduly burdensome and calculated to harass. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control, to the extent they have not already been

produced and are not publicly available to NPA (e.g., content of www.headlice.org or www.lindane.org).

**REQUEST NO. 14:** All documents relating to Morton Grove's allegations contained in paragraph 22 of its Complaint.

**RESPONSE:**        Morton Grove objects to this request because it seeks documents already in the NPA's possession, custody, or control. Morton Grove also objects to this request on the basis that it is redundant of other requests for production served by NPA. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control, to the extent they have not already been produced.

**REQUEST NO. 15:** All documents relating to Morton Grove's allegations contained in paragraphs 27 - 29 and 31 of its Complaint.

**RESPONSE:**        Morton Grove objects to this request because it seeks documents already in the NPA's possession, custody, or control. Morton Grove also objects to this request on the basis that it is redundant of other requests for production served by NPA. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control, to the extent they have not already been produced.

**REQUEST NO. 16:** All documents relating to Morton Grove's allegations contained in paragraph 34 of its Complaint.

**RESPONSE:**        Morton Grove objects to this request on the basis that it is redundant of other requests for production served by NPA. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control, to the extent they have not already been produced.

8

**REQUEST NO. 17:** All documents relating to Morton Grove's allegations contained in paragraph 38 of its Complaint.

**RESPONSE:** Morton Grove objects to this request because it seeks documents already in the NPA's possession, custody, or control. Morton Grove also objects to this request on the basis that it is redundant of other requests for production served by NPA. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control, to the extent they have not already been produced.

**REQUEST NO. 18:** All documents relating to Morton Grove's allegations contained in paragraphs 41 - 42 of its Complaint.

**RESPONSE:** Morton Grove objects to this request because it seeks documents already in the NPA's possession, custody, or control. Morton Grove also objects to this request on the basis that it is redundant of other requests for production served by NPA. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control, to the extent they have not already been produced.

**REQUEST NO. 19:** All documents relating to Morton Grove's allegations contained in paragraph 45 of its Complaint.

**RESPONSE:** Morton Grove objects to this request on the basis that it is redundant of other requests for production served by NPA. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control, to the extent they have not already been produced.

**REQUEST NO. 20:** All documents relating to Morton Grove's allegations contained in paragraph 47 of its Complaint.

**RESPONSE:**        Morton Grove objects to this request because it seeks documents already in the NPA's possession, custody, or control. Morton Grove also objects to this request on the basis that it is redundant of other requests for production served by NPA. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control, to the extent they have not already been produced.

**REQUEST NO. 21:** All documents relating to Morton Grove's allegations contained in paragraph 48 of its Complaint.

**RESPONSE:**        Morton Grove objects to this request because it seeks documents already in the NPA's possession, custody, or control. Morton Grove also objects to this request on the basis that it is redundant of other requests for production served by NPA. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control, to the extent they have not already been produced.

**REQUEST NO. 22:** All documents relating to Morton Grove's allegations contained in paragraph 50 of its Complaint.

**RESPONSE:**        Morton Grove objects to this request because it seeks documents already in the NPA's possession, custody, or control. Morton Grove objects to this request on the basis that it is redundant of other requests for production served by NPA. Morton Grove also objects to this request on the grounds that it is unduly burdensome and calculated to harass. Subject to and without waiving its objections, Morton Grove states that it will produce responsive, non-privileged documents in its possession, custody, or control, to the extent they have not already been produced and are not equally available to NPA.

