IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MORTON GROVE PHARMACEUTICALS, INC., ) ) Plaintiff, ) ) v. ) ) THE NATIONAL PEDICULOSIS ) ASSOCIATION, INC., ) ) Defendant. ) | No.: 08-CV-1384  Judge Bucklo Magistrate Judge Mason  **JURY TRIAL DEMANDED** |

**DEFENDANT THE NATIONAL PEDICULOSIS ASSOCIATION, INC.'S
OPPOSITION TO MORTON GROVE PHARMACEUTICALS, INC.'S MOTION
FOR A PROTECTIVE ORDER AND TO QUASH SUBPOENA**

Debbie L. Berman (#67205154)
Amanda S. Amert (#6271860)
Wade A. Thomson (#6282174)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484

*Attorneys for Defendant
The National Pediculosis Association, Inc*

Morton Grove Pharmaceuticals, Inc.'s ("Morton Grove") entire Motion rests on the three false premises that: (1) its lobbying activities are entirely separate from its product marketing activities; (2) no statement or information contained in Morton Grove's so-called lobbying documents is relevant to any issue in this litigation; and (3) Morton Grove's website, www.lindane.com, serves no purpose other than lobbying, and therefore its website vendor and marketing company Closerlook cannot possibly possess any information relevant to this lawsuit. Because each of these premises is demonstrably false, the Motion should be denied.

## BACKGROUND

Morton Grove is suing non-profit The National Pediculosis Association, Inc. ("NPA") for violations of the Lanham Act and Illinois' Unfair and Deceptive Trade Practices statute, and for trade disparagement. Morton Grove's claims arise out of statements made on NPA's website. The current action is Morton Grove's second try at suing NPA; this Court previously ruled that Morton Grove had improperly joined NPA as a defendant in a suit it brought against another non-profit organization for statements made in the course of that non-profit's legislative and lobbying activities. This Court continued discovery from the previous action.

NPA's primary defenses in this case are that it is not a competitor of Morton Grove (Morton Grove manufactures two prescription-only headlice and scabies treatments that contain the chemical lindane; Morton Grove has annual sales revenues of $52 million, *see* Ex. 1; NPA sells a preventative, non-prescription headlice comb known as the Licemeister® comb, and had a total revenue of $169,881 in 2006), and that its statements are part of public health debate and therefore protected by the 1st Amendment. But, because Morton Grove has argued that the parties are competitors, and that the 1st Amendment does not apply, on May 6, 2008, NPA filed counterclaims against Morton Grove for false statements Morton Grove has made about its lindane-containing products and NPA. These statements are located both in letters Morton

2

Grove sent to health care professionals, and on Morton Grove's website, lindane.com, which was created by Closerlook.

## ARGUMENT

In defending itself against Morton Grove's lawsuit, and in asserting its counterclaims against Morton Grove, NPA contends, among other things, that Morton Grove has engaged in a coordinated marketing/lobbying campaign designed to boost its product sales and that this effort includes Morton Grove's website, lindane.com. Through its Motion, Morton Grove seeks to deny NPA the opportunity to even take discovery into contested issues of fact relevant to the claims and counterclaims in this matter, such as whether lindane.com qualifies as advertising for Lanham Act purposes. Because these contested issues of fact should be decided by the Court after full discovery, not by a single, self-serving affidavit from one of Morton Grove's employee, the Motion should be denied.

I.  **THE CLOSERLOOK SUBPOENA SEEKS RELEVANT INFORMATION AND SHOULD NOT BE QUASHED.**

Morton Grove argues that NPA's Rule 45 subpoena to Closerlook should be quashed because Closerlook was involved only with lobbying efforts, and therefore the requested documents are not relevant and are protected from production by a "legislative privilege." Not only is Morton Grove's argument contrary to the facts and law, but Morton Grove failed to discuss the subpoena with NPA before filing its motion, as required by this Court's rules. In addition, as explained in Section II below, even if it were true that Closerlook only worked on Morton Grove's lobbying efforts (which it is not), information relating to those efforts is still highly relevant to this litigation, and lobbying materials are regularly discovered. Thus, there is no basis for quashing the Closerlook subpoena.

