**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MORTON GROVE ) <br> PHARMACEUTICALS, INC. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE NATIONAL PEDICULOSIS ) <br> ASSOCIATION, INC., ) <br> ) <br> Defendant. ) <br> ) | No: 08-CV-1384 <br><br> Judge Bucklo <br> Magistrate Judge Mason |

**MORTON GROVE'S REPLY IN SUPPORT OF ITS MOTION
FOR PROTECTIVE ORDER AND TO QUASH SUBPOENA**

The NPA's response brief misleadingly suggests (1) that Morton Grove produced no documents relating to its lobbying activities and (2) that this dispute centers around the subpoena issued to Closerlook. To the contrary, Morton Grove produced its lobbyists' correspondence with legislators and refused to produce only strategy documents comprised of communications between Winston & Strawn attorneys and Morton Grove's lobbyists at other law firms. The NPA's focus on the Closerlook subpoena (its lead argument) is not by accident—it hopes it can convince the Court to allow the tail (Closerlook) to wag the dog (Morton Grove's lobbying strategy). Unfortunately, the NPA does not adequately address the core question raised by Morton Grove's motion—how are Morton Grove's non-public lobbying strategy documents (many of which are privileged[1]) relevant to any legitimate claim or defense in this action? The

---

[1] *See Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 U.S. Dist LEXIS 19475, at *20 (D. Kan. Mar. 16, 2007) (denying motion to compel production of lobbying strategy documents and noting "Heartland is seeking documents related to KHA's strategy of advocating for bills in the Kansas legislature that would have impacted specialty hospitals. This is precisely the type of internal associational activity and past political activity that the *First Amendment* is designed to protect. Therefore, the Court concludes that KHA has met its *prima facie* burden of showing that production of such material would have a chilling effect and thus the *First Amendment* privilege applies.").

NPA has failed to provide any relevant justification to support a raid on Morton Grove's attorneys' and lobbyists' files. Morton Grove's motion should be granted.

## ARGUMENT

**I.   THE PARTIES HAVE ALREADY ENGAGED IN SUBSTANTIAL DISCOVERY CONCERNING MORTON GROVE'S LOBBYING ACTIVITIES**

As an initial matter, the NPA's response brief mischaracterizes Morton Grove's prior document production. After nine months of voluntary production, multiple meet and confer conferences, and a discovery compromise, Morton Grove has produced all: (1) communications between Morton Grove and any governmental entities or officials, (2) documents Morton Grove distributed in connection with any lobbying campaign, (3) documents sufficient to identify the persons involved with Morton Grove's lobbying efforts, and (4) Morton Grove's testimony relating to lindane medications. The scope of Morton Grove's prior production leaves one to wonder—what more is relevant and where will the line be drawn between discovery and outright harassment?[2]

**II.   THE NPA HAS NOT DEMONSTRATED WHY MORTON GROVE'S LOBBYING STRATEGY DOCUMENTS ARE RELEVANT**

Morton Grove's non-public lobbying strategy documents are not relevant to any of Morton Grove's claims—Morton Grove is not seeking damages relating to any of the NPA's statements made in the legislative arena. Likewise, in its response brief, the NPA admits that Morton Grove's lobbying strategy documents are also not relevant to the NPA's counterclaim—the NPA "is *not* counter-suing for any Morton Grove statements made to legislators" (Opp'n Br. 8). It is thus hard to imagine how Morton Grove's lobbying strategy documents are relevant in any way, shape, or form in this action. Nevertheless, the NPA's response brief sets forth four reasons why the NPA believes these documents are relevant. The NPA claims these documents are relevant to (1) Morton Grove's "motive for suing" the NPA, (2) Morton Grove's alleged prior inconsistent statements, (3) Morton Grove's "public figure" status, and (4) the NPA's counterclaim. None of these arguments have any merit.

---

[2]   This question is particularly appropriate given that these documents were produced as part of a discovery compromise only because the NPA argued that Morton Grove's public lobbying documents would prove Morton Grove made inconsistent statements in the lobbying process (which it, of course, did not), not because there is any relevance to them.

