**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MORTON GROVE PHARMACEUTICALS, INC. ) ) ) Plaintiff, ) ) v. ) ) THE NATIONAL PEDICULOSIS ASSOCIATION, INC., ) ) ) Defendant. ) ) ) | No: 08-CV-1384<br><br>Judge Bucklo<br>Magistrate Judge Mason |

**MORTON GROVE'S RESPONSE TO THE NPA'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RELATED TO ECOLOGY CENTER SETTLEMENT**

**APPENDIX OF UNPUBLISHED CASES**

Tab 1    *Clark v. Experian Info. Solutions, Inc.*, 2006 WL 626820, at *6 (N.D. Ill. Jan. 6, 2006).

Tab 2    *Davenport v. Ind. Masonic Home Found., Inc.*, 2003 WL 1888986, at *2 (S.D. Ind. Mar. 27, 2003).

Tab 3    *Info. Tech. Int'l, Inc. v. ITI of N. Fla., Inc.*, 2002 WL 356509, at *2 (N.D. Ill. Mar. 6, 2002).

# TAB 1

Westlaw.

Not Reported in F.Supp.2d                                                                                                                                     Page 1
Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.), 2006-1 Trade Cases P 75,130
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.))**

H
Clark v. Experian Information Solutions, Inc.
N.D.Ill.,2006.

United States District Court,N.D. Illinois, Eastern Division.
Evelyn CLARK and Bradley Eldred, on behalf of themselves and all others similarly situated, Plaintiffs,
v.
EXPERIAN INFORMATION SOLUTIONS, INC. and Consumerinfo.com, Inc., Defendants.
No. 03 C 7882.

filed Nov. 5, 2003.
Jan. 6, 2006.
last filing March 8, 2006.

Michael Dean Carter, Jr., Horwitz, Horwitz & Associates, Chicago, IL, Lead Attorney, Attorney to be Noticed, for Evelyn Clark, (Plaintiff).
Clifford Wolf Horwitz, Horwitz, Horwitz & Associates, Chicago, IL, Lead Attorney, Attorney to be Noticed, for Evelyn Clark, (Plaintiff).
Jay Richard Luchsinger, Horwitz, Horwitz & Associates, Chicago, IL, Lead Attorney, Attorney to be Noticed, for Evelyn Clark, (Plaintiff).

*MEMORANDUM OPINION AND ORDER*

BROWN, Magistrate J.
*1 This case comes before the court on Plaintiffs' Motion to Compel. [Dkt 185.] For the reasons set out below, that motion is granted in part and denied in part.

Background

*1. This lawsuit.*

In this putative class action, Plaintiffs allege that defendants ConsumerInfo.Com. Inc. ("CIC") and Experian Information Solutions, Inc. (collectively, "Defendants") lured consumers on to their jointly operated websites with the promise of a free credit report and then deceived customers into enrolling and paying for Defendants' credit check monitoring service. (Second Am. Compl. ¶ 2.) [Dkt 143.] Defendants deny any wrongdoing. The District Judge has ordered discovery closed in this case on February 15, 2006. [Dkt 140.] [FN1]

FN1. The District Judge denied Plaintiffs' motion for class certification. [Dkt 229, 230.] Plaintiffs advised the court they intend to appeal that decision pursuant to Fed.R.Civ.P. 23(f).

*2. CIC's settlement with the FTC.*

In August 2005, the Federal Trade Commission announced a settlement with CIC and entered into a Stipulated Final Judgment and Order for Permanent Injunction regarding conduct that is substantially similar to the subject of Plaintiffs' complaint. (Pls.' Mem. Supp. Mot. Compel, Ex. A.) [Dkt 220.] The Stipulated Final Judgment states that the FTC's agreement to enter into the Order is premised on "the truthfulness, accuracy, and completeness of the consumer complaint, refund, purchase data, and other information provided by Defendant and dated June 24, 2005."(*Id.* at 22.)

Plaintiffs promptly served a document request asking for all documents CIC produced to the FTC in connection with the investigation that led to the filing of the FTC's complaint. (Pls.' Mem. Supp. Mot. Compel Disc., Ex. B.) [Dkt 200.] [FN2] CIC served a lengthy objection to that request, stating, *inter alia,* that it interpreted the request as seeking two types of documents: previously existing business documents that were produced to the FTC, and documents created in connection with the settlement negotiations. (Pls.' Mem. Supp. Mot. Compel Disc., Ex. B, Resp. To Request No. 1.) CIC objected to producing any business records, regardless of when created, that were sent to the FTC during the course

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                             Page 2
Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.), 2006-1 Trade Cases P 75,130
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.))**

Case 1:08-cv-01384    Document 61-3    Filed 06/20/2008    Page 4 of 17

Not Reported in F.Supp.2d                                                                                             Page 2
Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.), 2006-1 Trade Cases P 75,130
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.))**

of what CIC considers settlement negotiations, on the ground that such documents are irrelevant and unlikely to lead to discovery of admissible evidence. (*Id.* at 4.) CIC's objection cited *White v. Kenneth Warren & Sons, Ltd,* 203 F.R.D. 364 (N.D.Ill.2001) and *Vardon Golf Co. v. BBMG Golf, Ltd,* 156 F.R.D. 641 (N.D.Ill.1994), two cases that discuss Fed.R.Evid. 408. (*Id.*) CIC further stated that it would produce to Plaintiffs any business documents that had been produced to the FTC prior to the date that CIC considers the settlement negotiations to have commenced.(*Id.*) As discussed below, no such documents have been produced. Plaintiffs then filed the present motion to compel.

