IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MORTON GROVE PHARMACEUTICALS, INC., ) ) ) Plaintiff, ) ) vs. ) ) ) THE NATIONAL PEDICULOSIS ) ASSOCIATION, INC., ) ) Defendant. ) ) | No. 08-CV-1384 Judge Bucklo Magistrate Judge Mason |

**THE NATIONAL PEDICULOSIS ASSOCIATION, INC.'s REPLY
IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF
<u>DOCUMENTS RELATED TO ECOLOGY CENTER SETTLEMENT</u>**

Morton Grove's response focuses on the case law and public policy applicable when a party attempts to put at issue the other party's settlement agreement, but that is not the case here. It is Morton Grove that intends to use its own settlement agreement with the Ecology Center as "evidence" that NPA's statements are false. As explained below, it is clear that Morton Grove entered into that settlement with the express purpose of using it against NPA in this litigation and at the same time invoking the public policy encouraging settlements to prevent NPA from defending itself against this "evidence." That public policy, however, is not served by gamesmanship like Morton Grove's. Because Morton Grove -- not NPA -- wants to use its own settlement agreement offensively in this case, NPA should be permitted to conduct discovery into the circumstances surrounding that settlement, including the negotiations between Morton Grove and the Ecology Center. Accordingly, NPA's motion to compel should be granted, or Morton Grove should be barred from using its settlement with the Ecology Center for any purpose in this litigation.

First, Morton Grove does not even attempt to distinguish *Thompson v. Safeway, Inc.*, No. 01 C 3260, 2002 WL 500547 (N. D. Ill. Apr. 2, 2002), the case cited by NPA in its opening memorandum (Mem. at 8-9), or cite any cases to the contrary. The court in *Thompson* specifically held that a party may not put the terms of a settlement agreement at issue and then hide behind Federal Rule of Evidence 408. 2002 WL 500547, at *2. There, the plaintiff tried to prevent the defendants from using "materials, which were generated in the course of settlement negotiations" to rebut the plaintiff's allegations that the defendant had acted with bad faith and with undue delay. *Id.* The Court rejected the plaintiff's argument, holding: "It would be an abuse of Rule 408 to allow a plaintiff during compromise negotiations to complicate and delay resolution of the matter, point to that delay as evidence of the defendant's bad faith, and then prevent the defendant from explaining its actions because settlement discussions were involved." *Id.* (citations omitted). Other courts considering the issue have similarly held that, where a settling party seeks to affirmatively use its own settlement as evidence, it cannot hide behind the shield of Rule 408. *See, e.g.*, *Am. Family Life Assurance Co. of Columbus v. Teasdale*, 733 F.2d 559, 568 (8th Cir. 1984) (holding that, after plaintiff offered testimony about its settlement of a similar dispute with a third party, district court properly admitted testimony about settlement negotiations as relevant to (1) the "hostility [plaintiff] and its key witnesses harbored toward anyone who was critical of its product;" (2) the evidentiary weight of the settlement; and (3) to rebut plaintiff's claim that its sales dropped because of defendant's press release).

That is precisely what Morton Grove is improperly attempting to do here. As explained in NPA's opening memorandum, Morton Grove alleges in its complaint that its settlement with the Ecology Center is "evidence" that NPA's statements at issue are false. (Mem. at 3.) Morton Grove admits that it has "put in issue the fact that the Ecology Center publicly acknowledged

2

that its statements -- which are nearly identical to the NPA's statements -- were false and needed to be clarified." (Resp. at 3.) Despite this admission, Morton Grove, like the plaintiff in *Thompson*, then argues that NPA should not be permitted to use or even discover settlement negotiation materials, thus preventing NPA from explaining what actually occurred. The Court should not permit Morton Grove to abuse Rule 408 in this way.

Second, the cases cited by Morton Grove are inapposite. In those cases, the courts held that the production of settlement documents was inappropriate because the documents were not relevant, not because some blanket policy existed that barred discovery of such documents. *See, e.g.*, *Info. Techs. Int'l, Inc. v. ITI of N. Fl.*, No. 01 C 4668, 2002 WL 356509, at *2 (N.D. Ill. Mar. 6, 2002) (Mason, M.J.) ("*ITI*") (holding "[w]e are not convinced that drafts of the agreement or other such documents are relevant").

