**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MORTON GROVE PHARMACEUTICALS, INC., | ) |
| | ) |
| Plaintiff, | )   No.:  08-CV-1384 |
| | ) |
| v. | )   Judge Bucklo |
| | )   Magistrate Judge Mason |
| THE NATIONAL PEDICULOSIS | ) |
| ASSOCIATION, INC., | )   **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT THE NATIONAL PEDICULOSIS ASSOCIATION, INC.'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND DEPOSITION OF NON-PARTY DR. AMY S. PALLER**

Defendant the National Pediculosis Association, Inc. ("NPA") seeks to compel the deposition of and production of documents from non-party Amy S. Paller, a key witness in this matter.  In response to NPA's interrogatories, plaintiff Morton Grove Pharmaceuticals, Inc. ("Morton Grove") identified Dr. Paller as one of two individuals who have personal knowledge of the alleged falsity of certain NPA statements -- one of the critical issues in Morton Grove's Lanham Act and other claims against NPA.  Additionally, Dr. Paller is one of only three individuals identified as having independently reviewed Morton Grove's website, www.lindane.com, on which Morton Grove posted false or misleading statements that are at issue in NPA's counterclaim.  Dr. Paller, who is represented by Morton Grove's attorneys, objected to producing any documents (even her curriculum vitae) and sitting for her deposition because she is a "busy doctor."  As demonstrated below, Dr. Paller's objections are without merit.  Moreover, NPA was, and remains, willing to accommodate Dr. Paller's schedule and to narrow the document requests, but her counsel has refused to discuss a reasonable compromise.

Therefore, the Court should enter an order compelling Dr. Paller to produce responsive documents and to appear for a deposition.

## BACKGROUND

**A.    NPA Seeks Discovery From Dr. Paller.**

In its interrogatory responses, Morton Grove identified Dr. Paller as having knowledge of the alleged falsity of five NPA statements that are the basis of Morton Grove's claims. (Ex. 1 at 6-19; Ex. 2 at 5-13.)  Because Morton Grove had stated that all individuals identified in its interrogatory responses should only be contacted through its counsel, in order to seek discovery from Dr. Paller, NPA asked Morton Grove's counsel if they represented her.  Morton Grove's counsel responded:

> [w]ith respect to Doctors Gad, Herbert [*sic*], Paller and Shwayder, Morton Grove vehemently objects to their inclusion in these proceedings.[1]  The NPA's attempt to drag them into this case through its frivolous counterclaim is sanctionable in our judgment.  Morton Grove will represent these individuals if necessary, but please be assured that these third parties will be not voluntarily produced for depositions in this matter.

(Ex. 3, Decl. of W. Thomson ¶ 4 & Ex. B.)

Despite their obvious relevance, and despite NPA's counsel pointing out that Morton Grove had identified these individuals as having relevant information, Morton Grove's counsel refused to discuss making the doctors available for deposition. (*Id.* ¶¶ 5-6 & Exs. C & D.) Accordingly, on June 20, 2008, Dr. Paller was properly served with NPA's subpoena and subpoena duces tecum. (*Id.* ¶ 7 & Ex. E.)  On June 26, NPA asked Morton Grove to confirm that the date for Dr. Paller's deposition was convenient. (*Id.* ¶ 10 & Ex. H.)  Morton Grove responded that, contrary to its previous position, it did not represent Dr. Paller. (*Id.* ¶ 11 & Ex.

---

[1] Drs. Gad, Shwayder, and Hebert are three other third parties identified by Morton Grove as having knowledge of the facts alleged in its complaint. (*Id.*)

2

I.) Morton Grove then attempted to "object" to the subpoena, and counsel for NPA pointed out that only Dr. Paller could properly do so, since the subpoena was directed to her. (*Id.* ¶¶ 12-13 & Exs. J & K.) Morton Grove's counsel then reversed course again, said that it did represent her, and served objections to the subpoena on her behalf. (*Id.* ¶ 14 & Ex. L; Ex. 4, Objections & Resps. to Subpoena Issued to Dr. Amy Paller.)

