**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MORTON GROVE | ) | |
| PHARMACEUTICALS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No: 08-CV-1384 |
| v. | ) | |
| | ) | Judge Bucklo |
| THE NATIONAL PEDICULOSIS | ) | Magistrate Judge Mason |
| ASSOCIATION, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MORTON GROVE PHARMACEUTICALS, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS
THE NATIONAL PEDICULOSIS ASSOCIATION, INC.'S COUNTERCLAIM**

**APPENDIX OF UNPUBLISHED CASES**

Tab 1      *Monotype Corp. v. Simon & Schuster Inc.*, 2000 WL 1852907 (N.D. Ill. Sept. 8, 2000)

Tab 2      Memorandum of Law in Support of Plaintiff Tropicana Products, Inc.'s Motion to Dismiss Amended Complaint, in *Tropicana Prods., Inc. v. Vero Beach Groves, Inc.*, No. 92-11044 (D. Mass Oct. 16, 1992)

Tab 3      Docket Listing for *Tropicana Prods., Inc. v. Vero Beach Groves, Inc.*, No. 92-11044 (D. Mass Oct. 16, 1992)

# TAB 1

Westlaw.

Not Reported in F.Supp.2d                                                                                 Page 1

Not Reported in F.Supp.2d, 2000 WL 1852907 (N.D.Ill.), 2000-2 Trade Cases P 73,120, 56 U.S.P.Q.2d 1465
**2000 WL 1852907 (N.D.Ill.)**

**C**

The Monotype Corp. v. Simon & Schuster Inc.
N.D.Ill.,2000.

United States District Court, N.D. Illinois.
THE MONOTYPE CORPORATION, Plaintiff,
v.
SIMON & SCHUSTER, INC., d/b/a Hayden
Books, Defendants.
**No. 99 C 4128.**

Sept. 8, 2000.

ORDER

GOTTSCHALL, District J.

*1 Plaintiff Monotype Corporation has brought suit against defendant Pearson Education, Inc.,FN1 doing business as Hayden Books, for trademark infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.* Pearson has filed a motion for summary judgment, and Monotype has filed a cross-motion for partial summary judgment. For the reasons stated below, Pearson's motion is granted in part and denied in part, and Monotype's motion is denied.

> FN1. The named defendant, Simon & Schuster, Inc., is the predecessor-in-interest of Pearson Education, Inc.

I. Background

Monotype, a Delaware Corporation with its principal place of business in Illinois, manufactures and distributes typographical products in various media. Monotype also owns a library of typefaces that includes such typefaces as Times New Roman, Rockwell, and the two that are the subject of the present action, Bembo and Gill Sans. Monotype uses these marks in connection with the distribution of digitized typeface designs.

In 1985 Monotype FN2 received registration for the

trademarks Bembo FN3 and Gill Sans. FN4 The marks are registered for use in connection with printed and digitized typeface designs for use in computers and graphic arts equipment. Both marks appear on the Principal Register and are now incontestible.

> FN2. The applications were filed by Monotype's predecessor, Monotype Corporation plc, a corporation existing under the laws of England that is currently in receivership.

> FN3. Registration No. 1,321,833, registered February 26, 1985.

> FN4. Registration No. 1,340,167, registered June 11, 1985.

In 1995, Pearson published a book and CD-ROM set entitled *Digital Type Design Guide* ("Guide"). The Guide provides technical information on the science of typography, including discussions on how to install and manage font software programs, identify and manipulate variations in characters used in typeface design, and select specific fonts to produce better-looking and more readable documents. The final chapter examines several categories of typeface designs, providing detailed information on over twenty different fonts. The CD-ROM, enclosed in the jacket pocket of the book's inside back cover, provides readers with a typeface library of approximately 200 font designs which are representative of the font categories discussed in the book. All of the typeface designs on the CD-ROM are licenced from SoftMaker, Inc., and are identified, both in the book and on the CD-ROM, by SoftMaker's trademarks.

The book contains discussions of both Bembo and Gill Sans. See Guide, pp. 174, 222. The book describes the history of each of these fonts and provides samples and suggested uses for each. The first paragraph of the Bembo discussion starts with the statement "Bembo (available as Bergamo on the

Not Reported in F.Supp.2d, 2000 WL 1852907 (N.D.Ill.), 2000-2 Trade Cases P 73,120, 56 U.S.P.Q.2d 1465
**2000 WL 1852907 (N.D.Ill.)**

companion CD)...." Guide, p. 174. The Gill Sans entry starts with a similar phrase, "Gill Sans (available on the companion CD as Chantilly)...." Guide, p. 222. Also, another part of the Guide identifies Bembo and Bergamo as being the same,[FN5] and Gill Sans and Chantilly as being the same.[FN6] Bembo and Bergamo are cross-referenced to each other in the index, and the same is true for Gill Sans and Chantilly. The introduction to the chapter on typefaces also states that "Some of the SoftMaker fonts have different names than the original typefaces, but the basic designs are similar, if not identical."Guide, p. 166. The CD-ROM does not use either of Monotype's marks to identify the fonts. The copyright page of the Guide also identifies Bembo and Gill Sans as registered trademarks of Monotype. The cover of the Guide states that it includes "Over 200 Fabulous Fonts ... FREE." The back cover also states that the Guide includes "220 PostScript and True Type fonts for Macintosh and Windows on companion CD-ROM."The covers make no reference to any particular fonts.

> FN5.*See* page 168 of the Guide, where a sample of Bergamo is identified as "Bergamo (aka Bembo)."

> FN6.*See* page 170 of the Guide, where a sample of Chantilly is labeled "Chantilly (aka Gill Sans)."

**\*2** Monotype also submitted downloads from the Internet web page of Sean Cavanaugh, author of the Guide, dated 12/10/98. The web page advertised the Guide, describing its contents and listing the 220 fonts included on the CD-ROM. The list states that the CD-ROM includes the fonts "Bergamo (aka Bembo)" and "Chantilly (aka Gill Sans)." Pl.Ex. AL-1. A subsequent download of the list dated 11/11/99, provided by Pearson to Monotype, also includes Bergamo and Chantilly, but the parentheticals that appear on the 12/10/98 list have been deleted. Pl.Ex. AL-4.

Monotype has submitted a declaration from one of its employees, Thomas Alan Ricker, who it claims

is an expert in the fields of typography, typeface design, and digitized typeface production. Ricker claims that the horizontal and vertical spacing of characters and lines is not the same for Bembo and Bergamo, nor is it the same for Gill Sans and Chantilly. As a result, there are significant differences between the fonts sold under the Monotype trademarks and the fonts included on the CD-ROM.

On June 24, 1999, Monotype brought suit against Pearson, claiming infringement of its Bembo and Gill Sans marks. Pearson has filed a motion for judgment on the pleadings, or in the alternative, for summary judgment, arguing that the Guide does not infringe Monotype's trademarks under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Monotype has filed a cross-motion for partial summary judgment on its claim of infringement, also under § 43(a).

## II. Discussion

### A. Standard of Review

The standard for determining whether to grant a defendant's motion on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is the same as that governing a motion to dismiss for failure to state a claim under Rule 12(b)(6).*United States v. Wood,* 925 F.2d 1580, 1581 (7th Cir.1991). A motion for judgment on the pleadings will be granted where the material facts are not in dispute and judgment may be achieved by determination of legal issues. *Alexander v. City of Chicago,* 994 F.2d 333, 335-36 (7th Cir.1993). If "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment...."Fed.R.Civ.P. 12(c). In this case, Monotype has presented matters outside the pleadings, including evidence of infringing Internet advertising and expert testimony, so the court will treat this motion as one for summary judgment.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1852907 (N.D.Ill.), 2000-2 Trade Cases P 73,120, 56 U.S.P.Q.2d 1465
**2000 WL 1852907 (N.D.Ill.)**

forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(c). The court views the record and all reasonable inferences in the light most favorable to the nonmoving party. *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 346 (7th Cir.1997). The movant has the burden of establishing that there is no genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmovant must set forth specific facts that demonstrate the existence of a genuine issue for trial.*Id.* at 324.However, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, the nonmovant must produce "specific facts showing that there is a genuine issue for trial."Fed.R.Civ.P. 56(e). On cross-motions for summary judgment, each movant individually must satisfy the requirements of Rule 56. *Hot Wax, Inc. v. Warsaw Chem. Co., Inc.,* 45 F.Supp.2d 635, 645 (N.D.Ill.1999). The court considers the merits of each cross-motion separately and draws all reasonable inferences and resolves all factual uncertainties against the party whose motion is under consideration. *Id.*

## B. Infringement under § 43(a)

**\*3** The relevant portion of § 43(a) of the Lanham Act provides as follows:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection,

or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a). Monotype argues that Pearson is liable for infringement under both subsections (A) and (B) of § 43(a)(1). Both parties have moved for summary judgment under both subsections. The court will address arguments made in connection with each subsection in turn.

## 1. § 43(a)(1)(A)-False Designation of Origin

To establish a prima facie false designation of origin claim under § 43(a)(1)(A), a plaintiff must establish that: (1) the defendant used a false designation of origin or false description or representation in connection with goods or services; (2) the defendant caused such goods or services to enter into interstate commerce; and (3) the plaintiff "believes that he or she is likely to be damaged as a result thereof."*Web Printing Controls Co., Inc. v. Oxy-Dry Corp.,* 906 F.2d 1202, 1204 (7th Cir.1990) (quoting 15 U.S.C. § 1125(a)(1)). To satisfy the third element, actual confusion is not necessary. Rather, the plaintiff need only show that there is a likelihood that consumers will be confused by the false representation. *Id.*

False designation of origin claims take two basic forms, "passing off" claims and "reverse passing off" claims. "Passing off" involves "the selling of a good or service of one's own creation under the name or mark of another."*Web Printing Controls,* 906 F.2d at 1203 n. 1 (quoting *Smith v. Montero,* 648 F.2d 602, 604-5 (9th Cir.1981)). "Reverse

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1852907 (N.D.Ill.), 2000-2 Trade Cases P 73,120, 56 U.S.P.Q.2d 1465
**2000 WL 1852907 (N.D.Ill.)**

passing off" occurs "when a person removes or obliterates the original trademark, without authorization, before reselling goods produced by someone else."*Id.* This case involves allegations of passing off by Pearson, as it is using Monotype's marks to identify the fonts on the CD-ROM that it licensed from SoftMaker.

Both parties have moved for summary judgment on Monotype's false designation of origin claim under § 43(a)(1)(A). The court will review these in turn.

a. Pearson's Motion for Summary Judgment under § 43(a)(1)(A)

**\*4** Pearson first argues that it is not liable under § 43(a)(1)(A) because its use of Monotype marks within text of the Guide is not use of the marks as trademarks. Monotype disputes this, claiming that Pearson's use of the marks in the book in connection with the CD-ROM is a trademark use.

"Use of trademarks to refer to something which is the subject of commentary, to identify the subject of commentary, is not a violation of the Lanham Act."*Ty, Inc. v. Publications Int'l, Ltd ., 81 F.Supp.2d 899, 906 (N.D.Ill.2000).* Here, if the Guide did not include the companion CD-ROM and the disputed references to it in the text, Pearson's argument would have some merit because the Guide's discussions of Bembo and Gill Sans are not trademark uses of those marks. Rather, the text of the Guide primarily discusses the history and uses of the fonts. However, the Guide does include the CD-ROM and it states that Bembo is available as Bergamo on the disk, as is Gill Sans as Chantilly. In this case, these statements are trademark use-Pearson is using Monotype's mark to identify the fonts on the disk. As a result, Pearson is passing off the fonts on the disk it licenced from SoftMaker as Monotype fonts. This is further supported by the earlier printouts of the author's web site, which advertised the CD-ROM as including the Monotype fonts. As a result, Pearson's argument that it is not using the Monotype marks as trademarks fails.

