# APPENDIX

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 1404016 (N.D.Ill.), 33 Employee Benefits Cas. 1704
**2004 WL 1404016 (N.D.Ill.)**

CHolansky v. Prudential Financial
N.D.Ill.,2004.

United States District Court,N.D. Illinois, Eastern
Division.
Yaakov B. HOLANSKY, Plaintiff,
v.
PRUDENTIAL FINANCIAL, Prudential Securities
Incorporated Mastershare Plan, and Judy Vance,
Defendants.
**No. 02 C 4820.**

June 21, 2004.

Voegtle & Lichter, Libertyville, IL, Robert J. Kolasa,
Attorney at Law, Lake Forest, IL, Robert A. Holstein,
Holstein Law Offices LLC, Chicago, IL, for Plaintiff.
Ian H. Morrison, Seyfarth Shaw, Chicago, IL,
Thomas J. Kavaler, Nicholas S. Goldin, Cahill,
Gordon & Reindel, New York, NY, for Defendants.

*MEMORANDUM OPINION*

DERYEGHIAYAN, J.
**\*1** This matter is before the court on Defendant's
motion to dismiss. For the reasons stated below we
deny the motion in part and grant the motion in part.

BACKGROUND

In 1999, Plaintiff Yaskov B. Holansky ("Holansky")
worked for Defendant Prudential Securities
Incorporated ("PSI"). During his employment
Holansky elected to participate in a compensation
plan referred to as the MasterShare Plan ("Plan").
The Plan is a compensation plan offered to
employees called Financial Advisors at PSI.
Holansky quit his employment with PSI and PSI told
him that his contributions to the Plan were forfeited
under the terms of the Plan. PSI claims that before
signing onto the Plan, Holansky received an
informational booklet and signed an election form
that specifically disclosed the forfeiture provision in
the plan.

PSI argues that the individuals that participated in the
Plan were Financial Advisors and thus, were

sophisticated individuals that were knowledgeable in
financial matters. Holansky contends that he was
merely a Financial Advisor trainee and that he and
others were not trained in matters that would have
enabled him to understand the forfeiture provision.

Holansky also contends that PSI promoted the Plan
as a pension plan and claims that employees were
pressured to join the Plan. According to Holansky, all
trainees were "strongly encouraged" to join the Plan
and that non-participation in the plan was considered
an indication that the trainee did not plan to stay with
PSI. According to Holanksy, a substantial portion of
a trainee's salary was deducted as contributions for
the Plan.

Holansky brought the instant action against
Defendant PSI and Defendant Judy Vance (hereafter
included in references to "PSI") who was PSI's
Director of Human Resources. Holansky seeks to
recover his contributions and attorneys' fees under §
502 of the Employee Retirement Income Security Act
("ERISA"). Holansky also brings a breach of
fiduciary duty claim under ERISA, an equitable
claim for recovery of contributions, a New York
labor law claim, and an estoppel claim. Defendants
have moved to dismiss the amended complaint in its
entirety.

LEGAL STANDARD

In ruling on a motion to dismiss, the court must draw
all reasonable inferences that favor the plaintiff,
construe the allegations of the complaint in the light
most favorable to the plaintiff, and accept as true all
well-pleaded facts and allegations in the complaint.
*Thompson v. Illinois Dep't of Prof'l Regulation,* 300
F.3d 750, 753 (7th Cir.2002); *Perkins v. Silverstein,*
939 F.2d 463, 466 (7th Cir.1991). The allegations of
a complaint should not be dismissed for a failure to
state a claim "unless it appears beyond doubt that the
plaintiff can prove no set of facts in support of his
claim which would entitle him to relief."*Conley v.
Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d
80 (1957). Nonetheless, in order to withstand a
motion to dismiss, a complaint must allege the
"operative facts" upon which each claim is based.
*Kyle v. Morton High School,* 144 F.3d 448, 454-55

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 1404016 (N.D.Ill.), 33 Employee Benefits Cas. 1704
**2004 WL 1404016 (N.D.Ill.)**

(7th Cir.1998); _Lucien v. Preiner,_ 967 F.2d 1166, 1168 (7th Cir.1992). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. _Higgs v. Carter,_ 286 F.3d 437, 439 (7th Cir.2002); _Kyle,_ 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim,"_Id.,_ and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claim."_Perkins,_ 939 F.2d at 466-67.

