**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MORTON GROVE PHARMACEUTICALS, INC.<br><br>        Plaintiff,<br><br>v.<br><br>THE NATIONAL PEDICULOSIS ASSOCIATION, INC.<br><br>        Defendants. | No: 08-CV-1384<br><br>Judge Bucklo<br>Magistrate Judge Mason |

**NON-PARTY DR. AMY PALLER'S RESPONSE TO DEFENDANT'S
MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**

Through its subpoena, the National Pediculosis Association, Inc. ("NPA") audaciously seeks to hoist thousands of dollars of expenses on and take a full days' time away from Dr. Amy Paller, a third-party to this action and Chair of Dermatology at Northwestern University's School of Medicine. Dr. Paller also directs clinical trials at Children's Memorial Hospital and sees patients there and at Glenbrook Hospital. Far from just an ordinary "busy doctor," Dr. Paller works in excess of 100 hours per week and is the mother of three children. The NPA insists on taking a full seven-hour deposition, insists on raiding Dr. Paller's computers for electronically stored information, and refuses to compensate her at her standard hourly rate for the time she would have to take away from her practice for a deposition. Contrary to its counsel's representation, the NPA has not been willing to compromise in any way. Its attorneys issued a facially overbroad subpoena and refused to narrow its scope in any manner, wholly disregarding their Rule 45(c)(1) obligation to "take reasonable steps to avoid imposing undue

burden or expense on a person subject to the subpoena." The subpoena improperly subjects Dr. Paller to undue burden, requires her expert opinion without compensation, and must be quashed.

## ARGUMENT

The NPA's subpoena should be quashed and the NPA's motion to compel denied because the subpoena subjects Dr. Paller to undue burden. Fed. R. Civ. Proc. 45(c)(3)(A)(iv) (stating that "the issuing court must quash or modify a subpoena that . . . subjects a person to undue burden"). In determining whether a subpoena is unduly burdensome, courts weigh factors including "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are requested, and the burden imposed." *Whitlow v. Martin*, 2008 WL 2414830, at *3 (C.D. Ill. June 12, 2008). The NPA's subpoena is unduly burdensome for many reasons.

### A. *Dr. Paller's Non-party Status Must Be Given Special Weight*

Dr. Paller's status as a non-party must be a significant consideration when evaluating the NPA's subpoena. When determining whether the burden imposed by a subpoena is undue, a recipient's non-party status is significant and is given "special weight." *Id.*; *U.S. v. Amerigroup Ill., Inc.*, 2005 WL 3111972, at *4-5 (N.D. Ill. Oct. 21, 2005) (concluding the unique burden of restoring email and special weight of non-party status required the subpoena to be quashed under Rule 45(c)(3)(A)(iv)). Indeed, "non-parties are not treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection." *Patterson v. Burge*, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005).

Further, Dr. Paller is an extraordinarily busy professional: she sees patients at Children's Memorial Hospital and Glenbrook Hospital; she is the Chair of Dermatology,

Professor of Pediatrics, and Walter J. Hamlin Professor at Northwestern University's Feinberg School of Medicine; she directs a clinical trials unit at Children's Memorial Hospital, she runs a laboratory as part of those responsibilities, and she is a married mother of three boys. (Ex. B, Paller Decl. ¶¶ 1, 3.) Taking an entire day away from her other responsibilities is a weighty burden and imposition not only on her, but on others. (*Id.* ¶ 10.)

Contrary to the NPA's assertion, Dr. Paller is not a "key witness." Her involvement with Morton Grove has been limited—she spent several hours reviewing the content of Morton Grove's lobbying website (www.lindane.com) and wrote a few letters. (*Id.* at ¶ 5.) Indeed, Morton Grove has not named Dr. Paller as a witness it currently intends to call at trial to support its claims pursuant to Rule 26(a). Likewise, the NPA has never disclosed Dr. Paller in any of its Rule 26(a) disclosures or interrogatory responses. Dr. Paller's name is not mentioned anywhere in either Morton Grove's complaint or the NPA's counterclaim.[1] Her only connection to these proceedings is that she has been disclosed as someone who *may* have knowledge regarding why several of the NPA's statements are false. If the universe of people who had such knowledge was a club, it would not be a very exclusive one. For example, one of the false and deceptive statements at issue is "Illinois banned lindane." This never happened. A bill was introduced that never made its way into law. What is the universe of people who know that statement to be false—the entire Illinois congressional delegation? The request is objectionable and Morton Grove objected to it.[2] Anyone who is educated on issues relating to head lice,

---

[1] In the unlikely event that the Court allows Dr. Paller's deposition to proceed and denies Morton Grove's motion to dismiss the NPA's frivolous counterclaim, Morton Grove reserves its right to add Dr. Paller to its list of trial witness.

