IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MORTON GROVE PHARMACEUTICALS, INC. | ) ) ) | |
| Plaintiff, | ) ) ) | No: 08-CV-1384 |
| v. | ) ) | Judge Bucklo |
| THE NATIONAL PEDICULOSIS ASSOCIATION, INC. | ) ) ) | Magistrate Judge Mason |
| Defendants. | ) ) ) ) | |

**PLAINTIFF MORTON GROVE PHARMACEUTICALS, INC.'S REPLY IN
SUPPORT OF ITS MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

**APPENDIX OF UNPUBLISHED CASES**

Tab 1    *Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, No. 03 C 9421, 2006 WL 1895731 (N.D. Ill. July 6, 2006)

Tab 2    *Am. Broad. Co. v. Maljack Prods., Inc.*, No. 97 C 6510, 1998 WL 325209 (N.D. Ill. June 9, 1998)

Tab 3    *Serfecz v. Jewell Food Stores, Inc.*, No. 92 C 4171, 1997 WL 543116 (N.D. Ill. Sept. 2, 1997)

# TAB 1

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1895731 (N.D.Ill.)
**2006 WL 1895731 (N.D.Ill.)**

**H**

American Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.

N.D.Ill.,2006.

Only the Westlaw citation is currently available.

United States District Court,N.D. Illinois, Eastern Division.

AMERICAN HARDWARE MANUFACTURERS ASSOCIATION, a Delaware not-for-profit corporation; Plaintiff,

v.

REED ELSEVIER, INC., a Massachusetts corporation, et al., Defendants.

No. 03 C 9421.

July 6, 2006.

William Patrick Farrell, Jr., Michael Anthony Nicolas, Scott Jared Fisher, Neal, Gerber & Eisenberg, Gordon B. Nash, Jr., Gardner Carton & Douglas LLP, Chicago, IL, for Plaintiff.

Michael I. Rothstein, Daniel I. Konieczny, Jon Jeffrey Patton, Karina H. Dehayes, Mary Beth Wynn-Smith, Reema Kapur, Tabet Divito & Rothstein, LLC, Benjamin J. Randall, Randall & Kenig LLP, Anthony Joseph Carballo, Aren Lance Fairchild, Garry L. Wills, Freeborn & Peters, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

MORAN, Senior J.

*1 Plaintiff American Hardware Manufacturers Association (AHMA) brought this action against defendants Reed Elsevier and two of its divisions (collectively "Reed") and Freeman Decorating Co. and Freeman Decorating Services, Inc., (collectively "Freeman"), initially raising 13 counts, including fraud, conspiracy, breach of contract, and violations of the Lanham Act. AHMA now moves under Fed.R.Civ.P. 15 to amend its complaint. For the following reasons, leave to amend is granted.

AHMA alleges that Reed was contractually obligated to share and disclose all revenue generated by the National Hardware Show (Show), an annual trade show in Chicago that AHMA began sponsoring in 1975. In 1977, Reed's predecessor and AHMA entered into an agreement (Show Agreement) that established terms for Reed's management of the Show. Ruling on defendants' motion to dismiss, we concluded that AHMA's claim that it was entitled to a share of all revenue was not supported by the various amendments to the Show Agreement that it attached to its complaint. Those amendments only addressed the allocation of specific sources of revenue-not all revenue. AHMA thus failed to identify the relevant agreements that entitled it to all revenue. AHMA instead relied on the assumption that relevant agreements existed and the inference that they created an enforceable interest in all the revenue. The contract claim was accordingly dismissed in part. The breach of fiduciary duty claim was also dismissed in part because AHMA failed to plead that Reed held a dominant position that created a fiduciary relationship due to special circumstances. However, that count was adequate to the extent that it pled a fiduciary relationship created by the Show Agreement's provisions related to exhibitors' contracts. See*American Hardware Manufacturers Association v. Reed Elsevier*, 2004 WL 3363844, *9-12, 2004 U.S. Dist. LEXIS 28007 (N.D.Ill.2004).

AHMA now moves to add additional facts to its complaint that purportedly show that Reed had contractual and fiduciary obligations to disclose and share with AHMA all revenues related to the Show. These additional allegations also set forth that AHMA retained authority to approve or disapprove of any revenue source disclosed by Reed. Specifically, AHMA now claims that the drafters of the 1977 Show Agreement intended for AHMA to retain authority over the revenue. AHMA acknowledges that the allegations are intended to obviate the need to rely on inference and assumption, and

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2006 WL 1895731 (N.D.Ill.)
**2006 WL 1895731 (N.D.Ill.)**

thus remedy the deficiencies in the breach of contract and fiduciary duty counts that led to their dismissal.

Reed and Freeman oppose the motion, with Freeman objecting on the grounds that the proposed amendments implicate AHMA's conspiracy claim. Both defendants argue that AHMA's motion should be denied because the additional allegations would require discovery, and written discovery terminated on April 24, 2006, by order of Magistrate Judge Mason. Freeman also contends that leave to amend should be denied due to AHMA's delay in proposing these amendments, even though AHMA has long known of the underlying facts set forth in the amendments.

*2 Rule 15(a) specifically provides that leave to amend "shall be freely given when justice so requires."A motion for leave to amend should be granted "in the absence of undue delay, undue prejudice to the party opposing the motion, or futility of the amendment."*Eastern Natural Gas Corp. v. ALCOA,* 126 F.3d 996, 999 (7th Cir.1997); *see also Perrian v. O'Grady,* 958 F.2d 192, 194 (7th Cir.1992). Whether to allow leave to amend is within the district court's discretion. *Campbell v. Ingersol Milling Machine Co.,* 893 F.2d 925, 927 (7th Cir.1990). Prejudice is the most significant factor that weighs against the permissive policy toward amendments, and determining whether prejudice warrants denying leave to amend involves balancing the interests of the parties. *Howard-Ahmad v. Chicago School Reform Bd. of Trustees,* 2001 WL 197852, *2, 2001 U.S. Dist. LEXIS 2054 (N.D.Ill.2001) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971) and *American Broadcasting Co., Inc. v. Maljack Prods., Inc.,* 1998 WL 325209, *1, 1998 U.S. LEXIS 9145 (N.D.Ill.1998))).

Favoring AHMA is the fact that its proposed amendments present new factual allegations that support previously asserted theories, rather than new legal theories. *See Lanigan v. LaSalle Bank,* 108 F.R.D. 660, 662 (N.D.Ill.1985); *Murphy v.*

*White Hen Pantry Co.,* 691 F.2d 350, 353 (7th Cir.1982); *Howard-Ahmad,* 2001 WL 197852, *3 (denying motion for leave to amend when the proposed claims were "vastly different" from the existing claims); *Tamari v. Bache & Co. S.A.L.,* 838 F.2d 904, 908 (7th Cir.1988) (when plaintiff alleged only fraud, no abuse of discretion when the court denies leave to add, after ten years of litigation, a negligence claim); *Johnson v. Methodist Medical Center of Illinois,* 10 F.3d 1300, 1304 (7th Cir.1993) (the court did not abuse its discretion in refusing to permit addition of a new theory introduced four years after the complaint was filed). AHMA's proposed additions would support the portions of its breach of contract and breach of fiduciary duty claims that were dismissed. Further, the theories also overlap with other existing claims, such as the fraud claim, that allege that Reed was obligated to share and disclose revenue. AHMA is thus not changing theories in midstream. *See Tamari,* 838 F.2d at 909. Even if defendants lacked notice of the specific facts that AHMA seeks to allege, it cannot be said that the legal theories that those facts connect to are new or come as a surprise.

