IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MORTON GROVE PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No.: 08-CV-1384 |
| | ) | |
| v. | ) | Judge Bucklo |
| | ) | Magistrate Judge Mason |
| THE NATIONAL PEDICULOSIS ASSOCIATION, INC., | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF DEFENDANT THE NATIONAL PEDICULOSIS ASSOCIATION, INC.'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND DEPOSITION OF NON-PARTY DR. AMY S. PALLER**

Seeking to avoid the legitimate and proper discovery sought by defendant the National Pediculosis Association, Inc. ("NPA"), Dr. Amy Paller, through the attorneys she shares with plaintiff Morton Grove Pharmaceuticals, Inc. ("Morton Grove"), submitted an opposition to NPA's motion to compel that is long on bravado and short on substantive legal argument. When her opposition is stripped of its rhetoric, it is clear that Dr. Paller is not the kind of wholly unrelated third party that Morton Grove's attorneys claim. To the contrary, Dr. Paller is very much related to this lawsuit and to Morton Grove, for at least the following reasons:

- Dr. Paller is one of just two individuals that Morton Grove itself has identified as having personal knowledge of the alleged falsity of five of the thirteen NPA statements at issue in Morton Grove's own lawsuit;

- Dr. Paller is one of just three individuals listed as a reviewer of Morton Grove's website, lindane.com, on which several statements at issue in NPA's counterclaim are posted, and she admits that she spent time reviewing the site; and

- Dr. Paller apparently has been paid by Morton Grove for her work in connection with lindane.com.

Furthermore, there is no undue burden of thousands of dollars or an excessive deposition on Dr. Paller. Indeed, Dr. Paller and Morton Grove's claims that NPA's subpoena is abusive

because NPA was unwilling to limit its scope is belied by the contemporaneous correspondence between counsel.  It was her attorneys who refused to discuss any reasonable accommodations.  Dr. Paller should not be able to benefit from such inappropriate gamesmanship.  Finally, as demonstrated in the opening memorandum, NPA's subpoena is not unduly burdensome, particularly when the purported burdens of compliance are balanced against the highly relevant information and documents Dr. Paller possesses.

## ARGUMENT

I.  **DR. PALLER HAS PERSONAL KNOWLEDGE AND DOCUMENTS THAT ARE RELEVANT TO KEY ISSUES IN THIS CASE.**

  A.  **Dr. Paller Has Information Highly Relevant To Morton Grove's Complaint Against NPA.**

As NPA explained in its opening memorandum, NPA seeks discovery from Dr. Paller for the simple and undeniable fact that in response to an interrogatory from NPA, Morton Grove identified Dr. Paller as "hav[ing] knowledge" of a key element of Morton Grove's claims:  the alleged falsity of five of the thirteen NPA statements that are the subject of Morton Grove's complaint.  (NPA Mem. at 5-6 & Ex. 1 at 5-13, Ex. 2 at 6-19.)  Dr. Paller's relevant factual knowledge also makes obvious the relevance of NPA's related requests for documents concerning NPA, concerning lice or scabies treatments, and concerning the truth or falsity of NPA's statements.  (*Id.* at 6.)

In response, Morton Grove's attorneys on behalf of Dr. Paller ignore their own prior discovery responses and argue that "[h]er only connection to these proceedings is that she has been disclosed as someone who *may* have knowledge regarding why several of the NPA's statements are false."[1]  (Paller Opp. at 3.)  They then argue that "[i]f the universe of people who

---

[1] Along with her opposition to NPA's motion to compel, Dr. Paller also curiously filed a cross-motion to quash NPA's subpoena, in which she incorporates by reference her opposition.

2

had such knowledge was a club, it would not be a very exclusive one." (*Id*.) This "club," however, consists of only two individuals, Drs. Paller and Hebert. (NPA Mem. at 5 & Ex. 1 at 5-13, Ex. 2 at 6-13.) There is a reason that Morton Grove itself singled out Drs. Paller and Hebert from the alleged "club," and NPA is entitled to discover what puts Dr. Paller in this unique and elite category. Furthermore, their assertion that there is a "universe" of people who "know" the statement "Illinois banned lindane" to be false (Paller Opp. at 3) is particularly disingenuous because that is ***not*** one of the five statements for which Morton Grove has identified Dr. Paller as having knowledge. In light of these indisputable facts, Dr. Paller and Morton Grove's claim that Dr. Paller is not a "key witness" does not even pass the straight-face test.

