**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MORTON GROVE PHARMACEUTICALS, INC., ) | |
| ) | |
| Plaintiff, ) | No.: 08-CV-1384 |
| ) | |
| v. ) | Judge Bucklo |
| ) | Magistrate Judge Mason |
| THE NATIONAL PEDICULOSIS ) | |
| ASSOCIATION, INC., ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |

**DEFENDANT THE NATIONAL PEDICULOSIS ASSOCIATION, INC.'S**
**MOTION FOR CLARIFICATION OF THE COURT'S AUGUST 14, 2008 ORDER**

Defendant the National Pediculosis Association, Inc. ("NPA") respectfully requests clarification of this Court's August 14, 2008 order (Dkt. No. 98, "Order") granting in part and denying in part plaintiff Morton Grove Pharmaceuticals, Inc.'s ("Morton Grove") motion for a protective order and to quash subpoena ("Motion"). Although NPA is also filing objections to the Order to preserve its arguments for appeal, through this Motion, NPA seeks to avoid additional motion practice and to expedite discovery in light of the approaching close of fact discovery.

Specifically, NPA seeks clarification as to the permissible scope of discovery into a single subject, www.lindane.com. As the Court is aware, lindane.com is central to hotly contested *factual* issues in this litigation, including whether lindane.com is a marketing tool (and therefore commercial speech) or exclusively a lobbying tool, and whether Morton Grove willfully made misleading statements on lindane.com. NPA seeks clarification that it is not prohibited from taking discovery into these key issues, particularly because most or all of the relevant evidence is solely in the possession of Morton Grove. Moreover, as detailed below, discovery to date has belied Morton Grove's representations to this Court that lindane.com is

purely a lobbying website. Without some clarification as to the permissible scope of discovery regarding www.lindane.com, the parties will inevitably disagree on what discovery into lindane.com is allowed, as Morton Grove will argue (as it has) that lindane.com was part of its "lobbying strategy." Therefore, NPA requests that the Court clarify the Order and hereby states as follows:

### A.     The Order

1.      The Order states that Morton Grove does not have to produce documents regarding its "lobbying strategy." The Order also recognizes that NPA alleges that lindane.com is a "marketing tool" and allows NPA to subpoena Closerlook (the creator of lindane.com) for documents that are not "lobbying strategy." Unclear to NPA is what documents, if any, relating to lindane.com are considered "lobbying strategy" by the Court. NPA submits that this highly-contested factual issue should not be left to Morton Grove to decide on its own, and that the Court should clarify that NPA is allowed discovery into the *purpose* of www.lindane.com.

### B.     Discovery Since the Briefing of the Motion Demonstrates that Morton Grove's Representations as to lindane.com Warrant Further Discovery.

2.      The parties completed briefing on Morton Grove's Motion on June 13, 2008. Since that time, the parties have taken six depositions. During this discovery, many of the representations Morton Grove made to this Court regarding lindane.com have been undercut, thereby supporting NPA's position that lindane.com is a promotional website and demonstrating the need for further discovery into lindane.com. Below are a few examples:

- Morton Grove based much of its Motion on the affidavit of its Director of Regulatory Affairs, Ralph Hodosh. However, in his July 8, 2008 deposition, Mr. Hodosh admitted that he only recently learned about lindane.com (primarily through Morton Grove's attorneys) and has no personal knowledge about it. Such an admission stands in direct contrast to his previous affidavit to this Court that he had "personal knowledge" that lindane.com "was specifically created to counter

        multi-state efforts to ban Lindane medications" and that its "primary target audience . . . is legislators." (Dkt. No. 44-2, at Ex. P ¶¶ 5, 6.)

- Contrary to Morton Grove's representations to the Court, the FDA originally expressed doubt as to Morton Grove's argument to the FDA that lindane.com was political speech (and not subject to FDA's review), and has since taken it under advisement. (*See* NPA's Aug. 8, 2008 Sur-Reply to Morton Grove's Reply in Support of its Motion to Dismiss NPA's Counterclaim, Dkt. 92, and accompanying exhibit filed under seal.)

- In its Motion, Morton Grove argued that www.lindane.com cannot be a promotional website because Morton Grove already maintains a promotional website in www.mgp-online.com. (Dkt. No. 44-2, at 12.) This argument was and is a red-herring. As Paula Grist, Morton Grove's Senior Director of Sales Operations, recently testified in her deposition, consumers cannot buy products from mgp-online.com and she did not consider it to be promotional.

- In its Motion, Morton Grove asserted that it implemented a "firewall" to block connection to sales and marketing personnel at Morton Grove during the creative process of lindane.com. (Dkt. No. 44-2, at 12.) But as Ms. Grist recently testified, even though she is the Senior Director of Sales Operations, she has never been told about any firewall or been precluded from viewing www.lindane.com.[1]

3.     These revelations demonstrate that, at best, lindane.com is a mixed-purpose website and that Morton Grove should not be allowed to hide all relevant evidence relating to lindane.com under its reading of the Order that lindane.com is "lobbying strategy." And it appears this is exactly what Morton Grove intends to do.