10

Dated:  May 12, 2008                    Respectfully Submitted,


                                        **MORTON GROVE PHARMACEUTICALS, INC.**


                                        By: _____
                                                 One of Its Attorneys

W. Gordon Dobie (wdobie@winston.com)
Timothy Rivelli (trivelli@winston.com)
William C. O'Neil (woneil@winston.com)
Cherish M. Keller (ckeller@winston.com)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
T:  (312) 558-5600
F:  (312) 558-5700

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of May 2008, I caused to be served a copy of **Morton Grove Pharmaceuticals, Inc.'s Response to Defendant The National Pediculosis Association, Inc.'s Third Set of Requests for Production of Documents and Things** to be served on counsel of record via e-mail and U.S. mail:

> Debbie L. Berman
> Jennifer A. Hasch
> Amanda S. Amert
> Wade A. Thomson
> April A. Otterberg
> JENNER & BLOCK LLP
> 330 North Wabash Avenue
> Chicago, Illinois 60611
> T: (312) 222-9350
> F: (312) 527-0484

12

# Exhibit 5

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MORTON GROVE PHARMACEUTICALS, INC., | ) ) | |
| Plaintiff, | ) ) | No.: 08-CV-1384 |
| v. | ) ) ) | Judge Bucklo Magistrate Judge Mason |
| THE NATIONAL PEDICULOSIS ASSOCIATION, INC., | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) | |

**DECLARATION OF WADE A. THOMSON IN SUPPORT OF DEFENDANT THE NATIONAL PEDICULOSIS ASSOCIATION, INC.'s MOTION TO COMPEL PRODUCTION OF DOCUMENTS REALTED TO ECOLOGY CENTER SETTLEMENT**

I, Wade A. Thomson, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am one of the attorneys for defendant the National Pediculosis Association, Inc. ("NPA") in this matter.

2.      The statements made in this declaration are based on my personal knowledge.

3.      On May 13, 2008, I wrote a letter to counsel for Morton Grove Pharmaceuticals, Inc. ("Morton Grove") explaining NPA's position that Morton Grove could not withhold documents relating to the Ecology Center given its use of the settlement in its Complaint.  (Ex. A.)

4.      On May 19, 2008, Ms. Keller responded with a letter stating that the settlement documents were subject to a non-disclosure agreement and that they were "protected by Rule 408" and "not even admissible."  (Ex. B.)

5.      On May 21, 2008, Mr. O'Neil and Ms. Keller (on behalf of plaintiff), and April Otterberg and I (on behalf of defendant) participated in a telephonic meet and confer.  The

parties again discussed their differences, and agreed that they were at an impasse and had satisfied their obligations under Local Rule 37.2.

      6.    During the parties May 21, 2008 meet and confer, I suggested that if Morton Grove really believes the settlement is not relevant, it should stipulate to not using it affirmatively in this case.  Morton Grove refused.

    I declare under penalty of perjury that the foregoing is true and correct.
Executed this 5th day of June, 2008.

                               s/ Wade A. Thomson
                                Wade A. Thomson

# Exhibit A

J E N N E R & B L O C K

May 13, 2008

Jenner & Block LLP          Chicago
330 N. Wabash Avenue        Dallas
Chicago, IL 60611           New York
Tel 312-222-9350            Washington, DC
www.jenner.com

**VIA E-MAIL**

William O'Neil
Cherish M. Keller
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Wade A. Thomson
Tel  312 840-8613
Fax  312 840-8713
wthomson@jenner.com

Re:    **Morton Grove Pharmaceuticals v. National Pediculosis Association**
       **Case No. 06-CV-3815**

Dear Bill & Cherish:

Yesterday we received Morton Grove's responses to NPA's 3rd set of document requests. Two responses particularly concern us.

Request No. 5:  This request seeks all documents relating to Morton Grove's settlement with the Ecology Center, including but not limited to settlement agreements, drafts or proposals exchanged between the parties. Morton Grove objected to the extent the request sought documents that were not relevant or admissible and "documents protected by the attorney-client privilege and by a non-disclosure agreement." In the first instance, there is no obviously no attorney-client privilege for the documents exchanged between Morton Grove and Ecology Center. And as we understand it, there is no confidentiality provision in the settlement agreement. Even if there were a confidentiality provision, Morton Grove must produce the requested materials absent an order from the court.