3

### A. Closerlook Assisted Morton Grove With The Marketing Of Its Products.

Morton Grove's claim that Closerlook's work on lindane.com related "exclusively" to lobbying is belied both by Closerlook's own explanation of what it did, and by documents produced by Morton Grove. First, Closerlook's website stated that lindane.com was aimed at "*consumers*," doctors and others, not just legislators. (Ex. 2.) Second, Morton Grove has produced marketing documents discussing the need to develop the lindane.com website to reach consumers. (Ex. 3, at MGP 687.) Similarly, Morton Grove's Director of Regulatory Affairs acknowledges in his affidavit that lindane.com had a "secondary target audience" of "healthcare professionals," who are the people who prescribe lindane, and that Morton Grove has manipulated search engine optimization to assure that people (including, obviously, consumers) who search for the term "lindane" are led to lindane.com. (Mot. Ex. P, ¶ 6). Third, Closerlook is a marketing agency, not a lobbying firm. (Ex. 4.) Fourth, a brief review of lindane.com itself reveals that it is not exclusively devoted to lobbying efforts, but instead promotes lindane products to consumer, doctors and others. *See generally* www.lindane.com.

Morton Grove does not -- and cannot -- credibly claim that marketing documents and strategy are not relevant to the issues in this case. Therefore, the Closerlook subpoena seeks clearly relevant documents and should not be quashed. *See Shields Enterprises, Inc. v. First Chicago Corp.*, No. 86 C 10213, 1988 WL 142200, *4 (N.D. Ill. Dec. 28, 1988) (adopting Judge Bucklo's decision to deny motion to quash subpoena where documents were relevant).

### B. Prior To Filing Its Motion, Morton Grove Never Raised Any Objections to The Closerlook Subpoena As Required By Local Rule 37.2.

Morton Grove did not comply with Local Rule 37.2 in regards to the Closerlook subpoena. In fact, Morton Grove never even mentioned the Closerlook subpoena to NPA, much less attempted to meet and confer, thereby denying the parties the opportunity to limit the scope

of the subpoena or seek other resolution. (Ex. 5, ¶ 4.) On this basis alone, the Court should deny the Motion. *See Autotech Techs. v. Automationdirect.com, Inc.*, No. 05 C 5488, 2007 WL 2736681, *2 (N.D. Ill. Sept. 10, 2007) (dismissing for failure to comply with Local Rule 37.2).

## II.　MORTON GROVE'S LOBBYING EFFORTS ARE PROPER SUBJECTS OF DISCOVERY IN THIS ACTION.

Morton Grove's sole basis for seeking a protective order with respect to its own documents, as well as its primary argument with respect to the Closerlook subpoena, is that its lobbying activities are wholly irrelevant to this litigation and/or that they are somehow protected from discovery. Like its assertion that Closerlook's activities related "exclusively" to lobbying, these assertions are also false. The Court should reject Morton Grove's disingenuous effort to hide its dirty laundry under a protective order.

### A.　Morton Grove's Lobbying Efforts Are Relevant To Several Issues In This Litigation.

Morton Grove's assertion that none of its lobbying efforts are relevant to this lawsuit is wrong. *First*, there is a significant issue as to why Morton Grove has decided to sue NPA despite the fact that many other individuals and organizations have made similar statements about lindane. NPA believes that Morton Grove decided to sue NPA for some perceived advantage in its efforts to stop various states' efforts to ban lindane. For example, when Morton Grove meets with legislators or sends them information, it specifically refers to NPA and the statements made by NPA. (*See, e.g.*, Ex. 6, at MGP 993.) NPA is entitled to discovery into Morton Grove's lobbying as it relates to its motive for suing. *Gen. Motors Corp. v. Johnson Matthey, Inc.*, 887 F. Supp. 1240, 1246 (E.D. Wis. 1995) (denying plaintiff's motion to reconsider order compelling discovery of plaintiff's lobbying activities where those activities could lead to information about plaintiff's motives for suing defendant).

*Second*, Morton Grove's lobbying materials are highly relevant to assessing the validity of its claims against NPA. Courts have held that discovery of lobbying materials is appropriate to the extent that Morton Grove's statements while lobbying may contradict its positions in this lawsuit, otherwise acknowledge the accuracy of some of NPA's statements, or lead to information showing the truth of NPA's statements. In *Stalling v. Union Pac. R.R. Co.*, No. 01 C 1056, 2003 WL 21317927, *7 (N.D. Ill. June 6, 2003), the plaintiff was permitted discovery into the defendants' lobbying activities for the purpose of obtaining information that might help it undermine a key defense strategy. This was true even though the plaintiff did not seek to establish liability predicated on the lobbying activities. *Id.*; *see In re Brand Name Prescription Drugs*, No. 94 C 897, 1995 WL 509666, *2 (N.D. Ill. Aug. 18, 1995) (granting motion to compel lobbying materials and holding, "The mere fact that the documents sought [] relate to or arise from lobbying activity is insufficient to bar their discovery".)