A. **Motivation For Suit**

That this is the NPA's lead argument for why Morton Grove's lobbying strategy documents are relevant is telling. Morton Grove's motivation for bringing this lawsuit is not at issue—this is not a malicious prosecution or abuse of process action. *Woods v. Fresenius Med. Care Group of N. Am.*, 2008 WL 151836, at *2 (S.D. Ind. Jan. 16, 2008) (rejecting argument for obtaining plaintiff's employment records via subpoenas because they might be relevant to plaintiff's "motive in bringing suit"); *American Roller Co., LLC v. Foster-Adams Leasing, LLP*, 2006 WL 1371441, at *2 (N.D. Ill. May 16, 2006) (granting protective order after defendants failed to explain how evidence of plaintiff's motive to sue was relevant to any claim or defense of any party). Moreover, the NPA's case law on this point does not support the NPA's argument.[3]

B. **Prior Inconsistent Statements**

The NPA's second argument is no stronger than its first. In fact, the NPA used this argument to convince Morton Grove to agree to the parties' prior discovery compromise on lobbying documents. Pursuant to that compromise, Morton Grove produced its lobbyists' communications with legislators. Despite having these documents in its possession, the NPA cannot point the Court to a single instance where Morton Grove has "contradict[ed] its positions in this lawsuit." With all relevant documents in its possession that could possibly bear on this attenuated argument, the NPA now seeks to extend its deep sea expedition into the waters of Morton Grove's private lobbying strategy documents. Yet the NPA has no proof, nor even a good faith or reasoned belief, that Morton Grove has made a single inconsistent statement in its lobbying campaign. Moreover, the documents the NPA seeks—Morton Grove's private strategy documents regarding pending legislation—are not even the type of documents from which one could logically glean a prior inconsistent statement.

C. **"Public Figure" Status**

The NPA next suggests that Morton Grove's lobbying strategy documents— *private* communications between Morton Grove's lawyers and lobbyists—"bear on such questions as whether Morton Grove has injected itself into the *pubic sphere* regarding the public

---

[3] In *General Motors Corp. v. Johnson Matthey, Inc.*, discovery of lobbying activities was only allowed for the limited purpose of demonstrating the motivation for the underlying torts at issues, ***not*** the motivation for the filing of the lawsuit. 887 F. Supp. 1240, 1246 (E.D. Wis. 1995).

3

debate regarding lindane." (Opp'n Br. 7 (emphasis supplied).) This is nonsensical. **Publicly** disseminated documents may bear on that question, but they have all been produced. Furthermore, the NPA's legal argument that there is a "public figure" doctrine in Lanham Act case law misses the mark.[4]

### D.    The NPA's Counterclaim

The NPA's final relevance argument relates to the NPA's recently filed counterclaim. But as an initial matter, no claim may be predicted on documents submitted to a legislature. Thus, documents involving the who, what, where, and when of Morton Grove's strategic responsive to legislative maneuvers are not relevant. Furthermore, while the legal sufficiency of the NPA's counterclaim is not yet before the Court (as Morton Grove will be filing a motion to dismiss this counterclaim on June 30, 2008), the frivolous nature of the NPA's counterclaim bears on whether the NPA's counterclaim can form the basis for this discovery request. (Tellingly, the NPA served these requests months *before* it filed its counterclaim.) For example, the NPA's counterclaim is predicated in part on a letter written by Dr. Tor Shwayder, Director of Pediatric Dermatology at Henry Ford Hospital in Detroit, Michigan, to Rebekah Warren, a Michigan Assemblywoman, regarding a pending Michigan bill seeking to restrict the use of lindane in Michigan. (*See* Exhibit A.) Even though Dr. Shwayder was not paid a dollar by Morton Grove and wrote this letter of his own volition in opposition to pending legislation, the NPA has taken the position—under obligations imposed by Rule 11—that this third-party letter is a **Morton Grove commercial advertisement**. Moreover, the NPA has gone one step further, claiming this letter proximately caused the NPA to suffer financial harm. The NPA has done so in the face of well-established case law and the Lanham Act's legislative history, which provides that: "Political advertising and promotion is political speech, and therefore not encompassed by the term 'commercial.'" 134 Cong. Rec. H. 1297 (Apr. 13, 1989); *MasterCard*