> FN2. Plaintiffs had served a document request in April 2004 for documents evidencing any steps taken or procedures followed by Defendants to ensure compliance with the FTC regulations or protection statutes. (Pls.' Mem. Supp. Mot. Compel Disc. at 4.) Defendants' response to that request did not disclose the FTC investigation. *Id.* Plaintiffs argued that by failing then to disclose the existence of the FTC investigation and assert a privilege based on settlement negotiation, Defendants waived the right to assert any such privilege subsequently. (*Id.* at 7.) Defendants responded that the April 2004 request was not broad enough to encompass documents relating to an investigation or settlement. (CIC's Resp. Opp'n Pls.' Mot. Compel at 3-4.) [Dkt 213.] In an oral ruling on December 13, 2005, the court declined to find waiver and held that the parties should address the merits of Defendants' response to Plaintiffs' August 2005 request, which squarely seeks such documents. [Dkt 228.]

*3. Defendants' position regarding settlement negotiations; Darryl Gibson's declaration.*

CIC's agreement to produce documents given to the FTC prior to the beginning of settlement discussions is essentially meaningless because, according to Defendants, CIC "almost immediately" began settlement negotiations, and therefore, virtually nothing would be produced. (CIC's Resp. Opp'n Pls.' Mot. Compel at 1.) To support their position, Defendants submitted the declaration of Darryl Gibson, vice-president and assistant general counsel of Experian.(*Id.,* Ex. A, Decl. Darryl Gibson ¶ 1.) Mr. Gibson states that the FTC first contacted CIC in July 2002 with regard to its investigation of CIC's websites, and in August 2002, he began discussions with the FTC in an effort to resolve the FTC's assertion that CIC's website was misleading. (Gibson Decl. ¶ 2.) Mr. Gibson further states that "[o]ff and on for the next three years," the FTC and CIC had "discussions regarding this dispute" during which CIC voluntarily produced information and documents in furtherance of CIC's efforts to settle the matter. (Gibson Decl. ¶ 3.)

*2 Defendants were ordered to deliver to the court for *in camera* inspection all documents that CIC produced to the FTC in connection with the FTC's investigation, and all documents containing communications between the FTC and CIC regarding the investigation. [Dkt 218.][FN3] According to Defendants' counsel, Defendants have not produced to Plaintiffs any of the documents delivered *in camera,* not even the FTC's initial letter to CIC in July 2002 (CIC/INCAMERA Docs. 1-5).

> FN3. Defendants advised the court that they redacted or removed any information protected by attorney-client privilege or work product protection before delivering the documents for *in camera* inspection.

Defendants did not prepare any privilege log or otherwise identify the documents being withheld, on the theory that their objection was the scope of discovery, not assertion of a privilege. (CIC's Resp. Opp'n Pls.' Mot. Compel at 5 n. 2.) Subsequently, the District Judge ordered Defendants to produce a privilege log for those documents, which is currently due to be served on January 13, 2006. [Dkt 234.]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d											Page 3
Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.), 2006-1 Trade Cases P 75,130
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.))**

Discussion

*1. Legal standard.*

Federal Rule of Evidence 408 provides:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Defendants have taken a very broad view of Rule 408 that is not supported by the text of that rule or the cases on which Defendants rely. Defendants contend that any documents that "relate to settlement negotiations" are outside the scope of discovery. (CIC's Resp. Opp'n Pls.' Mot. Compel at 1.) However, Rule 408 does not create any category of documents that is off limits from discovery. Rather, Rule 408 creates a narrow exclusion from admissibility as evidence. Of course, information does not have to be admissible to be discoverable, if it is "reasonably calculated to lead to the discovery of admissible evidence."Fed.R.Civ.P. 26(b)(1). Furthermore, Rule 408's limited exclusion is not applicable when the evidence is offered for a purpose other than to prove liability for or invalidity of the claim or its amount. Thus, Defendants' claim that there can be no discovery of any documents "related to settlement" must be rejected.