In this case, to the extent that the Ecology Center's so-called retractions are relevant[1], the negotiations would be relevant, at a minimum, to the weight the so-called retractions should be given. For example, curiously, Morton Grove had the Ecology Center "retract" two statements that were the subject of the claims against NPA, but were **not** the subject of any of Morton Grove's claims against the Ecology Center. NPA is entitled to find out how and why this occurred, including what inducements Morton Grove may have offered the Ecology Center to do so. These issues are relevant because they bear directly on the credibility of the entire settlement agreement, *i.e.*, whether or not that settlement was simply a sham for Morton Grove to use against NPA in this lawsuit. Similarly, the Ecology Center "retracted" only *some* of the statements at issue in the claims against it. Again, why the Ecology Center refused to retract the

---

[1] Morton Grove's assertion (Resp. at 2) that the parties do not dispute that the settlement negotiations are irrelevant is inaccurate. Morton Grove asserts that the Ecology Center's so-called retractions are relevant. NPA disagrees. If, however, the Court finds that the settlement terms are relevant, the negotiations through which those terms were reached are equally relevant.

3

others may be relevant to Morton Grove's attempt to use these "retractions" to show falsity. It is quite possible that the Ecology Center refused to retract the others and told Morton Grove that they unequivocally were accurate. Unlike in *ITI*, the final settlement agreement here plainly does **not** contain the entirety of the parties' discussions or agreement especially as to these issues, and, therefore, NPA should be permitted discovery. *See ITI*, 2002 WL 356509, at *2 (holding production of settlement negotiation documents not necessary in part because "[t]he final agreement should incorporate all previous discussions").

<u>Third</u>, Morton Grove's argument that the public policy behind preventing discovery into settlements should apply here because it had an agreement with the Ecology Center to keep the negotiations confidential is disingenuous at best. (Resp. at 1.) The purported confidentiality agreement arose at Morton Grove's, not the Ecology Center's, insistence. It appears that Morton Grove deliberately insisted on this agreement so that it affirmatively could try to use it to frustrate NPA's attempts to seek discovery, as it currently is doing. Indeed, it is apparent from Morton Grove's response and the settlement agreement itself that Morton Grove's goal in settling with the Ecology Center was to use that agreement offensively against NPA in this lawsuit. (*See* ¶ 13 of Exhibit 1 to NPA's Motion to Compel, filed under seal.)

Furthermore, Morton Grove's blanket assertion concerning the scope of this confidentiality agreement is belied by the "agreement" itself. The e-mail correspondence Morton Grove attaches to its response demonstrates that, at Morton Grove's request, the Ecology Center agreed to keep a single Morton Grove "proposal" confidential, not every document or conversation exchanged in the course of negotiating the settlement. (*See* Resp. at Ex. A.) In any event, such a private confidentiality agreement is not a valid excuse from production, particularly given that the final agreement is public, the Ecology Center and Morton Grove have both

4

publicly commented on the settlement, this Court already has entered a protective order in this case, and the confidentiality provision was at Morton Grove's insistence so that it could use it precisely as it is attempting to do right now. *See Channelmark Corp. v. Destinations Prods. Int'l, Inc.*, No. 99 C 214, 2000 WL 968818, at *5 (N.D. Ill. July 7, 2000) (enforcing subpoena of information relating to settlement agreement despite confidentiality agreement and holding the "public reaps no benefit by allowing settlement agreements to suppress evidence" and protective order provided adequate protection).

For all the foregoing reasons, as well as the reasons set forth in NPA's opening brief, NPA's motion should be granted.

Dated: June 25, 2008                     Respectfully Submitted,

                                         THE NATIONAL PEDICULOSIS
                                         ASSOCIATION, INC.


                                         By:   s/ Debbie L. Berman
                                                One of Its Attorneys

Debbie L. Berman (#6205154)
Amanda S. Amert (#6271860)
Wade A. Thomson (#6282174)
April A. Otterberg (#6290396)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, Illinois  60611
312-222-9350

**CERTIFICATE OF SERVICE**

I, Debbie L. Berman, hereby certify that on June 25, 2008, I caused copies of the foregoing **Defendant The National Pediculosis Association, Inc.'s Reply in Support of Its Motion to Compel Production of Documents Related to Ecology Center Settlement,** to be served upon the following via electronic filing through the CM/ECF system:

>Timothy Joseph Rivelli  (trivelli@winston.com)
>W. Gordon Dobie  (wdobie@winston.com)
>William Charles O'Neil  (*woneil@winston.com*)
>Cherish M. Keller  (*ckeller@winston.com*)
>WINSTON & STRAWN, LLP
>35 West Wacker Drive
>41st Floor
>Chicago, IL  60601
>Telephone:  (312) 558-5600
>Facsimile:  (312) 558-5700

>s/ Debbie L. Berman
>    Debbie L. Berman

6