> **B.    NPA's Good-Faith Attempts To Resolve The Issues Concerning The Subpoena On Dr. Paller.**

In the cover letter accompanying Dr. Paller's objections, Morton Grove's counsel stated that a meet and confer would not be "terribly productive" if NPA was not willing "to drop its requests for depositions and severely limit its document requests" because "[t]hese are busy physicians who are not willing to take time away from their time at indigent medical clinics and teaching responsibilities solely because they, like anyone else who has studied the issues, have knowledge that NPA's statements are false." (Ex. 3, Decl. of W. Thomson ¶ 14 & Ex. L.)

Despite counsel for Morton Grove's extreme position, on July 8, 2008, NPA's counsel offered to discuss narrowing the document requests. (*Id.* ¶ 15 & Ex. M.) After receiving no response from Morton Grove's attorneys, NPA followed up on July 14, 2008, to confirm that Dr. Paller was refusing to sit for her deposition and to produce any documents. (*Id.* ¶ 16 & Ex. N.) In response, Morton Grove's attorneys indicated that Dr. Paller and the other doctors were "willing to entertain a proposal from you to narrow the subpoena and minimize the burden" and suggested that "[t]hey may, for example, be willing to do a 30 minute telephone dep if you pay their normal hourly rates" but that "none of them are willing to do a 7 hour dep without any compensation for their time, so if that is your final position, go ahead and file your motions." (*Id.*)

Nevertheless, NPA's counsel set up a meet and confer for July 16, 2008, to see if the parties could resolve their issues. At that meet and confer, NPA said it was willing to limit the scope of the document requests and to discuss possibly shortening the deposition, once it better understood the specific kinds and amount of information in Dr. Paller's files. (*See id.* ¶ 17 & Ex. O.) Morton Grove's attorneys responded that unless NPA agreed to a specific time limit for the deposition (despite having no idea of the volume or content of the documents) and agreed to pay Dr. Paller's hourly rates for the deposition, there was nothing more to discuss. (*See id.*) The parties agreed they were at an impasse on these issues and had satisfied their obligations under Local Rule 37.2. (*See id.*)

## ARGUMENT

"The scope of material obtainable by a [Federal] Rule [of Civil Procedure] 45 subpoena is as broad as permitted under the discovery rules," and "[t]he party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant." *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008) (citations omitted). Dr. Paller cannot meet that burden. First, NPA seeks factual discovery from her on the issue that is at the heart of this lawsuit: the truth or falsity of the NPA statements that form the basis of Morton Grove's claims. Notably, nowhere in her objections to NPA's subpoena does Dr. Paller assert she does not possess relevant knowledge nor could she. Second, Dr. Paller's central objection that she is a "busy physician" who wishes to be compensated for her time is without merit. Because Dr. Paller is a fact witness with relevant personal knowledge, the fact that she happens to be a doctor does not entitle her to expert witness fees or other compensation. Third, she has not demonstrated that compliance with NPA's subpoena would be unduly burdensome, especially given that NPA remains willing to work with Dr. Paller to try to schedule her

4

deposition so as to accommodate her schedule and to try to make her production of documents easier. Because Dr. Paller has no legitimate basis for refusing to comply with NPA's subpoena, the Court should grant NPA's motion to compel.

**I.     DR. PALLER HAS PERSONAL KNOWLEDGE AND DOCUMENTS THAT ARE RELEVANT TO KEY ISSUES IN THIS CASE.**

**A.     Dr. Paller Has Information Highly Relevant To Morton Grove's Complaint Against NPA.**

Morton Grove alleges in its complaint that 13 statements on NPA's website are false and misleading advertisements under the Lanham Act and the Illinois Deceptive Trade Practices Act and constitute trade disparagement. A key element of its claims is the alleged falsity of those statements. *See, e.g.*, *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999) (first element of a Lanham Act claims is "a false statement of fact by the defendant in a commercial advertisement about its own or another's product"); *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 918 (N.D. Ill. 2007) ("untrue or misleading statements" required to state a claim under the Illinois Deceptive Trade Practices Act).