Pearson argues that the statements "Bembo (available as Bergamo on the companion CD)" and "Gill Sans (available on the companion CD as Chantilly)" are not false on their face. The court disagrees. Bembo and Gill Sans identify typefaces produced by Monotype. The Monotype fonts are not available on the companion CD-ROM. The statements in the Guide clearly make false representations that they are.

In support of its argument, Pearson cites *Bridgeman Art Library, Ltd. v. Corel Corp., 25 F.Supp.2d 421 (S.D.N.Y.1998).* In *Bridgeman,* the plaintiff marketed transparencies and CD-ROMs of reproductions of famous public domain works of art. The defendant began marketing a similar CD-ROM of famous painting reproductions, and the plaintiff brought suit claiming copyright and trademark infringement. With regard to the trademark claim, the court found that the defendant did not violate Section 43(a) of the Lanham Act. The plaintiff had claimed that the public had come to associate the famous works of art themselves, images of which were in the plaintiff's collection of reproductions, with the plaintiff or its client museums. However, the court found that the images in question did not serve as trademarks, *i.e.,* serve to identify the source of the plaintiff's products or services, nor had the plaintiff alleged any trademark use by the defendant of any of the images.*Id.* at 429-30.

*Bridgeman* is readily distinguishable. Unlike *Bridgeman,* which dealt with trademark protection for the contents of a CD-ROM, the present case deals with trademarks that are used to identify the source of the contents of the CD-ROM. While the plaintiff in *Bridgeman* claimed that the goods themselves, *i.e.,* the reproductions, were entitled to trademark protection, Monotype makes no such claim for its digitized fonts. Instead, Monotype claims that the marks used to identify those fonts, Bembo and Gill Sans, are entitled to protection. The factual differences in *Bridgeman* render it inapplicable to the present case.

**\*5** Pearson next argues that even if it did make

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1852907 (N.D.Ill.), 2000-2 Trade Cases P 73,120, 56 U.S.P.Q.2d 1465
**2000 WL 1852907 (N.D.Ill.)**

trademark use of Monotype's trademarks, Monotype's claims still fail because it has used Monotype's marks solely to identify the fonts to which those marks refer, and such use must be considered "fair use." However, Monotype's expert states in his declaration that there are differences between the Monotype and SoftMaker fonts. If this is indeed the case, then Pearson is not using the mark solely to identify the fonts to which Monotype's marks refer. Instead, it is using Monotype's marks to identify the different fonts it has licensed from SoftMaker. Because this is an issue of material fact, Pearson is not entitled to summary judgment.

In light of the foregoing, Pearson's motion for summary judgment on Monotype's claim of false designation of origin under § 43(a)(1)(A) is denied.

b. Monotype's Cross-Motion for Summary Judgment under § 43(a)(1)(A)

Monotype has also moved for summary judgment on its claim under § 43(a)(1)(A), arguing that it is entitled to summary judgment on its false association or endorsement claim. Pearson contends that on the undisputed facts Monotype's claim fails as a matter of law.

As stated above, to establish a prima facie false designation of origin claim, a plaintiff must establish that: (1) the defendant used a false designation of origin or false description or representation in connection with goods or services; (2) the defendant caused such goods or services to enter into commerce; and (3) the plaintiff believes that it will be damaged as a result. *Web Printing Controls,* 906 F.2d at 1204. As this court found in its discussion of Pearson's motion for summary judgment, Pearson used Monotype's marks as false designations for the SoftMaker fonts on the CD-ROM. Monotype has therefore established criterion (1).

Monotype must next show that Pearson caused the Guide to enter into commerce. Monotype must show that "the offending materials have a substan-

tial impact on interstate commerce." *PS Promotions, Inc. v. Stern,* 2000 WL 283092, at *9 (N.D.Ill. Mar. 8, 2000) (citing *Thompson Tank & Mfg. Co. v. Thompson,* 693 F.2d 991, 992-93 (7th Cir.1982). In the present case, neither party has addressed this issue, so there is no indication as to whether the Guide had any, let alone a substantial, impact on interstate commerce. As a result, summary judgment on this claim is inappropriate at this stage.

Because Monotype has failed to establish factor (2), the court will not address whether Monotype has established factor (3), a belief that it will be damaged as a result of the false designation of origin. Monotype has failed to satisfy the requirements of the test set forth in *Web Printing Controls,* so its motion for summary judgment on its false designation of origin claim under § 43(a)(1)(A) is also denied.

2. § 43(a)(1)(B)-False or Deceptive Advertising

Both parties also have moved for summary judgment on Monotype's false advertising claim under § 43(a)(1)(B).

*6 To establish a claim under the false or deceptive advertising prong of § 43(a), a plaintiff must prove: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products. *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 819 (7th Cir.1999). The false statement necessary to establish a violation generally falls into one of two categories: (1) commercial claims that are literally false as a factual matter; or (2) claims that may be literally true or ambiguous,

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2000 WL 1852907 (N.D.Ill.), 2000-2 Trade Cases P 73,120, 56 U.S.P.Q.2d 1465
**2000 WL 1852907 (N.D.Ill.)**

but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers. *Id.* at 820. When the statement is actually false, the plaintiff need not show that the statement either actually deceived consumers or was likely to do so. In contrast, when a statement is literally true or ambiguous, the plaintiff must prove that the statement is misleading in context by demonstrating actual consumer confusion. *Id.*

a. Pearson's § 43(a)(1)(B) Arguments

Pearson makes several arguments in support of its summary judgment motion. First, it claims that as a publisher of educational and related materials, it is not a competitor of Monotype in the business of selling digitized typeface designs and typographic products. However, this argument is without merit. The Guide includes a CD-ROM containing digitized typeface designs, and both the cover of the Guide and the web site advertisement tell the purchaser that the digitized typeface designs are included with purchase of the Guide. Clearly Pearson is not selling an educational Guide about fonts: rather, it is selling a package consisting of digitized fonts and an educational Guide. Because Pearson is selling digitized fonts, it is a competitor of Monotype.

Second, Pearson argues that the disputed statements are not commercial speech, and as a result, the Guide is not "advertising" under the statute. Monotype counters that the Guide is commercial speech for Lanham Act purposes.

In order for a statement to amount to "commercial advertising or promotion," the statements must be (1) commercial speech (2) by a defendant who is in commercial competition with the plaintiff (3) for the purpose of inducing consumers to buy defendant's goods or services (4) disseminated sufficiently to the relevant purchasing public. *Health Care Compare Corp. v. United Payors & United Providers, Inc., 1998 WL 122900, at *3 (N.D.Ill. Mar. 13, 1998).*

"A threshold requirement of stating a cause of action under § 1125(a)(1)(B) is that the false or misleading representations of fact be made 'in commercial advertising or promotion.' " *Oxycal Lab., Inc. v. Jeffers, 909 F.Supp. 719, 722 (S.D.Cal.1995).* To fall within the category of 'commercial advertising or promotion,' the representations must first be found to be commercial speech. *Id. at 723.* The Supreme Court has defined commercial speech as "speech proposing a commercial transaction." *United States v. Edge Broadcasting Co., 509 U.S. 418, 426 (1993).* " '[E]xpression related solely to the economic interests of the speaker and its audience' will be considered commercial speech." *Oxycal, 909 F.Supp. at 724* (quoting *City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 419 (1993).*

**\*7** "Even if the general purpose of [a book] is not to promote a commercial transaction, it is possible that the Book contains speech which qualifies as commercial." *Oxycal, 909 F.Supp. at 724* (citing *Discovery Network, 507 U.S. at 419-21).* The Supreme Court "has treated disparate situations involving mixed commercial and noncommercial speech in disparate ways, looking to the essential nature of the speech in question." *Gordon and Breach Science Publishers S.A. v. American Inst. of Physics, 859 F.Supp. 1521, 1540 (S.D.N.Y.1994).* "The key seems to be a determination of whether the speech is primarily motivated by commercial concerns, or whether there is [sic] sufficient non-commercial motivations." *Oxycal, 909 F.Supp. at 725.* The Supreme Court has held that where the main purpose of a work is non-commercial and the commercial and non-commercial components of "a single speech are inextricably intertwined, we cannot parcel out the speech, applying one test to one phrase and another test to another phrase .... Therefore, we apply our test for fully-protected expression." *Riley v. National Fed'n of the Blind, 487 U.S. 781, 795-96 (1988).* In contrast, where the primary purpose of the work is commercial, the Supreme Court has held that adding non-commercial informational content will

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 1852907 (N.D.Ill.), 2000-2 Trade Cases P 73,120, 56 U.S.P.Q.2d 1465
**2000 WL 1852907 (N.D.Ill.)**

not mask the commercial nature of the work. *See Bolger v. Youngs Drug Prod. Corp.,* 463 U.S. 60, 62 (1983).

In this case, an examination of the Guide reveals that it is non-commercial in nature. It is over 270 pages in length and it contains extensive discussions on a wide variety of topics related to typefaces. Much of the discussion is technical in nature. Furthermore, even if the court assumes that the allegedly false statements qualify as commercial speech, they do not change the non-commercial nature of the Guide. The two statements are buried within the text of the Guide, and the court does not believe that two lines of commercial text in a 270-page book can support a conclusion that the Guide is commercial in nature. Because the primary purpose of the Guide is non-commercial, it is outside the scope of § 43(a)(1)(B).

Monotype argues that the non-commercial aspect of the Guide is not inextricably intertwined with Pearson's efforts to sell software containing digitized fonts because the CD-ROM is readily separable from the Guide. However, the issue is not whether the Guide and the CD-ROM are inextricably intertwined. Rather, the issue is whether the two alleged false advertisements (the commercial speech) are inextricably intertwined with the text of the Guide (the non-commercial speech). The Guide and the CD-ROM are sold as a unit, and the commercial speech is inextricably intertwined with the non-commercial speech because it facilitates use of the Guide in conjunction with the companion CD-ROM. The book was written for use with the CD-ROM, and fact that the CD-ROM could be marketed separately does not transform the nature of the Guide from non-commercial speech to commercial speech.

**\*8** Because the Guide is non-commercial speech not subject to liability under § 43(a)(1)(B), Pearson's motion for summary judgment on Monotype's false advertising claim is granted. Monotype's motion for partial summary judgment under § 43(a)(1)(B) is denied.

III. Conclusion

For the reasons stated above, Pearson's motion for summary judgment is denied with regard to Monotype's false designation claim under § 43(a)(1)(A), and granted with regard to Monotype's false advertising claim under § 43(a)(1)(B). Monotype's motion for partial summary judgment under § 43(a)(1)(A) and § 43(a)(1)(B) is denied.

N.D.Ill.,2000.
The Monotype Corp. v. Simon & Schuster Inc.
Not Reported in F.Supp.2d, 2000 WL 1852907 (N.D.Ill.), 2000-2 Trade Cases P 73,120, 56 U.S.P.Q.2d 1465

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# TAB 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

TROPICANA PRODUCTS, INC.  )
                          )
          Plaintiff,      )
                          )
    vs.                   )
                          )    Civil Action No. 92-11044-K
VERO BEACH GROVES, INC.,  )
                          )
          Defendant.      )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF TROPICANA PRODUCTS, INC.'S MOTION TO DISMISS AMENDED COUNTERCLAIM

Plaintiff Tropicana Products, Inc. ("Tropicana"), by and through its attorneys, respectfully submits the following Memorandum of Law in Support of its Motion to Dismiss the Amended Counterclaim, pursuant to Rules 13, 12(b)(6), and 12(c)[1] of the Federal Rules of Civil Procedure.