## DISCUSSION

_I. Whether the Plan is Governed by ERISA_

**\*2** Holansky's ERISA claims are based upon the provisions of ERISA that prohibit the forfeiture of employee contributions. Defendants seek to dismiss the suit on the basis that the Plan is not governed by ERISA. ERISA governs plans that fall within the definition of an "employee welfare benefit plan" or an "employee pension benefit plan." 29 U.S.C. § 1002(3). Holansky claims that the Plan constitutes an employee pension benefit plan. An employee pension benefit plan is defined as "any plan, fund, or program ... to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program-(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond...."29 U.S.C. § 1002(2)(A). Holansky argues that the surrounding circumstances in this case indicate that the Plan was an employee pension benefit plan and that it was thus governed by ERISA.

Holansky argues that the Plan is an employee benefit pension plan because the Plan defers taxation. PSI argues that the Plan defers taxation only for a discrete period of time and does not systematically defer taxation until retirement. According to PSI, the Plan provides for distribution during a participant's employment and that at the end of the three year period Plan participants have the unrestricted right to the full value of their shares. However, the Plan allows participants to request successive one year extensions after the three year period. Holansky alleges that Plan participants routinely seek successive one year extensions under the terms of the plan to continue deferment until retirement. PSI

argues that simply because employees may theoretically use a Plan to defer income until retirement does not mean that the Plan is an employee benefit pension plan. However, such matters although not conclusive, are relevant for the surrounding circumstances inquiry.

Holansky also alleges that PSI promoted the Plan as an employee benefit pension plan. He claims that PSI told new trainees that the Plan was to serve as a pension plan and was a "great way to save for retirement."(Ans 2). PSI points out that when Holanksy joined the Plan he signed a form indicating that his understanding of the Plan was based on the information contained in the booklet and was not based on oral statements made by others at PSI.

We find that it is premature to dismiss the ERISA claims at this juncture. It is possible, based upon the allegations before us, that the Plan is governed by ERISA. We cannot grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."_Conley,_ 355 U.S. at 45-46. Based upon the allegations before us, it is possible that the surrounding circumstances are such that the Plan was governed by ERISA. PSI's arguments are also overreaching at times because they seek to question the veracity of Holansky's allegations and implore the court to accept PSI's version of the facts which is improper at this stage of the proceedings. It is possible that the Plan is governed by ERISA, if, for example, PSI promoted the Plan as a retirement plan, its employees regularly utilized it as a retirement plan, and the three year period was meaningless because it was routine to simply grant one year extensions until retirement. Holansky is entitled to proceed on to discovery to see if he can collect evidence that would show these facts or other facts that would indicate that ERISA governed the Plan. In discussing our ruling as to the motion to dismiss, we make no findings as to what facts may or may not meet Holansky's burden of proof. Therefore, we deny the motion to dismiss the ERISA claims.

**\*3** We note that we are informed by PSI that we should not find that the Plan is "draconian" and apparently should not find that it is governed by ERISA because "the existence of the identical forfeiture provision did not stop six judges on the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2004 WL 1404016 (N.D.Ill.), 33 Employee Benefits Cas. 1704
**2004 WL 1404016 (N.D.Ill.)**

New York Court of Appeals from unanimously holding" that the plan is valid under New York Labor Law. (Reply 5). While this fact may have relevance on the New York Labor Law claim, it has little relevance for our other determinations in this case. PSI has also provided the court with a recitation of their previous successes across the country in litigation. They warn us that "[n]o tribunal has ruled against PSI on its motion for summary judgment."(Mot.5). However, none of PSI's cited case law is controlling precedent. We address each case before us on an individual basis and decide according to the facts and law before us. PSI's string of citations to other cases, in which rulings were made in its favor, is not dispositive in this case. In fact, other than statutory citations in its briefs, PSI relies exclusively on caselaw outside of this district. Such law is technically persuasive authority, but is not controlling authority.

*II. New York Labor Law Claim*

Holansky alleges in his amended complaint that the Plan's payroll deductions violated New York Labor Law § 193.1. Holansky alleges that the law permits voluntary deductions only for "payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee."(A Compl. 24). PSI argues in its memorandum in support of its motion that the New York Court of Appeals has already considered the Plan in *Marsh v. Prudential Securities Inc.,* 1 N.Y.3d 146, 770 N.Y.S.2d 271, 802 N.E.2d 610 (N.Y.2003) and addressed this same issue and found that the Plan does not violate New York Labor Law § 193.1. Holansky does not respond to this argument at all in his answer brief. PSI argues expressly that Holansky, by his silence, concedes that his claim is without merit and that "[a]ll parties thus agree that the claim fails."(Reply 14). Holansky has not sought leave to file a sur-reply to challenge this statement and his continued silence is an acquiescence that his claim is baseless. A review of the case also reveals that PSI's position is correct. Therefore, we grant PSI's motion to dismiss the New York Labor Law claim.