[2] It is, of course, not surprising that the NPA has branded Dr. Paller a "key witness" as the NPA has sought to depose 19 people and counting (without leave of Court or consent of the parties) in this straightforward matter where no money damages are being sough by either party. In contrast, Morton Grove has only noticed three depositions to date.

scabies, and their treatments, like Dr. Paller, would understand the NPA's statements to be false and deceptive.

### B.   *The Subpoena Was Issued with an Improper Purpose*

This subpoena, and those issued to several other doctors who have supported Lindane medications before legislative bodies were served only to harass. They are overbroad, particularly given that Morton Grove has not identified these individuals as witnesses pursuant to Rule 26(a). (Ex. C, Morton Grove's Amended Rule 26(a) Disclosures.) They were undoubtedly issued to exert pressure on Dr. Paller and the other physicians who support use of lindane medications, to chill their First Amendment rights and deter them from speaking out in the legislative arena. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003) (finding lower court's conclusion that subpoenas issued to employers of party's witnesses "for the purpose of getting [the employers] to exert pressure on the witnesses not to testify" was justified); *see generally* Morton Grove's Motion to Strike and Memorandum in Support, Docket Entries 64-65; Morton Grove's Motion for Protective Order and to Quash Subpoena, Memorandum in Support, and Reply Brief, Docket Entries 43-44, 59. Based on Dr. Paller's well-known and published position on Lindane medications, the NPA cannot hope to obtain any testimony from her that could benefit their case. As such, there is not legitimate basis for the NPA to take her deposition other than to harass.

### C.   *The NPA Has Used the Subpoena Power Abusively*

When Dr. Paller attempted to negotiate for a less burdensome arrangement, the efforts were to no avail.[3] The NPA refused to narrow its requests, refused to accept any less than

---

[3] With regard to the meet and confer efforts of the parties, the NPA's selective "cut and paste" effort from discussions between counsel regarding this subpoena are highly misleading and merit discussion. The NPA's recounting of the events relating to this firm's representation of Dr. Paller is inaccurate and inappropriately suggests foul play. In reality, the sequence of events is clear and logical—Morton Grove

4

a seven-hour deposition, refused to accept only paper documents (as opposed to paper and electronically stored information), and refused to compensate Dr. Paller for her time. (Ex. A, O'Neil Decl. ¶¶ 3-6.) The NPA refused to compromise on *any* aspect of the subpoena and then accused Dr. Paller's counsel of not making "[g]ood-[f]aith [a]ttempts" to negotiate the subpoena. (Def.'s Br. 3.)

It cannot be disputed that the NPA has breached its duty to take reasonable steps to avoid imposing undue burden and expense on Dr. Paller. Fed. R. Civ. Proc. 45(c)(1); *see, e.g.*, *Builders Ass'n of Greater Chicago v. City of Chicago*, 2002 WL 1008455, at *5 (N.D. Ill. May 13, 2002) (admonishing party who served subpoenas that were overly broad even after the party's proposed modification, finding that party breached its duty to avoid imposing undue burden). As a result, this Court should quash this overly broad subpoena. *See, e.g.*, *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 896-97 (S.D. Ind. 2006) (granting motion to quash non-party subpoena that was overly broad and not reasonably calculated to lead to discoverable evidence); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1995 WL 354271, at *1 (N.D. Ill. 1995) (granting motion to quash subpoena for documents because it was overly broad and unduly burdensome on its face).

At the very least, this Court should modify the NPA's subpoena to avoid the undue burden to Dr. Paller. *See PNC Bank, Nat'l Ass'n v. OCMC, Inc.*, 2007 WL 2323122, at *2 (S.D. Ind. Aug. 10, 2007) (noting such modification is allowed by Rule 45(c)(3)(A)(iv) and duly modifying subpoenas that party sought to compel). That could be accomplished by, for example,

---

was willing to tender a defense to Dr. Paller if subpoenaed, which it openly shared with the NPA. (Def.'s Br. Ex. B to Ex. 3 "Morton Grove *will* represent these individuals if necessary" (emphasis added).) When the subpoena was served, no retention agreement was in place between this firm and Dr. Paller, hence this firm informed the NPA that it did not yet represent Dr. Paller. (Def.'s Br. Ex. I to Ex. 3 ("my firm represents only Dr. Gad at this point . . . we do not represent Drs. Paller or Hebert").) Once the retention agreement was in place, this firm promptly informed the NPA. (Def.'s Br. Ex. L to Ex. 3.)