While written discovery has closed, no other discovery has occurred. No depositions have taken place, electronic discovery has not commenced, and no expert reports have been exchanged. Significantly, no trial date has been set. *Murphy,* 691 F.2d at 353-54 (affirming denial of motion for leave to amend when motion was filed six weeks before trial and several months after the close of discovery); *Shrader v. Palos Anesthesia Assocs., S.C.,* 2003 U.S. Dist. LEXIS 16735, *5, 2003 WL 22225616 (N.D.Ill.2003) (denying motion to amend when discovery had been closed for six months and proposed amendments would cause delay); *Howard-Ahmad,* 2001 WL 197852, (denying motion to amend when discovery had closed); *Tamari,* 838 F.2d at 908 (denying motion to amend brought six weeks before trial date). Neither is the timing of the motion suspect, and suggestive of an intent to delay or frustrate. *See Brown v. Union Pacific R.R.,* 2006

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2006 WL 1895731 (N.D.Ill.)
**2006 WL 1895731 (N.D.Ill.)**

U.S. Dist. LEXIS 4818, *7-8, 2006 WL 299070 (N.D.Ill.2006) (citing cases).

**\*3** Re-opening written discovery would cure any minimal prejudice caused by the amendments. *Eastern Natural Gas,* 126 F.3d at 999-1000 (district court did not abuse discretion when it granted motion for leave to amend 11 days before trial, when the motion was filed three months before trial and the court re-opened discovery on the topic of the amendment). Any additional written discovery triggered by the proposed amendments, such as documents predating the 1977 Show Agreement, should not cause any delay. Magistrate Judge Mason, who set the initial termination date for written discovery, is in the best position to set the scope of any necessary written discovery.

AHMA filed its complaint on December 30, 2003, and its first amended complaint on July 16, 2004. Written discovery closed on April 25, 2006, and the motion for leave to amend was filed on May 16, 2006. Thus, AHMA presents its motion to amend 28 months after its original complaint, 22 months after the first amended complaint, and one month after the close of written fact discovery. Freeman argues that AHMA's delay in bringing the motion justifies its denial, regardless of the curative effect of additional limited written discovery. AHMA counters, and argues that Freeman fails to identify any prejudice arising from the timing of the motion for leave to amend.

Even if AHMA's motion causes no prejudice to defendants, substantial delay that prejudices the judicial system may justify the denial of a motion for leave to amend. *Perrian,* 958 F.2d at 194-95. We have noted that unexplained, unjustified, and lengthy delay provides grounds for denying leave to amend, *Profile Racing, Inc. v. Profile for Speed, Inc.* 1995 WL 549108 (N.D.Ill.1995). In *Profile Racing* the plaintiff claimed that newly discovered evidence justified the late addition of a new defendant. But a close review of the record showed that the evidence that plaintiff claimed was newly discovered had actually long been produced. *Tamari,*

cited in *Profile Racing,* did not specify a break-point at which delay became sufficiently prejudicial to warrant denial of leave to amend. Rather, the court in *Tamari* viewed the delay in light of external circumstances, including the interests of other litigants before the court, and ultimately concluded that the weight of the presumption in favor of amendment diminishes as the delay in seeking leave to amend increases. *Tamari,* 838 F.2d at 909. Thus, our inquiry encompasses more than consideration of the amount of elapsed time.

AHMA argues that defendants' motions to stay discovery, to dismiss, and for summary judgment substantially contributed to the delay. Addressing the prospect of re-opening written discovery, AHMA states that its proposed amendments do not present new factual issues. If, however, this is true, then AHMA has known of the facts that it now seeks to introduce, and could have presented them at an earlier juncture. AHMA further states that 90 per cent of defendants' document production has transpired in the past three months, but it does not argue that the amendments are based on any recently produced documents.

**\*4** The acknowledged purpose of the amendments is to supplement the flaws in the complaint, specifically the reference to "other agreements" that, according to the complaint, only provided for the sharing of specific sources of revenue, rather than all revenue. AHMA was a party to the agreements and a participant in the course of conduct that obligated Reed to share and disclose all revenue. After, and even before, the partial dismissal of its contract and fiduciary duty claims, it would appear that AHMA had access to information necessary to remedy the existing deficiencies in the complaint. For instance, proposed paragraph 132 describes a meeting in May 1985 between Reed and AHMA executives. At the meeting AHMA allegedly informed Reed that the Show Agreement provided AHMA with authority over revenue-related decisions and that Reed could not unilaterally make those decisions. In proposed paragraph 132, AHMA

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 4
Not Reported in F.Supp.2d, 2006 WL 1895731 (N.D.Ill.)
**2006 WL 1895731 (N.D.Ill.)**

further alleges that Reed's former president ac-knowledged that Reed did not have the authority to approve unilaterally any revenue related to the Show. Despite knowing the relevance of the 1985 meeting, AHMA failed to make specific reference to it in the context of its initial and first amended breach of contract claim.

While it is difficult to condone AHMA's delay in alleging information it presumably had access to even before it filed its complaint, denying AHMA's motion to amend is not appropriate. This is not the severe situation presented in *Tamari,* which in-volved ten years of litigation and a proposed amendment brought six weeks before trial. Even as-suming that AHMA was well aware of the informa-tion it now seeks to include in its complaint, any necessary written discovery is not sufficiently pre-judicial, distinguishing *Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1298 (7th Cir.1993) ("If the amendment were allowed the bank would have been put to additional discovery, and thus preju-diced").

Moreover, Reed, like AHMA, was a party to the agreements and meetings at issue, and their exist-ence can come as no surprise. Similarly, Reed was AHMA's partner in a course of dealings that al-legedly gave rise to a duty to share and disclose revenue. Even though this information cannot be classified as new, permissible amendments to a complaint need not be based on newly discovered information. At times, the evolution of a case, per-haps spurred by judicial construction of a com-plaint, may require that the complaint be amended to reflect the new landscape. Lastly, it is significant that the motion is presented in the early stages of the discovery process, with the balance of discov-ery yet to occur. Any additional written discovery-the only prejudicial impact the parties raise-will not, in and of itself, frustrate the resolution of this case and prejudice the judicial process. *SeePerrian,* 958 F.2d at 195.

*CONCLUSION*

For the foregoing reasons, AHMA's motion for leave to amend is granted.

N.D.Ill.,2006.
American Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.
Not Reported in F.Supp.2d, 2006 WL 1895731 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# TAB 2

Westlaw.

Not Reported in F.Supp.                                         Page 1
Not Reported in F.Supp., 1998 WL 325209 (N.D.Ill.)
**1998 WL 325209 (N.D.Ill.)**

**H**
American Broadcasting Co., Inc. v. Maljack Pro-
ductions, Inc.
N.D.Ill.,1998.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
AMERICAN BROADCASTING COMPANY,
INC., a Delaware corporation, Plaintiff and Coun-
terdefendant,
v.
MALJACK PRODUCTIONS, INC. an Illinois cor-
poration, Defendant and Counterclaimant,
Maljack Productions, Inc, d/b/a MPI Media Group,
and MPI Home Video, an Illinois corporation,
Third-Party Plaintiffs,
v.
British Broadcasting Corporation, a foreign corpor-
ation organized under the law of the United King-
dom, Third-Party Defendant.
**No. 97 C 6510.**

June 9, 1998.

**MEMORANDUM OPINION AND ORDER**

COAR, J.

*1 Presently before this court is the motion of third-
party plaintiff Maljack Productions, Inc. to grant
leave to amend its complaint. For the reasons stated
in this memorandum opinion and order, the motion
is granted.

I. Background

The instant suit, brought against Maljack Produc-
tions ("Maljack") by American Broadcasting Com-
pany ("ABC") on September 15, 1997, sought to
enjoin Maljack from releasing a home videotape of
Princess Diana's funeral services on the ground that
the release of such a release would violate the Brit-
ish Broadcasting Corporation's ("the BBC") copy-
right in at least part of the footage. On October 17,
1997, Maljack filed a third-party complaint against
the BBC, alleging that BBC had intentionally in-
terfered with Maljack's contractual relationship
with ABC. Maljack filed a first amended third-
party complaint on December 3, 1997. On Decem-
ber 18, 1997, ABC's complaint against Maljack was
dismissed pursuant to a settlement.