Moreover, even if Dr. Paller were not a "key" witness, such an argument misses the point: discovery does not extend only to "key" witnesses. Rather, a party can seek discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), and "the scope of discovery should be broad in order to aid in the search for truth," *Koken v. Am. Patriot Ins. Agency, Inc.*, No. 05 C 1049, 2006 WL 1749689, at *4 (N.D. Ill. June 20, 2006) (quotation and citation omitted) (granting motion to compel). Thus, discovery from Dr. Paller is appropriate and well within the scope of Federal Rule of Civil Procedure 26(b)(1), and that does not change just because Dr. Paller is a non-party witness. *See Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008) (citations omitted) (refusing to quash subpoena, explaining that "[t]he scope of material obtainable by a [Federal] Rule [of Civil Procedure] 45 subpoena is as broad as permitted under the discovery rules").

Finally, Dr. Paller's claim that NPA did not identify "what facts" to which she is a witness is equally incredible. (Paller Opp. at 6.) Her own attorneys identified her as having

---

Because Dr. Paller did not notice her motion and it adds nothing to her opposition, NPA is not responding to it.

3

personal factual knowledge about five NPA statements that Morton Grove claims are false, and that is part of what NPA intends to depose her about, in addition to her involvement with lindane.com, described below.

Because Dr. Paller is one of only two fact witnesses who have knowledge about the alleged falsity of five NPA statements at issue in Morton Grove's lawsuit – a key issue – NPA should be entitled to depose her and to obtain related documents from her.

### B. Dr. Paller Has Information Highly Relevant to NPA's Counterclaim.

As explained in the opening memorandum, Dr. Paller also has personal knowledge relevant to NPA's counterclaim because she is one of only three reviewers of Morton Grove's website, lindane.com, which contains several statements that are the basis of NPA's claims. (NPA Mem. at 7-8.) In her response, Dr. Paller admits that "she spent several hours reviewing the content" of Morton Grove's website (Paller Opp. at 3) and otherwise does not seriously dispute that she has factual knowledge relevant to NPA's counterclaim. In fact, Dr. Paller's attorneys concede that she possesses relevant knowledge about NPA's counterclaim by explicitly reserving Morton Grove's rights to add her to its list of trial witnesses. (*Id*. at 3 n.1.)

Moreover, that Morton Grove has moved to dismiss NPA's counterclaim is of no consequence to this Court's decision on this motion. Discovery does not begin only after a party's claims have survived a motion to dismiss; rather, Federal Rule of Civil Procedure 26(d)(1) conditions the start of discovery only on the completion of the parties' Rule 26(f) conference. Indeed, last spring, Morton Grove itself sought to push forward with discovery long before the Court had ruled on NPA's pending motion to dismiss Morton Grove's claims. In any event, NPA believes its counterclaims will survive Morton Grove's motion to dismiss because those claims have ample basis in fact and in law. (Dkt. No. 85, NPA Opp. to Mot. to Dismiss Counterclaim; *see also* Ex. 1, NPA's Resps. to Morton Grove's Fourth Set of Interrogs.)

4

## II.     DR. PALLER'S OBJECTIONS LACK MERIT.

Dr. Paller uses most of her opposition brief to make sweeping assertions as to burden and the supposed improper purpose or abusive nature of NPA's subpoena. (Paller Opp. at 2-6, 8-11.) None of these assertions, most of which are unsupported by her declaration, have merit.

As a preliminary matter, Morton Grove's attorneys spend several pages of their brief making ad hominem attacks against NPA, asserting that NPA seeks to depose Dr. Paller only to chill her First Amendment speech in favor of lindane and that NPA has used its subpoena power abusively. (Paller Opp. at 4-6.) Nothing could be further from the truth, though it is ironic that Morton Grove sued NPA for the sole purpose of chilling its First Amendment rights to advocate for safe, non-chemical lice treatment alternatives. Importantly, Morton Grove has absolutely no support for its outlandish claims – which it makes in this lawsuit every time it does not want to have to comply with its discovery obligations. As demonstrated above and in its opening memorandum, NPA subpoenaed Dr. Paller because Morton Grove itself identified her as having personal knowledge of a key issue in its own lawsuit. That is most certainly a legitimate basis for seeking discovery; indeed, it would be almost malpractice not to seek discovery from such an individual disclosed by Morton Grove. That Dr. Paller does not appear in Morton Grove's Rule 26(a)(1) disclosures is irrelevant because they can be amended at any time, as Morton Grove's attorneys indicate they may do to defend NPA's counterclaim. (Paller Opp. at n.1.) Furthermore, as explained in its opening memorandum, Morton Grove may have had many reasons for not listing Dr. Paller in its disclosures, but that does not mean that she does not have key knowledge that NPA is entitled to discover. (NPA Mem. at 6-7.)