4.     On June 19, 2008, NPA served document requests seeking, among other things, documents relating to Morton Grove's statements at issue in NPA's counterclaim, some of which are posted on lindane.com. Morton Grove objected that the requests stating that the requests sought information subject to Morton Grove's Motion for "lobbying" documents. On August 14, 2008, after the Court entered its Order, the parties met and conferred on these document requests. (*See* Ex. 1, Aug. 15, 2008 Letter.) Morton Grove explained that to the extent NPA's document

---

[1] Moreover, Morton Grove asked NPA deponents about NPA's supposed lobbying activities, following up on their document requests to NPA about lobbying activities, and demonstrating that it too finds some lobbying activities relevant to this action.

requests sought documents relating to the drafting or strategy behind the statements on lindane.com, Morton Grove was taking the position that the documents were protected "lobbying strategy" under this Court's Order. (*Id.*)

5. Without documents relating to the drafting of the statements at issue in NPA's counterclaim, NPA will be not be able to test, among other things, Morton Grove's allegations that lindane.com is "exclusively" a lobbying website, that the contents of lindane.com were reviewed for by scientific experts for accuracy, and that the statements are not designed to downplay the risks of Morton Grove's lindane products. Moreover, NPA will be unable to inquire into one of the components of its claims against Morton Grove: whether Morton Grove's willfully or deliberately made misleading statements on lindane.com. *See, e.g.*, *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1099 (7th Cir. 1994) (affirming award of attorneys' fees in Lanham Act false advertising case, explaining that the Lanham Act "allows for fees in 'exceptional' cases, 15 U.S.C. § 1117(a), which encompasses cases in which the acts . . . are malicious, fraudulent, deliberate or willful) (quotation and citation omitted); (Dkt. No. 37, NPA Counterclaim ¶¶ 125-128 (alleging Morton Grove acted willfully and maliciously) & p. 55 (seeking attorneys' fees)). There can be no doubt that the drafting of Morton Grove's statements is highly relevant to the claims at issue in this case, and NPA requires the opportunity to take discovery on this topic, just as Morton Grove has with respect to NPA's drafting of its statements.

**C.   Minimal Clarification of the Order is Needed**

6. Because lindane.com is at the center of hotly contested and crucial *factual* issues in this case, and because the parties cannot move forward without some clarification, NPA

4

requests that the Court clarify its Order as it relates to lindane.com. Specifically, NPA seeks an order clarifying that NPA may pursue discovery regarding lindane.com, specifically:

a) That NPA may proceed with a deposition of Closerlook (as was contemplated by NPA's subpoena) to ask questions about Closerlook's understanding as to the purpose of lindane.com, *i.e.*, whether it was solely intended to influence legislation, including its bases for its positions; the drafting of lindane.com; and support for the statements posted on lindane.com and at issue in NPA's counterclaim;

b) That NPA may seek documents from Morton Grove and Closerlook relating to the drafting of lindane.com, and that such materials are not "lobbying strategy" as contemplated by the Order; and

c) That, during depositions, NPA may inquire into the understanding of current and former Morton Grove employees as to their understanding as to the purpose of lindane.com, *i.e.*, whether it was solely intended to influence legislation, including their bases for their positions; the drafting of lindane.com; and support for the statements posted on lindane.com and at issue in NPA's counterclaim.

WHEREFORE, for the foregoing reasons, NPA respectfully requests that the Court clarify its August 14, 2008 Order to explain permissible discovery relating to lindane.com going forward.

Dated: August 21, 2008

Respectfully submitted,

THE NATIONAL PEDICULOSIS
ASSOCIATION, INC.

By:  s/ Debbie L. Berman
       One of Its Attorneys

Debbie L. Berman (#6205154)
Amanda S. Amert (#6271860)
Wade A. Thomson (#6282174)
April A. Otterberg (#6290396)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484

5

## **CERTIFICATE OF SERVICE**

I, Debbie L. Berman, hereby certify that on August 21, 2008, I caused a copy of the foregoing **Defendant the National Pediculosis Association, Inc.'s Motion for Clarification of the Court's August 14, 2008 Order**, and its accompanying exhibit, to be served upon the following via electronic filing through the CM/ECF system:

>Timothy Joseph Rivelli  (trivelli@winston.com)
>W. Gordon Dobie  (wdobie@winston.com)
>William Charles O' Neil (woneil@winston.com)
>Cherish M. Keller  (ckeller@winston.com)
>Winston & Strawn, LLP
>35 West Wacker Drive
>41st Floor
>Chicago, IL  60601
>Telephone:  (312) 558-5600
>Facsimile:  (312) 558-5700
>
>*Counsel for Plaintiff Morton Grove Pharmaceuticals, Inc.*

>    s/ Debbie L. Berman
>    Debbie L. Berman

# EXHIBIT 1

**JENNER&BLOCK**

August 15, 2008

|  | Jenner & Block LLP | Chicago |
|---|---|---|
|  | 330 N. Wabash Avenue | Dallas |
|  | Chicago, IL 60611 | New York |
|  | Tel 312-222-9350 | Washington, DC |
|  | www.jenner.com |  |

**BY ELECTRONIC MAIL**

William O'Neil
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, Illinois 60601

Wade A. Thomson
Tel 312 840-8613
Fax 312 840-8713
wthomson@jenner.com

Re:   *Morton Grove Pharmaceuticals, Inc. v. National Pediculosis Association, Inc.*
      Case No. 08-CV-1384 (N.D. Ill.)