Second, as you know, Morton Grove repeatedly referred to and touted the settlement in its complaint, referring to it as a "retraction," in a naked attempt to bolster Morton Grove's claim that NPA's statements are false. While NPA does not believe the actions Ecology Center took in regards to their different statements bear on the truth of NPA's statements, because Morton Grove has put the settlement at issue in this matter, it cannot now hide behind arguments of relevancy or admissibility. Documents exchanged between Morton Grove and Ecology Center about the settlement will show precisely what exactly the Ecology Center admitted to, retracted, and what it did not, thereby allowing NPA to test Morton Grove's arguments. Please let me know by the close of business on Friday, May 16 whether Morton Grove will produce drafts, proposals and correspondence exchanged between Morton Grove and the Ecology Center. If Morton Grove will not produce these documents, NPA will file a motion to compel.

Request No. 22:  This request seeks all documents relating to Morton Grove's allegations contained in paragraph 50 of its complaint. Morton Grove's response states that it will produce all documents to the extent they have not already been produced and "are not equally available to

William O'Neil
May 13, 2008
Page 2

NPA."  Please let me know what documents if any, besides the January 22, 2007 letter, Morton Grove is alluding to as being "equally available to NPA."

Sincerely,

Wade A. Thomson

cc:    W. Gordon Dobie
       Debbie L. Berman
       Amanda S. Amert

# Exhibit B

# WINSTON & STRAWN LLP

<table>
<tr><td>43 RUE DU RHONE<br>1204 GENEVA, SWITZERLAND<br>————<br>99 GRESHAM STREET<br>LONDON EC2V 7NG<br>————<br>333 SOUTH GRAND AVENUE<br>LOS ANGELES, CALIFORNIA 90071-1543</td><td>35 WEST WACKER DRIVE<br>CHICAGO, ILLINOIS 60601-9703<br><br>(312) 558-5600<br>————<br>FACSIMILE (312) 558-5700<br>————<br>www.winston.com</td><td>200 PARK AVENUE<br>NEW YORK, NEW YORK 10166-4193<br>————<br>25 AVENUE MARCEAU<br>75116 PARIS, FRANCE<br>————<br>101 CALIFORNIA STREET<br>SAN FRANCISCO, CALIFORNIA 94111-5894<br>————<br>1700 K STREET, N.W.<br>WASHINGTON, D.C. 20006-3817</td></tr>
</table>

WRITER'S DIRECT DIAL NUMBER

(312) 558-8829
ckeller@winston.com

May 19, 2008

**VIA EMAIL**

Wade A. Thomson
Jenner & Block LLP
330 N. Wabash Ave.
Chicago, IL 60611

Re:     *Morton Grove v. NPA*

Dear Wade:

I write in response to your May 19th letter. In brief, Morton Grove's positions on the two requests you mention are as follows:

*Request No. 5:*

This request asks for "[a]ll documents relating to" the settlement, which includes correspondence about the settlement between Morton Grove and its attorneys. Those documents are protected by the attorney-client privilege.

Morton Grove and the Ecology Center entered into a confidentiality and non-disclosure agreement related to the parties' settlement correspondence. Such correspondence is also protected by Rule 408 of the Federal Rules of Evidence, and is not even admissible evidence. You requested to know "precisely what exactly the Ecology Center admitted to, retracted, and what it did not." The non-confidential settlement agreement and the Ecology Center's subsequently published retractions, which Morton Grove stated it will produce, show exactly that.

*Request No. 22:*

This request asks for "[a]ll documents relating to" the allegations in paragraph 50 of Morton Grove's complaint. Thus, the January 22, 2007 letter is relevant and is in NPA's possession. In addition, the request may be interpreted to ask for all documents relating to the

WINSTON & STRAWN LLP

Wade A. Thomson
May 19, 2008
Page 2

last sentence in paragraph 50, which mentions the previous case (No. 06-CV-3815).  Documents filed and exchanged between the parties in that case are equally accessible to NPA.

*** 

Morton Grove is amenable to discussing these items in further detail during a meet and confer conference.