To succeed on its Lanham Act and state-law claims, Morton Grove must prove, among other things, that NPA's statements are false or misleading. *See, e.g., Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819-20 (7th Cir. 1999). As part of its lobbying efforts, Morton Grove has commented repeatedly on the dangers of lindane, including discussing some of the particular dangers described in NPA's statements at issue in this lawsuit. (*Compare* Compl. ¶¶ 26, 33, 37, 40 with Ex. 6, at MGP 986-994; Ex. 7, at MGP 1055-56.)

Similarly, in order to have standing to maintain its Lanham Act claim, Morton Grove must prove that NPA is its competitor. *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993). NPA strongly disputes Morton Grove's argument that the LiceMeister® comb competes with Morton Grove's prescription lindane products. As part of its lobbying/marketing activities, Morton Grove has made statements almost identical to those used

by Morton Grove in this litigation to argue that the two parties are competitors. (Compl. ¶¶ 26, 33, 37, 40.) In fact, it appears as though Morton Grove devised the strategy that it is using to prosecute this case in connection with its lobbying/marketing efforts, which pre-dated this lawsuit.

*Third*, contrary to Morton Grove's unsupported assertion, its public figure status is still at issue. Although Morton Grove dropped its defamation claim from its new complaint, it did so solely to circumvent the 1st Amendment protections that would be afforded NPA as a result of Morton Grove being a public figure. As such, its public figure status remains at issue. *See Muzikowski v. Paramount Pictures Corp.*, No. 01 C 6721, 2005 U.S. Dist. LEXIS 13127, *31, *34-44 (N.D. Ill. June 10, 2005) (holding that First Amendment considerations applied equally to plaintiff's defamation, commercial disparagement, Lanham Act, and Illinois Uniform Deceptive Trade Practices Act claims), *aff'd*, 477 F.3d 899 (7th Cir. 2007); *see also Hustler Magazine v. Falwell*, 485 U.S. 46, 56-57 (1988); *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 513 (1984) (assuming actual malice standard applies to product disparagement claim by public figure). Rather obviously, the scope and nature of Morton Grove's lobbying activities are highly relevant to its status as a public figure, as they bear on such questions as whether Morton Grove has injected itself into the public sphere regarding the public debate regarding lindane and has "access to the channels of effective communication." *See, e.g., Kessler v. Zekman*, 250 Ill.App.3d 172, 180, 620 N.E.2d 1249, 1254 (1st Dist. 1993) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997 (1974)) (one key aspect of determining a public figure is assessing plaintiff's ability to respond to allegedly false statements). Accordingly, NPA is entitled to inquire into them.

*Fourth,* Morton Grove's lobbying efforts are relevant to NPA's counterclaims. Contrary to Morton Grove's attempts at misdirection, NPA is *not* counter-suing for any Morton Grove statements made to legislators. However, as part of its coordinated lobbying/marketing strategy, Morton Grove's "lobbying" materials contain statements that are very similar to those at issue in NPA's counterclaims. (*Cf.* Dkt. No. 37, NPA Counterclaim ¶¶ 48, 49 *with* Ex. 8, at MGP 4862-64.) To the extent Morton Grove's lobbying materials provide information about the factual bases for these joint lobbying/marketing claims, those materials are relevant to issues raised in NPA's counterclaims, such as whether similar claims made as part of advertising efforts are misleading. Moreover, NPA alleges in its counterclaim that Morton Grove is using lindane.com to advertise its products, and as such discovery about lindane.com is highly relevant.

    **B.**    **Morton Grove's "Lobbying" Materials Are Not Subject To Any Blanket Privilege Or Immunity From Discovery.**

Morton Grove argues that none of its "lobbying" documents are discoverable because they are protected by various privileges, including the "legislative privilege" and the attorney-client privilege. But the "legislative privilege" only provides immunity from *liability* of statements made in the legislative context and does not prevent discovery of such information. *See Stalling*, 2003 WL 21317927, *7 (granting motion to compel discovery of lobbying materials).[1] Morton Grove does not cite a case stating otherwise. Further, and tellingly, *Morton Grove* has requested significant lobbying materials from NPA. For example, Morton Grove has requested information (including names, minutes, agendas, and summaries) about efforts to ban lindane products (*see* Ex. 9 at Int. 11; Ex. 10 at Req. 5; Ex. 11 at Req. 14) and NPA's

---

[1] *See also United States Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 164 (E.D.N.Y. 1994) (communication telling a lobbyist what to disclose to a legislator not privileged); *Republican Party of North Carolina v. Martin*, 136 F.R.D. 421, 426 (E.D.N.C.1991) (political advice in lobbying not privileged); *North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 517 (M.D.N.C.1986) (communications summarizing status of lobbying efforts not privileged).

communications about lindane with other not-for-profits, including "lobbying" groups (*see* Ex. 11 at Req. 9). Moreover, Closerlook's objections to the subpoena also do not raise any "legislative privilege" (Ex. 12), and tellingly, Closerlook did not invoke any such privilege, rather it has informed NPA that it is gathering responsive documents. (Ex. 13.)