---

[4]    *Muzikowski v. Paramount Pictures Corp.* does not even discuss public figure status. 2005 U.S. Dist. LEXIS 13127, at *37 (N.D. Ill. June 10, 2005). Likewise, in *Bose Corp. v. Consumers Union of United States, Inc.* and *Hustler Magazine v. Falwell,* the Supreme Court expresses no view on whether the public figure concept applies to Lanham Act, UDTPA, or common law trade disparagement cases. 466 U.S. 485, 513 (1984); 485 U.S. 46, 56-57 (1988). In fact, in *Bose Corp.*, the Court specifically refused to address the issue and notes that the lower court expressed "some doubt concerning the ruling that the New York Times rule should be applied to a claim of product disparagement." 466 U.S. at 513.

4

*Intern. Inc. v. Nader 2000 Primary Committee, Inc.*, 2004 WL 434404, at *7-8 (S.D.N.Y. Mar. 8, 2004). For these reasons, the NPA's counterclaim is at best frivolous and at worst sanctionable. Morton Grove's lobbying strategy documents are not relevant to the NPA's counterclaim, and even if this Court found they were, Morton Grove respectfully requests that the Court's ruling on this motion be reserved until after disposition on Morton Grove's motion to dismiss the NPA's counterclaim.

### III.    THE NPA HAS SOUGHT MORTON GROVE'S LOBBYING STRATEGY DOCUMENTS FOR AN IMPROPER PURPOSE

That there is no legitimate, relevant reason to request these documents only reinforces the theory that the NPA requested them to gain a competitive advantage in the lobbying arena. The NPA's argument that the Protective Order entered in this action will prevent the NPA from improperly using these documents is unpersuasive. The NPA is essentially a one-person operation, run by Deborah Altschuler. The Protective Order does not have an "attorneys' eyes only" designation, hence any lobbying strategy documents produced by Morton Grove will be disclosed to Ms. Altschuler. Even assuming that the Protective Order would not be willfully violated, how can the Court expect Ms. Altschuler to unlearn Morton Grove's strategy?

### IV.    THE CLOSERLOOK SUBPOENA SHOULD ALSO BE QUASHED

The Closerlook subpoena is but the last step in the NPA's nine-month effort to harass Morton Grove for its lobbying strategy documents.[5] The NPA's attempt to obtain these documents through the path of least resistance makes them no more relevant.[6] For the reasons set forth above, the subpoena issued to Closerlook should also be quashed.

---

[5]     Contrary to the NPA's claim, during the parties' last meet and confer conference, on May 21, 2008, Morton Grove asked the NPA to withdraw the Closerlook subpoena and it refused. Moreover, there is no dispute that Morton Grove and the NPA negotiated regarding the production of Morton Grove's lobbying documents *ad nauseam* during the past nine months. In any event, the text of Local Rule 37.2 does not require a meet and confer meeting for Rule 45 motions.

[6]     The NPA's statement about Closerlook gathering documents is also misleading. Closerlook is not busily preparing for imminent document production. (Opp'n Br. 9.) In the same letter that the NPA cites, Closerlook states: "we will have to wait until the Court rules on Morton Grove's Motion before responding to the Subpoena." (*Id.* Exhibit 13.)

Dated: June 13, 2008  Respectfully Submitted,

**MORTON GROVE PHARMACEUTICALS, INC.**


By: /s/ W. Gordon Dobie
  One of its Attorneys

W. Gordon Dobie (wdobie@winston.com)
William C. O'Neil (woneil@winston.com)
Cherish M. Keller (ckeller@winston.com)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
T: (312) 558-5600
F: (312) 558-5700

6

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of June 2008, I caused a copy of **Morton Grove Pharmaceuticals, Inc.'s Reply Memorandum In Support of its Motion for Protective Order and to Quash Subpoena** to be served on counsel of record via ECF electronic filing:

>Debbie L. Berman
>Amanda S. Amert
>Wade A. Thomson
>April A. Otterberg
>JENNER & BLOCK LLP
>330 North Wabash Avenue
>Chicago, Illinois 60611
>T: (312) 222-9350
>F: (312) 527-0484

>/s/ William C. O'Neil