Defendants' overly-broad construction of Rule 408 does not find support in the *White* opinion, which stated that "Rule 408 'only applies to the admissibility of evidence at trial and does not necessarily protect such evidence from discovery'...."203 F.R.D. at 368, quoting *Morse/Diesel, Inc. v. Fidelity and Deposit Co.,* 122 F.R.D. 447, 449 (S.D.N.Y.1988). The court in *White* also noted a number of decisions in which discovery of settlement documents had been permitted. 203 F.R.D. at 367. Likewise, the *Vardon* case, also cited by Defendants, sets out a standard for the discovery of "information ... [that] would not be admissible due to an exclusionary rule" such as Rule 408, but does not say that such information is completely outside the scope of potential discoverability. 156 F.R.D. at 651. Even in the cases where evidence about settlement was excluded from trial, it is a fair inference that the information was the subject to discovery. For example, the court in *Davis v. Rowe,* No. 91 C 2254, 1993 WL 34867 at *1-2 (N.D.Ill. Feb. 10, 1993), refused to allow into evidence a statement made by defendant to his insurer. However, the plaintiff presumably learned about that document through discovery.

*3 Thus, Defendants are simply wrong in asserting that Rule 408 makes information relating to settlement negotiations off limits from discovery. However, courts have recognized that the purpose of Rule 408 to encourage settlement of disputes might be chilled by fear that negotiations might be discoverable, and have sought to balance furthering that purpose with the policy of liberal discovery. *See White,* 203 F.R.D. at 368;*Vardon,* 156 F.R.D. at 650, 652. Thus, the court in *Vardon* determined that, to obtain information that would be inadmissible because of Rule 408, the proponent of discovery must demonstrate that it is admissible for another purpose or by showing how discovery of the item might lead to other admissible information.*Id.* at 651.

Significantly, under *Vardon,* such a showing is required only to obtain information that would be inadmissible because of Rule 408. As discussed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 4
Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.), 2006-1 Trade Cases P 75,130
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.))**

above, the exclusion in Rule 408 is quite narrow, covering only: (a) evidence of offers or acceptances of valuable consideration for the purpose of proving liability for or invalidity of a claim or its amount; and (b) evidence of conduct or statements made in compromise negotiations.

2. *Application to Defendants' documents.*

Defendants made a strategic decision simply to object to producing all documents that, in Defendants' opinion, "relate to settlement" regardless of when created or what those documents contain. For the reasons set out above, that overly-broad claim is not legally supported and must be overruled. The only real issue is whether any of the documents delivered for *in camera* inspection should not be produced, out of respect for the goal of avoiding chilling settlement efforts. Defendants' unsustainable blanket approach does not assist the court in answering that question.

It appears that the documents under discussion, although described collectively by Defendants as "settlement documents," fall into a number of categories:

1. Communications between the FTC and CIC, which Rule 408 suggests should be subdivided between documents that contain discussion of attempts to compromise, and those that do not;

2. Business records that existed prior to the commencement of the FTC's investigation, but were furnished to the FTC following the instigation of the investigation;

3. Documents, including data compilations, prepared by Defendants especially in response to requests by the FTC for information.

Defendants have not made any effort to identify which of the documents delivered *in camera* fall into any of these categories.

One reality that must be borne in mind is the fact that discovery in this case is set to close on February 15, 2006. [Dkt 140.] Although the FTC's investigation began in August 2002, Plaintiffs first learned of it only three years later, in August 2005, and promptly thereafter served the discovery request. *See* Pls.' Mem. Supp. Mot. Compel Disc. at 2-3, Ex. B. Any discoverable information must be made available to Plaintiffs as soon as possible to be of practical use.

*a. Documents in category 2.*

*4 There is no basis for protecting from discovery any documents in category 2, that is, business records that existed prior to the commencement of the FTC's investigation but were furnished to the FTC following the instigation of the investigation. Indeed, Defendants admit that if those documents were requested by Plaintiffs in a separate discovery request, CIC would produce them. (CIC's Resp. Opp'n Mot. Compel at 7.) Because Defendants did not prepare any privilege log with respect to the documents they withheld or otherwise describe the information contained in them, it is impossible for Plaintiffs or the court to say definitively whether those documents were sought in one of Plaintiffs' many prior document requests. However, it is a fair assumption that they were, because Plaintiffs' complaint centers on the same allegedly deceptive conduct that the FTC was investigating. Defendants' only argument against producing the documents in response to the current request is that they "would provide insight into the parties' settlement negotiations."*Id.* at 6. It should be noted, however, that Plaintiffs' request did not seek settlement documents; Plaintiffs requested documents CIC produced to the FTC as a result of its investigation. It is Defendants who assert that virtually all of the documents are "settlement documents."