Accordingly, NPA served interrogatories on Morton Grove asking it to identify who has knowledge of the alleged falsity of these statements. With respect to five of these statements, Morton Grove identified Dr. Paller and another third party, Dr. Adelaide Hebert[2], as the only two individuals who have knowledge of their alleged falsity. (Ex. 1 at 5-13; Ex. 2 at 6-19.) Morton Grove did not identify any of its own employees as actually having knowledge of the alleged falsity of these five statements, but identified two employees as individuals who "may" have knowledge. (*Id.*) At their depositions, however, these Morton Grove employees had little, if anything, to say about the alleged falsity of these five statements, let alone personal knowledge.

---

[2] Dr. Hebert, who (like Dr. Paller) is represented by Morton Grove's counsel, was also subpoenaed by NPA and has made virtually the same objections to producing documents and sitting for a deposition. (Ex. 3, Decl. of W. Thomson ¶ 14 & Ex. L.)

5

So, that leaves Drs. Paller and Hebert as the only two people with knowledge for these five statements.

Given this relevant personal knowledge, NPA is entitled to obtain discovery from Dr. Paller on these issues. *See, e.g.*, *Williams*, 2008 WL 68680, at *4 (denying motion to quash subpoena that sought relevant information). NPA should be permitted to depose Dr. Paller about her knowledge with respect to these statements, and Dr. Paller should be required to produce documents responsive to Requests Nos. 5, 6 and 7, which correspond to this issue. Dr. Paller should also be required to answer questions and produce documents about her compensation and other remuneration from Morton Grove and companies involved in selling Morton Grove's products (Requests Nos. 1-3) because such issues concern her potential bias and credibility. *See, e.g.*, *Koken v. Am. Patriot Ins. Agency*, No. 05 C 1049, 2006 WL 1749689, at *5 (N.D. Ill. June 20, 2006) (quotation and citation omitted) (granting motion to compel production of consulting agreement between party and witness, particularly because party relied on that witness to defeat defendant's affirmative defense). Indeed, NPA recently learned at the deposition of one of Morton Grove's employees that one of the other non-party witnesses identified as having personal knowledge of issues in the complaint is Morton Grove's paid consultant; Morton Grove refuses to provide information regarding Dr. Paller or the other two doctors.

Morton Grove's counsel may argue that NPA does not need to depose Dr. Paller because (1) despite having identified Dr. Paller in its interrogatory responses, Morton Grove did not identify her in its Rule 26(a)(1) disclosure as someone it may call at trial; or (2) that instead of fact witnesses like Dr. Paller, it will rely on experts at trial. Neither of these arguments have merit. That Morton Grove may not call Dr. Paller at trial is of no consequence in determining if she has relevant information (which she clearly does). For any number of strategic reasons --

such as some of that person's testimony may not be helpful -- parties often do not list everyone with knowledge as potential trial witnesses. Also, NPA is entitled to obtain discovery from the individuals identified as having personal knowledge of the supposed falsity of NPA's statements to aid in cross-examining any experts Morton Grove uses to attempt to prove this element of its case.

Finally, while Dr. Paller did make a relevance objection to producing documents concerning NPA, it is difficult to see any legitimate basis for this objection. These documents may relate to the truth or falsity of NPA's statements or another key issue, whether NPA and Morton Grove are competitors for purposes of Morton Grove's Lanham Act standing. They also may relate to credibility and bias, and not just of Dr. Paller -- who knows what Morton Grove told her about NPA.