A.    VERO BEACH'S AMENDED COUNTERCLAIM DOES NOT STATE A CLAIM UNDER EITHER THE FEDERAL LANHAM ACT OR STATE LAW

This Court may grant a motion to dismiss under Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure if the pleading presents no set of facts which would entitle plaintiff to relief. See Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988) (court affirmed dismissal under Rule 12(b)(6)); Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) (court affirmed dismissal of amended complaint under Fed. R. Civ. P. 12(c)). In considering

---

[1]    Tropicana recognizes that the citation to matters outside of the counterclaim, as amended, may convert this motion to Rule 56 treatment. While Tropicana has sought to avoid this result, it must, in part, to address counter-plaintiff's clear pleading deficiencies. See e.g. Wright & Miller, Federal Practice and Procedure: Civil, § 1371 at 543 (1969 & Supp. 1989) (stating that "[i]t is within the court's discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment.").

the amended counterclaim, this Court need only accept as true well-pled factual averments. Gooley, 851 F.2d at 514. Averments are not well-pled and need not be accepted as true where they are nothing more than "bald assertions, unsupportable conclusions and 'opprobrious epithets'." Id. Moreover, while reasonable inferences drawable from factual averments must be accepted, mere conclusions characterizing pleaded facts are not, nor are "unwarranted inferences drawn from the facts or footless conclusions of law predicated upon them." Bryson v. City of Edmond, 905 F.2d 1386, 1390 (10th Cir. 1990).

None of Vero Beach's alleged causes of action meet the required pleading standards for the claims made in the Amended Counterclaim. Therefore, this Court should dismiss all three counts for failure to state a claim.

### 1. Count I -- Lanham Act Section 43(a)

Section 43(a) of the Lanham Act provides, in relevant part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact or false or misleading representation of fact, which . . . (2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (Supp. 1992) (emphasis added).

Vero Beach alleges that Tropicana's advertising campaign is facially false. (Amended Counterclaim ¶¶ 7, 9, 11, 12). To plead this claim properly, Vero Beach must allege that Tropicana falsely describes or represents a fact. Ditri v. Coldwell Banker

-2-

Residential Affiliates, Inc., 954 F.2d 869, 872 (3d Cir. 1992);

Cook, Perkiss & Liehe v. Northern California Collection Service,

Inc., 911 F.2d 242, 244 (9th Cir. 1990); Coca-Cola Co. v. Tropicana

Prods., Inc., 690 F.2d 312 (2d Cir. 1982); Truck Components, Inc.

v. K-H Corp., 776 F. Supp. 405, 408 (N.D. Ill. 1991).[2/]  Vero Beach

has not alleged, nor could it, that Tropicana at any time in any

medium affirmatively stated that its Pure Premium® product is fresh

squeezed orange juice.  Rather, Vero Beach alleges that "Tropicana

has run print and television advertisements falsely equating the

taste and quality of Pure Premium with that of actually fresh

squeezed juice in Boston."  (Amended Counterclaim ¶ 9) (emphasis

added).  It then appends to the Amended Counterclaim an example of

what it purports to be a transcript of a Tropicana television

commercial:

> When you want the great taste of fresh
> squeezed orange juice, juice made with only
> 100% pure oranges, remember, no other major
> brand comes closer to this [graphic showing
> girl throwing straw into orange hanging on
> tree] -- than this [graphic showing "Pure
> Premium" carton].  Tropicana "Pure Premium with
> no water added and none taken away.  In fact
> this is all we ever add [graphic showing a

---

[2/]    See also Alpo Petfoods, Inc. v. Ralston Purina Co., 913 F.2d
958, 964 (D.C. Cir. 1990) (Thomas, C., J.) (defendant's claim that
its puppy food product reduced severity of canine hip dysplasia
violated § 43(a)); Castrol, Inc. v. Pennzoil Co., 1992 U.S. Dist.
Lexis 8078 (D. N. J. May 26, 1992) (unpublished disposition) (claim
that motor oil reduced viscosity breakdown and prolonged engine
life violated § 43(a)); American Home Products Corp. v. Johnson &
Johnson, 654 F. Supp. 568 (S.D.N.Y. 1987) (false advertising found
where advertisement claimed hospitals recommended defendant's
product over others when in fact hospitals merely recommended pain
relievers which contained ingredient found in defendant's);
Maybelline Co. v. Noxell Corp., 643 F. Supp. 294, 295 (E.D. Ark.
1986, rev'd on venue grounds, 813 F.2d 901 (8th Cir. 1987) (false
advertising found where advertisements claimed mascara was
waterproof when in fact testing revealed product was not
waterproof).

> straw].   So when you want that great fresh
> squeezed taste, remember you just can't pick
> a better juice that Tropicana "Pure Premium."
> . . .

(Amended Counterclaim ¶ 9, and Exhibit A attached thereto).   More

importantly, Vero Beach has failed to allege that any <u>fact</u>

contained in the advertisement is false.   Indeed, the only <u>facts</u>

contained in the advertisement are that Pure Premium® is made from

pure oranges with no water added or taken away.   Vero Beach does

not challenge these claims.   Thus, there is nothing facially false

contained in this advertisement.

Furthermore, Vero Beach's reliance on <u>Coca-Cola Co. v.</u>

<u>Tropicana Prods., Inc.</u>, 690 F.2d 312 (2d Cir. 1982), is misplaced.

The Court in that case found that the visual portion of the

advertisement in question made an untrue representation of how the

product was <u>prepared</u>.   690 F.2d at 318.   The challenged

advertisements do not describe methods of production or

preparation.   Rather, as Vero Beach's own allegations make clear,[3/]

the advertisements attempt to convey a message that Pure Premium®

<u>tastes</u> more like fresh squeezed than any other major brand.   In

fact, the audio portion of the advertisement makes clear that the

similarity between Pure Premium® and fresh squeezed juice lies not

in production methods but in taste: "When you want the great <u>taste</u>

of fresh squeezed orange juice . . . nothing comes closer to this

_____

[3/]   <u>See</u> Amended Counterclaim at ¶ 9 (advertisements "falsely
equate[] the taste and quality of 'Pure Premium' with that of
actually fresh squeezed juice..."); ¶ 10 ("advertisement states
that 'Pure Premium' has, 'fresh-squeezed taste'."); ¶ 11
(advertising "falsely suggests that the taste of 'Pure Premium' is
the same as that of fresh-squeezed orange juice." and ad is an
"explicit representation that 'Pure Premium' tastes like fresh
squeezed orange juice."); ¶ 12 ("Tropicana 'Pure Premium' does not
and cannot taste like fresh-squeezed orange juice.").

[an orange] than this, Tropicana Pure Premium®."  (Exhibit A to Amended Counterclaim).   Therefore, despite its parroting of the Second Circuit's holding, Vero Beach's allegations fail to state a claim for facially false advertising.

In addition, Vero Beach's bald assertion that "as pasteurized orange juice, Tropicana 'Pure Premium' does not and cannot taste like fresh-squeezed orange juice" (Amended Counterclaim ¶ 12) is pure _ipse dixit_ and without any other factual support.  Surely, to compare Pure Premium®'s taste to that of fresh squeezed orange juice is not to say that Pure Premium® "is" fresh squeezed.  Under Vero Beach's logic, an advertisement for a product claiming to have characteristics "just like home made" or stating "tastes like you made it yourself" would be false because the product actually is made in a factory.  Vero Beach's logic essentially would read the words "like" and "as" out of the English language and unduly restrict the parameters of permissible comparative advertising.[4/]

As this Court has observed, "the seeds of a countervailing tendency" away from permitting abbreviated pleading is evident in a host of "analogous areas involving statutory causes of action." Cash Energy, Inc. v. Weiner, 768 F. Supp. 892 (D. Mass. 1991).[5/]

---

[4/]    Under Vero Beach's logic, The New York Times newspaper's "All the news that's fit to print" claim and Hallmark Corp.'s "When you care enough to send the very best" slogan would be false, as would dozens of other advertisements.

[5/]    This Court continued in Cash Energy:

> Beneath the higher particularity requirement, here as elsewhere, rests a concern about abusive use of legal processes.   The rule "operates to diminish the possibility that a plaintiff with a largely groundless claim [will be able] to simply take up the time of
> (continued...)

-5-

This Court observed in the <u>Cash Energy</u> case that a number of areas
"have been identified as appropriate for a strict standard of
particularity because of a heightened 'concern for due process
which arises by reason of the 'drastic nature' of the remedies'
sought."[5/]   <u>Id</u>. at 899 (citations omitted).   The First Circuit has
identified similar concerns in the context of civil RICO.[7/]
Finally, as stated by this Court at the June 24, 1992, Hearing in
this matter, particularity in pleading would help the Court in
determining "whether issue preclusion applies or whether laches or
limitations applies.   If on any one of those theories all of the
different kinds of claims that are asserted are barred, then we

_____

[5/] (...continued)
> a number of people [by extensive discovery],
> with the right to do so representing an <u>in</u>
> <u>terrorem</u> increment of the settlement value,
> rather than a reasonable hope that the process
> will reveal relevant evidence.'"

<u>Id</u>. at 897 (citations omitted).

[6/]   Although some litigants view federal notice pleading as a
protective shroud which insulates even the most bare bones and
conclusory allegations from dismissal under Rules 12(b)(6) and (c),
such is not the case.   As the First Circuit has made clear:

> [M]inimal requirements [under federal notice
> pleading] are not tantamount to nonexistent
> requirements.   The threshold may be low, but
> it is real--and it is the plaintiff's burden
> to take the step which brings his case safely
> into the next phase of the litigation.   The
> court need not conjure up unpled allegations
> or contrive elaborately arcane scripts in
> order to carry the blushing bride through the
> portal.

<u>Gooley v. Mobil Oil Corp.</u>, 851 F.2d 513, 514 (1st Cir. 1988).

[7/]   In <u>New England Data Servs., Inc. v. Becher</u>, 829 F.2d 286 (1st
Cir. 1987), the Court stated that "in a general fraud case, Rule
9 'requires specification of the time, place, and content of an
alleged false representation."   <u>Id</u>. at 288.

shouldn't be spending more money on large scale, expensive discovery." (Transcript of June 24, 1992 Hearing at 24, lines 14-18, attached hereto as Exhibit A).

In its Amended Counterclaim, Vero Beach seeks to enjoin a multimillion dollar advertising campaign that Tropicana has run for years. Clearly, an injunction in the circumstances of this case is precisely the type of drastic remedy that would justify this Court in refusing to permit Vero Beach to rely on baseless assertions. For instance, Vero Beach appends to its Amended Counterclaim two exhibits, containing a script of a Tropicana television commercial and several free standing print inserts. However, Vero Beach fails to set out specifically when, where and for how long these advertisements ran. Nor does Vero Beach state whether Tropicana's similar advertisements that first were aired in 1987, as admitted by Vero Beach, are also allegedly deceptive, and why Vero Beach waited five years to file suit. Clearly relevant to a just determination of this motion is when and where this advertisement ran, but no such allegations are pled.[8/] Nor does the advertisement reveal any false advertising by Tropicana.

More importantly, the critical determination in a misleading advertising claim brought under § 43(a) is the effect of the challenged advertisement on consumer beliefs and perceptions. See

---

[8/]    See June 12, 1992, Transcript at 126, attached hereto as Exhibit B (videotape of Tropicana advertisement admitted at trial as Defendant's Exhibit 522). The "nothing added, nothing taken away" theme which Vero Beach now complains of ran at least as early as 1987. As discussed more fully below, although Vero Beach asserts that the advertisement now at issue ran in Boston, unless this advertisement ran primarily and substantially in Massachusetts, its claims under Massachusetts General Laws chapter 93A §§ 2 & 11 and chapter 266 § 91 will fail. See infra page 9.

Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp., 960 F.2d 294, 297 (2d Cir. 1992); Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc., 902 F.2d 222, 228-29 (3d Cir. 1990); Coca-Cola Co. v. Tropicana Prods., Inc., 690 F.2d 312, 317 (2d Cir. 1982); American Home Prods., Corp. v. Johnson & Johnson, 577 F.2d 160, 166 (2d Cir. 1978); Upjohn Co. v. American Home Prods. Corp., 598 F. Supp. 550 (S.D.N.Y. 1984); American Brands, Inc. v. R.J. Reynolds Tobacco Co., 413 F. Supp. 1352, 1357 (S.D.N.Y. 1976).