*III. Estoppel Claim*

PSI moves to dismiss the estoppel claim. Holansky contends that PSI should be estopped from enforcing the forfeiture provision because of the manner in which PSI handled FICA taxes on monies that were invested in the Plan. According to Holansky, since the Internal Revenue Code provides that FICA taxes should be withheld when there is a risk of forfeiture, PSI cannot enforce the forfeiture provision. Holansky also makes much of the fact that PSI changed the tax treatment of the Plan. Holansky's arguments on this issue are completely without merit. The the tax treatment of the Plan is not a basis for a valid claim. Holansky even concedes that he received the benefit of the Plan's revised tax treatment in the form of a revised W-2.

**\*4** Holansky also fails to show how his claim is an estoppel claim and has not provided any law in support of his estoppel claim. While a plaintiff is not required to specifically plead a cause of action and is not required to plead each element of a cause of action, a plaintiff must provide at least the operative facts. *Kyle,* 144 F.3d at 454-55. The doctrine of estoppel is based upon a reasonable reliance by a party to its detriment. *See e.g. Kennedy v. U.S.,* 965 F.2d 413, 417 (7th Cir.1992); *Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.,* 342 F.3d 149, 165 (2nd Cir.2003). Holansky fails to allege facts that would fit into that definition. There is no indication that the Plan was operated in a manner other than Holanksy should have expected. Estoppel is not simply a catchall cause of action which any plaintiff can bring to estop a defendant from doing something. Therefore, for this reason and the reasons stated above, we grant the motion to dismiss the estoppel claim.

CONCLUSION

Based on the foregoing analysis, we deny the motion to dismiss the ERISA claims and grant the motion to dismiss the New York labor law claim and the estoppel claim.

N.D.Ill.,2004.
Holansky v. Prudential Financial
Not Reported in F.Supp.2d, 2004 WL 1404016 (N.D.Ill.), 33 Employee Benefits Cas. 1704

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                     Page 1
Not Reported in F.Supp.2d, 2007 WL 172612 (E.D.Wis.)
**2007 WL 172612 (E.D.Wis.)**

Orthoarm, Inc. v. American Orthodontics Corp.
E.D.Wis.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. Wisconsin.
ORTHOARM, INC., Plaintiff,
v.
AMERICAN ORTHODONTICS CORP., Defendant.
**No. 06-C-0532.**

Jan. 18, 2007.

Thomas S. Reynolds, II, Timothy M. Hansen,
Michael Best & Friedrich LLP, Milwaukee, WI, for
Plaintiff.
William E. Duffin, Godfrey & Kahn SC, Milwaukee,
WI, for Defendant.

DECISION AND ORDER GRANTING MOTION
FOR LEAVE TO FILE SURREPLY, DENYING
MOTION FOR RELIEF FROM DEFAULT,
DENYING REQUEST FOR LEAVE TO FILE
TARDY ANSWER, GRANTING MOTION FOR
DEFAULT JUDGMENT AS TO LIABILITY, AND
SETTING PROVE-UP HEARING FOR DAMAGES

C.N. CLEVERT, JR., U.S. District Judge.
**\*1** OrthoArm, Inc. filed this case on April 28, 2006.
A process server swears that he served a copy of the
complaint and summons on Daniel Merkel at 17th
Cambridge Avenue in Sheboygan, Wisconsin on that
day. (Process Server Aff. filed 5/26/06.)

Merkel is the Chairman and Chief Executive Officer
of American Orthodontics Corporation. (Merkel Aff.
filed 5/31/06 ¶ 1.) He swears he has no recollection
of being served with the summons and complaint in
this case and that if he had been served, he would
have forwarded the documents to American's
counsel. (Merkel Aff. filed 5/31/06 ¶¶ 2-3.) However,
in addition to the process server's affidavit stating
that Merkel was served, OrthoArm submits a copy of
the process service's written receipt, which includes
the signature of a Daniel Merkel and 3:15 p.m. April
28, 2006, as the time and date of service. (Hansen
Aff. filed 6/21/06, Ex. B.) The signature on the
receipt appears, to the court, to be the same as the
signature on Merkel's affidavit.