5

limiting the deposition to two hours, requiring Dr. Paller to produce only paper documents from the last three years, ordering the NPA to compensate Dr. Paller at her normal rates for the time she would spend preparing for and at the deposition, prohibiting the NPA from soliciting Dr. Paller's expert opinion at the deposition, denying requests 1 through 4 as not relevant, denying request 8 until after this Court rules on Morton Grove's pending motion for protective order, and modifying the remaining requests for documents (requests 5-7 and 9) to existing documents that do not contain Dr. Paller's expert opinion and that mention both lindane medications and either the NPA or Morton Grove.

### D. *Dr. Paller's Testimony Would Be as an Expert, Not a Fact Witness*

Dr. Paller's testimony would inevitably be given as an expert, not a fact witness. Dr. Paller's testimony would be similar to what she said in the letter that is posted on Morton Grove's lobbying website (www.lindane.com) and attached hereto as Exhibit C.  Anything additional Dr. Paller would have to offer would be given as an expert in the field of pediatric dermatology (Ex. B, Paller Decl. ¶ 7) for which, as further discussed below, the NPA refuses to compensate her.

Ultimately, the NPA asserts that Dr. Paller is a "fact witness," (Def. Br. 4, *see* Def. Br. 5-8) yet does not—and cannot—specify what facts she is witness to.  Just as they have with each of the depositions with Morton Grove's scientific personnel, Morton Grove can almost guarantee that at any would-be deposition of Dr. Paller, the NPA would spend hours asking her if she had an opinion as to why each of the NPA's twelve or so statements at issue in the complaint are false.  This line of questioning (which will essentially be her entire deposition) necessarily and improperly calls for Dr. Paller's expert opinion because it requires her to form and offer opinions rather than recount facts previously known to her.  (Ex. B, Paller Decl. ¶ 8); Fed. R.

Civ. P. 45(c)(3)(B)(ii) (directing that issuing court may quash or modify a subpoena if it "requires . . . disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party"). The Advisory Committee notes direct that a district court's discretion

> "should be informed by 'the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony; the difference between testifying to a previously formed or expressed opinion and forming a new one; the possibility that, for other reasons, the witness is a unique expert; the extent to which the calling party is able to show the unlikelihood that any comparable witness will willingly testify; and the degree to which the witness is able to show that he has been oppressed by having continually to testify.'"

Dr. Paller is being called to give testimony about the truth or falsity of the statements at issue. If forced to testify, any testimony she gave would inevitably be colored with her opinions as an expert in her field, pediatric dermatology. (*Id.*) While Dr. Paller has reviewed Morton Grove's www.lindane.com lobbying website, the NPA has not suggested that she has a previously-formed specific opinion about any of the statements at issue in the NPA's counterclaim. Asking Dr. Paller to form new opinions on these statements and to articulate exactly why they are true or false would require her expert opinion.

Likewise, Dr. Paller is not a unique expert on Lindane medications. Both parties are very likely able to have another expert on lindane medications testify and/or review the statements at issue. The NPA's arguments in its motion to compel assume that Dr. Paller has some special knowledge that enables her alone to determine the truth or falsity of the NPA's statements. This is a fiction.

That Dr. Paller wrote letters and reviewed a website featured in the NPA's counterclaim makes no difference—she was not retained by either party for this action. (Ex. B,

7

Paller Decl. ¶ 8.)  In a similar case, *Intervet, Inc. v. Merial Ltd.*, the court found that an individual who had provided a lengthy declaration explaining his opinion in a previous patent infringement case was protected from being deposed by Rule 45(c)(3)(B) in a separate case concerning the same patent.  2007 WL 2344815, at *2 (D. Neb. Aug. 15, 2007).  Even though the expert had opined on the same subject matter while he was a retained expert, in the current case he was not a retained expert or even a fact witness.  *Id.*  Based on this and the unduly burdensome subpoena, which sought many documents, the Court found it unenforceable.  *Id.*  Similarly here, even though Dr. Paller provided Morton Grove some feedback about its website and wrote a few letters, she has never been retained as an expert in connection with this litigation.

    E. ***Dr. Paller's Documents Are Not Relevant, and the Document Requests Are Overbroad***

    The NPA's document requests are overly broad and seek documents that are not relevant, easily accessible to the NPA, or both.  Requests 1 through 3, about Dr. Paller's work for Morton Grove, are not relevant to the claims or defenses of any party—agreements between Dr. Paller and Morton Grove or any payments do not bear on any element of any claim at issue.  (Def.'s Br. Ex. E to Ex. 3, at Rider 4.)  The NPA's suggestion that it is entitled to any agreements or payment information because they might bear on a potential bias is misplaced.  In the case it cites, *Koken v. American Patriot Insurance Agency, Inc.*, the deponent involved in the consulting agreement was in quite a different position than Dr. Paller—he had been general counsel to one of the entities for which the plaintiff was the statutory liquidator, he was then a consultant to the liquidator, and "[s]ignificantly," he had been sued by the liquidator prior to entering into the consulting agreement.  2006 WL 1749689, at *1, 5 (N.D. Ill. June 20, 2006).  Dr. Paller has no such involvement with any party, and has not been party to a related law suit.