On March 6, 1998, the BBC filed a motion for
judgment on the pleadings with respect to Maljack's
first amended third-party complaint. On March 31,
1998 Maljack filed a motion for leave to file a
second amended third-party complaint. The pro-
posed amended pleading amends MPI's three
claims, and also adds a new claim for violation of
the Lanham Act § 43(a) for making false represent-
ations in commerce which exaggerated the scope of
its purported copyright. (Third Am.Compl. ¶ 65.)

II. Standard of Review for Rule 15(a)

Rule 15(a) of the Federal Rules of Civil Procedure,
which governs the amendment of pleadings,
provides that leave to amend should be "freely giv-
en when justice so requires."[FN1] The purpose of
Rule 15"is to provide maximum opportunity for
each claim to be decided on its merits rather than
on procedural technicalities."6 Wright, Miller &
Kane, *Federal Practice and Procedure,* § 1471, at
506 (1990). The decision to grant a motion to
amend is within the discretion of the district court.
*Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401
U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77
(1971) (citing *Foman v. Davis,* 371 U.S. 178, 182,
83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)); *Perrian
v. O'Grady,* 958 F.2d 192, 194 (7th Cir.1992).Rule
15(a) is generally interpreted liberally to allow
amendment of pleadings. *See Daugherty v. Traylor
Bros., Inc.,* 970 F.2d 348, 351 (7th Cir.1992)
(providing that leave to amend will generally be
given).

> FN1.Rule 15(a) provides in its entirety
> that: "(a) Amendments. A party may

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 2
Not Reported in F.Supp., 1998 WL 325209 (N.D.Ill.)
**1998 WL 325209 (N.D.Ill.)**

amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders."

The Supreme Court has stated that "in the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." motions for leave to amend should be granted.*Foman,* 371 U.S. at 182, 83 S.Ct. at 230. *See also Villa v. City of Chicago,* 924 F.2d 629, 632 (7th Cir.1991) (citing *Foman* ). Thus, when balancing the respective interests of the parties, the court should consider the hardship to the moving party if the request to amend is denied, the reasons for the moving party's failure to include the information in the initial pleading, and the harm to the opposing party if the motion is granted. *Will v. United Chambers Administrators, Inc.,* 1987 WL 17153 *2 (N.D.Ill. Sept.11, 1987) (Williams, J.) (citing *McCann v. Frank B. Hall & Co., Inc.,* 109 F.R.D. 363, 365 (N.D.Ill.1986)). Furthermore, because every amendment results in some prejudice to the opposing party, the test is whether the prejudice is undue.*Alberto-Culver Co. v. Gillette Co.,* 408 F.Supp. 1160, 1161-62 (N.D.Ill.1976) (Austin, J.).

## III. Discussion

*2 The BBC objects to Maljack's motion for leave to file a second amended third-party complaint. The BBC's argument is based primarily on a Seventh Circuit Court of Appeal's decision, *Glatt v. Chicago Park District,* 87 F.3d 190, 194 (7th Cir.1996), which the BBC believes necessitates a finding that Maljack's motion is fatally deficient. The plaintiff in *Glatt,* a yacht owner, brought suit in federal court against the city park district and two of its employees under § 1983 on September 2, 1993. On January 2, 1995, he moved the court to supplement his complaint by adding a new claim of retaliation to his charge against the park district. *Id.* at 193. The District Court denied the plaintiff's motion to amend, and the Seventh Circuit affirmed, finding that:

Especially when the motion is filed long after the original complaint was filed (16 months after, in this case), and is based solely on a document that the movant had discovered more than a year earlier, the court is entitled to demand reasons for thinking that the denial of the motion would work a serious injustice. The court not only may but should consider the likelihood that the new claim is being added in a desperate effort to protract the litigation and complicate the defense; its probable merit; whether the claim could have been added earlier; and the burden on the defendant of having to meet it.

*Id.* at 194.

The *Glatt* decision follows the reasoning of other decisions in this Circuit which have concluded that the longer a party has delayed in amending the complaint, the less prejudice the opposing party must show to justify denial of leave to amend. *See UNR Industries, Inc. v. Continental Insurance Co.,* 623 F.Supp. 1319, 1324 (N.D.Ill.1985) (Hart, J.) (comparing the test applied to motions to amend to the sliding scale approach to preliminary injunctions). In exercising its discretion to grant a motion to amend, the court essentially applies a balancing

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 3
Not Reported in F.Supp., 1998 WL 325209 (N.D.Ill.)
**1998 WL 325209 (N.D.Ill.)**

test, weighing the right of a party to have its case decided on the merits against the prejudice to the other party if the amendment were allowed. *See Alberto-Culver Co.,* 408 F.Supp. at 1162. Consistent with this balancing concept, the court in *Glatt* provides that the longer a party has waited to file the motion to amend, the greater the likelihood that prejudice will result to the other party. Therefore, in order for justice to require granting the motion, the party moving to amend must meet a higher burden of articulating reasons as to why the amendment is necessary. Factors such as whether the amendment has probable merit and whether the claim could have been added earlier therefore become increasingly relevant to the court's balancing test in cases of severe delay in filing the motion to amend. *Glatt,* 87 F.3d at 194.

Following language of the Seventh Circuit's decision in *Glatt,* the BBC contends that "it is clear that the ... allegations are a 'desperate effort to protract the litigation and complicate the defense,' that there is no 'probable merit' to these allegations, there is no explanation by Maljack as to why these allegations could not have been added earlier, and that these new allegations greatly increase the burden on BBC in having to meet them."(BBC's Obj. at 6.) This court notes, however, that the *Glatt* decision is factually distinct from the case at bar. Whereas Glatt waited 16 months before filing the motion to supplement, Maljack's delay was only approximately five-and-a-half months. *See A-C Reorganization Trust v. E.I. DuPont de Nemours & Co.,* 968 F.Supp. 423, 426 (E.D.Wis.1997) (Stadtmueller, C.J.) (stating that "[w]hen a motion to amend is filed well after the original complaint", the court must consider the factors outlined in *Glatt* ). Furthermore, Glatt's motion to supplement was not filed until *after* the district court had already granted the defendant's motion to dismiss two of the counts in Glatt's complaint. *See Glatt v. Chicago Park District,* 847 F.Supp. 101, 102 (N.D.Ill.1994) (Norgle, J.). In contrast, this court has not yet ruled on the BBC's motion for judgment on the pleadings, which was filed just twenty-five

days before Maljack's motion to amend. In addition, the discovery cut-off for the case has been set for July 17, 1998-well after the date that Maljack filed its motion to amend.[FN2]

> FN2. In several cases where the Seventh Circuit Court of Appeals has found no abuse of discretion by a district court that refused to allow an amendment of the complaint, the fact that the motion was filed after the discovery cut-off was a factor in the denial of the motion. *See, e.g., Murphy v. White Hen Pantry Co.,* 691 F.2d 350, 353 (7th Cir.1982); *Kleinhans v. Lisle Sav. Profit Sharing Trust,* 810 F.2d 618, 625 (7th Cir.1987); *Cleveland v. Porca Co.,* 38 F.3d 289, 297 (7th Cir.1994).