Similarly, NPA's subpoena is not abusive. Morton Grove's attorneys misstate the record in claiming NPA was unwilling to discuss limiting the scope of its subpoena. As is clear from the parties' correspondence (which NPA submitted with its motion, and which Morton Grove's

5

attorneys ignore entirely), it was Morton Grove's attorneys who refused to negotiate. (NPA Mem. at 2-4 & Ex. 3, Decl. of W. Thomson at Exs. A-O.) They should not now be rewarded for such conduct. NPA was and remains willing to participate in a meaningful discussion to narrow its subpoena and thus has not violated any duty to avoid undue burden to Dr. Paller.

### A. Dr. Paller's Status As A Doctor Does Not Qualify As Undue Burden Or Entitle Her To Extra Compensation.

NPA demonstrated in its opening memorandum that Dr. Paller is not wholly exempt from discovery merely because she is "busy" or because she is a doctor and that neither status makes NPA's subpoena unduly burdensome. (NPA Mem. at 9 (citing cases).) In response, Dr. Paller only reiterates that she is a non-party and a busy doctor. (Paller Opp. at 2-3.) While the Court may consider Dr. Paller's non-party status, "this factor is not in itself dispositive, and the Court's determination as to whether any burden is undue must still be arrived at by 'evaluating the balance of competing needs.'" *Ligas v. Maram*, No. 05 C 4331, 2007 WL 4225459, at *5 (N.D. Ill. Nov. 27, 2007) (quoting *United States v. Amerigroup Illinois, Inc.*, No. 02 C 6074, 2005 WL 3111972, at *5 (N.D. Ill. Oct. 21, 2005), *cited in* Paller Opp. at 2) (granting motion to compel responses to subpoena because the burdens of compliance were not undue when balanced against the relevance of the information sought). Thus, the Court must evaluate Dr. Paller's claims of burden in light of the highly relevant knowledge she possesses – and that balance reveals no undue burden.

### 1. Dr. Paller has not demonstrated that complying with the subpoena would create an undue burden.

Given the highly relevant nature of Dr. Paller's knowledge, her claims of undue burden at the prospect of sitting for a deposition are unavailing. As previously explained (pp. 5-6), NPA is sensitive to Dr. Paller's schedule and professional commitments and would work with her, just as

6

it has with other third parties it has subpoenaed, to minimize the burden of a deposition.[2] (NPA Mem. at 9-10.)

In response, Dr. Paller would have this Court find an undue burden from the mere fact that sitting for a deposition is an imposition, as it is for many deponents who are working professionals.[3] (*See* Paller Opp. at 2-3.) But that is not enough to deny NPA's motion to compel: any burden Dr. Paller faces in sitting for a deposition is not undue when balanced against the highly relevant information she possesses and the fact that she is one of two individuals whom Morton Grove has identified as "hav[ing] knowledge" of the alleged falsity of five NPA statements. (NPA Mem. at 5-6, 10 & Ex. 1 at 5-13, Ex. 2 at 6-19.) Further, the highly relevant information Dr. Paller possesses is information NPA cannot obtain from other available sources. Only Dr. Paller and Dr. Hebert are identified as having this knowledge as to five NPA statements (not any Morton Grove employees), and Morton Grove's attorneys are refusing to make Dr. Hebert available either, raising similar unfounded objections. Accordingly, courts refuse to quash subpoenas, like NPA's, that seek highly relevant information that cannot be obtained from another source. *See, e.g.*, *Guy Chem. Co., Inc. v. Romaco AG*, 243 F.R.D. 310, 312 (N.D. Ind. 2007) (cited in Paller Opp. at 12) (granting motion to compel compliance with subpoena where the discovery was not available from any other source and was "crucial" to the party's lawsuit).