Dear Bill:

I write to memorialize our meet and confer from yesterday, which focused primarily on issues raised in my letter of August 6.

Separation Agreements: You said that you had not reviewed any of these agreements if they exist, but assuming that there is no obligation in the agreements owed to the former employees to not disclose the agreements, Morton Grove will produce the agreements for former Morton Grove employees prior to their depositions.

Supplemental Documents: As a possible compromise to address NPA's concerns that we have the chance to review all relevant documents relating to the FDA Warning Letter and Morton Grove's concern that it not be forced to search multiple custodians for what you maintain will likely include be privileged or duplicative documents, you offered for Morton Grove to conduct searches of Ralph Hodosh's emails for responsive internal documents and emails relating to the FDA Warning Letter, to produce documents where an attorney was not included on the distribution list, and not to log on a privilege log those documents that were privileged. I said we would take this proposal under advisement. Without waiving its rights to seek additional documents or a supplemental privilege log, NPA agrees to your proposal if Morton Grove can produce these documents by September 5. If Morton Grove does not agree, please let me know immediately.

As for Wockhardt documents, you indicated that later this week or early next week, Morton Grove will be producing from Wockhardt (1) financial documents post-June 2007 and (2) competitive marketing documents discussed in the deposition of Paula Grist. I indicated that NPA remains concerned that there may be current marketing documents within Wockhardt's possession that would responsive and relevant. You said that Wockhardt is currently doing no marketing of lindane products and that the only documents in Wockhardt's possession would be related to strategies for future marketing initiatives, which you did not see as relevant to this action. NPA believes the future marketing documents are relevant because they may discuss how they will deal with competitors, etc. and because Morton Grove seeks an injunction which deals with future injury. However, I agreed to review the forthcoming Wockhardt documents initially before re-visiting this issue.

William O'Neil
August 15, 2008
Page 2

Morton Grove's responses to NPA's 4th Set of Document Requests: In Morton Grove's July 22 responses, it objects to Request Nos. 2-10 on the basis of its pending motion for a protective order for "lobbying" documents. Yesterday you indicated that Morton Grove's objections were perhaps unclear. You said that Morton Grove has produced or will produce all responsive documents that support the substance of the Morton Grove statements at issue in NPA's Counterclaim and identified in the document requests. You said you would confirm by the end of the month that Morton Grove has indeed produced all these documents. On the other hand, to the extent that NPA's requests seek documents that would touch on the drafting of the statements, the strategy behind those statements, or why the statements were made, you said that Morton Grove would not produce those documents based on its position that they are "lobbying" documents protected by Judge Mason's order from today. I did not indicate that NPA agreed with your position that such documents were "lobbying strategy" documents that fell within Judge Mason's order.

As to Request No. 10, you said that you would inquire whether documents exist that show the date the relevant statements were posted on lindane.com. Please provide us an answer, and any existing documents, by the end of the month.

Deposition dates: We agreed that I would send you a Rule 30(b)(6) notice in short order so that we could discuss possible dates, subject matters, etc. You also agreed that to the extent appropriate based on the Rule 30(b)(6) topics, you will consider designating portions of currently scheduled depositions as Rule 30(b)(6) testimony.

As for Mr. Tambi, for whom we have not received a deposition date, you said that he is dealing with a personal matter and has not yet been able to discuss deposition dates. I agreed to give Morton Grove more time to discuss dates with Mr. Tambi. As we agreed, however, NPA may have to serve a subpoena on Mr. Tambi if this drags out.

Redactions: You indicated that Morton Grove would shortly be supplementing its redaction log with other non-privileged related redactions.

Persons with knowledge: We agreed to disagree about the threshold of whether certain people, identified in depositions but not in Morton Grove discovery responses, had knowledge and should have been identified by Morton Grove. For example, you explained that Mike Craney, who was identified by Surrendra Chirra and Paula Grist in their deposition, has only been working for Wockhardt for seven or eight months and would have knowledge only about the future marketing of lindane products. I explained that because he was employed by Wockhardt when Morton Grove sought leave to file its new complaint, he would seemingly be the person to talk to about any alleged on-going injury caused by NPA's statements. NPA stands on its position that Morton Grove has failed to identify certain individuals with relevant knowledge and

William O'Neil
August 15, 2008
Page 3

will move to preclude introduction of any testimony proffered by those individuals or testimony relating to issues within those individuals' work duties.

Sincerely,

*Wade Z.*

Wade A. Thomson

cc: Debbie L. Berman
    Amanda S. Amert