Best regards,

*Cherish M. Keller*

Cherish M. Keller

cc:    William C. O'Neil

# Exhibit 6





Working for a safe
environment where people
live, work and play

| Take Action | Donate Now | Events | About Us | Membership | Newsletters | Press | Publications | Links | Contact Us |

Clean Car Campaign

Environmental Education

Greening Chemistry

Greening Healthcare

Safe Kids, Homes, Towns

Save Land, Build Community

Trash & Recycling

Ecology Center Campaigns

[ Search ]



Our recycling affiliate

**amazon.com®**
Ecology Center Bookstore

<< Back to Main Press Page

## House Overwhelmingly Passes Restrictions on Dangerous Pesticide Lindane

### Bi-Partisan vote (72-35) to protect Michigan children's from pharmaceutical lindane

May 15, 2008

Health professionals and environmentalists praised the Michigan House of Representatives for overwhelming passing (72-35) important legislation protecting children's health today.

In a bipartisan vote, members of the House approved common sense restrictions on the use of lindane, a hazardous pesticide used in pharmaceuticals for the treatment of lice and scabies.

"This is an important vote for children's health.  We applaud legislators for supporting this measure, and urge the Senate to quickly pass the bill," said Jon Fliegel M.D., chair of the legislative committee of the American Academy of Pediatrics (Michigan Chapter).

"This is an important vote to help reduce a persistent, bioaccumulative toxic chemical from entering the Great Lakes," said Tracey Easthope, MPH, of the Michigan Network for Children's Environmental Health and the Ecology Center.  "Many thanks to the sponsor of the legislation, Rep. Ted Hammon, and for the leadership of House Committee on Great Lakes & Environment Chair Rebekah Warren for prioritizing children's health."

In 2003, the Food and Drug Administration issued a public health advisory for lindane. The agency recommended lindane-containing products be used with caution for infants, children, the elderly, and those who weigh less than 110 pounds, as they may be at risk of serious neurotoxicity.

In 2006, lindane was voluntarily withdrawn from agricultural uses.

Lindane is also no longer used in the U.S. in the military or on livestock.  Yet, lindane is regularly applied to the scalps of Michigan children.

The bill passed today (HB 4569) would require lindane be used only under a physician's direct supervision.  Major health organizations support the bill, including the Michigan Chapter of the American Academy of Pediatrics, the Michigan Nurses Association, the American Nurses Association, the Michigan Association of School Nurses, the Michigan Pharmacists Association, and the Wayne County Medical Society of Southeast Michigan.  Major environmental organizations also support the bill, including the Michigan Environmental Council, Clean Water Action, Ecology Center, Sierra Club and Michigan League of Conservation Voters.  The Michigan Department of Community Health does not recommend lindane use for either head lice or scabies and supports the legislation.

"The state's prestigious medical authorities are calling for a restriction on the

ingredient lindane," said Molly Polverento of the Michigan Environmental Council. "We thank the House and urge swift action in the Senate to protect the public from this toxic pesticide."

The Michigan Network for Children's Environmental Health is a coalition of health professionals, health-affected groups, environmental organizations, and others dedicated to a safe and less toxic world for Michigan's children.

Members include: • American Academy of Pediatrics (Michigan Chapter) • Arab Community Center for Economic and Social Services (ACCESS) • Association for Children's Mental Health • Clean Water Fund • Detroiters Working for Environmental Justice • East Michigan Environmental Action Council • Ecology Center • Healthy Homes Coalition of West Michigan • Learning Disabilities Association (LDA) of Michigan • Local Motion • Michigan Coalition for Children and Families • Michigan Council for Maternal and Child Health • Michigan Environmental Council • Michigan Nurses Association • Science and Environmental Health Network

# # #

*For questions regarding this statement, please contact:*

Molly Polverento, Michigan Environmental Council: 517-881-1234

Gen Howe, Ecology Center: 617-833-3847

**Back to Top**

**Take Action**   **Donate**   **Events**   **About**   **Membership**   **Newsletters**   Press   **Publications**   **Links**   **Contact**
117 N. Division St., Ann Arbor, MI 48104-1580 USA • phone 734·761·3186 • fax 734·663·2414 •   **info@ecocenter.org**