With respect to Morton Grove's vague assertions of attorney work product or attorney-client privilege, if there really is any privileged matter, the appropriate way to resolve such assertions is for Morton Grove to create a privilege log, and the parties to resolve its privilege assertions on a document-by-document basis. *See United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (a blanket assertion of privilege cannot carry the burden of a party looking to withhold numerous documents). Needless to say, there is no privilege with respect to Morton Grove's work with Closerlook, a third-party marketing agency, on marketing or lobbying activities.

### C. The Protective Order Already In This Case Addresses Any Concerns Morton Grove Claims To Have About Use of The Documents Sought.

As a last ditch effort to prevent this highly relevant information from being produced, Morton Grove makes the ridiculous claim that it is the David against the Goliath (non-profit) NPA because NPA has a $5 million insurance policy that might provide coverage in this matter. (Mot. at 9.) Morton Grove then argues that because of this "war chest," NPA is using the discovery process in this lawsuit (which Morton Grove brought) to obtain information that NPA wants solely so it can use it improperly outside of this litigation. This desperate and unsubstantiated attack on NPA's (and its counsel's) motive is unfounded and insulting.

Moreover, there is an extensive protective order entered by the Court at Morton Grove's insistence which limits a party's use of documents produced in this litigation. (Ex. 14.) The Protective Order permits "Confidential" designations of, among other things, "confidential marketing plans, business plans and strategy plans for Lindane Lotion & Shampoo." (*Id.* at 2.)

In its Motion, Morton Grove has made no showing as to why this protective order, which it drafted, is insufficient to protect its lobbying information, nor could it. Instead, Morton Grove claims that it needs yet another protective order barring production of the documents at issue in their entirety. This claim is contrary to the well-established case law which holds that "the scope of discovery should be broad in order to aid in the search for truth." *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (granting motion to compel). A party seeking a protective order for discovery bears the burden of showing good cause for the order by a particular and specific demonstration of fact, rather than conclusory statements and assertions. *Steadfast Ins. Co. v. Automaking Network, Inc.*, No. 97 C 5696, 1999 U.S. Dist. Lexis 6897, *3 (N.D. Ill. April 29) (denying plaintiff's motion for protective order). Even if NPA were seeking purely lobbying materials (which the documents in question are not), Morton Grove would not be entitled to an additional protective order precluding discovery that is highly relevant to several issues in this case, particularly because lobbying materials are regularly discoverable.

## CONCLUSION

For the reasons stated above, this Court should deny Morton Grove's Motion, order it and Closerlook to produce responsive documents within 14 days, and award NPA its reasonable costs incurred in responding to the Motion.

Dated: June 6, 2008

Respectfully submitted,

THE NATIONAL PEDICULOSIS
ASSOCIATION, INC.

Debbie L. Berman (#67205154)
Amanda S. Amert (#6271860)
Wade A. Thomson (#6282174)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484

By: s/ Debbie L. Berman
 One of Its Attorneys

## CERTIFICATE OF SERVICE

I, Debbie L. Berman, hereby certify that on June 6, 2008, I caused copies of the foregoing **Defendant The National Pediculosis Association, Inc.'s Opposition to Morton Grove Pharmaceuticals, Inc.'s Motion For A Protective Order and to Quash Subpoena,** to be served upon the following via electronic filing through the CM/ECF system:

> Timothy Joseph Rivelli  (*trivelli@winston.com*)
> W. Gordon Dobie  (*wdobie@winston.com*)
> William Charles O'Neill  (*woneil@winston.com*)
> Cherish M. Keller  (*ckeller@winston.com*)
> WINSTON & STRAWN, LLP
> 35 West Wacker Drive
> 41st Floor
> Chicago, IL  60601
> Telephone:  (312) 558-5600
> Facsimile:  (312) 558-5700

 

             s/ Debbie L. Berman
             Debbie L. Berman