Defendants' argument suggested a parallel to the work product protection that prohibits an opposing party from asking a witness about the selection of particular documents were shown to him by his counsel in preparation for a deposition. (CIC's Sup-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-01384    Document 61-3    Filed 06/20/2008    Page 7 of 17

Not Reported in F.Supp.2d                                                                           Page 5
Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.), 2006-1 Trade Cases P 75,130
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.))**

pl. Br. at 10-11.) [Dkt 221.] However, Defendants have not been able to provide any authority to support that argument. *Id.* On examination, the analogy is not apt. An attorney's mental processes and strategies are the most protected aspect of attorney work product, but the information exchanged in settlement negotiations is not protected. Under Rule 408, evidence is not excluded simply because it is presented in the course of compromise negotiations. Furthermore, creating such a principle of protection would be particularly inappropriate in this case, where what is characterized by Defendants as "settlement negotiations" began with a government investigation. The documents and information that Defendants conveyed to the FTC were not the result of Defendants' sole selection; they were responsive to the FTC's requests. Thus, documents in category 2 must be produced.

*b. Documents in category 3.*

Defendants argue that they should not be required to produce documents in category 3, that is, documents prepared by Defendants especially in response to requests by the FTC for information, unless Plaintiffs make the showing required by *Vardon*. Defendants' argument relies on a premise for which they provide little authority, that is, that such documents are inadmissible pursuant to Rule 408 because they are "[e]vidence of conduct or statements made in compromise negotiations." F.R.E. 408.[FN4]

> FN4. In a footnote, Defendants argue that courts interpret the admissibility of settlement efforts with a government agency under Rule 408, and have not carved out any special rules. (CIC's Suppl. Br. Opp'n Pls.' Mot. Compel at 6 n. 3.) However, the cases Defendants cite provide thin support for such a broad statement. In *EEOC v. Gear Petroleum, Inc.,* 948 F.2d 1542 (10th Cir.1991), the issue was whether the district judge abused his discretion in not admitting into evidence two letters that the district judge construed as part of settlement negotiations, in part because of the statutory requirement that the EEOC engage in informal conciliation. 948 F.2d at 1543. Defendants also cite *U.S. v. OCCI Co.,* 758 F.2d 1160 (7th Cir.1985), which discussed in a footnote the "questionable" admissibility of a government agency's decision on a proposal to settle a foreclosure action. *Id.* at 1165 n. 6. Notably, that discussion did not relate to information provided to the government in the course of an investigation. Defendants also rely on *U.S. v. Lorince,* 773 F.Supp. 1082, 1096 (N.D.Ill.1991), which, they claim, held financial statements provided for purposes of settlement to be inadmissible. (CIC's Suppl. Br. Opp'n Pls.' Mot. Compel at 8.) However, that is not correct. The document at issue was a "Financial Statement of Debtor" submitted to the Small Business Administration as part of a form "Offer in Compromise." 773 F.Supp. at 1095. The court did not hold that the document was inadmissible; rather the court considered the document but concluded that it did not evidence either an admission of or intent to honor the debt, for purposes of reviving the statute of limitations. *Id* at 1099. The court also recognized that the government's attempted use of the document that was submitted as part of an express offer of compromise would undermine the policy of Rule 408. *Id.* at 1101.

*5 In fact, voluntary disclosure to an investigating governmental agency has been held to waive even attorney work product protection. *In re Steinhardt Partners, L.P.,* 9 F.3d 230, 235, 236 (2d Cir.1993) (work product protection waived with respect to a document which the defendant had produced to the SEC in the hope of preventing a formal investigation); *In re Bank One Securities Litigation,* 209 F.R.D. 418, 423-24 (N.D.Ill.2002) (work product protection waived as to submissions made by Bank

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-01384   Document 61-3   Filed 06/20/2008   Page 8 of 17

Not Reported in F.Supp.2d                                                                                                   Page 6
Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.), 2006-1 Trade Cases P 75,130
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.))**

One to the Office of the Comptroller of the Currency during the Office's investigation of Bank One).

Defendants attempt to distinguish the *Steinhardt* and *Bank One Securities* cases on the ground that the documents at issue in those cases were produced "during a government investigation, not settlement negotiations...." (CIC's Suppl. Br. Opp'n Pls.' Mot. Compel at 2.) Defendants acknowledge that the test applied in *Vardon* is not required to obtain discovery of documents produced in response to a government investigation. (*Id.* at 4.) However, they argue that the *Vardon* standard is required to obtain documents produced to the government in settlement negotiations, although they acknowledge there is no authority to support that argument. *Id.* at 6. Defendants' proposed distinction is illusory. As the court in *Steinhardt* recognized, the reason information is produced voluntarily to an investigating governmental agency is that "there is some benefit to be gained from disclosure ... [such as] an opportunity to avoid extended formal investigation and enforcement litigation by the SEC, the possibility of leniency for prior misdeeds, and an opportunity to narrow the issues in any resulting litigation." 9 F.3d at 235-36. Those were undoubtedly CIC's motives for providing information to FTC.