### B.   Dr. Paller Has Information Highly Relevant To NPA's Counterclaim.

NPA's counterclaim, under the Lanham Act and Illinois Deceptive Trade Practices Act, involves false or misleading statements that Morton Grove posted on its websites, lindane.com and lindanetruth.com. (Dkt. No. 37, NPA Ans. & Counterclaim.) Among other things, NPA alleges that several statements appearing on Morton Grove's websites, lindane.com and lindanetruth.com, constitute false or misleading advertising. (*See generally id.*)

As part of its defense, Morton Grove likely will argue these statements were reviewed by an independent panel of distinguished professionals on its advisory committee to ensure their accuracy. Dr. Paller is one of three individuals who sit on this committee and "independently reviewed" the websites' content. (Ex. 5.) NPA is entitled to inquire into Dr. Paller's personal knowledge about the alleged truth of Morton Grove's statements. Moreover, even if Morton Grove does not assert such a defense, Dr. Paller has personal knowledge about the review process performed before the statements were posted, which is relevant to whether Morton

Grove intentionally made false and misleading statements. Therefore, NPA should be permitted to depose Dr. Paller about these issues. Additionally, Dr. Paller should be required to produce documents responsive to Requests Nos. 5 and 9, which relate to these issues.

Morton Grove's counsel may try to oppose NPA's discovery into these issues by claiming that lindane.com is a lobbying website and thus is protected political speech. As a preliminary matter, Dr. Paller did not object to the document request seeking information regarding lindane.com on that basis, and, therefore, she has waived that objection. *See, e.g.*, *In re Thomas Consol. Indus., Inc.*, No. 04 CV 6185, 2005 WL 3776322, at *7 n.2 (N.D. Ill. May 29, 2005) (objection to interrogatory waived where not included in response). Furthermore, any such objection would be without merit. The Court is well aware of this issue, as it is the subject of Morton Grove's pending motion for a protective order. Events have occurred since the briefing on that issue that support NPA's position that the website is a commercial website. For example, Ralph Hodosh, Morton Grove's director of regulatory affairs and its affiant in its motion for a protective order as to "lobbying" documents, admitted in his deposition that he only recently learned about lindane.com primarily through Morton Grove's attorneys and has no personal knowledge about it. Such an admission stands in direct contrast to his previous affidavit to this Court that he had "personal knowledge" that lindane.com "was specifically created to counter multi-state efforts to ban Lindane medications" and that its "primary target audience . . . is legislators." (Dkt. No. 44-2, at Ex. P ¶¶ 5, 6.) Especially in light of Mr. Hodosh's recent testimony, NPA is entitled to test this claim and ask the website's purported independent reviewers about their understanding of the nature of their role and this website.

**II.    DR. PALLER'S OBJECTIONS LACK MERIT.**

    **A.    Dr. Paller's Status As A Doctor Does Not Qualify As Undue Burden Or Entitle Her To Extra Compensation.**

Dr. Paller's primary objection is that she is too busy to sit for a deposition or produce documents because she is a doctor. The law is clear, however, that there is not some exemption from the discovery process for busy professionals, even doctors. *See, e.g.*, *Ferrell v. IBP, Inc.*, No. C98-4047-MJM, 2000 WL 34032907, at *1 (N.D. Iowa Apr. 28, 2000) (witnesses' "demanding professional responsibilities" not a basis to quash subpoenas); *Alexander v. Fed. Bureau of Investigation*, No. 96-2123, 1998 WL 1048981, at *1 (D.D.C. Mar. 10, 1998) (non-party could not refuse to comply with subpoena merely because "his schedule is very full"); *Fisher v. Ford Motor Co.*, 178 F.R.D. 195, 199 (N.D. Ohio 1998) (doctors had to comply with subpoenas despite losing income because "[t]he law . . . imposes an obligation on all witnesses to provide their testimony. No exceptions are made for . . . professional status").

        **1.    Dr. Paller cannot demonstrate that complying with the subpoena would create an undue burden.**

Dr. Paller cannot prove that sitting for her deposition or producing documents would create an undue burden for her. With respect to her deposition, NPA's counsel has offered to accommodate her schedule. NPA is aware that she sees patients one and one-half days a week and is more than willing to schedule her deposition to avoid those days. NPA also will try to be as efficient as possible in taking this deposition. For example, NPA asked for a copy of Dr. Paller's curriculum vitae so that it might be able to reduce the number of questions about her background. NPA also informed her counsel that after it reviewed her documents, it might be in a position to estimate how long the deposition might be. (*See* Ex. 3, Decl. of W. Thomson ¶ 17 & Ex. O.)