In attempting to plead consumer deception, Vero Beach again relies on bald assertions and unfounded conclusions which this Court need not consider. In paragraph 16 of its Amended Counterclaim, Vero Beach states:

> Consumer market research performed at the request of Vero Beach, indicates that consumers of Tropicana have actually been misled to believe that Tropicana is fresh-squeezed.

This Court already has indicated that Vero Beach cannot rely upon the statistically flawed undertaking upon which this allegation is based. As this Court stated at the June 12, 1992 Hearing, to call it a sample "overly dignifies it. It's of course not truly a sample." (Transcript of June 12, 1992 Hearing at 52, lines 13-20 attached hereto as Exhibit C).

Vero Beach has no reliable evidence whatsoever upon which to base its allegation that any number of consumers, much less a statistically significant number, actually have been misled by Tropicana's advertisements. And, because "bald assertions and unsupportable conclusions" are not to be accepted as well pled

-8-

factual averments, (Gooley, 851 F.2d at 514), Vero Beach's Lanham
Act claim must be dismissed.

    2.    Count II -- Unfair and Deceptive Acts and Practices

    Defendant states that Tropicana has violated Massachusetts
state unfair business practices law.  Massachusetts General Laws,
Chapter 93A § 11 states, in pertinent part:

> Any person who engages in the conduct of any trade
> or commerce and who suffers any loss of money or
> property, real or personal, as a result of the use
> of employment by another person who engages in any
> trade   or   commerce   of   any   unfair   method   of
> competition   or   an   unfair   or   deceptive   act   or
> practice declared unlawful by section two . . . may
> . . . bring an action . . . for damages and such
> equitable relief, including an injunction, as the
> court deems to be necessary and proper.

Mass. Gen. Laws ch. 93A, § 11 (1992).  Section 2 of chapter 93A
makes unlawful any "unfair methods of competition and unfair or
deceptive acts of practices in the conduct of any trade or
commerce."  Mass. Gen. Laws ch. 93A, § 2.

    Defendant has failed to allege facts that support a claim
under Chapter 93A § 11.  The "litmus test for a transgression of
chapter 93A involves behavior which falls within 'the penumbra of
some . . . established concept of unfairness,' and is sufficiently
'unethical or unscrupulous' to be actionable under the statute."
Wellesley Hills Realty Trust v. Mobil Oil Corp., 747 F. Supp. 93,
102 (D. Mass. 1990).  Defendant has failed to allege sufficient
facts that show that Tropicana acted in a way that was unfair,
unethical or unscrupulous.  Id. at 103.

    Furthermore, chapter 93A section 11 provides:

> No action shall be brought or maintained under
> this   section   unless   the   actions   and
> transactions constituting the alleged unfair
> method   of   competition   or   the   unfair   or

deceptive act or practice occurred primarily
and substantially within the commonwealth.

Mass. Gen. Laws ch. 93A, § 11 (1992) (emphasis added). Vero Beach
alleges that Tropicana has run print and television advertisements
in Boston which falsely equate the "taste and quality" of Pure
Premium® with that of fresh squeezed orange juice.   (Amended
Counterclaim at ¶ 9).   Vero Beach has not and cannot allege,
however, that the advertisements ran "primarily and substantially"
in Massachusetts.  Indeed, Vero Beach seeks an injunction which is
nationwide in scope and effect.   Its damages, if any, presumably
flow from Tropicana's allegedly misleading nationwide advertising,
not from conduct "occurr[ing] primarily and substantially" within
Massachusetts.   Count Two of Vero Beach's  Amended Counterclaim,
therefore, should be dismissed.

   3.   Count Three -- False Advertising

   In   Count   Three,   Vero   Beach   seeks   relief   pursuant   to
Massachusetts General Law chapter 266, § 91, which makes unlawful
the knowing or reckless dissemination of false representations in
commercial advertising.   The statute states, in relevant part:

> Any person who, with intent to sell or in any way
> dispose of merchandise . . . to the public . . .
> makes, publishes, disseminates, circulates or places
> before the public . . . within the commonwealth .
> . . an advertisement of any sort regarding
> merchandise . . . which advertisement contains any
> assertion, representation or statement of fact which
> is untrue, deceptive or misleading, and which such
> person knew, or might on reasonable investigation
> have ascertained to be untrue, deceptive or
> misleading, shall be punished by a fine of not less
> than five hundred nor more than one thousand dollars
> . . . .

Mass. Gen. Laws ch. 266, § 91 (1992) (emphasis added).  For the
reasons   that   apply   to   Vero   Beach's   Lanham   Act   pleading

deficiencies, Defendant has failed to state a claim for relief under this section because Count III does not allege that the advertisement in question contains any assertion or representation of fact, and therefore, there can be no deception or misrepresentation. Additionally, for the reasons that apply to Vero Beach's chapter 93A §§ 2 & 11 claim, Defendant has failed to state a claim for relief under this section because the conduct of which it complains and the relief which it seeks goes far beyond any event which occurred in Massachusetts.

### B.   VERO BEACH'S AMENDED COUNTERCLAIM IS TIME BARRED BY THE APPLICABLE STATUTES OF LIMITATION

The Amended Counterclaim also should be dismissed because Vero Beach has not cured the defect in its original counterclaim that its claims for Lanham Act violations (Count I), unfair trade practices (Count II) and false advertising (Count III) are time barred. Under Massachusetts law, which governs the accrual date of all three counts, Vero Beach's claims accrued when it discovered these claims or by the exercise of reasonable diligence should have discovered them.[2/]   See Eaton Financial Corp. v. Dunlavey, 1991 Mass. App. Div. 178, 1991 W.L. 241863 (1991)(unfair trade practices); Solomon v. Birger, 19 Mass. App. 634, 477 N.E.2d 137, 141 (1985)(fraud); Connelly v. Bartlett, 286 Mass. 311, 190 N.E. 799, 802 (1934)(fraud). As discussed below, Vero Beach filed its original counterclaim after the expiration of all applicable

---

[2/]   Under Massachusetts' law, the rules for accrual of actions for unfair and deceptive acts or practices in trade or commerce are the same as actions for fraud -- i.e., when the complaining party discovers the act complained of or by the exercise of due diligence reasonably should have discovered it. See Eaton Fin. Corp., 1991 Mass. App. Div. at 6-7.

statutes of limitation; yet, Vero Beach has not pled any of the elements necessary to toll the statute of limitations, including its due diligence or fraudulent concealment.

Under Massachusetts law, the statute of limitations restricts the time for bringing actions for violation of Section 43(a) of the Lanham Act (Count I) to a period of three years from the accrual of such actions.[10]   An action to recover for unfair and deceptive practices violative of M.G.L.A. ch. 93A, (Count II) "shall be commenced only within four years next after the cause of action accrues."[11]

Because there is no limitations period specifically applicable to false advertising claims under M.G.L.A. ch. 266, § 91, this Court should use a parallel statute to measure the timeliness of Vero Beach's claims in Count III.   Given that a three-year limitations period will be applied to the Lanham Act false advertising claim, the same limitations period also should be

---

[10]   Since the Lanham Act does not contain a federal statute of limitations, Section 43(a) cases are governed by the state law that best effectuates the federal policy at issue. See Unlimited Screw Prods., Inc. v. Malm, 781 F. Supp. 1121, 1125 (E.D. Va. 1991); Fox Chem. Co. v. Amsoil, Inc., 445 F. Supp. 1355, 1357 (D. Minn. 1978). A number of courts have concluded that claims under § 43(a) of the Lanham Act are most analogous to fraud claims. See Unlimited Screw Prods., Inc., 781 F. Supp. at 1125; Monkelis v. Scientific Sys. Servs., 653 F. Supp. 680, 684 (W.D. Pa. 1987); PepsiCo, Inc. v. Dunlop Tire & Rubber, Corp., 578 F. Supp. 196, 199 (S.D.N.Y. 1984). Tropicana likewise posits that the Massachusetts' statute of limitations for fraud actions most closely resembles the federal policy reflected in Section 43(a).   Under Massachusetts' law, an action for common law fraud is governed by a three year statute of limitation. M.G.L.A. ch. 260, § 2A (covering actions of tort); See Prescott v. Morton Int'l, Inc., 769 F. Supp. 404, 405 (D. Mass. 1990).

[11]   See Eaton Fin. Corp., 1991 Mass. App. Div. at 6 ("Pursuant to M.G.L.C. 260, § 5A, an action to recover for unfair and deceptive practices violative of G.L. c. 93A 'shall be commenced only within four years next after the cause of action accrues.'").

applied to its Massachusetts counterpart as best effectuating the policy at issue in M.G.L.A. ch. 266, § 91.

Conscious of the statute of limitations hurdle raised by its original counterclaim, Vero Beach now contends that its claims did not accrue until either 1991 when certain consumer market research performed at the request of Vero Beach "indicate[d] that consumers of Tropicana have actually been misled to believe that Tropicana is fresh-squeezed" (Amended Counterclaim ¶¶ 8, 16), or 1990 when Tropicana allegedly ran the print and television advertisements which state that Tropicana Pure Premium® has the taste and quality of fresh squeezed orange juice. (Amended Counterclaim ¶¶ 9-10). Both last ditch efforts to save its counterclaim should be rejected.[12/]

Although Vero Beach has filed a new counterclaim, it has previously admitted: "The 'nothing added, nothing taken away' theme was utilized by Leo Burnett as early as March 1987, prior to the execution of the Amended Consent Decree. In fact the phrase 'feel the freshness (of the Tropicana Pure Premium® taste)' was used in that campaign. See T 403 [admitted into evidence as Plaintiff's Exhibit 18]." (Tropicana's Proposed Additional Findings of Facts and Conclusions of Law ¶ 7, admitted by Vero Beach). Similarly, Vero Beach admitted: "The 'nothing added, nothing taken away' Tropicana Pure Premium® campaign aired publicly

---

[12/] Counsel for Vero Beach clearly indicated that "there w[ould] be no need for [additional] discovery" for Vero Beach to cure the admitted defects in its initial counterclaim. (June 24, 1992, Trial transcript at 25, lines 14-20). Thus, if this Court finds this first Amended Counterclaim to be defective, it should dismiss the action with prejudice since Vero Beach should not be able to improve now its allegations even with discovery.

at least by March 1987. (See ¶ 403). That advertisement stated that "Tropicana Pure Premium® was [pasteurized][13] like fresh-squeezed."[14] (Tropicana Proposed Additional Finding of Fact ¶ 12, admitted by Vero Beach). Moreover, contrary to Vero Beach's current position that the Tropicana advertisements in question are of recent origin, Vero Beach asserted in its original counterclaim that "since at least 1982, Tropicana has engaged in calculated advertising campaign to deceive and mislead consumers into believing that its orange juice is fresh squeezed orange juice or is not in any way different from fresh squeezed orange juice." (Original Counterclaim ¶ 6). The inconsistency of Vero Beach's position is clear.

In light of these admissions, the burden is clearly upon Vero Beach to prove its compliance with the applicable statute of limitations. As admitted by Vero Beach in its Opposition to Plaintiff's Motion to Dismiss the original counterclaim dated June 11, 1992, Vero Beach states on page 6 that it is relying upon "tolling" principles. In light of these facts, the "burden rests squarely" upon Vero Beach to plead and prove three elements to extend the statute of limitations: "1) wrongful concealment of

---

[13] Vero Beach appears to suggest that Tropicana has some obligation to go beyond what is clearly stated in its advertisements, that Pure Premium® orange juice is pasteurized, and explain the pasteurization process in each of its advertisements. (Amended Counterclaim ¶¶ 13, 20, and ¶ (d) of prayer for relief). There is no such requirement under the Lanham Act for a manufacturer to expend time in each advertisement to define the entire manufacturing process as long as the process itself, or in this case pasteurization, is presented to the consumer.