A signed return of service establishes prima facie
evidence of valid service.*O'Brien v. R.J. O'Brien &
Assocs.,* 998 F.2d 1394, 1398 (7th Cir.1993). To
overcome a signed return of service, the defendant
must present strong and convincing evidence. *Id.*
Here, on the basis of the process server's affidavit and
the receipt, and Merkel's statement only that he does
not *recall* being served with the documents-not that
he was not served with them-the court finds that
Merkel was served with the summons and complaint
on April 28, 2006.

Failure to file proof of service with the court does not
affect the validity of service, Fed.R.Civ.P. 4(*l* ); the
date for an answer runs from the date of service,
regardless of when the proof of service is filed. *See
O'Brien,* 998 F.2d at 1398. Thus, American had
twenty days from service on Merkel-until May 18-to
answer the complaint, *see*Fed.R.Civ.P. 12(a)(1)(A),
but it did not do so.

On May 26, OrthoArm requested entry of default.
The clerk of court entered default during the morning
of May 30. Later that day, OrthoArm moved for
default judgment. The next day, in response,
American filed a Motion for Relief from Default
Judgment. Then, in a letter to the court filed June 1,
American presented a proposed answer, indicating
that it had filed its motion for relief quickly and
wanted to supplement it with the proposed
answer.[FN1]As permitted by the court's local rules,
OrthoArm responded to the motion for relief and
American replied.

> FN1. OrthoArm objects to the procedure
> American used in presenting its proposed
> answer, arguing that American's letter was
> not sufficient under Fed.R.Civ.P. 6(b)(2),
> which requires a motion for an enlargement
> of time. Although the letter perhaps does not
> comply with Rule 6(b)(2) and Fed.R.Civ.P.
> 7(a) regarding the filing of motions, the
> court will accept the letter with the attached
> proposed answer as a sufficient request for
> the court to permit the filing of the proposed
> answer even though tardy.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2007 WL 172612 (E.D.Wis.)
**2007 WL 172612 (E.D.Wis.)**

In its reply brief American raised for the first time an argument that certain conduct of OrthoArm's counsel violated the Seventh Circuit's Standards for Professional Conduct. Five weeks after American's reply brief, OrthoArm moved for leave to file a surreply brief regarding the standards of professional conduct issue. American then responded to the surreply, pointing out the amount of time OrthoArm waited before seeking leave to file the surreply.

Meanwhile, OrthoArm and American proceeded to trial as codefendants in a case before Senior Judge Thomas J. Curran. *Adenta GmbH v. OrthoArm Inc.,* No. 04-C-905, trial minutes (Doc. # 100) (E.D. Wis. filed May 15, 2006). Trial began May 15, 2006, and continued through May 19, 2006, with an additional post-verdict hearing on May 24. *Id.* Adenta sought to invalidate a patent obtained by OrthoArm and assigned to American. (Compl.¶¶ 8, 12, 32.)

**\*2** The *Adenta* case had been tried previously-or a least a trial was started-in late January 2006. *Adenta GmbH v. OrthoArm, Inc.,* No. 04-C-905, trial minutes (Doc. # 60, # 61) (E.D. Wis. filed 1/30/06). American failed to appear for that trial, so Judge Curran ordered that default be entered against American. *Adenta GmbH v. OrthoArm, Inc.,* No. 04-C-905, slip op. (Doc. # 57) (E.D. Wis. filed 1/30/06). Eventually, Judge Curran declared a mistrial, and the case was reset for trial on May 15. *Adenta GmbH v. OrthoArm, Inc.,* No. 04-C-905, slip op. (Doc. # 82) (E.D. Wis. filed 3/30/06). American appeared before Judge Curran for that trial by counsel, Attorney, William Duffin, who attests that he attended the entire trial in May 2006. (Duffin Decl. filed 5/31/06, ¶ 3.)

Notwithstanding that, the *Adenta* case was open and pending when the present case was filed, OrthoArm did not mark the civil cover sheet for this case with a notation that this case was related to Judge Curran's case. Therefore, the present case was randomly assigned to this court.