Request 4 for Dr. Paller's curriculum vitae is also not relevant to the claims or defenses of any party, and the NPA has not suggested otherwise. (Def.'s Br. Ex. E to Ex. 3, at Rider 4.) And although the NPA makes much ado about needing Dr. Paller's curriculum vitae to learn about her background, ample information about Dr. Paller's background is available on Northwestern's website and may be accessed by the NPA at any time.[4]

Request 5 is overly broad on its face because it asks for "[a]ny and all publication(s) or article(s) related to head lice, scabies, or options for managing head lice or scabies, including but not limited to lice or scabies treatments containing lindane, for which you were an author, co-author, editor, or researcher." (*Id.*) This request asks for all articles relating to head lice or scabies regardless of their connection to this litigation—a heavy and unnecessary burden for a non-party. Such publications and articles are no doubt publicly available. Further, both parties have already exchanged voluminous document productions, which have included thousands of pages of publications and articles about head lice, scabies, and their treatments.

Request 6 is also facially overbroad. It asks for "[a]ll documents relating to or mentioning NPA"—even though the majority of these are likely in the NPA's own possession and are dubiously relevant to this suit. (*Id.*) This request is qualified in no manner to relate to any work Dr. Paller has done for Morton Grove, the statements at issue in the complaint, or even the statements at issue in the NPA's counterclaim. Literally, this request seeks any document that mentions the NPA, whether it was authored by the NPA or another entity, regardless of subject matter, and regardless of basic relevance to even the subject matter of the suit. Likewise, Request 8 asks for "[a]ll documents relating to lindane.com"—this too is overly broad, sweeps in

---

[4] For example, a biography of Dr. Paller is available at http://www.medschool.northwestern.edu/depts/dermatology/faculty/paller.html and a profile is available at http://www.medschool.northwestern.edu/faculty-staff/expressions/05-winter/AmyPaller.html (both last accessed July 29, 2008).

9

many documents that are not relevant to the claims or defenses of any party, and seeks documents that are the subject of a pending motion for protective order before this Court. (*Id.* at Rider 5.)

The two remaining requests, numbered 7 and 9, seek documents concerning the truth or falsity of the statements in the parties' complaint and counterclaim. (*Id.* at Rider 4-5.) Requiring Dr. Paller to review all of the documents in her possession, custody, or control for those that "concern[] the truth or falsity" of the statements at issue in the claim or counterclaim is overly broad and a significant burden on non-party Dr. Paller. *See, e.g.*, *Builders Ass'n of Greater Chicago v. City of Chicago*, 2001 WL 1002480, at *7 (N.D. Ill. Aug. 30, 2001) (finding requests for documents "related to" the subject matter of the suit for long time span overly broad, as a party "cannot lawfully require a non-party to examine each and every document in its possession, custody or control from 1978 to the present to determine if the document is 'related to the matter of the lawsuit'"). Further, the NPA does not—and cannot—explain how asking Dr. Paller to make the judgments involved to discern whether documents "concern[] to the truth or falsity" of the statements would not require her to use her expert knowledge. She would inevitably use her expert knowledge and opinion to determine which articles relate to the truth of falsity of the requests, and thus these requests improperly ask for her expert opinion.

The document requests are also overly broad in time frame and would require significant expense. The NPA requested both paper documents and electronically stored information from a period spanning more than eight years, and in a specific and technical format. To comply, Dr. Paller would be forced to spend a substantial sum to hire an e-discovery vendor to gather and format the data. (Ex. B, Paller Decl. ¶ 9; Ex. A, O'Neil Decl. ¶ 7.) This demonstrates the weighty nature of the burden, which the NPA did not offer to minimize by

10

paying for; even if this Court enforces the NPA's subpoena, it "must protect a person who is neither a part nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(c)(2)(B)(ii). The NPA suggests that Dr. Paller may ask Northwestern's IT staff to find responsive emails on her work account—but even assuming that was within the scope of her authority (note, the subpoena was not served on Northwestern University), Dr. Paller would still need to have those emails formatted in the specific way the NPA requests to produce them, and she would still need to have personal emails reviewed, formatted, and produced as well.