*3 This court therefore finds that the factors enunciated in *Glatt* are not directly applicable to the instant case. Because Maljack's delay in filing the motion to amend was not nearly as severe as Glatt's, it does not require the same level of heightened scrutiny. While it is true that "[t]here must be a point at which a plaintiff makes a commitment to the theory of its case,"*Johnson v. Methodist Medical Center,* 10 F.3d 1300, 1304 (7th Cir.1993), *cert. denied,*511 U.S. 1107, 114 S.Ct. 2102, 128 L.Ed.2d 664 (1994), and amendments to the complaint are no longer allowed, five months into the case is too early for such a severe limitation. Furthermore, the BBC has not pointed to any evidence as to why the delay in presenting the amendment would cause undue prejudice. *See Textor v.. Board of Regents,* 711 F.2d 1387, 1391 (7th Cir.1983) ("Delay in presenting the amendment will be a sufficient basis for denial of leave to amend only when the delay has caused the opposing party undue prejudice."). Furthermore, this court does not find at this early stage in the litigation that Maljack is guilty of bad faith in delaying presentation of its motion to amend. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230.

Even considering the arguments presented by the BBC based on the *Glatt* factors, this court finds that

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 4
Not Reported in F.Supp., 1998 WL 325209 (N.D.Ill.)
**1998 WL 325209 (N.D.Ill.)**

Maljack's right to have its complaint decided on the merits outweighs any prejudice that may result to the BBC by granting the motion. As nearly every motion to amend will result in some prejudice to the non-moving party, the test is whether there is *undue* prejudice to the non-moving party. *United States v. Hougham,* 364 U.S. 310, 316, 81 S.Ct. 13, 18, 5 L.Ed.2d 8 (1960). The BBC states that the new complaint would require the BBC to deal with cause "numerous new factual matters, never before raised in this proceeding" and to "expand large sums taking depositions both in the United States and in the United Kingdom to refute Maljack's newest 'theory.' " (BBC's Obj. at 5.) However, the mere necessity of new discovery does not rise to the level of undue prejudice. "New claims are always likely to require additional discovery." *A-C Reorganization Trust,* 968 F.Supp. at 432. The requirement of conducting additional discovery does not require a finding of prejudice per se. *Alberto-Culver,* 408 F.Supp. at 1162.

In keeping with the *Glatt* standard, the BBC argues that the new claims in the proposed second amendment are "clearly added in a desperate effort to keep some sort of action alive against BBC," (BBC's Obj. at 4), and that the merits of second amended pleading "are nonexistent," (BBC's Obj. at 5). In support of these arguments, the BBC contends that it has successfully asserted the doctrine of "privilege," which provides that "if a party has a good faith belief it is protecting its property rights, it is privileged to attempt to interfere in a contract or prospective business relationship which adversely affects those rights."(BBC's Obj. at 4.) According to the BBC, the facts alleged in the second amended third-party complaint "certainly do not give rise to a reasonable inference that BBC knew it had no copyright interest and acted out of pure malice."(BBC's Obj. at 6.) In presenting this argument, the BBC does not make any reference to specific allegations in the proposed amended complaint nor to which of the four counts would be made "meritless" by the privilege defense. Nonetheless, in examining the proposed pleading, this

court finds that a privilege defense cannot be sustained at this early stage. In particular, the complaint specifically alleges that the BBC's actions were made "without privilege." (Third Am.Compl. ¶¶ 44, 49.) In addition, the complaint states that the BBC threatened litigation and asserted an alleged copyright with falsely and with reckless regard for the truth in an effort to "clear the market" of competition. (Third Am.Comp. ¶¶ 24, 25, 32, 33.) This court therefore finds no support for the BBC's argument that the amended complaint is meritless on the grounds stated in their objection to the motion.

IV. Conclusion

*4 On balance, the court concludes that Maljack's right to have its case decided on the merits outweighs any prejudice to the BBC by allowing the complaint to be amended and grants Maljack's motion. Accordingly, the BBC's motion for judgment on the pleadings and dismissal of Maljack's first-amended third-party complaint is denied as moot.

N.D.Ill.,1998.
American Broadcasting Co., Inc. v. Maljack Productions, Inc.
Not Reported in F.Supp., 1998 WL 325209 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# **TAB 3**

Westlaw.

Not Reported in F.Supp.                                                      Page 1
Not Reported in F.Supp., 1997 WL 543116 (N.D.Ill.)
**1997 WL 543116 (N.D.Ill.)**

**H**
Serfecz v. Jewel Food Stores, Inc.
N.D.Ill.,1997.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
Joseph SERFECZ and First Chicago Trust Company of Illinois, Trustee of Trust No. 684,
Plaintiffs,
v.
JEWEL FOOD STORES, INC., a New York Corporation, and American Stores Properties, Inc., a Delaware Corporation, et al., Defendants.
**No. 92 C 4171.**

Sept. 2, 1997.

**MEMORANDUM OPINION**

GRADY, Senior District Judge.
*1 Before the court is the plaintiffs' motion to amend the complaint. For the reasons stated in this opinion, the plaintiffs' motion is granted.

**BACKGROUND**

Many of the relevant background facts were discussed by Judge Conlon in *Serfecz v. Gallitano*, No. 95 C 5140, 1996 WL 6557 (N.D.Ill. Jan.5, 1996).FN1 The court summarized the events underlying this litigation as follows:

> FN1. We quote *Serfecz v. Gallitano* only to provide background information. Although *Gallitano* is largely based on the same facts as the case at bar, the claims in the two cases are distinct.

In 1963, Jewel Food Stores, Inc. ("Jewel") entered into a lease for retail space in Grove Mall. When Serfecz purchased Grove Mall in 1977, he assumed all existing leases, including the Jewel lease. Jewel's original lease ran until 1986 and provided Jewel three five-year options to renew. Jewel has exer-

cised two of those options.... Jewel is a subsidiary of the American Stores Company. Properties owned or rented by Jewel are managed by American Stores Properties Inc., the real estate management and development arm of the American Stores Company.

Up until October 1987, Jewel owned and operated a grocery store in its leased space in Grove Mall and was the mall's anchor tenant. In October 1987, Jewel vacated the premises and moved its grocery operation to a building in the newly constructed Elk Crossing Mall, directly across the street from Grove Mall. Since that time, the space formerly occupied by Jewel at Grove Mall has remained vacant. Jewel [ ] refused to give up its leasehold interest in the premises, thereby preventing Serfecz from securing another grocery store as an anchor tenant. Jewel continue[d] to pay rent for the vacated space and [[[ ] exercised its second option to renew the lease.

Subsequent to its move from Grove Mall, Jewel proposed to sublet its Grove Mall space to United Skates of America ("United Skates"), for use as a roller rink and games arcade. Serfecz objected to the proposed sublease because he considered United Skates to be an "obnoxious" tenant and because he was concerned that occupancy by United Skates would result in higher insurance rates. In February 1990, Jewel filed suit seeking a declaratory judgment in state court regarding its right to sublet to United Skates. The trial court ruled against Jewel, and the appellate court affirmed.

1996 WL 6557 at *1 (citation omitted). In *Serfecz v. Jewel Food Stores, Inc.,* No. 92 C 4171, 1994 WL 478576 (N.D.Ill. Aug.31, 1994) (Grady, J.) ("*Serfecz I* "), we granted Jewel's motion for summary judgment as to Counts I, II, and III of the complaint. Those counts contained Serfecz's claims for violations of the Sherman Antitrust Act and for malicious prosecution. *Id.* at *10, *14, *20. We granted in part and denied in part Jewel's motion for summary judgment as to Count IV of the complaint, which contains two of Serfecz's claims for

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                      Page 2
Not Reported in F.Supp., 1997 WL 543116 (N.D.Ill.)
**1997 WL 543116 (N.D.Ill.)**

breach of lease. *Id.* at *16, *17. Our decision was affirmed on appeal. *Serfecz v. Jewel Food Stores,* 67 F.3d 591 (7th Cir.1993), *cert. denied,* 516 U.S. 1159, 116 S.Ct. 1042, 134 L.Ed.2d 189 (1996) ("*Serfecz II* ").[FN2]

> FN2. In *Serfecz II,* the Seventh Circuit held that (1) Serfecz lacked standing to assert an antitrust claim under the Sherman Act based on Jewel's alleged attempts to monopolize the retail grocery market, 67 F.3d at 597-99; (2) while Serfecz had standing to assert an antitrust claim under the Sherman Act based on Jewel's alleged attempts to monopolize the retail shopping center market, Serfecz failed to provide evidence that would permit the inference of a conspiracy between Jewel and the developers of the Elk Crossing Mall, *id.* at 599-602; (3) Serfecz could not establish a claim for malicious prosecution because he did not suffer "special injury" or special damage, *id.* at 602-03; and (4) Jewel's decision to vacate the Grove Mall premises did not breach the use-restriction clause of the lease. *Id.* at 603.