Also, the alleged burdens of NPA's subpoena must be placed in their proper context. Once again, Morton Grove's attorneys overstate the nature of NPA's subpoena and understate

---

[2] For example, NPA is taking the deposition of a former Morton Grove employee on a Saturday in St. Louis because Morton Grove will not make him available on any other day.
[3] Dr. Paller also tries to gild the lily concerning how busy she is by mentioning that she has three children. (*See* Paller Opp. at 3.) She neglects to inform the Court that two of them are grown and the third is in high school.

7

NPA's willingness to limit its scope. NPA did not "insist[] on taking a full seven-hour deposition" (Paller Opp. at 1); rather, as NPA explained to Morton Grove's attorneys and confirmed in writing, it could not agree to limit her deposition to the 30-minute phone conversation they proposed. (NPA Mem. at Ex. 3, Decl. of W. Thomson ¶ 17 & Exs. N-O.) NPA has no interest in a seven-hour deposition if Dr. Paller's document production and her responses to deposition questions show a shorter deposition would suffice.

As to NPA's document requests, which seek highly relevant information, Dr. Paller fails to demonstrate that production of such documents would create an undue burden for her. (*See* NPA Mem. at 10.) In particular, Dr. Paller fails to provide information that would allow the Court to assess whether NPA's document requests are overly broad or unduly burdensome. Indeed, rather than inform the Court approximately how many documents NPA's requests cover, Dr. Paller simply insists that she has "retained no documents relating to www.lindane.com" and that she "do[es] have documents relating to lice and scabies generally." (Paller Opp. at Ex. B, ¶ 9.) It is hard to imagine how a request that yields no documents is unduly burdensome, and she offers no information as to whether her lice and scabies documents comprise one file folder or a hundred. Further, her arguments as to what a particular request "[l]iterally" seeks (*id.* at 9-10) similarly give no indication of the types of documents Dr. Paller actually possesses, and thus no means to assess whether the request is unduly burdensome.

Dr. Paller's vague claims of an overbroad scope or time period are insufficient because she has provided no "insight [as] to the *amount* or *number* of documents. Without some idea of how many documents the subpoena in fact requests, this Court simply cannot make a determination that the request is unduly burdensome." *United States v. Miller*, No. 3:02-CV-790, 2007 WL 178581, at *2 (N.D. Ind. Jan. 19, 2007) (refusing to quash subpoena based on

vague assertions of overbreadth based on time period); *see Richter v. Mut. of Omaha Ins. Co.*, Nos. 06-Misc.-011, CV 05-498, 2006 WL 1277906, at *3 (E.D. Wisc. May 5, 2006) (refusing to quash subpoena duces tecum based on "speculative" claims of burden that offered "no indication that [the non-party] has made any attempt to locate the documents, assess their quantity, whereabouts, or current form"). And it is insufficient to force NPA to "pursue these documents from Morton Grove or the public domain" as Dr. Paller suggests (Paller Opp. at 11) because (1) NPA already has pursued such documents from Morton Grove, but that led to the production of only 16 documents bearing Dr. Paller's name and (2) what NPA can find in the public domain is not the same as the particular collection of documents Dr. Paller possesses, because those documents alone bear on her personal knowledge about NPA's statements (*see* NPA Mem. at 13.)

Moreover, the Seventh Circuit recognizes that a subpoena "is normally just a means of opening discussion between discoverer and discoveree. The discoverer asks for too much because he is not, until he is told, aware of the discoveree's problems." *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560 (7th Cir. 1984) (reversing order granting motion to quash subpoena). Though Morton Grove's attorneys again misstate NPA's willingness to narrow its subpoena, NPA would have worked out an arrangement with Dr. Paller that would have minimized any burden she faces. If NPA understood more about Dr. Paller – for instance, the date at which she first began working with Morton Grove – NPA potentially could narrow the timeframe for certain document requests. But that is exactly the kind of information that Morton Grove's attorneys refused to provide prior to NPA's motion and even now have not offered.