Defendants provide no objective basis for distinguishing between business information provided *in cooperation with* a government investigation and business information provided as part of an effort *to settle* a government investigation. Defendants' position is that a line should be drawn based on Darryl Gibson's declaration that in August 2002, he began discussions with the FTC in an effort to resolve the FTC's assertion that CIC's website was misleading. (Gibson Decl. ¶ 2.) Thereafter, Defendants argue, all communications with the FTC and information provided to the FTC (not just offers and counteroffers) were part of settlement negotiations, and therefore outside the scope of discovery unless Plaintiffs make the showing required by *Vardon.* However, the discussion in *Steinhardt* demonstrates that the motivation for cooperation with a government investigation is to reach a more favorable resolution, essentially a settlement. The standard for discovery cannot depend on Defendants' unilateral and subjective decision that on a particular date some line was crossed between cooperation and negotiation.

Significantly, the court in *Steinhardt* rejected the argument that requiring production to third parties of attorney work product conveyed to the SEC would discourage voluntary cooperation, in light of the incentives for cooperation with "such formidable adversaries as the SEC."9 F.3d at 236 (quotations omitted).*A fortiori*, it is unlikely that requiring the production to third parties of business information communicated to the FTC will deter anyone who receives notice that the FTC is commencing an investigation from cooperating with that investigation.

*6 There are also practical problems with Defendants' distinction. Defendants have not broken down the over 1000 pages delivered for *in camera* inspection between pre-existing business information and business information prepared for the FTC. For example, document 1434 contains statistics from 2000 to 2003 about the percentages of consumers who signed up for CIC's credit monitoring service but subsequently cancelled over time. The information in that document is presumably based on CIC's internal records predating the FTC investigation. Even if this particular document was prepared in response to the FTC's request, it is hard to see why that circumstance should exempt the document from discovery.

By not applying the standard set out in *Vardon* to categories 2 and 3, the court is not suggesting that those Plaintiffs have failed to make the showing required by *Vardon.*On the contrary, the information that the FTC was seeking appears to be very similar to the sort of information Plaintiffs have been seeking throughout discovery in this case, such as the number of complaints and requests for refunds CIC received from consumers. *See* CIC/INCAMERA

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-01384   Document 61-3   Filed 06/20/2008   Page 9 of 17

Not Reported in F.Supp.2d                                                                                          Page 7
Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.), 2006-1 Trade Cases P 75,130
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.))**

Doc. 12. Rather, the court finds that, for the reasons set out above, Defendants have not demonstrated that the court should require Plaintiffs to make the showing required by *Vardon* before requiring production of the documents at issue in categories 2 and 3.

*c. Documents in category 1.*

Category 1 includes documents that actually reflect CIC's and FTC's negotiations, that is, offers, counteroffers, acceptances, drafts of the proposed agreed order. Those documents may contain the type of candid "give and take discussion" that courts have protected from discovery. *See White,* 203 F.R.D. at 368. Defendants, rather than the court, should initially identify which of the documents delivered *in camera* reflect negotiations. Thus, Defendants may exempt from production any documents that contain express specific offers of compromise or expressly respond to an offer of compromise, and drafts of any settlement agreement, but must identify those documents by Bates number.

Conclusion

For the foregoing reasons, Plaintiffs' motion to compel documents relating to the FTC's investigation is granted in part and denied in part. Defendants shall produce to Plaintiffs's counsel all documents that were delivered to the court for *in camera* inspection on November 18, 2005, except the following: Defendants may withhold from production documents that contain express specific offers of compromise or expressly respond to an offer of compromise, and drafts of any settlement agreement; any documents so withheld must be identified by Bates number in a letter to Plaintiffs' counsel, with a copy to the court. This decision relates solely to discovery; decisions about admissibility of evidence are the prerogative of the judge presiding at trial.

IT IS SO ORDERED.

N.D.Ill.,2006.
Clark v. Experian Information Solutions, Inc.
Not Reported in F.Supp.2d, 2006 WL 626820 (N.D.Ill.), 2006-1 Trade Cases P 75,130

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 2

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1888986 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 1888986 (S.D.Ind.))**

Page 1

**H**
Davenport v. Indiana Masonic Home Foundation, Inc.
S.D.Ind.,2003.
Only the Westlaw citation is currently available.
United States District Court,S.D. Indiana,Indianapolis Division.
Nadine DAVENPORT, Plaintiff,
v.
INDIANA MASONIC HOME FOUNDATION, INCORPORATED, Grand Lodge of the Free and Accepted Masons d/b/a Indiana Masonic Home, David A. Ashbaugh, Dwight Singer, William D. Blasingame, Robert R. Stevens, John E. Grein, Robert Bailey, James L. Chesney, Max L. Carpenter, Douglas O. Fegenbush, Robert E. Hancock, Jr., Michael D. Brumback, Jerry B. Collins, George L. Korenski, George G. Jeffers, Darrell A. Veach, Robert M. Seibel, George E. Proctor, and other unnamed John Doe Indiana Masonic Home Foundation Incorporated Board Members, Defendants.
**No. IP 00-1047-CH/G.**

March 27, 2003.