With respect to producing documents, Dr. Paller makes the boilerplate objection that the requests are "burdensome." This is insufficient. Federal Rule of Civil Procedure 45 "does not provide a mechanism for this Court to quash a subpoena merely because compliance may be burdensome; rather, the burden imposed must be 'undue.'" *Ligas v. Marim*, No. 05 C 4331, 2007 WL 4225459, at *4 (N.D. Ill. Nov. 27, 2007). Here, given the obvious relevance of the information she possesses, Dr. Paller's conclusory assertions that compliance would be "burdensome" are insufficient. *See id.* at *3-4 (burden is not undue where information sought is highly relevant); *Richter v. Mut. of Omaha Ins. Co.*, Nos. 06-Misc.-011, CV 05-498 ABC, 2006 WL 1277906, at *3 (E.D. Wisc. May 5, 2006) (refusing to quash subpoena duces tecum because it sought relevant information, and the non-party made only conclusory allegations of burden).

Moreover, her claims of burden ring hollow. For example, in response to Request No. 8, which seeks documents relating to lindane.com, Dr. Paller first objects that producing responsive documents would be "burdensome," but then contends that "the vast majority of these documents are not in [her] possession, custody, or control." (Ex. 4 at 6.) If she does not have most of the documents, it is difficult to see how producing what she does have would be unduly burdensome. Furthermore, Request Nos. 1 and 2 ask for only documents sufficient to show compensation she received from Morton Grove and companies involved in selling Morton Grove's products, not all documents related to that topic.

Furthermore, because Dr. Paller's counsel took inflexible and unreasonable positions despite NPA's repeated offers to work to narrow the subpoena, Dr. Paller should not be able to

hide behind the subpoena and argue that the requests are overly broad or unduly burdensome because many of these issues likely could have been resolved without burdening the Court.[3]

### 2. Dr. Paller cannot demonstrate that she is entitled to hourly fees for her time.

Dr. Paller objects to the subpoena because "[n]o offer was made to pay [her] hourly fees for her time." This objection is without merit because she is a fact witness. *See Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1996) (affirming refusal to quash subpoena on ground that payment of only statutory witness fee to fact witness, an attorney, constituted undue burden); *Fisher*, 178 F.R.D. at 199 (same for doctor non-party witnesses).

Because Morton Grove identified Dr. Paller as a fact witness in its interrogatory responses, Federal Rule of Civil Procedure 26(b)(4) is inapplicable. As the advisory committee's note for that provision make clear, that provision "does not address itself to the expert whose information was not acquired in preparation for trial but rather was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit." Morton Grove agrees Dr. Paller is a fact witness rather than an expert: in responding to NPA's Interrogatory No. 1, Morton Grove stated it was disclosing only those persons (one of whom is Dr. Paller) who have "'personal knowledge' in the sense of an occurrence fact witness." (Ex. 2 at 2.) In the same vein, by virtue of her role as an advisor for Morton Grove's websites, Dr. Paller has personal knowledge relevant to NPA's counterclaim.

Similarly, contrary to Dr. Paller's claim (Ex. 4 at 2), the unretained expert exception in Federal Rule of Civil Procedure 45(c)(3)(B)(ii) is inapplicable. "Under that provision, the court

---

[3] For example, Dr. Paller claims that will she will have to "spend a substantial sum to hire an e-discovery vendor to gather" documents from her place of employment. (Ex. 4 at 2.) However, her employer's IT department might be able to run a short list of key words through her emails and documents. She also claims that documents may relate to her employer's matters, though it is hard to understand how the requested documents relate in any way to her employer. Again, this is an issue that the parties should have been able to work through.

11

should quash or modify a subpoena if the subpoena requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party." *Brogren v. Pohlad*, No. 94 C 6301, 1994 WL 654917, at *2 (N.D. Ill. Nov. 14, 1994) (citation omitted); *see also Grider v. Keystone Health Plan Central, Inc.*, No. Civ.A. 05-MC-40, 2005 WL 2030456, at *7 (M.D. Pa. July 28, 2005) (refusing to quash subpoena because the "proposed areas of inquiry sufficiently related to [the witness'] knowledge of factual issues relating to the underlying action"). Here, NPA is seeking information Dr. Paller has about the specific events and occurrences at issue in this lawsuit.