[14] The 1987 advertisements were admitted into evidence at the June 12, 1992, hearing in this matter as Plaintiff's Exhibits 18 and 19, respectively attached hereto as Exhibit D.

their actions by the defendants; 2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations; 3) plaintiff's due diligence until discovery of the facts." Berkson v. Del Monte Corp., 743 F.2d 53, 55 (1st Cir. 1984), cert. denied, 470 U.S. 1056 (1985). Vero Beach has failed to plead adequately the requisite tolling requirements.

Vero Beach has not pled any concealment on the part of Tropicana, how it failed to discover the operative facts that formed the basis for its claim, or any due diligence on its part to ascertain Tropicana's allegedly false advertising. Under these circumstances, and given that this is Vero Beach's second attempt to assert a viable counterclaim, the counterclaim must be dismissed with prejudice.

Contrary to Vero Beach's assertions, its claim accrued at the time that it should have discovered it by the exercise of reasonable diligence.[15] Eaton Fin. Corp. v. Dunlavey, supra; Salomon v. Birger, supra; Connelly v. Bartlett, supra. The test is objective, not subjective. Hence, this Court should reject Vero Beach's contention that it was only when it performed certain consumer market research in 1991 or in 1990 when Tropicana ran certain of these advertisements that Vero Beach's cause of action accrued. Indeed, Vero Beach's March 1986 advertisement reveals that it discovered (or was certainly on notice) of the purportedly

---

[15]   If Vero Beach's strained construction of the statute of limitations were true (i.e., claim arises not at first publication, but rather when a company decided to perform a survey of the advertisement in question), it would, in effect, provide an unlimited period of time for anyone to file suit under the Lanham Act.

-15-

offending and deceptive advertising by that time.    Vero Beach's 1986 advertisement provides:

> First of all, you can't go pasteurizing (in other words cooking) or concentrating the juice. . .Lots of juice companies do these things to save money.  Or to give the juice a longer shelf-life.  While it may do that, it doesn't do wonders for the taste. (Want proof. Just compare my fresh-squeezed orange juice with the stuff Tropicana sells. No contest.)" (emphasis in original).

A true and correct copy of this advertisement is attached as Exhibit B to Tropicana's complaint; DX 501.

In short, the prior lawsuit between the parties and the very advertisement at issue in that case demonstrates that Vero Beach believed that in March, 1986 it needed to "correct" the misunderstanding of consumers who were "fooled" by Tropicana into believing that Tropicana's orange juice was as good tasting as "fresh squeezed."  Thus, whether this Court applies the three year limitations period which the Lanham Act affords, the four-year limitations period for unfair trade practices under Massachusetts law, or the three-year limitations period for Massachusetts false advertising, the latest Vero Beach could have brought any of these actions was within four years after Vero Beach's 1986 advertisement, or four years after the running of Tropicana's 1987 advertising campaign.

## C.    LACHES BARS VERO BEACH'S AMENDED COUNTERCLAIM

Vero Beach's Amended Counterclaim also should be dismissed under the doctrine of laches.  In spite of Vero Beach's spurious assertions that its claims under the Lanham Act and Massachusetts state law accrued at the earliest in 1991, Vero Beach's claims most certainly arose by March, 1986 when Vero Beach felt compelled to

-16-

"correct" the misunderstanding of consumers who were "fooled" by Tropicana's advertising campaign (see Exhibit B to Tropicana's Complaint; DX 501), or at the latest in March, 1987, when Vero Beach admits that Tropicana's advertisements asserted Pure Premium[a] "tastes" like fresh-squeezed. (Trop. Add. Findings ¶¶ 7, 12, admitted by Vero Beach).

It has been said that where a party "sleeps on his rights for a period of time greater than the applicable statute of limitations, the burden of proof shifts [to the complaining party] to prove the absence of such prejudice to the defendant as would bar all relief." University of Pittsburgh v. Champion Prods., Inc., 686 F.2d 1040, 1045 (3d Cir. 1982), cert. denied, 459 U.S. 1087 (1982); Construction Technology, Inc. v. Lockformer Co., 704 F. Supp. 1212, 1221 (S.D.N.Y. 1989). Further, "[s]ignificant delay in applying for injunctive relief in a Lanham Act case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement." Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985).

Vero Beach, however, has made no attempt to meet its burden of showing an absence of prejudice to Tropicana although it recognizes that millions of dollars have been spent by Tropicana on the Pure Premium® advertising campaign. In contrast, dismissal of Vero Beach's claims against Tropicana cannot possibly harm it any more than whatever injury Vero Beach perceived when it delayed unreasonably and inexcusably in seeking immediate relief when it discovered, or should have discovered, Tropicana's purportedly

-17-

deceptive advertising.[16/]  Vero Beach's delay in commencing its
counterclaim is particularly significant in light of the admitted
national exposure attending Tropicana's advertising campaign,
running since at least 1987.  Given that Vero Beach is seeking an
injunction here, the defense of laches is particularly applicable
and Vero Beach's counterclaims against Tropicana's advertisements
under the Lanham Act and Massachusetts state law should be
dismissed.

> D.   Under Rule 13, Vero Beach's Counterclaim
>      Should Be Barred

Under Rules 13(a) and (b) of the Federal Rules of Civil
Procedure, the question is whether Vero Beach's counterclaim is
compulsory or permissive.   If Vero Beach's counterclaim is
compulsory under Rule 13(a) as part of the 1986-87 litigation it
should have been brought years earlier in the prior action; if the
claim set forth in the counterclaim was compulsory at that time,
it has been waived.[17/]  If, however, the claim was permissive under
Rule 13(b), this Court certainly has discretion to, and should,
refuse to hear the claim in this proceeding.[18/]

---

[16/]   Tropicana raises its laches defense based on the worst case
scenario that its advertisements in fact are false and deceptive.
They are not, of course, and Vero Beach's unsupported assertions
to the contrary do not change that result.  However, even under
that standard, if they were false and deceptive, Vero Beach is
without a remedy as a consequence of its inexcusable delay.

[17/]   See Bottero Enter., Inc. v. Southern New England Prod. Credit
Assoc., 743 F.2d 57, 59 (1st Cir. 1984) ("claim was barred because
it was a compulsory counterclaim that should have been brought in
the prior action.").

[18/]   See Bose Corp. v. Consumers Union of United States, Inc., 384
F. Supp. 600, 602-04 (D. Mass. 1974) (on plaintiff's motion to
dismiss counterclaims which were filed more than two years after
complaint which alleged unfair competition under § 43(a) of the
(continued...)

Under Rule 13(a), a pleading <u>shall</u> state as a counterclaim

> any claim which at the time of serving the
> pleading the pleader has against any opposing
> party, <u>if it arises out of the transaction or</u>
> <u>occurrence that is the subject matter of the</u>
> <u>opposing party's claim</u> and does not require
> for its adjudication the presence of third
> parties of whom the court cannot acquire
> jurisdiction.

Fed. R. Civ. P. 13(a) (emphasis added). As was stated in <u>United</u>

<u>Artists Corp. v. Masterpiece Productions, Inc.</u>, 221 F.2d 213, 216

(2d Cir. 1955), in regard to the compulsory counterclaim standards

set out in Rule 13(a): "In practice this criterion has been

broadly interpreted to require <u>not an absolute identity of factual</u>

<u>backgrounds</u> for the two claims, <u>but</u> only a <u>logical relationship</u>

between them." (emphasis added); <u>see also</u> <u>United Fruit Co. v.</u>

<u>Standard Fruit & S. S. Co.</u>, 282 F. Supp. 338, 339 (D. Mass. 1968)

("Transaction [under Rule 13(a)] is a word of flexible meaning.

It may comprehend a series of many occurrences, depending not so

much upon immediateness of their connection as upon their <u>logical</u>

<u>relationship</u>.'") (citations omitted) (emphasis added).

   Here, the claims are logically related because although Vero

Beach did not file a counterclaim in the prior action challenging

Tropicana's advertisements, Vero Beach's own advertisements which

were at issue then did raise the claim that Tropicana Pure Premium®

was "cooked." When Tropicana filed suit challenging Vero Beach's

advertisements in 1986-87, Vero Beach's contention that Tropicana's

advertisements falsely represent its product were logically related

to Tropicana's contention that Vero Beach's advertisements were

---

<u>18</u>/ (...continued)
Lanham Act, alleged defamation and abuse of process, the
counterclaims were permissive).

false.   Furthermore, to the extent that the prior offending advertisement suggested that Tropicana was "cooked" and made false and misleading assertions concerning the quality and characteristics of Tropicana Pure Premium®, Vero Beach should have brought its counterclaim relating to the qualities and characteristics of Tropicana Pure Premium® in that proceeding. Vero Beach simply has no explanation for why it did not raise this counterclaim in the prior proceeding.

Even if this Court determines that Vero Beach's counterclaim is not compulsory, but rather is permissive, Vero Beach should be estopped from raising a stale claim.   The counterclaim, being permissive, of course, could have been brought by Vero Beach at any time within the statute of limitations period, but Vero Beach chose not to proceed.   For Vero Beach to raise its counterclaim now, is merely a litigation ploy to divert this Court's attention from Vero Beach's contempt of court and its false and deceptive advertising.

Respectfully submitted,

TROPICANA PRODUCTS, INC.

By: _____
        One Of Its Attorneys

Gary R. Greenberg, Esq.
Mark A. Berthiaume, Esq.
GOLDSTEIN & MANELLO, P.C.
265 Franklin Street
Boston, Massachusetts  02110
(617) 439-8900


R. Mark McCareins, Esq.
W. Gordon Dobie, Esq.
John M. Bowler, Esq.
WINSTON & STRAWN
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600

Steven B. Gold, Esq.
TROPICANA PRODUCTS, INC.
1001-13th Avenue, East
Bradenton, Florida  34208
(813) 747-4461

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by mail/hand on ____7/13/9___ .

_____
        GARY R. GREENBERG

Attorneys for Plaintiff
Tropicana Products, Inc.

-20-

# TAB 3

CLOSED

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:92-cv-11044-REK

Tropicana Products v. Vero Beach Groves
Assigned to: Senior Judge Robert E. Keeton
Demand: $0
Case in other court: 92-01985
Cause: 15:1125 Trademark Infringement (Lanham Act)

Date Filed: 05/06/1992
Date Terminated: 11/23/1992
Jury Demand: Defendant
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

## Plaintiff

**Tropicana Products, Inc.**          represented by     **Mark A Berthiaume**
Greenberg Traurig LLP
One International Place
Boston, MA 02110
617-310-6007
Fax: 617- 897-0958
Email: berthiaumem@gtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

## Defendant

**Vero Beach Groves, Inc.**          represented by     **Vero Beach Groves, Inc.**
c/o Mr. George Davis
P.O. Box 6870
Vero Beach, FL 32961
PRO SE

**Michael C. Fee**
Pierce & Mandell, P.C.
11 Beacon Street
Suite 800
Boston, MA 02108
617-720-2444
Fax: 617-720-3693
Email: mfee@piercemandell.com
*TERMINATED: 11/20/1992*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven J. Comen**
Goodwin Procter, LLP
Exchange Place

53 State Street
Boston, MA 02109
617-570-1660
Fax: 617-523-1231
Email: scomen@goodwinprocter.com
*TERMINATED: 11/20/1992*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Hinckley, Allen & Snyder**                  represented by  **Robert F. Sylvia**
                                              Hinckley, Allen and Snyder, LLP
                                              28 State Street
                                              Boston, MA 02109
                                              617/345-9000
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Vero Beach Groves, Inc.**                   represented by  **Michael C. Fee**
                                              (See above for address)
                                              *TERMINATED: 11/20/1992*
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