On May 18, 2006, Judge Curran withdrew from new case assignments. Shortly thereafter, all of his then-pending cases were reassigned to other judges in the district. However, Judge Curran kept the *Adenta* case through the May 30, 2006, entry of judgment. When the parties in the *Adenta* case filed postjudgment motions, the *Adenta* case was briefly assigned to this

court by the clerk's office, as Judge Curran was no longer being assigned cases. However, Judge Curran directed the clerk of court to return the *Adenta* matter to him for decision on the postjudgment motions, presumably because of his depth of knowledge of this case. From the docket of the *Adenta* case, it appears that the last postjudgment motions were decided on July 11, 2006, and that OrthoArm's appeal and the *Adenta* plaintiffs' cross-appeal are presently pending before the Federal Circuit Court of Appeals. *See Adenta GmbH v. OrthoArm, Inc.,* No. 04-C-905, docket entries 151, 155, 157 and related notes by clerk's office staff (E.D.Wis.).

### MOTION FOR LEAVE TO FILE A SURREPLY

The first question is whether the court should accept the surreply brief filed by OrthoArm. Although American is correct that OrthoArm waited several weeks before seeking leave to file the surreply, American did raise in its reply brief the new argument regarding the Seventh Circuit's Standards for Professional Conduct.

The court could ignore that new argument. However, for completeness and as a matter of fundamental fairness, the court will consider the argument as well as the response to it. Therefore, the motion for leave to file a surreply will be granted.

### MOTION FOR RELIEF FROM DEFAULT

The next question is whether the court should relieve American from its default.[FN2] As an initial matter, the court is mindful that defaults are no longer disfavored in this circuit. *O'Brien,* 998 F.2d at 1401.

> FN2. American does not argue, nor could it, that default was improperly entered. Pursuant to Fed.R.Civ.P. 55(a), default should be entered against any party "against whom a judgment for affirmative relief is sought [who] has failed to plead or otherwise defend as provided by" the Federal Rules of Civil Procedure. It is undisputed that American did not file an answer by the deadline provided in Fed.R.Civ.P. 12(a)(1)(A).

**\*3** American argues for relief from default judgment

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2007 WL 172612 (E.D.Wis.)
**2007 WL 172612 (E.D.Wis.)**

under Fed.R.Civ.P. 60(b)(1) for "mistake, inadvertence, surprise, or excusable neglect."But Rule 60(b) applies to relief from a final judgment or final order, and no final default judgment has yet been entered in this case; the court has not to date granted OrthoArm's motion for default judgment. The rule for this situation is Fed.R.Civ.P. 55(c): "For good cause shown the court may set aside an entry of default ...." Therefore, the court will consider American's motion as one for relief from default under Rule 55(c).

However, the Seventh Circuit has indicated that the standards for setting aside an entry of default under Rule 55(c) and for setting aside a default judgment under Rule 60(b) are essentially the same. *Davis v. Hutchins,* 321 F.3d 641, 646 n. 2 (7th Cir.2003); *Pretzel & Stouffer v. Imperial Adjusters, Inc.,* 28 F.3d 42, 45 (7th Cir.1994). The only difference is that the test is applied more rigorously in the Rule 60(b) context, as setting aside a default judgment should be more difficult than setting aside a default. *See Jones v. Phipps,* 39 F.3d 158, 162, 164 (7th Cir.1994); *O'Brien,* 998 F.2d at 1401.

To vacate an entry of default, the moving party must show: (1) good cause for the default, (2) quick action to correct the default, and (3) that it has a meritorious defense to the complaint. *Pretzel & Stouffer,* 28 F.3d at 45. All three requirements must be met. *Id.* at 46.The court agrees with American that it took quick action to correct the default. One day after the entry of default and OrthoArm's motion for default judgment, American moved for relief from the default; and within two days American presented its proposed answer. However, American fails to establish the two other requirements.

A. Lack of Good Cause

Regarding "good cause," to the extent American relies on Merkel's declaration that he does not recall having been served with the summons and complaint (Merkel Decl. filed 5/31/06 ¶ 2), it presents no excuse whatsoever. The fact of service having been established, Merkel's declaration does not suffice to avoid the default.

American maintains in its motion that even if Merkel was served the failure to respond was inadvertent, yet it fails to support the argument with any evidence.