Instead, the NPA could pursue these same documents from Morton Grove or the public domain. *See Morrow v. Air Ride Tech., Inc.*, 2006 WL 559288, at *2 (S.D. Ind. Mar. 6, 2006) (denying plaintiff's motion to compel compliance with non-party subpoena where defendant may have had the same information, because while defendant had not produced documents in response to discovery requests, plaintiff had not sought to compel production); *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41-42 (1st Cir. 2003) (finding unduly burdensome subpoena for documents relating to business between plaintiff and non-party over ten-year period). This Court should not allow the NPA to hoist the burden of "back door" discovery on non-party Dr. Paller simply because it does not want to pursue it from Morton Grove.

### F.    *Dr. Paller Must Be Compensated for Her Time*

The NPA did not offer to pay Dr. Paller's hourly fees and refused to do so when asked. (O'Neil Aff. ¶ 4.). While Dr. Paller does very little consulting work, her fee for that time is $500 per hour. (Paller Aff. ¶ 6.) Demanding her time and expert opinion without payment is unreasonable. It is common practice to compensate experts for their time, *see* 9A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ. 2d* § 2463.1 ("Rule 45(c)(3)(B)(ii) thus

11

gives some assurance of reasonable compensation for the expert"), and courts have required parties to do so, *e.g.*, *Cook v. CTC Commc'n Corp.*, 2007 WL 1362379, at *1 (D.N.H. May 8, 2007) (ordering party to compensate expert at her regular hourly rate for location and reviewing of documents); *In re Agent Orange Product Liability Litig.*, 105 F.R.D. 577, 581-82 (D.C.N.Y. 1985) ("If a litigant seeks to obtain facts or opinions acquired by the expert in furtherance of his or her expertise, as distinct from knowledge possessed by that person as an ordinary actor in or viewer of events pertinent to the case, then the litigant must pay the expert a reasonable expert's fee."); *see also Guy Chemical Co., Inc. v. Romaco AG*, 243 F.R.D. 310, 313 (N.D. Ind. 2007) (stating "Simply put, it is not [the non-party's] lawsuit and they should not have to pay for the costs associated with someone else's dispute," noting it would be "fundamentally unfair" otherwise, and ordering party to pay non-party's $7200 in costs to produce documents).

Further, various courts have concluded that when deposed, a non-retained doctor is appropriately entitled to compensation for his or her time. *See, e.g.*, *Hoover v. United States*, 2002 WL 1949734, at *8 (N.D. Ill. Aug. 22, 2002) (deciding treating physician entitled to reasonable fee greater than the statutory fee, pursuant to provisions in Rule 26); *see also Weinberg v. Minn. Mut. Life Ins. Co.*, 2002 WL 31749180, at *2 (N.D. Ill. Dec. 3, 2002) (noting split among district courts and ordering payment of "reasonable expert fee" for deposition of psychologist consultant employed by insurance company and listed in party's Rule 26(a) disclosures).[5] Even the treating physician in *Hoover*, who unlike Dr. Paller, was a fact witness to a specific occurrence was provided compensation. Dr. Paller's opinion on the truth or falsity of the statements at issue in the claims and counterclaims then certainly merits compensation.

---

[5] The NPA's citation to *Demar v. United States* is a bit misleading as it is on the other split within this District on this issue—a fact the NPA fails to mention.

## **CONCLUSION**

For the reasons stated above, Dr. Paller respectfully requests that this Court deny the NPA's motion to compel. Instead, this Court should quash or, in the alternative, modify the subpoena issued to Dr. Paller so that it is no longer unduly burdensome.


Dated:  August 14, 2008                    Respectfully Submitted,

                                           DR. AMY PALLER

                                           By:   /s/ William C. O'Neil
                                                 One of Her Attorneys


W. Gordon Dobie (wdobie@winston.com)
William C. O'Neil (woneil@winston.com)
Cherish M. Keller (ckeller@winston.com)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
T:  (312) 558-5600
F:  (312) 558-5700

## CERTIFICATE OF SERVICE

      I hereby certify that on this 14th day of August 2008, I caused a copy of **Non-Party Dr. Amy Paller's Response to Defendant's Motion to Compel and Cross Motion to Quash or Modify the Subpoena Issued to Her** to be served on counsel of record via ECF electronic filing:

>Debbie L. Berman
>Amanda S. Amert
>Wade A. Thomson
>April A. Otterberg
>JENNER & BLOCK LLP
>330 North Wabash Avenue
>Chicago, Illinois 60611
>T: (312) 222-9350
>F: (312) 527-0484

                             /s/ William C. O'Neil