**\*2** Our opinion today concerns Count V of the complaint, so a brief discussion of the origin and status of that count is in order. This litigation began in 1992. Discovery closed in late 1994. On June 19, 1996, the court granted Serfecz leave to amend the complaint by adding a claim for "waste." On July 1, 1996, Serfecz added Count V, entitled "Breach of Lease," which alleged that "[b]y engaging in the conduct described herein, Jewel committed waste and breached paragraph 1 of the Lease." *See* Second Amended Complaint For Injunction, Declaratory Judgment And Damages ¶¶ 223, 232.[FN3] We subsequently permitted Jewel to conduct additional discovery pertaining to the new claim. This supplemental discovery closed in December 1996. In *Serfecz v. Jewel Food Stores, Inc.,* No. 92 C 4171, 1997 WL 158322 (N.D.Ill. March 31, 1997) (Grady, J.) ("*Serfecz III* "), we denied the parties'

cross-motions for summary judgment on Count V. We denied Serfecz's motion for summary judgment because a genuine issue of material fact existed as to whether Jewel's conduct prejudiced Serfecz's interests in the leased premises. *Id.* at *3-*5. We denied Jewel's motion for summary judgment because a genuine issue of material fact also existed as to whether the lease agreement authorized Jewel's allegedly wasteful conduct. *Id.* at *5-*6.

> FN3. Paragraph 1 of the lease provides in part:
>
> > Lessee shall not use the demised premises for any unlawful purpose nor shall it commit waste. It shall comply with all lawful requirements of the local Board of Health, Police and Fire Departments, and state and federal authorities, respecting the manner in which it uses the leased premises....

Serfecz has now requested leave to amend Count V. The proposed amendment is twofold. First, Serfecz seeks to eliminate any reference to "breach of lease" in Count V, and instead style the count as one based exclusively on the common law doctrine of waste. Second, Serfecz seeks to add an allegation that Jewel's conduct was "intentional and malicious." If proved, these allegations would entitle Serfecz to punitive damages. Jewel opposes both amendments. In brief, Jewel contends that (1) the proposed amendments should be disallowed under Federal Rule of Civil Procedure 15(a) because they are untimely; and (2) the amended claim for punitive damages is barred by § 2-604.1 of the Illinois Code of Civil Procedure. As explained in detail below, we find Jewel's arguments unavailing, and therefore grant Serfecz's request to amend the complaint.

## DISCUSSION

### A. Federal Rule of Civil Procedure 15(a)

Federal Rule of Civil Procedure 15(a) governs the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 3
Not Reported in F.Supp., 1997 WL 543116 (N.D.Ill.)
**1997 WL 543116 (N.D.Ill.)**

amendment of pleadings. Rule 15(a) provides that once a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party." Fed.R.Civ.P. 15(a).[FN4] Rule 15(a) embodies a liberal approach to amendments, *see Diersen v. Chicago Car Exch.,* 110 F.3d 481, 489 (7th Cir.1997); *Jones v. Wysinger,* 815 F.Supp. 1127, 1128 (N.D.Ill.1993); *see also Nebraska v. Wyoming,* 515 U.S. 1, 8, 115 S.Ct. 1933, 132 L.Ed.2d 1 (1995) (noting "the solicitude for liberal amendment of pleadings animating ...Rule 15(a)"), and states that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The rule thus "reflects a policy that cases should generally be decided on the merits and not on the basis of technicalities." *McCarthy v. PaineWebber, Inc.,* 127 F.R.D. 130, 132 (N.D.Ill.1989); *see also Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1334 (7th Cir.1977) (stating that "this circuit has adopted a liberal policy respecting amendments to pleadings so that cases may be decided on the merits"). As a result,

> FN4. The text of Rule 15(a) reads in full:
>
> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

*3 [i]n the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1298 (7th Cir.1993) (reiterating the *Foman* criteria); *Siwik v. Marshall Field & Co.,* 945 F.Supp. 1158, 1166 (N.D.Ill.1996) (same).

Jewel contends that Serfecz's request for leave to amend should be denied as untimely for three reasons. First, Jewel argues that "plaintiffs have known all of the facts underlying their proposed amendment at least since discovery closed two years ago and, more likely, since the case was filed-five years ago and possibly earlier than that." Jewel Defendants' Response Memorandum In Opposition To Plaintiffs' Motion To Amend Complaint ("Defendants' Response") at 7. Second, Jewel argues that the proposed amendments will necessitate additional discovery. Jewel contends that although it "has taken discovery on the breach of lease count, it has taken no discovery relating to [the 'intentional and malicious'] element." *Id.* at 8. Jewel likewise contends that "[b]ecause [it] did not focus on common law waste, there may be other issues, including defenses, which will also require additional discovery." *Id.* Third, Jewel argues that Serfecz's attempt to amend the complaint represents a strategic shift. Jewel avers that "[u]pon reviewing Jewel's cross-motion for summary judgment, plaintiffs realized that virtually all of [[[Jewel's] conduct about which they have complained either is explicitly contemplated by the parties' lease or is not prohibited by it." *Id.* at 4. Reasoning from that premise, Jewel concludes that the proposed amendments are "designed to take the claim of waste out of the context of the lease and place it into the realm of tort-a substantive change." *Id.* We address

Not Reported in F.Supp.                                                                                          Page 4
Not Reported in F.Supp., 1997 WL 543116 (N.D.Ill.)
**1997 WL 543116 (N.D.Ill.)**

each of Jewel's arguments in the paragraphs that follow.

Our analysis is informed by an overarching principle: As a general matter, "delay is an insufficient basis for denying a motion to amend unless this delay results in undue prejudice to the opposing party." *Tragarz v. Keene Corp.,* 980 F.2d 411, 432 (7th Cir.1992) (citing *Textor v. Board of Regents of N. Ill. Univ.,* 711 F.2d 1387, 1391 (7th Cir.1983)); *see also King v. Cooke,* 26 F.3d 720, 723 (7th Cir.1994) (same). While it is true that "when extreme, 'delay itself may be considered prejudicial,' " *Tamari v. Bache & Co.,* 838 F.2d 904, 909 (7th Cir.1988) (quoting *Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 139 (1st Cir.1985)); *see also Perrian v. O'Grady,* 958 F.2d 192, 194 (7th Cir.1992) (observing that "the longer the delay, the greater the presumption against granting leave to amend") (citations omitted), Jewel has not asserted that this is a case of "extreme" delay. Accordingly, Jewel must establish that granting Serfecz's motion to amend would inordinately impede Jewel's efforts to prepare a defense or would unjustifiably prolong the litigation. *See Feldman v. Allegheny Int'l, Inc.,* 850 F.2d 1217, 1225-26 (7th Cir.1988) (holding that a party "is not entitled to impede justice by imposing even reasonable preparation intervals *seriatim* " and that a district judge may deny a motion to amend "to deter [the] artificial protraction of litigation, and its costs to all concerned").