Finally, as to electronically stored information, Dr. Paller again has failed to demonstrate an undue burden. Federal Rule of Civil Procedure 45(d)(1)(D) establishes that Dr. Paller "must

9

show that the information sought is not reasonably accessible because of undue burden or cost." Just as she failed to describe the number or amount of responsive paper documents she possesses, she also fails to offer even an estimate of the amount of her responsive electronically stored information. Instead, her attorney opines that in his professional opinion, Dr. Paller would have to hire an ESI expert. (Paller Opp. at Ex. A, ¶ 7.) "The statement of a lawyer in a memorandum [or here, a declaration] that the electronic information is not readily accessible or that it would be unduly burdensome to comply with the request is not evidence," however. *Auto Club Family Ins. Co. v. Ahner*, No. 05-5723, 2007 WL 2480322, at *3-4 (E.D. La. Aug. 29, 2007) (refusing to quash subpoena that sought electronically stored information). As this Court is well aware, people often communicate only through e-mail rather than paper documents, and NPA's request for electronically stored information should not be disregarded just because it seeks these types of documents.[4] *See id.* (refusing to "automatically assume that an undue burden or expense may arise simply because electronic evidence is involved"). Furthermore, Dr. Paller does not dispute NPA's suggestion that the IT department for Dr. Paller's employer might be able to easily produce these documents.

Where, as here, "the information sought is relevant, probative, and critical to [the party's] case," the "balancing of interests" favors the party issuing the subpoena. *Ligas*, 2007 WL 4225459, at *5. NPA's motion to compel should be granted.

      **2.    Dr. Paller has not demonstrated that she is entitled to hourly fees for her time.**

As demonstrated in the opening memorandum, because Dr. Paller is a fact witness rather than an expert, she is not entitled to hourly fees for time spent complying with NPA's subpoena.

---

[4] As it is entitled to do under Rule 45, NPA requested the electronically stored information in a particular format. Yet NPA obviously is willing to discuss the proper format to make production easier for Dr. Paller. Once again, that is something the parties should have been able to work out.

(NPA Mem. at 11-12 (citing cases).) Dr. Paller cites no case to the contrary and instead cites cases standing only for the unremarkable proposition that an expert witness is entitled to hourly fees. *See Cook v. CTC Commc'ns Corp.*, No. 06-CV-058, 2007 WL 1362379, at *1 (D.N.H. May 8, 2007) (awarding hourly fees to party's retained expert); *Weinberg v. Minn. Mut. Life Ins. Co.*, No. 01 C 7576, 2002 WL 31749180, at *1-2 (N.D. Ill. Dec. 3, 2002) (awarding hourly fees to consultant who potentially would offer expert opinions at trial); *In re Agent Orange Prod. Liability Litig.*, 105 F.R.D. 577, 581-83 (E.D.N.Y. 1985) (awarding hourly fees to previously retained experts). NPA, however, has never disputed that expert witnesses are entitled to fees for time spent responding to discovery. But Dr. Paller has not been designated as an expert witness in the matter, and her status as a doctor does not transform her into one. (And, she is not being subpoenaed because she is a treating physician, so the dispute in this district as to whether such individuals are experts is equally inapposite.) Instead, she has been identified as a fact witness by Morton Grove. Therefore, Dr. Paller is not entitled to any compensation beyond the statutory witness fee, which she has received. Accordingly, her hourly fee request is improper and does not bear on whether NPA's subpoena poses an undue burden.

Moreover, while Morton Grove's attorneys repeatedly claim in their opposition that Dr. Paller is an expert witness, the Court should disregard this unsubstantiated claim especially in light of the fact that Morton Grove itself has identified Dr. Paller only as a fact witness. Indeed, as explained in the opening memorandum, Morton Grove took great pains to make it clear that it was only identifying fact witnesses and not expert witnesses in its interrogatory responses. (NPA Mem. at 11.) Therefore, the provisions of Federal Rule of Civil Procedure 26(b)(4), concerning compensation for experts, are inapplicable.