Michael K. Sutherlin, Law Office of Michael Sutherlin & Associates, Indianapolis, IN, for plaintiffs.
Richard P. Winegardner, Barnes & Thornburg, Indianapolis, IN, for defendant.

ENTRY ON DISCOVERY MOTIONS

DAVID F. HAMILTON, Judge.
*1 Plaintiff, Nadine Davenport, sues the Indiana Masonic Home Foundation, Inc. ("the Foundation") and members of its Board of Directors, alleging that her employer, the Indiana Masonic Home ("the Home"), discriminated against her on the basis of sex and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Equal Pay Act, 29 U.S.C. § 206(d), and discriminated against her on the basis of a disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* She also asserts contract and tort claims under Indiana law.

This matter comes before the court on plaintiff's September 11, 2000 Motion to Compel and related filings, and on plaintiff's September 9, 2000 Motion to Quash and for Protective Order and related filings. Having considered the foregoing and being duly advised, the court hereby denies plaintiff's Motion to Compel, denies plaintiff's Motion to Quash, and grants plaintiff's Motion for Protective Order.

*Plaintiff's Motion to Compel*

Plaintiff Davenport filed a Motion to Compel concerning documents and testimony she requested from Gail Hammond, Davenport's former supervisor. Mr. Hammond was also terminated by defendants and had reached a settlement agreement with them. Plaintiff's motion seeks to compel Hammond, a nonparty, to produce testimony and any documents relating to his complaint against the Foundation or his settlement of that complaint, including the confidential settlement agreement. There is no question that Hammond possesses information relevant to Davenport's lawsuit, since he was her supervisor and allegedly had some knowledge of the workings of the Board in relation to Davenport. However, it is not clear that Davenport needs access to all the documents she seeks in her requests to Mr. Hammond.

As a preliminary matter, it must be noted that plaintiff's counsel deposed Hammond on March 14, 2002. Discovery had been stayed as to Davenport's Title VII and ADA claims, so those issues were not addressed. However, plaintiff's counsel was free to address any other issues he chose. Since the Title VII and ADA claims are being resolved on summary judgment for defendants, the deposition can now be considered to be complete. Thus, to the extent plaintiff's motion seeks to compel deposition testimony from Hammond, the motion is moot. If

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2
Not Reported in F.Supp.2d, 2003 WL 1888986 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 1888986 (S.D.Ind.))**

plaintiff had not yet deposed Hammond, her motion would have been granted since his testimony concerning the events leading up to her termination is clearly relevant.

Plaintiff also seeks to compel Hammond to produce all documents, personal notes, and correspondence relating to the his complaint and the settlement of his complaint against the Home. The confidential settlement agreement that resulted from Hammond's complaint is included in plaintiff's request. Plaintiff claims it will reveal the true legal identity of her employer. Hammond apparently destroyed all of his personal notes and correspondence of his own accord, so the remaining documents are all in the possession of his attorneys. As to these documents, Hammond claims attorney-client privilege and his attorney claims work product privilege, including for a May 5, 1999 tape recording in which Mr. Hammond stated for his attorney his "best recollection" of the events concerning his own complaint against the Home.

*2 The court agrees with Hammond and defendants that the May 5, 1999 tape is protected by the attorney-client privilege, and that there is no reason to compel the production of any other confidential and/or privileged documents. The May 5, 1999 tape is a confidential communication between client and attorney for the purpose of obtaining legal advice from the attorney. Even plaintiff's asserted need for the document cannot justify breaching the attorney-client privilege. Plaintiff agrees that the other documents in the attorney's possession are all privileged, so no further ruling on them is needed.

Further, the addition of the Grand Lodge of the Free and Accepted Masons d/b/a Indiana Masonic Home as a defendant in this lawsuit detracts from the persuasiveness of the reason proffered by plaintiff for her request to discover the confidential settlement agreement. If plaintiff wins her case, she will clearly be able to obtain a judgment against her proper employer. The defendants' reluctance to reveal their interrelationships should and will serve to cause them all to remain as defendants. However, it will not serve as the sole reason for the court to compel discovery of a confidential settlement agreement between defendants and another person. Settlement serves an important role in expediting and improving the efficiency of the litigation process. See *Grove Fresh Distribs., Inc. v. John Labatt Ltd.,* 888 F.Supp. 1427, 1441 (N.D.Ill.1995). Thus, courts are generally reluctant to order disclosure of negotiations or documents related to a settlement agreement. See *Butta-Brinkman v. FCA Int'l, Ltd.,* 164 F.R.D. 475, 476-77 (N.D.Ill.1995) (holding defendant not required to turn over confidential settlement agreements reached in other cases absent showing that plaintiff would be unable to obtain the relevant information through other discovery); *Cook v. Yellow Freight Sys., Inc.,* 132 F.R.D. 548, 550 (E.D.Cal.1990) (denying plaintiffs-employees' motion to compel production of material disclosed in settlement negotiations between employer and terminated employee who plaintiffs claimed sexually harassed them).