The factors set forth in *Brogren* support this conclusion: She is a fact witness "being called because of [her] knowledge of facts relevant to the case"; she will be testifying about "previously formed" opinions, if any, not "forming a new one"; she and Dr. Hebert are the only individuals who are "comparable" witnesses and neither is willing to testify; and there is no evidence that she is continually called to testify because of any alleged expertise. *See* 1994 WL 654917, at *2.

Moreover, as the court in *Demar v. United States*, 199 F.R.D. 617, 619 (N.D. Ill. 2001) explained, there is nothing special about doctors that entitles them to additional fees. To do so would "single[] out the medical profession for special treatment. While physicians certainly have significant overhead costs and a special expertise, so do a myriad of other professions." If Morton Grove feels strongly about Dr. Paller being compensated, it is free to pay her hourly rate, but that does not mean that NPA is required to do so. *Id.* at 620. There is no basis for Dr. Paller's objection that she is entitled to more than the standard witness fee to testify as a fact witness in this matter.

### B. Dr. Paller's Objection That NPA's Requests Are Duplicative Is Without Merit.

Dr. Paller's objection that NPA's requests seek "duplicative" documents also is without merit. There is no indication that Dr. Paller's responsive documents are coextensive with those produced by the parties. In fact, Morton Grove has produced only 16 documents bearing her name. (Ex. 3, Decl. of W. Thomson ¶ 18.) Furthermore, even though some documents Dr. Paller possesses may be similar to those produced by the parties, NPA is entitled to inquire into what information Dr. Paller has. *See aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770, 778 (N.D. Ill. 2005) (subpoena not unduly burdensome even though partially duplicative because the non-party's own knowledge, which was at issue, was not discoverable from a party). In addition, Morton Grove's production is not comprehensive; it has not included documents that have been produced by other non-party subpoena recipients. (Ex. 3, Decl. of W. Thomson ¶ 19.)

### III. MORTON GROVE'S OBJECTION TO NPA TAKING MORE THAN 10 DEPOSITIONS SHOULD BE REJECTED.

Morton Grove likely will object to NPA's deposing Dr. Paller because NPA already has noticed 10 depositions. To date, NPA has taken two depositions in this matter, and three additional depositions are scheduled during the weeks of July 28 and August 4. Although NPA has noticed additional depositions to ensure that discovery is completed in accordance with the Court's scheduling order (particularly because counsel for Morton Grove has been slow to provide dates for its current and former employees), NPA has no interest in taking duplicative or cumulative depositions, and will proceed only with those, like Dr. Paller's, that are likely to yield relevant information. Thus, Dr. Paller's objection that NPA will exceed the 10 deposition limit is premature.

In addition, as this Court will recall from the status hearing on June 26, 2008, NPA has long maintained that it will need more than ten depositions in this case, because, among other

things, Morton Grove has identified numerous individuals as having relevant information, and Morton Grove's change in ownership since filing its lawsuit has resulted in relevant information being fragmented among different individuals for different time periods. Assuming that the parties are unable to work out an acceptable compromise on this issue, NPA will seek leave to take more than ten depositions at the appropriate time -- i.e., once it has taken ten depositions, and can ascertain how many additional depositions it needs.

## CONCLUSION

For the reasons stated above, the Court should grant NPA's motion to compel and enter an order requiring Dr. Amy S. Paller to: (1) produce all non-privileged documents that are responsive to NPA's subpoena within 30 days from entry of the Court's order; and (2) appear for her deposition within 45 days from the entry of the Court's order.

Dated: July 28, 2008

Respectfully submitted,

THE NATIONAL PEDICULOSIS ASSOCIATION, INC.

By:  s/ Debbie L. Berman
    One of Its Attorneys

Debbie L. Berman (#67205154)
Amanda S. Amert (#6271860)
Wade A. Thomson (#6282174)
April A. Otterberg (#6290396)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484