                                              **Steven J. Comen**
                                              (See above for address)
                                              *TERMINATED: 11/20/1992*
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Tropicana Products, Inc.**                  represented by  **Mark A Berthiaume**
                                              (See above for address)
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Tropicana Products, Inc.**                  represented by  **Mark A Berthiaume**
                                              (See above for address)
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 05/06/1992 | 1 | Complaint filed (fmr) (Entered: 05/08/1992) |
|  |  |  |

| 05/06/1992 | | Filing Fee Paid. Receipt #: 16940 Amount: $120.00. (fmr) (Entered: 05/08/1992) |
|---|---|---|
| 05/06/1992 | | Summons(es) issued for Vero Beach Groves (fmr) (Entered: 05/08/1992) |
| 05/06/1992 | 2 | Motion by Tropicana Products for preliminary injunction FILED (fmr) (Entered: 05/13/1992) |
| 05/06/1992 | 3 | Memorandum by Tropicana Products in support of [2-1] motion for preliminary injunction (fmr) (Entered: 05/13/1992) |
| 05/06/1992 | 4 | Affidavit of Steven B. Gold FILED (fmr) (Entered: 05/13/1992) |
| 05/06/1992 | 5 | Affidavit of Griscom "Chip" Bettle, III FILED (fmr) (Entered: 05/13/1992) |
| 05/18/1992 | | Scheduling conference set on 4:00 6/5/92 (fmr) (Entered: 05/18/1992) |
| 05/18/1992 | 6 | Motion by Vero Beach Groves for expedited discovery and extension of time in which to file oppos to P's mtn for P/I and request for oral argument , filed, c/s. (fmr) (Entered: 05/19/1992) |
| 05/18/1992 | 7 | Affidavit of Judd V. Brotman, filed, c/s. (fmr) (Entered: 05/19/1992) |
| 05/18/1992 | 8 | Affidavit of George S. Davis, filed, c/s. (fmr) (Entered: 05/19/1992) |
| 05/18/1992 | 9 | Memorandum by Vero Beach Groves in support of [6-1] motion for expedited discovery and extension of time in which to file oppos to P's mtn for P/I and request for oral argument, filed, c/s. (fmr) (Entered: 05/19/1992) |
| 05/19/1992 | 17 | Affidavit of Judd V. Brotman FILED (fmr) (Entered: 06/18/1992) |
| 05/21/1992 | 10 | Return of service executed as to Vero Beach Groves 5/7/92 Answer due on 5/27/92 for Vero Beach Groves (fmr) (Entered: 05/22/1992) |
| 05/27/1992 | 11 | Answer to Complaint by Vero Beach Groves; jury demand (fmr) (Entered: 05/29/1992) |
| 05/27/1992 | 12 | Letter to the clerk from William R. Moore "Enclose please find three errata sheets for the Affidavit of George Davis which was filed with the Court on Monday May 11, 1992. The errata pages 6,7,8 should replace the corresponding pages in the affidavit that was filed." FILED (fmr) (Entered: 06/04/1992) |
| 06/02/1992 | 13 | Motion for W. Gordon Dobie to appear pro hac vice FILED c/s (fmr) (Entered: 06/05/1992) |
| 06/02/1992 | 14 | Motion for John M. Bowler to appear pro hac vice FILED c/s (fmr) (Entered: 06/05/1992) |
| 06/02/1992 | 15 | Motion for R. Mark McCareins to appear pro hac vice FILED c/s (fmr) (Entered: 06/05/1992) |
| 06/05/1992 | 16 | Amended Answer to Complaint by Vero Beach Groves : amends [11-1] answer; jury demand (fmr) (Entered: 06/08/1992) |
| 06/05/1992 | 16 | Counterclaim by Vero Beach Groves against Tropicana Products (fmr) |

| | | |
|---|---|---|
| | | (Entered: 06/08/1992) |
| 06/05/1992 | | Scheduling conference held (fmr) (Entered: 07/09/1992) |
| 06/05/1992 | 62 | Judge Robert E. Keeton. Clerk's Notes:Scheduling conference (rptr - Willette); Colloquy re: relief sought. P mtn to add counsel - court needs to read before granting formally. No monetary damages sought at the present. Colloquy re: P/I. Court orders Motion hearing set for 9:00 6/12/92 for [2-1] motion for preliminary injunction Colloquy re: written materials to be submitted by counsel in preparation for hearing. (fmr) (Entered: 07/09/1992) |
| 06/08/1992 | 18 | Expedited Motion by Tropicana Products to clarify whether the issues raised in Vero Beach's 6/5/92 counterclaim will be included in the 6/12/92 P/I hearing FILED c/s (fmr) (Entered: 06/18/1992) |
| 06/08/1992 | 19 | Memorandum by Vero Beach Groves in opposition to [18-1] motion to clarify whether the issues raised in Vero Beach's 6/5/92 counterclaim will be included in the 6/12/92 P/I hearing (fmr) (Entered: 06/18/1992) |
| 06/09/1992 | 20 | Motion by Tropicana Products that direct examination of witnesses be taken orally FILED c/s (fmr) (Entered: 06/18/1992) |
| 06/09/1992 | 21 | Marked version of Vero Beach's Proposed Findings of fact and conclusions of law by Tropicana Products (fmr) (Entered: 06/18/1992) |
| 06/09/1992 | 22 | Motion by Vero Beach Groves for preliminary injunction FILED c/s (fmr) (Entered: 06/18/1992) |
| 06/09/1992 | 23 | Memorandum by Vero Beach Groves in support of [22-1] motion for preliminary injunction FILED c/s (fmr) (Entered: 06/18/1992) |
| 06/09/1992 | 48 | Tropicana's marked version of Proposed Findings of fact and conclusions of law by Vero Beach Groves (fmr) (Entered: 06/23/1992) |
| 06/10/1992 | | Judge Robert E. Keeton . Endorsed Order granting [15-1] motion for R. Mark McCareins to appear pro hac vice (fmr) (Entered: 06/18/1992) |
| 06/10/1992 | | Judge Robert E. Keeton . Endorsed Order granting [14-1] motion for John M. Bowler to appear pro hac vice (fmr) (Entered: 06/18/1992) |
| 06/10/1992 | | Judge Robert E. Keeton . Endorsed Order granting [13-1] motion for W. Gordon Dobie to appear pro hac vice (fmr) (Entered: 06/18/1992) |
| 06/10/1992 | 24 | Witness list by Tropicana Products (fmr) (Entered: 06/18/1992) |
| 06/10/1992 | 25 | Memorandum by Vero Beach Groves in opposition to [20-1] motion that direct examination of witnesses be taken orally (fmr) (Entered: 06/18/1992) |
| 06/10/1992 | 26 | Memorandum by Vero Beach Groves in support of [25-1] opposition memorandum (fmr) (Entered: 06/18/1992) |
| 06/10/1992 | 27 | Proposed Witness list by Vero Beach Groves (fmr) (Entered: 06/18/1992) |
| 06/10/1992 | 28 | Affidavit of Christopher W. Gargano FILED (fmr) (Entered: 06/18/1992) |
| 06/10/1992 | 29 | Letter to the Clerk from Steven J. Comen re: "....please find a replacement |

| | | page for Vero Beach's response to Tropicana's Proposed Findings and Rulings..." FILED cc/oppos/cl (fmr) (Entered: 06/18/1992) |
|---|---|---|
| 06/10/1992 | 30 | Affidavit of Kimball Wallace FILED (fmr) (Entered: 06/18/1992) |
| 06/10/1992 | 31 | Affidavit of Gene Kroupa, Ph.D. FILED (fmr) (Entered: 06/18/1992) |
| 06/10/1992 | 32 | Affidavit of Dr. John Heuser FILED (fmr) (Entered: 06/18/1992) |
| 06/10/1992 | | Status conference held (fmr) (Entered: 06/18/1992) |
| 06/10/1992 | 33 | Judge Robert E. Keeton . Clerk's Notes (Reptr. Willette): Conference: 2 motions before the court. Court reminded counsel that rule 43 (a) speaks to oral questioning at trial, not pre-trial. Motion for oral testimony moot. Court clarifies that P may question adverse witness. Colloquy re: testimony of expert witnesses. Court has concern re: mixed questions of fact and law. Court will not decide on motion to sever hearing for P/I yet. (fmr) (Entered: 06/18/1992) |
| 06/11/1992 | 35 | Marked version of Vero Beach Grove's Proposed Findings of fact and conclusions of law by Tropicana Products FILED (fmr) (Entered: 06/23/1992) |
| 06/11/1992 | 36 | Motion by Tropicana Products for leave to file certain materials under seal FILED c/s (fmr) (Entered: 06/23/1992) |
| 06/11/1992 | 37 | Motion by Vero Beach Groves to dismiss for failure to comply with discovery FILED c/s (fmr) (Entered: 06/23/1992) |
| 06/11/1992 | 38 | Memorandum by Vero Beach Groves in opposition to [22-1] motion for preliminary injunction (fmr) (Entered: 06/23/1992) |
| 06/11/1992 | 39 | Motion by Tropicana Products to strike D's affirmative defenses FILED c/s (fmr) (Entered: 06/23/1992) |
| 06/11/1992 | 40 | Memorandum by Tropicana Products in support of [39-1] motion to strike D's affirmative defenses (fmr) (Entered: 06/23/1992) |
| 06/11/1992 | 41 | Letter to the Clerk from Atty. Gary Greenberg re: request for cross examination of Vero Beach Groves four witnesses FILED cc/oppos/cl (fmr) (Entered: 06/23/1992) |
| 06/11/1992 | 42 | Letter to the Clerk from Atty. William R. Moore including Exhibit "A" to the Affidavit of Gene A. Kroupa FILED (fmr) (Entered: 06/23/1992) |
| 06/11/1992 | 43 | Motion for Timothy J. Rivelli to appear pro hac vice (fmr) (Entered: 06/23/1992) |
| 06/11/1992 | 44 | Affidavit of Gene A. Krupa Ph.D. FILED (fmr) (Entered: 06/23/1992) |
| 06/11/1992 | 45 | Motion by Tropicana Products to dismiss the counterclaim and for judgment on the pleadings FILED c/s (fmr) (Entered: 06/23/1992) |
| 06/11/1992 | 46 | Memorandum by Tropicana Products in support of [45-1] motion to dismiss the counterclaim and for judgment on the pleadings (fmr) (Entered: 06/23/1992) |
| 06/11/1992 | 47 | Memorandum by Vero Beach Groves in opposition to [45-1] motion to |

| | | dismiss the counterclaim and for judgment on the pleadings (fmr) (Entered: 06/23/1992) |
|---|---|---|
| 06/11/1992 | 49 | Transcript of scheduling conference before Judge Keeton held on 6/5/92 in Courtroom 11 (Reptr. Wllette) FILED (fmr) (Entered: 06/23/1992) |
| 06/11/1992 | 50 | Transcript of Conference held in Judge Keeton's Chambers on 6/10/92 (Reptr. Willette) FILED (fmr) (Entered: 06/23/1992) |
| 06/12/1992 | 52 | Judge Robert E. Keeton . Order ISSUED, for temporary restraining order (fmr) (Entered: 06/23/1992) |
| 06/12/1992 | 58 | Memorandum by Vero Beach Groves in opposition to [45-1] motion to dismiss the counterclaim and for judgment on the pleadings filed c/s (sad) (Entered: 06/24/1992) |
| 06/12/1992 | | Motion hearing re: [2-1] motion for preliminary injunction held (fmr) (Entered: 07/09/1992) |
| 06/12/1992 | 63 | Judge Robert E. Keeton. Clerk's Notes: Hearing for P/i (rptr - Willette): Colloquy re: mtn to dismiss (re: docs). Sequestration of witnesses ordered. Christopher Gargano called for curative direct. Cross-x. Re-direct. Tropicana's showing of ads on TV. Rec'd into evidence. William Waintraub called. Colloquy re: prod of papers by Tropicana for Vero Beach. Colloquy re: falsity of ad. Colloquy re: Ps of Waintraub aff. offered. (re: testimony w/o prod of docs). Cross-x. Colloquy re: 2 mtns for P/I. Possible TRO a/g Vero Beach if hearing not complete by end of day. Contiued cross-x of Waintraub. Opening statement of D. Continued cross-x of Waintraub. Re-direct. P ex #16 w/drawn. #36 also w/drawn. All others (P's exhibits) admitted into evidence. D's ex #504 cannot go to truth of matter. #509 only for same limited purpose. D exs #508, 5l0-515 allowed for limited purpose (no hearsay w/in hearsay). All other D exhibits are rec'd into evidence. D calls Brotman as witness. Colloquy re: affdvt. Cross-x. Colloquy re: injunctive releif. Attys to draw up draft order for court. Cout ORDER TRO Hearing (full) w/in l0 days to be scheduled to det. P/I. P has mtn to dismiss. D will submit oppos by 6/l7. P will submit response by 6/l9. Court very strong likelihood that P will succeed on the merits. TRO entered by the court. Motion hearing set for 2:00 6/24/92 for [2-1] motion for preliminary injunction (fmr) (Entered: 07/09/1992) |
| 06/14/1992 | 51 | Transcript of hearing on motion for P/I held on 6/12/92 before Judge Keeton (Reptr. Willette) FILED (fmr) (Entered: 06/23/1992) |
| 06/15/1992 | 34 | Fax of Surety Bond $l00,000 entered by Tropicana Products, filed, cc/oppos/cl. (Original will be filed once fully executed by the parties) (fmr) (Entered: 06/19/1992) |
| 06/17/1992 | 53 | Memorandum by Tropicana Products in opposition to [45-1] motion to dismiss the counterclaim and for judgment on the pleadings (fmr) (Entered: 06/23/1992) |
| 06/17/1992 | 57 | Original Bond $ 100,000.00 entered by Tropicana Products (fmr) (Entered: 06/24/1992) |
| 06/19/1992 | 54 | Reply by Tropicana Products in support of [45-1] motion to dismiss the |