Merkel's declaration provides no details regarding what might have happened to the summons and complaint internally at American after service or why he cannot remember being served only a month prior to his declaration. (*See id.* ¶¶ 1-3.)He states that if he had been served with the summons and complaint he would have forwarded the documents to American's counsel. (*Id.* ¶ 3.) If he did forward the documents to counsel, then counsel should have submitted an affidavit regarding what went wrong at the law firm. American has presented nothing but speculation regarding what happened to the summons and complaint and why Merkel failed to notify counsel of the documents. Furthermore, in its reply brief American admits that it "has no explanation for the delay in responding to the Complaint because it has no recollection of having been served with the Complaint."(Def.'s Reply at 7.) Speculation and lack of an explanation cannot constitute good cause.[FN3]

> FN3. American does not, and cannot, suggest that it and its counsel were so busy preparing for trial before Judge Curran that the default should be excused. Merkel was served with the summons and complaint seventeen days before trial started.

**\*4** But even presuming that some kind of communication or clerical error occurred at Merkel's office or between Merkel and his attorneys, "routine back-office problems" do not establish good cause for a default, either.*Pretzel & Stouffer,* 28 F.3d at 46. The Seventh Circuit has rejected as good cause an attorney's difficulties communicating with his client and an attorney's miscalendaring of a date. *Id.* at 45.Similar communications or clerical errors within the client or law firm also must be rejected.

American asserts that OrthoArm's failure to check the related-case box on the civil cover sheet-resulting in the assignment of this case to this court rather than to Judge Curran, *see* Civil L.R. 3.1(c) (E.D.Wis.)-contributed to its default. That excuse also fails to constitute good cause, for three reasons. First, the judge assigned to the case has no bearing on the date for an answer or whether American would have learned about the filing of the present case. Judge Curran had no obligation to inform American that he had been assigned another case in which American was a named defendant, and it is pure speculation on American's part whether Judge Curran would have

mentioned it prior to May 18, 2006. Second, the local rules are intended to be enforced by the court, not the parties. General L.R. 1.1 (E.D.Wis.).

Third, whether the present case is related to Judge Curran's under the applicable local rule is subject to legitimate debate.

Factors to be considered in determining whether or not a case is related to another case in this district include whether both cases (i) arise from substantially the same transaction or events; (ii) involve substantially the same parties or property; or (iii) involve the same patent, trademark, or copyright.

Civil L.R. 3.1(c). The *Adenta* case was a patent invalidity case arising under federal statute. The jury verdict from that case shows that the issues included whether an underlined orthodontic bracket was on sale at a conference in Orlando in May 1994, whether claims in the patent were anticipated and obvious, and whether the inventor withheld material information from the U.S. Patent Office during prosecution of the patent application. *Adenta GmbH v. OrthoArm, Inc.,* No. 04-C-905, Special Verdict (E.D. Wis. filed 5/19/06). Although the complaint in the present case includes assertions about the same patent, the present case does not arise from the patent itself or any events in Orlando in 1994 or before the U.S. Patent Office. The present case is a contract dispute between OrthoArm and American, arising from a settlement agreement of June 2002 and American's defense of litigation filed in 2004. (Compl.¶¶ 10-11.)

OrthoArm asserts that the agreement required that American defend the *Adenta* case consistent with patent validity, but American failed to do so, resulting in OrthoArm having to step in to defend the patent. Further, OrthoArm contends that under the terms of the settlement agreement, American was to make royalty payments to OrthoArm in exchange for an assignment of the patent and that American failed to make royalty payments for certain orthodontic appliances made by Adenta under a license granted by American to Adenta. Here it is asserted that subject matter jurisdiction is based on diversity, rather than a federal question. While some of the damages in the present case are related to the *Adenta* case, as they consist of the attorneys' fees from OrthoArm's defense in *Adenta,* the present case arises out of the contract and the defense of the *Adenta*

case, not the patent. That the *Adenta* appeal is presently pending before the Federal Circuit highlights the dissimilarity between the cases, as an appeal of this case would go to the Seventh Circuit. Therefore, the present case arguably neither arises from the same transaction or events as the *Adenta* case did and does not involve the patent at issue in *Adenta.*Thus, OrthoArm was not necessarily wrong in not checking the related-case box.

**\*5** Next, American attempts to shift blame to OrthoArm, arguing that OrthoArm and its counsel failed to notify American or its counsel of the default even though they were together at trial on the date an answer or other responsive pleading was due. Here is where the Seventh Circuit's Standards for Professional Conduct within the Seventh Federal Judicial Circuit come into play. They list two duties of counsel:

17. We agree to reasonable requests for extensions of time and for waiver of procedural formalities, provided our clients' legitimate rights will not be materially or adversely affected.