**\*4** Jewel's first argument-that leave to amend should be denied based on Serfecz's prior knowledge of the relevant facts-is colorable but ultimately unpersuasive. As Jewel correctly points out, under certain circumstances a court may deny a motion for leave to amend if the movant fails to make the request in a timely fashion and the relevant facts have long been available to him. *See, e.g., Zip Dee, Inc. v. Dometic Corp.,* 926 F.Supp. 772, 775 (N.D.Ill.1996); *Profile Racing, Inc. v. Profile For Speed, Inc.,* No. 93 C 5175, 1995 WL 549108, at \*1-\*2 (N.D.Ill. Sept.11, 1995); *see also Continental Bank,* 10 F.3d at 1298 (holding that the district

court did not abuse its discretion by refusing the defendants' motion to add a new affirmative defense to their answer because the relevant facts "must have been known to the defendants" for several years and "could have been pled at any time after the filing of the initial complaint"); *Amendola v. Bayer,* 907 F.2d 760, 764 (7th Cir.1990) (holding that the district court did not abuse its discretion by denying the plaintiff's motion to add a new claim to the complaint because he "should have been aware of the facts underlying this claim by the time that discovery ceased 19 months earlier"). Here, however, such a denial would be unwarranted. To begin with, Serfecz is not attempting to add an entirely new claim for relief. Instead, he seeks only to refine the legal basis of an existing claim. Although Count V in its current form is indeed styled as a claim for breach of contract, Serfecz cannot prevail on the claim unless he demonstrates that Jewel's conduct was impermissible under the common law doctrine of waste. *See Serfecz III,* 1997 WL 158322 at \*3 (discussing the common law definition of "waste"); *id.* at \*3-\*4 (finding that a factual dispute exists as to whether Jewel's conduct was impermissible under Illinois law). While it might have been more economical for the parties (and the court) if Serfecz had omitted all references to "breach of contract" when he added Count V to the complaint, "delay alone will not prevent amendment ... even when the delay is caused by the plaintiff's early simple failure to 'jell' his thinking as to theories of recovery." *Brill v. Central States, Southeast & Southwest Areas Pension Fund,* No. 82 C 7973, 1985 WL 1448, at \*1 (N.D.Ill. May 22, 1985) (Grady, J.) (citations omitted). Moreover, in this context, Jewel's argument that the facts underlying Serfecz's waste claim have been well known for years is something of a double-edged sword. For Jewel, too, has been aware of the alleged basis of Count V since Serfecz added the count in July 1996 (if not before).[FN5] The proposed amendment should hardly catch Jewel by surprise, and "[w]here the facts on which a previously unasserted claim is based are all known or available to all parties, no prejudice exists." *In re Olympia Brewing Co. Sec.*

Not Reported in F.Supp.                                                                                    Page 5
Not Reported in F.Supp., 1997 WL 543116 (N.D.Ill.)
**1997 WL 543116 (N.D.Ill.)**

*Litig.,* 674 F.Supp. 597, 606 (N.D.Ill.1987); *see also First Options of Chicago, Inc. v. Polonitza,* No. 88 C 2998, 1989 WL 8506, at \*2 (N.D.Ill. Feb.1, 1989) (permitting the plaintiff to add a new theory of recovery because, among other reasons, "[m]ost of the facts concerning [the new count] should already be known to defendants").

> FN5. For example, as amended in July 1996, Count V contains the following allegations:

> 228. From in or about October, 1987, through the time that a judgment was entered condemning the Grove Mall in May, 1996, Jewel:

> a. vacated the premises;

> b. refused to operate a grocery store;

> c. refused to surrender its lease interest;

> d. refused to allow Grove Central Grocers, Inc. to sublet the premises;

> e. failed to maintain the premises; and

> f. kept the premises dark and deserted.

> 229. From in or about October, 1987, through the time that a judgment was entered condemning the Grove Mall in May, 1996, Jewel neglected the premises.

> 230. As a direct and proximate result of Jewel's conduct described herein, there was:

> a. a diminution in the value and/or income of the premises and in the value and/or income of the Grove Mall;

> b. physical deterioration of the premises and of the Grove Mall;

> c. a reduction in the long-term value of the premises and of the Grove Mall;

> d. financial injury to the premises and to the Grove Mall.

> 231. As a direct and proximate result of Jewel's conduct described herein, plaintiffs were prejudiced in that they:

> a. were unable to have an anchor tenant operating a store at the Grove Mall;

> b. were unable to attract new tenants to fill the vacant space;

> c. were unable to attract the same rents from other tenants;

> d. were unable to re-develop the Grove Mall;

> e. were unable to have Grove Central Grocers, Inc. operate a grocery store at the premises;

> f. were unable to maintain their tenants at the Grove Mall;

> g. were ultimately subjected by the Village of Elk Grove to condemnation proceedings against the Grove Mall predicated upon the alleged blight of the shopping center; and

> h. lost the right to use the premises for a commercial purpose.

As the foregoing allegations make clear, the complaint provided adequate notice to Jewel as to the factual basis of Count V. It is also at least implicit in Count V that Serfecz is alleging that Jewel committed the acts in question intentionally. Furthermore, aside from adding an explicit allegation that Jewel acted intentionally and maliciously, Serfecz has represented that he will not change the substance of Count V. *See* Plaintiffs' Motion

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 6
Not Reported in F.Supp., 1997 WL 543116 (N.D.Ill.)
**1997 WL 543116 (N.D.Ill.)**

To Amend Complaint at 2 (stating that "[plaintiffs do not intend to amend any of the allegations contained within Count V").

**\*5** Jewel's second argument fares no better. Jewel's assertions to the contrary notwithstanding, it is unlikely that additional discovery will be necessary if Serfecz is granted leave to amend Count V. To reiterate, Jewel has already conducted discovery with an eye toward Illinois law, since the common law definition of waste has always been the starting point for Serfecz's "breach of contract" claim. Jewel has not specified what additional discovery will be needed to address Serfecz's amended claim that the defendants acted intentionally and maliciously, and it seems highly improbable that Jewel previously concentrated its discovery efforts solely on an issue of "unintentional" waste. Likewise, Jewel has not identified any of the new defenses it claims it will be entitled to assert if Serfecz is permitted to remove all references to "breach of contract" from Count V. Our conclusion that additional discovery will probably be unnecessary would be reason enough to grant Serfecz's request for leave to amend. *See Stewart v. City of Chicago,* No. 92 C 4919, 1994 WL 46672, at \*1 (N.D.Ill. Feb.14, 1994) (Grady, J.) (permitting the defendant to amend its answer and observing that "the fact that discovery is already closed is irrelevant because ... the defense requires no additional discovery"); *see also Continental Leavitt Communications, Ltd. v. PaineWebber, Inc.,* No. 92 C 5939, 1994 WL 710745, at \*3 (N.D.Ill.Dec.20, 1994) (granting the defendant's request for leave to amend its answer because the proposed affirmative defense was "so intertwined with" the allegations in the plaintiff's complaint "that no additional factual discovery will be required"). But even if we accept Jewel's argument that some supplemental discovery will be necessary, that discovery will undoubtedly be minimal. The inconvenience created by this minimal discovery is insufficient to deny Serfecz's request for leave to amend. *See, e.g., Doe v. Sheriff of DuPage County,* No. 95 C 200, 1996 WL 189292, at \*3