11

Furthermore, Dr. Paller appears to have dropped her objection that she is an unretained expert. NPA believes that this is because Morton Grove apparently compensated Dr. Paller for her time working on lindane.com. Also, the fact that Dr. Paller's factual knowledge might be in the same general subject area as her profession does not convert her into an unretained expert in this lawsuit. (*See* NPA Mem. at 11-12.) Dr. Paller does not even attempt to distinguish the cases NPA cited on this point, nor does she cite to any case that supports her claim. Instead, she cites *Intervet, Inc. v. Merial Limited*, No. 07 CV 194, 2007 WL 2344815 (D. Neb. Aug. 15, 2007) (cited in Paller Opp. at 8, but that case is not on point. There, the witness who received the subpoena had not been identified by either party as "a fact witness." *Id.* at *2. To the contrary, he was a retained expert who had rendered an opinion in another case. *Id.* This is not Dr. Paller's situation here: she most certainly is a fact witness, and NPA's subpoena does not require her to disclose "expert" opinions. Given her relevance as a fact witness regarding s key element of Morton Grove's claims, NPA's motion to compel should be granted.

### III. NPA'S NOTICED DEPOSITIONS DO NOT DIMINISH DR. PALLER'S STATUS AS A KEY WITNESS.

Morton Grove's attorneys argue that Dr. Paller is not a "key witness" because she is one of 19 witnesses whose depositions NPA has noticed. (Paller Opp. at 3 n.2.) As explained in the opening memorandum, any objection to Dr. Paller's deposition as exceeding the number allowed under the Federal Rules of Civil Procedure is premature. (NPA Mem. at 13-14.) As an initial matter, NPA has noticed 17 depositions, rather than 19; the calculation of Morton Grove's attorneys appears to include two subpoenas served on non-parties that did not seek depositions. To date, NPA has taken four depositions in this matter, and four more are scheduled in August and September.

12

More significantly, the number of depositions NPA has noticed in no way diminishes Dr. Paller's status as a key witness. It is important for the Court to know that even though all of the witnesses that NPA has thus far deposed were identified in Morton Grove's Rule 26(a)(1) disclosures, these witnesses had little or no personal knowledge about the topics for which they were listed in those disclosures. Instead, they identified other people (who are not on Morton Grove's Rule 26(a)(1) disclosures) as having such knowledge, which increases the number of individuals NPA must depose to adequately defend itself in this matter. Accordingly, NPA has noticed additional depositions in an attempt to track down those with relevant knowledge, particularly those employees with more recently acquired relevant knowledge in light of Morton Grove's change in ownership during the course of this lawsuit. Also, NPA served several third-party subpoenas seeking both documents and depositions as a matter of efficiency so that it would not have subpoena these entities twice – first for documents and then for depositions, if necessary. As it turns out, after receiving documents from some of these entities, NPA has decided not to proceed with at least one of these depositions. Finally, the fact that NPA is deposing a number of people does not affect Dr. Paller's status as a key witness with respect to a few critical matters – and for which none of the other witnesses besides Dr. Hebert were identified as having knowledge.

## **CONCLUSION**

For the reasons stated above and in NPA's opening memorandum, the Court should grant NPA's motion to compel and enter an order requiring Dr. Amy S. Paller to produce all non-privileged documents that are responsive to NPA's subpoena and to appear for her deposition before the current discovery cut-off of October 1, 2008.

Dated: August 21, 2008

Respectfully submitted,

THE NATIONAL PEDICULOSIS
ASSOCIATION, INC.

By: s/ Debbie L. Berman
One of Its Attorneys

Debbie L. Berman (#6205154)
Amanda S. Amert (#6271860)
Wade A. Thomson (#6282174)
April A. Otterberg (#6290396)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484

## **CERTIFICATE OF SERVICE**

I, Debbie L. Berman, hereby certify that on August 21, 2008, I caused a copy of the foregoing **Reply in Support of Defendant the National Pediculosis Association, Inc.'s Motion to Compel the Production of Documents and Deposition of Non-Party Dr. Amy S. Paller**, and its accompanying exhibit, to be served upon the following via electronic filing through the CM/ECF system:

>Timothy Joseph Rivelli  (trivelli@winston.com)
>W. Gordon Dobie  (wdobie@winston.com)
>William Charles O' Neil (woneil@winston.com)
>Cherish M. Keller  (ckeller@winston.com)
>Winston & Strawn, LLP
>35 West Wacker Drive
>41st Floor
>Chicago, IL  60601
>Telephone:  (312) 558-5600
>Facsimile:  (312) 558-5700
>
>*Counsel for Plaintiff Morton Grove Pharmaceuticals, Inc. and Non-Party Dr. Amy S. Paller*

>   s/ Debbie L. Berman
>     Debbie L. Berman