The entire confidential settlement agreement with Hammond has been submitted to the court for in camera review. It identifies "The Indiana Masonic Home" as Hammond's employer and one of the parties to the agreement. The agreement was signed by David Ashbaugh on behalf of "The Indiana Masonic Home." If that information is helpful to plaintiff, she might consider asking defendants to admit that it is true, but there is no need for granting plaintiff access to the entire agreement. Her motion to compel is therefore denied.

*Plaintiff's Motion to Quash and for Protective Order*

Defendants issued Non-Party Requests for Production of Documents and a subpoena duces tecum to Davenport's past employers and to the Indiana Department of Workforce Development. Plaintiff responded by filing a Motion to Quash and for Protective Order.

*3 Defendants' non-party document requests to

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2003 WL 1888986 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 1888986 (S.D.Ind.))**

Davenport's former employers seek her employment records, including personnel, employment and medical files which specifically relate to her employment; payroll histories including her entitlement to benefits; and copies of any charges, complaints or lawsuits which concern her. Defendants' subpoena duces tecum and requests for documents to the Indiana Department of Workforce Development essentially seek any and all formal or informal files and documents pertaining to any claim for benefits made by or concerning Davenport. Plaintiff claims that the items requested are irrelevant to this action and that the requests are intended only to harass and annoy her by invading her privacy.

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."Fed.R.Civ.P. 26(b)(1)."The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."*Id.* Defendants assert generally that past employment records are commonly discovered in employment discrimination actions. Then they claim that records from Davenport's previous employers are specifically relevant for a number of reasons. First, they claim that Davenport's promissory estoppel claim put her past employment history at issue. Her promissory estoppel claim asserts that she gave up an offer from a previous employer because defendants promised her a secure employment future with the Indiana Masonic Home. Next, defendants argue that her past employment records are relevant to damages in that they would determine her past compensation and benefits and could also help defendants prove mitigation. Also relevant to the question of damages, defendants assert they need her past employment records in order to determine if any "after-acquired evidence" might be used to mitigate any damages for which they could be liable. Regarding her employment-related medical records, defendants claim Davenport put her medical history at issue by claiming emotional injuries. Finally, defendants claim they need her past employment records in order to ensure they have identified all of Davenport's past employers.

Regarding records sought from the Indiana Department of Workforce Development, defendants assert that they are relevant to the date of Davenport's termination. There was formerly a dispute surrounding the exact date of her termination, the outcome of which was determinative of whether her Title VII and ADA claims were time-barred. That issue is being resolved in favor of defendants on their Motion for Partial Summary Judgment. However, defendants also assert that the records of any benefits received by Davenport would be relevant to the mitigation of any damages for which they might be liable.

The court must agree with defendants that all of the information sought is discoverable under the broad discovery scheme contemplated by Rule 26. Defendants' explanations provide sufficient justification for their requests. All of the information sought is either directly relevant to plaintiff's assertions in her complaint, or reasonably calculated to lead to the discovery of admissible evidence. However, Davenport has a legitimate privacy interest in her employment and unemployment records. To protect that interest, the court grants her motion for a protective order encompassing any evidence produced by any of the requests for production made or subpoenas issued to her past employers and the Indiana Department of Workforce Development. Counsel shall confer and shall submit to the court no later than April 30, 2003 either a stipulated protective order restricting defendants' use and disclosure of the documents, or separate proposed protective orders with a short statement of their differences.

*Conclusion*

*4 For all of the reasons discussed above: (1) plaintiff's Motion to Compel is DENIED; (2) plaintiff's Motion to Quash is DENIED; and (3) plaintiff's Motion for Protective Order is GRAN-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 4
Not Reported in F.Supp.2d, 2003 WL 1888986 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 1888986 (S.D.Ind.))**

TED.

So ordered.

S.D.Ind.,2003.
Davenport v. Indiana Masonic Home Foundation, Inc.
Not Reported in F.Supp.2d, 2003 WL 1888986 (S.D.Ind.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 3

Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 356509 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 356509 (N.D.Ill.))**

H
Information Technologies Intern., Inc. v. ITI of North Florida, Inc.
N.D.Ill.,2002.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
INFORMATION TECHNOLOGIES INTERNATIONAL, INC., an Illinois corporation, Plaintiff,
v.
ITI OF NORTH FLORIDA, INC., a Florida corporation, Global Network Solutions, Inc., a Florida corporation, Angelo V. Esposito, an individual, Matthew G. Alford, an individual, Marvin D. Lux, an individual, James B. Mitchell, an individual, Timothy Farren, an individual, Thomas Speer, an individual, Joseph Drysdale, an individual, Suzette Chauvin, an individual, and Rebecca J. Walden, an individual, Defendants.
No. 01 C 4668.