| | | |
|---|---|---|
| | | counterclaim and for judgment on the pleadings (fmr) (Entered: 06/23/1992) |
| 06/19/1992 | 55 | Motion by Tropicana Products for judgment of contempt FILED c/s (fmr) (Entered: 06/23/1992) |
| 06/19/1992 | 56 | Memorandum by Tropicana Products in support of [55-1] motion for judgment of contempt (fmr) (Entered: 06/23/1992) |
| 06/22/1992 | 59 | Letter to the Clerk from Atty. Steven J. Comen re: hearing scheduled for 6/24/92 requesting that it serve as a scheduling conference rather than a hearing on the merits. FILED cc/oppos/cl (fmr) (Entered: 06/24/1992) |
| 06/24/1992 | 60 | Memorandum by Tropicana Products in opposition to [22-1] motion for preliminary injunction (fmr) (Entered: 06/26/1992) |
| 06/24/1992 | | Motion hearing re: [2-1] motion for preliminary injunction Motion hearing held (fmr) (Entered: 07/09/1992) |
| 06/24/1992 | 64 | Judge Robert E. Keeton. Clerk's Notes: Conference (rptr - Willette): Colloquy re: entering an order for P/I. Colloquy re: appeal. Hearing evid. hearing for P/I scheduled for 7/21/92 at 9:00 a.m. Colloquy re: mtn to dismiss cunterlcaim. Court unable to determine whether counterclaim is compulsory and permissive because it is too vague - cannot rule on mtn to dismiss of P. D granted lv to file amended counterclaim (w/greater specificity). Deadline to do so 6/29/92. Colloquy re: ADP. Trial date: Nov. 23, l992. (fmr) (Entered: 07/09/1992) |
| 06/24/1992 | | Jury trial set at 9:00 11/23/92 (fmr) (Entered: 07/09/1992) |
| 06/29/1992 | 61 | Amended counterclaim by Vero Beach Groves against Tropicana Products, Tropicana Products : amending [16-1] counter claim (fmr) (Entered: 06/30/1992) |
| 07/13/1992 | 65 | Motion by Tropicana Products to dismiss amended counterclaim FILED c/s (fmr) (Entered: 07/14/1992) |
| 07/13/1992 | 66 | Memorandum by Tropicana Products in support of [65-1] motion to dismiss amended counterclaim (fmr) (Entered: 07/14/1992) |
| 07/14/1992 | 67 | Motion by Tropicana Products to dismiss amended counterclaim filed c/s (sad) (Entered: 07/17/1992) |
| 07/14/1992 | 68 | Memorandum by Tropicana Products in support of [67-1] motion to dismiss amended counterclaim filed c/s (sad) (Entered: 07/17/1992) |
| 07/17/1992 | 69 | Memorandum by Vero Beach Groves in opposition to [67-1] motion to dismiss amended counterclaim (fmr) (Entered: 07/20/1992) |
| 07/20/1992 | 70 | Motion of Jack Rossin to quash , filed, c/s. (fmr) (Entered: 07/31/1992) |
| 07/20/1992 | | Motion hearing re: [70-1] motion of Jack Rossin to quash held. (fmr) (Entered: 07/31/1992) |
| 07/20/1992 | 71 | Judge Robert E. Keeton. Clerk's Notes: Hearing (rptr - Willette): denying [70-1] motion of Jack Rossin to quash. Court will not enforce subpoena at this |

| | | |
|---|---|---|
| | | time. P/I hearing reset for ll:30 a.m. tomorrow. (fmr) (Entered: 07/31/1992) |
| 07/21/1992 | 76 | Judge Robert E. Keeton . Clerk's Notes (Reptr. Willette): Preliminary Injunction hearing. Colloquy re: new evidence. D offers into evidence Wallace affidavit. Various objections to affidavit sustained. P's motion to dismiss counterclaim pending. If counterclaim survives, this motion will be heard w/ motion for p/i on 11/23/92 (fmr) (Entered: 08/17/1992) |
| 07/27/1992 | 74 | Letter to the Court from Atty. William R. Moore re: Tropicana's proposed conclusions of law FILED cc/oppos/cl (fmr) (Entered: 08/03/1992) |
| 07/28/1992 | 72 | Judge Robert E. Keeton . Memorandum and Order , Entered cc/cl (sad) (Entered: 07/31/1992) |
| 07/28/1992 | 73 | Judge Robert E. Keeton . Order granting [2-1] motion for preliminary injunction ,cc/cl (sad) (Entered: 07/31/1992) |
| 08/06/1992 | 75 | Notice of appeal by Vero Beach Groves from the order of 7/28/92, Filed. Appeal record due on 9/8/92. Notice sent to counsel. (fmr) (Entered: 08/07/1992) |
| 08/12/1992 | | USCA appeal fees received $ 105 (receipt #18945) (fmr) (Entered: 09/03/1992) |
| 08/19/1992 | | Certified copy of docket and record on appeal forwarded to U.S. Court of Appeals: [75-1] appeal (fmr) (Entered: 08/19/1992) |
| 08/24/1992 | | Notice of Docketing ROA from USCA Re: [75-1] appeal USCA NUMBER: 92-1985 (fmr) (Entered: 08/24/1992) |
| 08/25/1992 | 77 | Letter from John Bowler to Appeals Coordinator Re: Record on appeal w/attachments, received. (fmr) (Entered: 08/26/1992) |
| 08/25/1992 | 78 | Transcript filed [75-1] appeal for dates of June 24, 1992 (fmr) (Entered: 09/01/1992) |
| 08/25/1992 | 79 | Transcript filed [75-1] appeal for dates of July 20, 1992 (fmr) (Entered: 09/01/1992) |
| 08/25/1992 | 80 | Transcript filed [75-1] appeal for dates of July 21, 1992 (fmr) (Entered: 09/01/1992) |
| 08/31/1992 | | Transmitted supplemental record on appeal (Document 77 w/attachments): [75-1] appeal (fmr) (Entered: 09/01/1992) |
| 09/10/1992 | | Transmitted supplemental record on appeal (Documents 78 through 80): [75-1] appeal (fmr) (Entered: 09/11/1992) |
| 09/16/1992 | 81 | Motion by Tropicana Products to compeli answers and documents FILED c/s (fmr) (Entered: 09/17/1992) |
| 09/16/1992 | 82 | Memorandum by Tropicana Products in support of [81-1] motion to compeli answers and documents FILED c/s (fmr) (Entered: 09/17/1992) |
| 10/06/1992 | 83 | Motion by Tropicana Products for sanctions against Vero Beach FILED c/s (fmr) (Entered: 10/07/1992) |

| 10/06/1992 | 84 | Memorandum by Tropicana Products in support of [83-1] motion for sanctions against Vero Beach FILED c/s (fmr) (Entered: 10/07/1992) |
| 10/07/1992 | 85 | Motion by Vero Beach Groves to continue trial of 11/23/92 FILED c/s (fmr) (Entered: 10/09/1992) |
| 10/07/1992 | 86 | Motion for Attorneys William Moore, Steven Comen, and Michael Fee to withdraw as attorneys for Vero Beach FILED c/s (fmr) (Entered: 10/09/1992) |
| 10/14/1992 | 87 | Memorandum by Tropicana Products in opposition to [85-1] motion to continue trial of 11/23/92 FILED c/s (fmr) (Entered: 10/15/1992) |
| 10/14/1992 | 88 | Memorandum by Tropicana Products in opposition to [86-1] motion for Attorneys William Moore, Steven Comen, and Michael Fee to withdraw as attorneys for Vero Beach FILED c/s (fmr) (Entered: 10/15/1992) |
| 10/16/1992 | 89 | Judge Robert E. Keeton . Memorandum and Order ISSUED. Tropicana's motions to dismiss the amended counterclaim (docket nos. 65,67) are ALLOWED, subject to leave to Vero Beach to file a written submission, in the form of a second amended counterclaim stated with greater specificity, on or before a date to be set by further order of this court. The court will defer entry of that final order until resolution of the pending motion of counsel for Vero Beach to withdraw. (fmr) (Entered: 10/19/1992) |
| 10/19/1992 | 90 | Memorandum by Vero Beach Groves in opposition to Tropicana's motion against Vero Beach for failure to make or cooperate in discovery FILED c/s (fmr) (Entered: 10/20/1992) |
| 10/20/1992 | 91 | Notice of Hearing sent to counsel : set status conference for 4:00 11/2/92 (fmr) (Entered: 10/21/1992) |
| 10/22/1992 | 92 | Motion by Vero Beach Groves for leave to file reply opposition to Tropicana's opposition to Hinkley Allen's motion to withdraw FILED c/s (fmr) (Entered: 10/23/1992) |
| 10/30/1992 | 93 | Motion by Tropicana Products for rule 11 sanctions FILED c/s (fmr) (Entered: 10/30/1992) |
| 10/30/1992 | 94 | Memorandum by Tropicana Products in support of [93-1] motion for rule 11 sanctions (fmr) (Entered: 10/30/1992) |
| 11/02/1992 |  | Status conference held (fmr) (Entered: 11/17/1992) |
| 11/02/1992 | 96 | Judge Robert E. Keeton . Clerk's Notes (Reptr. Willette): Colloquy re: motion to withdraw. Motion to withdraw as counsel for Vero Beach ALLOWED. Vero Beach warned that failure to appear with counsel would result in default. 11/23/92 set as date in October Memo & Order that D must file counterclaims with specificity. Court will keep original trial schedule. Colloquy re: compliance with new Local Rules on Rule 11 motion. Parties instructed to confer on Rule 11 motion. Motion to continue DENIED (fmr) (Entered: 11/17/1992) |
| 11/10/1992 | 97 | Motion by Vero Beach Groves to quash deposition of Diana Davis FILED (fmr) (Entered: 11/17/1992) |