18. We will not cause any default or dismissal to be entered without first notifying opposing counsel, when we know his or her identity.

Standards for Professional Conduct with the Seventh Federal Judicial Circuit, www.ca7.uscourts.gov/Rules/rules.htm# standards (last visited 1/4/07). But even if OrthoArm acted contrary to one of these standards, the preamble to the standards indicates that the purpose of the standards is to achieve civility and professionalism, and adherence is voluntary, although expected. *Id.* Further, "[t]hese standards shall not be used as a basis for litigation or for sanctions or penalties. Nothing in these standards supersedes or detracts from existing disciplinary codes or alters existing standards of conduct .... " *Id.*

While notice to American's counsel may have been a polite thing to give, OrthoArm's counsels' duties ran to their own client, not to American. Before the default, OrthoArm had no way of knowing that Merkel had failed to inform his attorneys of the summons and complaint. The deadline for American to file its answer passed during the middle of trial involving both parties. At that time, especially,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2007 WL 172612 (E.D.Wis.)
**2007 WL 172612 (E.D.Wis.)**

OrthoArm's counsel had to be dedicated to its client's work, not monitoring and informing American's counsel of American's matters. And following American's default, OrthoArm had a legitimate right to the entry of default. Perhaps OrthoArm even directed its counsel not to inform American of the lapsed time for filing an answer. In any event, the Seventh Circuit standards are aspirational, and, by their own terms, do not provide a basis for litigation or a decision in this case. Nor do those standard trump Fed.R.Civ.P. 4.

OrthoArm complied with Fed.R.Civ.P. 4(h)(1) by personally serving American's Chairman and CEO. American argues that something more was required-some oral or written communication to American's counsel. But Rule 4 does not require service on a known attorney as well as on the party. In sum, American has presented no good cause for missing the answer deadline.

B. Lack of a Meritorious Defense

"[A] meritorious defense requires more than a " 'general denial' " and " 'bare legal conclusions.' " *Pretzel & Stouffer*, 28 F.3d at 46. The defendant's response to a motion for default judgment must point to a grounding in facts sufficient to support the defense. *Id.* The defense does not have to appear successful beyond a doubt, "but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." *Jones*, 39 F.3d at 165.

**\*6** In its motion for relief from the default, American presents no argument at all regarding what its defense on the merits would be. Its proposed answer contains only general denials (*e.g.*, Proposed Answer ¶¶ 50, 51, 55, 56) and general affirmative defenses (*id.* at 6). In its reply, which should be considered too late for such an argument anyway, American argues that OrthoArm will not be prejudiced by a grant of relief from the default. In connection with that argument, American contends: "While [OrthoArm] may (and indeed should) have serious doubts about its ability to prove its case on the merits, certainly that is not the type of prejudice (that is, protecting plaintiffs from their meritless claims) that the courts should be concerned about."(Def.'s Reply at 6.) Also, American contends: "There is a *reason* why OrthoArm so

vigorously presses forward seeking a default judgment against American Orthodontics: its claim against American Orthodontics is so completely without merit that it knows with absolute certainty it will never survive a dispositive motion and its only hope is to prevail now."(*Id.* at 2.) But American does not describe why plaintiff's claims are meritless or on what grounds or arguments it would defend the present lawsuit if it were to proceed on the merits. Although American attaches the 2002 settlement agreement and its answer from the *Adenta* case to an affidavit, this court is not required to sort through American's evidence and develop American's arguments for it. *See Hunt-Golliday v. Metro. Water Reclamation Dist.*, 104 F.3d 1004, 1010 n. 2 (7th Cir.1997) ("The parties bear the burden of identifying evidence that will facilitate the court in determining whether a material issue of fact exists. We have repeatedly indicated that we and the courts below are not obliged to scour the record looking for factual disputes."). Therefore, American fails to satisfy this required element for vacating the default.

C. Conclusion Regarding Relief from Judgment

While this court encourages civility between attorneys, Rules 4 and 55 have meaning. Proper service cannot be ignored, and to obtain relief from default a defendant must present more than that the person served does not recall the service (which in this case occurred only one month earlier). A defendant who presents no good excuse for failing to answer and no meritorious defense should not be relieved from default on the basis that it would have been honorable or cordial for plaintiff's counsel to have notified defense counsel of the lawsuit. Defense counsel's own client should have notified defense counsel of the lawsuit, and it presents an insufficient reason for not doing so. Thus, the motion will be denied.