(N.D.Ill. April 17, 1996) (granting the plaintiff's request for leave to amend because "the additional factual and legal discovery required is not so much as to be prejudicial to Defendant"); *Garcia v. Gall,* No. 91 C 5535, 1992 WL 112241, at \*2 (N.D.Ill. May 20, 1992) (holding that "[p]ossible duplication of discovery [will be] minimal and therefore is not a significant basis for denying leave to amend"); *Seals v. Michael Reese Hosp. & Med. Ctr.,* No. 87 C 3516, 1988 WL 96371, at \*2 (N.D.Ill. Sept.12, 1988) (granting a motion to amend because "[a]lthough some limited additional discovery may be necessary as a result of the proposed claim, it should not be overly burdensome"); *Eder Instrument Co. v. Total Med Corp.,* No. 85 C 4330, 1986 WL 4162, at \*4 (N.D.Ill. March 20, 1986) (permitting the defendant to amend its answer and counterclaims "[d]espite the fact that additional discovery will be required"). The reason is simple: "[N]early every amendment results in some prejudice to the non-moving party. New discovery and some delay inevitably follow when a party significantly supplements its pleadings. The test in each case, then, must be whether *undue* prejudice would result." *McCann v.. Frank B. Hall & Co.,* 109 F.R.D. 363, 365 (N.D.Ill.1986) (citing *Alberto-Culver Co. v. Gillette Co.* 408 F.Supp. 1160, 1162 (N.D.Ill.1976)); *see also Videojet Sys. Int'l, Inc. v. Inkjet, Inc. .,* No. 91 C 6284, 1996 WL 543312, at \*2 (N.D.Ill. Sept.23, 1996); *In re CLDC Management Corp.,* Nos. 79 B 40657 et al., 1989 WL 157498, at \*6 (N.D.Ill.Dec.6, 1989) (Grady, J.); *Hess v. Gray,* 85 F.R.D. 15, 20 (N.D.Ill.1979). Since Jewel will (at most) be only slightly burdened by any discovery occasioned by Serfecz's proposed amendments, we cannot conclude that this "undue prejudice" standard has been met.

**\*6** Nor can Jewel's third argument carry the day. Jewel's observation that Serfecz is attempting to amend the complaint for strategic reasons-namely, to avoid a potential defense that Jewel's allegedly wasteful conduct was authorized by the terms of the lease and to add a claim for punitive damages-is surely correct. But parties *always* amend their

pleadings for strategic purposes. Indeed, adding a claim or a defense would be a pointless exercise if the amendment did not somehow brighten the movant's prospects in the litigation. Moreover, to paraphrase *Hill v. Equitable Banks, N.A.,* 109 F.R.D. 109 (D.Del.1985),

[Jewel's] argument that it will be prejudiced through some tactical advantage [Serfecz] will gain if the amendment is granted is beside the point. [Jewel] would gain a similar advantage if [Serfecz's] motion were denied. Practically any decision by a court in the progress of litigation conveys a tactical advantage on one side and presumably prejudices the other. This fact does not prevent the court from making decisions; it is the normal state of affairs.

*Id.* at 113. No doubt this is why courts in this circuit have held that "increased exposure to potential liability ... is hardly the type of prejudice which can be considered 'undue.' " *Adair v. Hunt Int'l Resources Corp.,* 526 F.Supp. 736, 740 (N.D.Ill.1981); *see also Commercial Life Ins. Co. v. Lone Star Life Ins. Co.,* No. 88 C 5004, 1989 WL 64715, at *2 (N.D.Ill. June 7, 1989) (recognizing that "[t]he possibility that a party's exposure to liability might be increased" is "an unavoidable result when amendments are granted"); *Gregg Communications v. American Tel. & Tel. Co.,* 98 F.R.D. 715, 721 (N.D.Ill.1983) (same) .[FN6] In light of these decisions, Jewel's third argument for denying Serfecz's motion clearly misses the mark.

> FN6. Other district courts have made the same observation. *See, e.g., Reyna v. Flashtax, Inc.,* 162 F.R.D. 530, 532 (S.D.Tex.1995) (commenting that a plaintiff should not be denied an opportunity to amend the complaint "merely because it might entitle him to greater damages"); *Goldberg v. Sue-Glo Realty Corp.,* No. 96 Civ. 6606, 1987 WL 28848, at *1 (S.D.N.Y. Dec.16, 1987) (noting that a party's "potentially increased liability" is insufficient grounds upon which to deny a

motion for leave to amend); *National Fuel Gas Distribution Corp. v. Ashland Oil, Inc.,* No. Civ.-80-810E, 1987 WL 9394, at *2 (W.D.N.Y. Apr.13, 1987) ("Prejudice is not merely an increased risk of potential liability."); *Gibson v. American Broad. Cos.,* No. 82 Civ. 5249, 1986 WL 10290, at *2 (S.D.N.Y. Sept. 10, 1986) (stating that an increase in a party's exposure to liability "is not the type of prejudice which warrants denial of leave to amend"); *Hill,* 109 F.R.D. at 113 (holding that "the mere fact that the defendant may be held liable" should not prevent a court from granting an otherwise valid motion for leave to amend).

**B. Section 2-604.1 of the Illinois Code of Civil Procedure**

Alternatively, Jewel contends that Serfecz's amended claim for punitive damages is barred by Illinois law. Under § 2-604.1 of the Illinois Code of Civil Procedure,[FN7] a plaintiff must make a preliminary showing at a pretrial hearing of "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages" before adding such a claim to the complaint. The plaintiff's motion to amend the complaint "to include a prayer for relief seeking punitive damages" must be made "not later than 30 days after the close of discovery." Jewel argues that since Serfecz's request to amend the complaint came long after the close of discovery, his punitive damages claim is precluded by the terms of the statute.

> FN7. Section 2-604.1 provides in full:
>
> In all actions on account of bodily injury or physical damage to property, based on negligence, or product liability based on any theory or doctrine, where punitive damages are permitted no complaint shall be filed containing a prayer for relief seeking punitive damages. However, a plaintiff may, pursuant to a pretrial

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 543116 (N.D.Ill.)
**1997 WL 543116 (N.D.Ill.)**

motion and after a hearing before the court, amend the complaint to include a prayer for relief seeking punitive damages. The court shall allow the motion to amend the complaint if the plaintiff establishes at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages. Any motion to amend the complaint to include a prayer for relief seeking punitive damages shall be made not later than 30 days after the close of discovery. A prayer for relief added pursuant to this Section shall not be barred by lapse of time under any statute prescribing or limiting the time within which an action may be brought or right asserted if the time prescribed or limited had not expired when the original pleading was filed.

735 ILCS 5/2-604.1.

The threshold question, of course, is whether § 2-604.1 of the Illinois Code is applicable in federal court. Under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny, "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, ----, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996); *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 346 (7th Cir.1997); *Murphy v. Schering Corp.,* 878 F.Supp. 124, 126 (N.D.Ill.1995). The same holds true when, as here, federal courts entertain state law claims pursuant to 28 U.S.C. § 1367.[FN8] *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (citing *Erie* for the proposition that federal courts are bound to apply state law when exercising pendent jurisdiction); *Timmerman v. Modern Indus., Inc.,* 960 F.2d 692, 696 (7th Cir.1992) (holding that "federal courts exercising pendent or diversity jurisdiction must apply state law to matters of substantive law"); *Milazzo v. O'Connell,* 925 F.Supp.