March 6, 2002.

MEMORANDUM OPINION AND ORDER

MASON, Magistrate J.
*1 Defendants ITI of North Florida et. al. (individually, "ITI-Florida", collectively, defendants) have filed a motion to compel certain discovery responses from plaintiff Information Technologies International, Inc. ("ITI"). All of the requested discovery concerns ITI's motion for an entry of contempt against the defendants because of their alleged breach of a temporary restraining order between the two parties. For the following reasons we grant the motion in part and deny it in part.

There are two sets of discovery requests at issue here: one served by defendant Esposito and one served by defendant ITI-Florida. Four of the six discovery requests served by Esposito relate to documents concerning former defendant Thomas Speer, who settled with the plaintiff and subsequently submitted an affidavit in support of plaintiff's motion for contempt. These four requests are somewhat duplicative; they ask for the settlement agreement between ITI and Speer and all documents related to either Speer, the agreement, or his affidavit, including drafts of the agreement and affidavit and communications between the parties and Speer or attorneys for any such entity. The other two requests ask for any other agreements plaintiff ITI has entered into with any party or non-party and any documents concerning communications between either ITI or ITI-Florida and any of the individual defendants except Esposito and Speer.

In its reply to the motion to compel, ITI states that it has produced all non-privileged documents responsive to the requests served by Esposito, which in total constitute the settlement agreement with Speer and his affidavit, and that it has asked defendant on several occasions to clarify its requests if it seeks additional documents. To the extent that Esposito's requests also encompass ITI's attorney's files relating to the Speer settlement and any other future settlements, ITI objects on the ground of the attorney-client privilege, and also objects to producing any non-final documents relating to the settlement. Esposito disagrees that the settlement documents should not be produced and also notes that he asked for any correspondence between ITI or its attorneys and Speer or his attorney, none of which has been produced.

Both parties cite *White v. Kenneth Warren & Son, Ltd.,* 203 F.R.D. 364 (N.D.Ill.2001) to support their positions regarding the production of background settlement documents. In that case, Magistrate Judge Denlow ordered the plaintiff to produce the settlement agreement it had entered into with one of the defendants, finding that the production of the agreement was relevant to the liability of the other defendants, who had all been accused of conspiring against plaintiff with regard to the purchase of valuable violins. Judge Denlow also noted that the terms of settlement agreements can often be helpful

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 356509 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 356509 (N.D.Ill.))

Page 2

in assessing a witness' bias and credibility. In this case, ITI has already produced the settlement agreement it has with Speer, and in Court, it agreed to produce the settlement agreements it has with two other former defendants.

*2 ITI does not need to produce any of the documents which set forth the negotiations leading up to the settlement(s). We are not convinced that drafts of the agreement or other such documents are relevant, especially since such production may have a chilling effect on parties' willingness to enter into settlement negotiations. See *White,* 203 F.R.D. at 367,*citing Vardon Golf v. BBMG Golf,* 156 F.R.D. 641, 652 (N.D.Ill.1994). The final agreement should incorporate all previous discussions and is sufficient to help the defendants assess Speer's credibility and bias. In open court, ITI informed the defendant that it does not have any responsive documents concerning the affidavit Speer submitted in support of the contempt motion or any of defendant's other requests; we order plaintiff to provide defendant with formal interrogatory responses to that effect.

The second part of the motion to compel concerns requests served by ITI-Florida having to do with ITI's calculations of its damages from the defendant's alleged breach of the TRO. Judge Coar ordered ITI to produce certain documents concerning damages, and to the extent that it has only produced a list of such documents, it must produce the actual pages. Further, ITI is ordered to answer ITI-Florida's interrogatories regarding the types of damages it is claiming, even if it cannot yet articulate the exact amounts.

Finally, both parties ask for monetary and other sanctions associated with the various discovery disputes. In January, the plaintiffs traveled to Florida in order to take the depositions of two individual plaintiffs, and to attend the deposition of Speer, noticed up by the defendants. Because the defendants believed that the plaintiff had not produced all relevant and responsive discovery documents, it refused to produce the individual defendants for deposition and likewise cancelled Speer's deposition. Although it has not made a formal motion, ITI's response to the motion to compel asks to be reimbursed for the costs associated with its trip to Florida and also asks that we order the depositions of the individual defendants to take place in Chicago, as well as bar the defendants from rescheduling the deposition of Speer. Defendants seek the costs and fees associated in bringing this motion.

After listening to the parties' discussion in open court, we find that they are both somewhat responsible for the costs associated with the discovery disputes, and thus decline to award costs or fees to either side. We deny plaintiff's request that the depositions of the two individual defendants take place in Chicago and decline to bar a further deposition of Speer. It is so ordered.

N.D.Ill.,2002.
Information Technologies Intern., Inc. v. ITI of North Florida, Inc.
Not Reported in F.Supp.2d, 2002 WL 356509 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.