| 11/13/1992 | 95 | Joint motion by Vero Beach Groves, Tropicana Products to extend time to 12/1/92 to respond to motion for sanctions FILED c/s (fmr) (Entered: 11/16/1992) |
|---|---|---|
| 11/16/1992 | 98 | Motion by Vero Beach Groves to quash deposition of George Davis FILED (fmr) (Entered: 11/17/1992) |
| 11/17/1992 | | Judge Robert E. Keeton . Endorsed Order granting [95-1] joint motion to extend time to 12/1/92 to respond to motion for sanctions (fmr) (Entered: 11/19/1992) |
| 11/18/1992 | 99 | Memorandum by Vero Beach Groves in opposition to [93-1] motion for rule 11 sanctions (fmr) (Entered: 11/19/1992) |
| 11/18/1992 | 100 | Motion by Tropicana Products to compel production of Vero Beach's senior officers for depositions FILED c/s (fmr) (Entered: 11/19/1992) |
| 11/18/1992 | 101 | Memorandum by Tropicana Products in support of [100-1] motion to compel production of Vero Beach's senior officers for depositions (fmr) (Entered: 11/19/1992) |
| 11/20/1992 | 103 | Motion by Tropicana Products for entry of default as to Vero Beach Groves FILED (fmr) (Entered: 11/30/1992) |
| 11/20/1992 | 104 | Memorandum by Tropicana Products in support of [103-1] motion for entry of default as to Vero Beach Groves (fmr) (Entered: 11/30/1992) |
| 11/23/1992 | 102 | Judge Robert E. Keeton . Final Judgment filed by the parties, and approved by the court, ENTERED (fmr) (Entered: 11/25/1992) |
| 11/23/1992 | | Case closed (fmr) (Entered: 11/25/1992) |
| 11/23/1992 | 109 | Judge Robert E. Keeton . Clerk's Notes: Colloquy re: agreement reached by parties. Court asks if parties mean this to be a final judgment. Atty for P say yes. Court asks about the status of the Rule 11 motion and the fee petition. P would like court permission to file fee petition as indicated in the agreement, by 12/7/92. Court changes order to final judgment. P will re-type final judgment and return to the court (fmr) (Entered: 12/03/1992) |
| 11/30/1992 | | Terminated document (fmr) (Entered: 11/30/1992) |
| 12/01/1992 | 105 | Affidavit of R. Mark McCareins FILED (fmr) (Entered: 12/02/1992) |
| 12/01/1992 | 106 | Affidavit Atty. Gary Greenberg FILED (fmr) (Entered: 12/02/1992) |
| 12/01/1992 | 107 | Reply by Tropicana Products to response to [93-1] motion for rule 11 sanctions (fmr) (Entered: 12/02/1992) |
| 12/02/1992 | 108 | Mandate of USCA dismissing [66-1] appeal, Filed. (fmr) (Entered: 12/03/1992) |
| 12/02/1992 | | Record on appeal returned from U.S. Court of Appeals: (fmr) (Entered: 12/03/1992) |
| 12/04/1992 | 110 | Motion by Vero Beach Groves for leave to file a response in support of its motion for sanctions FILED c/s (fmr) (Entered: 12/07/1992) |

| 12/07/1992 | 111 | Motion by Tropicana Products for leave to file certain materials under seal FILED c/s (fmr) (Entered: 12/08/1992) |
| 12/07/1992 | 139 | Motion by Tropicana Products for attorney fees and expenses pursuant to Final Judgment of 11/23/92 FILED c/s (fmr) (Entered: 02/05/1993) |
| 12/10/1992 | 112 | Motion by Tropicana Products to compel asset citation discovery and for recovery of fees re: filing of this motion FILED c/s (fmr) (Entered: 12/11/1992) |
| 12/10/1992 | 113 | Memorandum by Tropicana Products in support of [112-1] motion to compel asset citation discovery and for recovery of fees re: filing of this motion FILED (fmr) (Entered: 12/11/1992) |
| 12/14/1992 | 114 | Letter to the court from Mr. George Davis re: motion to vacate or amend the Final Judgment FILED (fmr) (Entered: 12/14/1992) |
| 12/14/1992 | 115 | Motion by Vero Beach Groves to vacate or amend [102-1] Final Judgment FILED (fmr) (Entered: 12/14/1992) |
| 12/14/1992 | 116 | Memorandum by Vero Beach Groves in support of [115-1] motion to vacate or amend [102-1] Final Judgment (fmr) (Entered: 12/14/1992) |
| 12/14/1992 | 117 | Affidavit of Atty. James M. McDonough FILED (fmr) (Entered: 12/14/1992) |
| 12/15/1992 | 118 | Motion by Robert L. Kordick for equitable relief FILED c/s (fmr) (Entered: 12/15/1992) |
| 12/15/1992 | 119 | Memorandum by Robert L. Kordick in support of [118-1] motion for equitable relief (fmr) (Entered: 12/15/1992) |
| 12/15/1992 | 120 | Letter to the clerk from Atty. Michael C. Fee requesting the court to schedule oral argument on Tropicana's motion for Rule 11 sanctions FILED cc/oppos/cl (fmr) (Entered: 12/16/1992) |
| 12/18/1992 | 121 | Response by Tropicana Products in opposition to [115-1] motion to vacate or amend [102-1] Final Judgment (fmr) (Entered: 12/21/1992) |
| 12/21/1992 | 122 | Affidavit of Steven B. Gold FILED (fmr) (Entered: 12/21/1992) |
| 12/21/1992 | 123 | Response by Tropicana Products in opposition to [118-1] motion for equitable relief (fmr) (Entered: 12/22/1992) |
| 12/31/1992 | 124 | Motion by Diana B. Davis to delete her consent from th final judgment FILED (fmr) (Entered: 01/04/1993) |
| 12/31/1992 | 125 | Affidavit of Diana B. Davis Re: [124-1] motion to delete her consent from th final judgment (fmr) (Entered: 01/04/1993) |
| 01/11/1993 | 126 | Transcript FILED of conference held 11/2/92 before Judge Keeton (Reptr. Willette) (fmr) (Entered: 01/11/1993) |
| 01/11/1993 | 127 | Notice of Change of Address of Atty. Steven J. Comen to the law firm of Goodwin Procter FILED (fmr) (Entered: 01/12/1993) |
| 01/11/1993 | 128 | Supplemental memorandum by Vero Beach Groves in support of [115-1] |

|  |  | motion to vacate or amend [102-1] Final Judgment (fmr) (Entered: 01/12/1993) |
|---|---|---|
| 01/13/1993 | 129 | Motion by Tropicana Products to strike Diane Davis' affidavit and motion to delete consent from final judgment FILED c/s (fmr) (Entered: 01/14/1993) |
| 01/13/1993 | 130 | Memorandum by Tropicana Products in support of [129-1] motion to strike Diane Davis' affidavit and motion to delete consent from final judgment (fmr) (Entered: 01/14/1993) |
| 01/13/1993 | 131 | Motion by Vero Beach Groves (George S. Davis) to stay execution on the Final Judgment FILED (fmr) Modified on 01/25/1993 (Entered: 01/14/1993) |
| 01/13/1993 | 132 | Supplemental Affidavit of Atty. James M. McDonough, Jr. FILED (fmr) (Entered: 01/14/1993) |
| 01/15/1993 | 133 | Judge Robert E. Keeton . Order Re: impounded material to be made public pursuant to Local Rule 7.2, unless otherwise requested. (fmr) (Entered: 01/15/1993) |
| 01/19/1993 | 134 | Notice of Hearing: set status conference for 9:00 2/5/93 re: motion for Rule 11 Sanctions and all pending motions (fmr) (Entered: 01/20/1993) |
| 01/22/1993 | 135 | Motion by Tropicana Products to strike [132-1] supplemental affidavit of James M. McDonough, Jr. and the Davises' supplemental memorandum and motion to stay execution on the final judgment FILED c/s (fmr) (Entered: 01/25/1993) |
| 01/22/1993 | 136 | Memorandum by Tropicana Products in support of [135-1] motion to strike [132-1] supplemental affidavit of James M. McDonough, Jr. and the Davises' supplemental memorandum and motion to stay execution on the final judgment (fmr) (Entered: 01/25/1993) |
| 01/25/1993 | 137 | Reply by Diana Davis to response to [129-1] motion to strike Diane Davis' affidavit and motion to delete consent from final judgment FILED (fmr) (Entered: 01/26/1993) |
| 02/02/1993 | 138 | Motion by Tropicana Products for continued impoundment of all materials filed under seal FILED c/s (fmr) (Entered: 02/02/1993) |
| 02/05/1993 |  | Status conference held (fmr) (Entered: 02/11/1993) |
| 02/05/1993 | 140 | Judge Robert E. Keeton . Clerk's Notes (Reptr. Willette): Docket #93 is dismissed as moot as to Vero Beach, granting [110-1] motion for leave to file a response in support of its for sanctions, mooting [111-1] motion for leave to file certain materials under seal, dismissing [112-1] motion to compel asset citation discovery and for recovery of fees filing of this motion, denying [115-1] motion to vacate or amend [102-1] Final Judgment, denying [118-1] motion for equitable relief, denying [124-1] motion to delete her consent from th final judgment, dismissing [129-1] motion strike Diane Davis' affidavit and motion to delete consent from final judgment, denying [131-1] motion to stay execution on the Final Judgment, dismissing [135-1] motion to strike [132-1] supplemental affidavit of James M. McDonough, Jr. and the Davises' supplemental memorandum and motion to stay execution on the final |

| | | |
|---|---|---|
| | | judgment, granting [138-1] motion for continued impoundment of all materials filed under seal, granting [139-1] motion for attorney fees and expenses pursuant to Final Judgment of 11/23/92. Court finds fees to be reasonable and properly supported. Court awards fees in the amount of $412,331.97. (fmr) (Entered: 02/11/1993) |
| 02/05/1993 | 141 | Judge Robert E. Keeton . Clerk's Notes (Reptr. Willette): Colloquy re: Rule 11 sanctions against Hinkley, Allen & Snyder. Docket #93, Rule 11 motion, is DENIED. Court finds there was some factual support for counsel to make the counterclaim they made. (fmr) (Entered: 02/11/1993) |
| 02/17/1993 | | Transmitted supplemental record on appeal: documents 140,141 (eaf) (Entered: 02/18/1993) |
| 02/23/1993 | 142 | Transcript FILED of hearing on Rule 11 sanctions held before Judge Keeton (Reptr. Willette) (fmr) (Entered: 02/23/1993) |
| 02/23/1993 | 143 | Transcript FILED of hearing on motions held 2/5/93 before Judge Keeton (Reptr. Willette) (fmr) (Entered: 02/23/1993) |
| 03/04/1993 | 144 | Motion by Tropicana Products for entry of Final Judgment re: Attorney's Fees FILED c/s (fmr) (Entered: 03/08/1993) |
| 03/12/1993 | | Judge Robert E. Keeton . Endorsed Order granting [144-1] motion for entry of Final Judgment re: Attorney's Fees (fmr) (Entered: 03/16/1993) |
| 03/12/1993 | 145 | Judge Robert E. Keeton . Final Judgment re: Attorney's Fees ENTERED. It is hereby ORDERED and ADJUDGED that: "In addition to the award set forth in the Final Judgment dated 11/23/92, and in accordance with paragraph 5 of such Final Judgment, judgment is entered in favor of the plaintiff Tropicana Products and against the defendant Vero Beach Groves in the amount of $412,331.97 representing attorney's fees and expenses incurred by Tropicana Products." (fmr) (Entered: 03/16/1993) |
| 03/17/1993 | 146 | Opinion from Court of Appeals ENTERED. "...Tropicana's request for costs under rule 39 is granted. Its request for double costs and attys' fees under rule 38 and fdor sanctions under 28 U.S.C. sec. 1927 is denied." (ghh) (Entered: 03/22/1993) |
| 05/06/1998 | 147 | Judge Robert E. Keeton . Order entered pursuant to Local Rule 7.2 re impounded documents in the custody of Court, cc/cl. (fmr) (Entered: 05/06/1998) |

## PACER Service Center

### Transaction Receipt

| 08/07/2008 10:56:26 | | | |
|---|---|---|---|
| PACER Login: | ws0006 | Client Code: | 999999.00376-14914 |
| Description: | Docket Report | Search Criteria: | 1:92-cv-11044-REK |
| | | | |

| Billable Pages: | 8 | Cost: | 0.64 |