MOTION FOR DEFAULT JUDGMENT

American's motion for relief from default was also its response to OrthoArm's motion for default judgment. That response being rejected, the motion for default judgment will be granted as to liability.

**\*7** However, as to damages the court is unconvinced that all of the amounts sought by OrthoArm in its motion should be awarded. First, OrthoArm is

Not Reported in F.Supp.2d                                                                                    Page 6
Not Reported in F.Supp.2d, 2007 WL 172612 (E.D.Wis.)
**2007 WL 172612 (E.D.Wis.)**

unclear about what damages it should receive. In the complaint, OrthoArm asserts "damages, including without limitation, attorneys' fees incurred in Case No. 2:04-cv-00905 [the *Adenta* case], lost profits, and unpaid royalty payments."(Compl.¶ 51.) In its motion for default judgment, OrthoArm provides three different summaries of its damages, twice breaking the damages into three elements. In one section of the motion, OrthoArm says the three elements are: (1) $282,382.99, for the attorneys' fees expended through April 2006, in defending the patent in the *Adenta* case; (2) the then unbilled attorneys' fees from the *Adenta* case through its conclusion; and (3) the attorneys' fees incurred by OrthoArm in defending the patent from May 2006, through the entry of judgment in the present case.[FN4] In a latter section of the motion, the first two elements are the same but the third element is "the quarterly royalties owed by American to OrthoArm based on the sales of covered products for the life of the '883 patent."(Mot. for Default J. at 4.) The conclusion of the motion then asks for monetary and apparently injunctive relief: "default judgment against American in the amount of $282,382.99 and ... an Order directing American to pay to OrthoArm royalties on the sale of covered products as if the '883 patent were still valid."(*Id.*) Then, in response to American's motion for relief OrthoArm describes the damages as $373,247.50, for the attorneys' fees in defending the *Adenta* case (presumably because additional fees had been billed since the motion for default judgment had been filed); royalties OrthoArm would have received if the patent's validity had been maintained in the *Adenta* case; plus attorneys' fees for *this* case. (Pl.'s Resp. to Mot. for Relief at 3.)

> FN4. It is unclear to the court why the attorneys' fees for defending the patent should run to the end of this case rather than the *Adenta* case.

Second, OrthoArm has presented no documentary evidence regarding its damages. Although OrthoArm's attorney attests to the $282,382.99 (Hansen Aff. filed 5/30/06, ¶ 9) and the $373,247.50 amounts (Hansen Aff. filed 6/21/06, ¶ 12), OrthoArm presents no documentary proof supporting these amounts. And although OrthoArm states in its motion that the unbilled attorneys' fees and royalties can by computation be made certain, it fails to provide evidence from which the court can make the

computation. The court needs a number for a final judgment; it cannot enter a final judgment merely because the plaintiff claims that somewhere out there there is evidence which establish its damages. Finally, it is unclear whether all of the attorneys' fees, or only a portion, should be attributed to American's failure to defend the *Adenta* case.

Therefore, before final judgment is entered, the court will conduct a prove-up hearing pursuant to Fed.R.Civ.P. 55(b)(2), at which OrthoArm must present proof and a clearer argument regarding its damages. American may appear, present evidence and argue respecting the amount of damages that should be awarded. Thus, for the above-stated reasons,

**\*8** IT IS ORDERED that OrthoArm's motion for leave to file a surreply (Doc. # 23) is granted, and the surreply filed at docket # 24 is accepted as part of the record.

IT IS ORDERED that American's motion for relief from the default (Doc. # 10) is denied.

IT IS FURTHER ORDERED that American's letter request for leave to file its answer (Doc. # 16) is denied.

IT IS FURTHER ORDERED that OrthoArm's motion for default judgment (Doc. # 7) is granted as to liability.

And finally,

IT IS ORDERED that a prove-up hearing regarding damages is set for **March 15, 2007, at 2:00 p.m.** in Courtroom 222, U.S. Courthouse, 517 E. Wisconsin Ave., Milwaukee, Wisconsin.

E.D.Wis.,2007.
Orthoarm, Inc. v. American Orthodontics Corp.
Not Reported in F.Supp.2d, 2007 WL 172612 (E.D.Wis.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.