1331, 1346 (N.D.Ill.1996), *aff'd,* 108 F.3d 129 (7th Cir.1997) ("When we decide claims brought under state law pursuant to ...§ 1367, we apply state law to those claims"); *see also Abdoh v. City of Chicago,* 930 F.Supp. 311, 313 (N.D.Ill.1996); *Viero v. Bufano,* 901 F.Supp. 1387, 1396 (N.D.Ill.1995) (both applying federal pleading requirements to supplemental state law claims); *see generally Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,* 805 F.2d 663, 681 (7th Cir.1986) ("reasoning by analogy from diversity cases" to determine the appropriate choice of law rules for supplemental jurisdiction cases). The basic rationale for utilizing the "substantive"-though not "procedural"-law of the state in which a federal court sits is straightforward: "[T]he outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guaranty Trust Co. v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). As the Supreme Court has made clear, the application of this "outcome determination" test must be guided by "the twin aims of the *Erie* rule"-namely, "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna v. Plumer,* 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

> FN8. Section 1367 provides in part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

*7 While "[c]lassification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor,"*Gasperini,* 518 U.S. at ----, 116 S.Ct. at 2219; *see also S.A. Healy Co. V. Milwaukee Metro., Sewerage Dist.,* 60 F.3d 305, 310

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 543116 (N.D.Ill.)
**1997 WL 543116 (N.D.Ill.)**

(7th Cir.1995) (commenting that "there is no clear criterion for deciding whether a particular state rule is 'substantive' for purposes of deciding whether *Erie* requires that it be enforced in diversity litigation"); *State Farm Fire & Cas. Co. v. Frigidaire,* 146 F.R.D. 160, 162 (N.D.Ill.1992) (commenting that "[d]rawing a principled distinction between 'substance' and 'procedure'" can be "an incorrigible task"), courts in this district appear to be in agreement that § 2-604.1 is procedural in nature. *See Johnson v. Vemuri,* No. 94 C 2005, 1994 WL 695527, at *5 (N.D.Ill.Dec.9, 1994) (Williams, J.); *Worthem v. Gillette Co.,* 774 F.Supp. 514, 515 (N.D.Ill.1991) (Norgle, J.); *In re Asbestos Cases,* No. 86 C 1739, 1990 WL 36790, at *3 (N.D.Ill. March 8, 1990) (Kocoras, J.); *Belkow v. Celotex Corp.,* 722 F.Supp. 1547, 1551 (N.D.Ill.1989) (Kocoras, J.); *Berry v. Eagle-Picher,* No. 86 C 1739/88 C 10631, 1989 WL 77764, at *1-*2 (N.D.Ill. June 27, 1989) (Kocoras, J.). First, to start with the obvious, § 2-604.1 is entitled "Pleading of punitive damages" and is part of the Illinois Code of Civil Procedure. These features "provide persuasive authority that the drafters intended the section to be procedural." *Worthem,* 774 F.Supp. at 516. Likewise, "[t]he federal equivalent of the state pleading section is found in Rule 8 of the Federal Rules of Civil Procedure and is indisputably a procedural provision." *Johnson,* 1994 WL 695527 at *5. Second, application of § 2-604.1 in federal diversity (or supplemental jurisdiction) cases is not necessary to prevent forum shopping. A plaintiff's burden under § 2-604.1 to demonstrate "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages" is similar to the burden a plaintiff must shoulder under Federal Rule of Civil Procedure 11. *Belkow,* 722 F.Supp. at 1552; *see also In re Asbestos Cases,* 1990 WL 36790 at *3 (finding that under § 2-604.1"[t]here is no undue burden placed on an Illinois plaintiff that would trigger forum shopping"). Rule 11 requires a litigant to make a reasonable inquiry to ensure that his "allegations and other factual contentions have evidentiary support or ... are likely to have evidentiary support after a reasonable opportunity for fur-

ther investigation or discovery." Fed.R.Civ.P. 11(b)(3).

Jewel contends that these decisions are distinguishable on several grounds. Jewel argues that § 2-604.1's requirement that a request for punitive damages be made no later than 30 days after the close of discovery is, in effect, a statute of limitations provision. Then, citing cases such as *Doe v. Roe No. 1,* 52 F.3d 151, 154 (7th Cir.1995), Jewel notes that statutes of limitation are typically classified as "substantive" under *Erie.*Jewel also asserts that the cases cited in the preceding paragraph are inapposite because they focus on § 2-604.1's provision requiring that a plaintiff establish a reasonable likelihood of proving facts sufficient to support an award of punitive damages, not on § 2-604.1's 30-day filing period. While Rule 11 makes it unnecessary in diversity cases to require plaintiffs to make a preliminary factual showing pursuant to § 2-604.1 to prevent forum shopping, § 2-604.1's 30-day filing requirement has no counterpart in the Federal Rules. This, according to Jewel, makes the latter provision "outcome determinative," even though the former is not.

**\*8** Jewel's position is creative, but it does not withstand analysis. At the outset, it is worth noting that none of Jewel's arguments refutes the basic point that § 2-604.1 is expressly labeled as a pleading provision and is located in the Illinois Code of Civil Procedure. As discussed above, this strongly suggests that the 30-day cutoff period is best described as one of a series of pleading requirements that must be observed when punitive damages are at issue, not a stand-alone "substantive" statute of limitations. In the same vein, Jewel's interpretation of § 2-604.1 would produce a rather curious result: It would require federal courts in diversity actions to import and apply a single sentence of an otherwise unitary (and procedural) state statute. More importantly, Jewel's analogy between § 2-604.1's 30-day cutoff period and statutes of limitation glosses over a critical distinction. Statutes of limitation normally apply to "causes of action," i.e. independent claims

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 543116 (N.D.Ill.)
**1997 WL 543116 (N.D.Ill.)**

Page 10

for legal relief. *See Black's Law Dictionary* 927 (6th ed.1990) (stating that "[a]fter the time period set out in the applicable statute of limitations has run, no legal action can be brought regardless of whether any cause of action ever existed"); *see also, e.g., Soignier v. American Bd. of Plastic Surgery,* 92 F.3d 547, 553 (7th Cir.1996), *cert. denied,*519 U.S. 1093, 117 S.Ct. 771, 136 L.Ed.2d 716 (1997) (indicating that one of the policies underlying statutes of limitation is "repose for those against whom a *claim* could be brought") (emphasis added); *Cargill Ferrous Int'l v. M/V Elikon,* 857 F.Supp. 45, 47 (N.D.Ill.1994) (Grady, J.) (remarking that statutes of limitation "represent a pervasive legislative judgment that justice requires an adversary to be put on notice to defend for a specified period of time, after which 'the right to be free of stale *claims* in time comes to prevail over the right to prosecute them' ") (emphasis added, quoting *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). However, Illinois does not recognize a cause of action for punitive damages alone. Punitive damages in Illinois represent a type of relief rather than an independent cause of action." *Kemner v. Monsanto Co.,* 217 Ill.App.3d 188, 160 Ill.Dec. 192, 576 N.E.2d 1146, 1153 (Ill.App.Ct.1991) (citing *Florsheim v. Travelers Indem. Co. of Ill.,* 75 Ill.App.3d 298, 30 Ill.Dec. 876, 393 N.E.2d 1223 (Ill.App.Ct.1979), and *McGrew v. Heinhold Commodities, Inc.,* 147 Ill.App.3d 104, 100 Ill.Dec. 446, 497 N.E.2d 424 (Ill.App.Ct .1986)). Thus, a failure to comply with § 2-604.1's 30-day filing requirement does not extinguish a plaintiff's underlying claim; it simply prevents the plaintiff from obtaining a particular type of damages. As a result, as the court noted in *Worthem,*§ 2-604.1"neither creates nor destroys any substantive right. Rather, it provides a time within which, in a limited number of cases, punitive damages may be sought." 774 F.Supp. at 516 (emphasis in original); *see also Culinary Foods, Inc. v. Raychem Corp.,* No. 92 C 8152, 1993 U.S. Dist. LEXIS 3906, at *6 (N.D.Ill. March 26, 1993) (Bobrick, Mag. J.) ("Because § 2-604.1 does not place limitations on a plaintiff's

pursuit of a cause of action-a substantive right-it is procedural, rather than substantive, in nature.").

**\*9** We conclude that the 30-day cutoff period is inapplicable to the proceedings at hand and cannot serve as a basis for denying Serfecz's motion to amend the complaint.

### *CONCLUSION*

For the foregoing reasons, the plaintiffs' motion to amend the complaint is granted. The plaintiffs are directed to file an amended complaint no later than September 10, 1997. A status hearing will be held on September 24, 1997, at 10:30 a.m. The parties should be prepared at that time to discuss what specific additional discovery, if any, will be necessary as a result of the plaintiffs' amendments.

N.D.Ill.,1997.
Serfecz v. Jewel Food Stores, Inc.
Not Reported in F.Supp., 1997 WL 543116 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.