IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MORTON GROVE PHARMACEUTICALS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE NATIONAL PEDICULOSIS ) <br> ASSOCIATION, INC., ) <br> ) <br> Defendant. ) | No.: 08-CV-1384 <br><br> Judge Bucklo <br> Magistrate Judge Mason <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANT THE NATIONAL PEDICULOSIS ASSOCIATION, INC.'S
MOTION TO EXTEND THE TIME ALLOWED FOR DISCOVERY**

Defendant the National Pediculosis Association, Inc. ("NPA") respectfully requests that this Court enter the attached proposed order to extend the time allowed for discovery in this action. Fact discovery is currently scheduled to close in this action on October 1, 2008, with expert discovery closing on December 15, 2008. (Dkt. No. 72.)

Throughout the discovery process in this case, NPA has cooperated with and done its best to accommodate plaintiff Morton Grove Pharmaceuticals, Inc. ("Morton Grove") by promptly producing documents, providing dates for depositions, and responding to and supplementing discovery responses. Indeed, NPA has even agreed to take the deposition of a former Morton Grove employee on a Saturday to accommodate Morton Grove. By contrast, Morton Grove has dragged its feet on producing documents and on providing dates for depositions of key witnesses, and it has forced NPA to file several motions to compel, some of which remain pending.

Moreover, Morton Grove has no incentive to continue the discovery process: as a result of NPA's cooperation and the fact that NPA is a very small non-profit organization, Morton Grove has completed the vast majority of discovery it needs. NPA, however, still awaits

depositions of several key Morton Grove witnesses, the production of documents that are the subject of pending motions to compel, and discovery regarding new issues arising as a result of NPA's counterclaim and Morton Grove's recently amended complaint.

Therefore, an extension of time for completing discovery is warranted. In support of this motion, NPA states as follows:

### A. NPA's Efforts To Obtain Morton Grove's Agreement On This Motion.

1. In July, the parties filed an agreed motion to extend various deadlines in this case. (Dkt. No. 70.) The new deadlines benefited Morton Grove more than NPA, because the Court's previous scheduling order (which Morton Grove had requested) contemplated Morton Grove serving affirmative expert materials before the close of fact discovery. At that time, NPA suggested it needed further time for fact discovery beyond what Morton Grove proposed, but Morton Grove refused. Mindful of its duty to cooperate in managing the progress of this case, NPA agreed to Morton Grove's proposed deadlines, and the Court entered an order revising the case schedule. (Dkt. No. 72.) NPA hoped to be able to complete discovery within the Court's deadlines but was unable to do so for the reasons set forth below.

2. NPA attempted to obtain Morton Grove's concurrence on this motion before filing. (Ex. 1, Decl. of W. Thomson ¶¶ 24-27.) NPA even offered to scale back its proposed deadlines, conditioned on Morton Grove's agreement to provide certain outstanding discovery information, such as deposition dates, by the end of August. (*Id.* ¶ 26 & Ex. L.) Morton Grove abjectly refused to agree to either of NPA's proposals. (*Id.* ¶¶ 25-27 & Exs. K & M.)

3. As explained below, in light of the stumbling blocks Morton Grove has placed in NPA's path to obtaining discovery, the issues remaining on outstanding discovery, and further discovery that is necessary in light of, among other things, Morton Grove's new complaint, NPA

seeks an extension of the current fact discovery cutoff and extensions of resulting case deadlines thereafter. NPA seeks the longer extension it proposed to Morton Grove in the hope that it will be the last extension of fact discovery needed in this case.

### B. The Discovery Process To Date, And NPA's Diligent Efforts To Seek Discovery.

4. This case is a re-filing of Morton Grove's action against NPA, which was previously severed for improper joinder to Morton Grove's action that named NPA, the Ecology Center, Inc., and Dr. William Weil as defendants. This Court entered an order severing NPA from the prior action on November 30, 2007 (Case No. 06-0385, Dkt. No. 124); Morton Grove inexplicably waited more than three months to re-file its complaint against NPA (Dkt. No. 1, Compl. (filed on March 7, 2008).)

5. Although the Court entered an order allowing all discovery completed in the prior action to apply to this re-filed action (Dkt. No. 20), the parties had completed only somewhat limited discovery before Morton Grove re-filed its complaint in March. Both parties had produced documents and issued and responded to interrogatories, but no depositions had been taken, and several issues regarding Morton Grove's refusal to produce certain documents remained unresolved. (Ex. 1, Decl. of W. Thomson ¶ 3.)

6. Moreover, while Morton Grove initially informed the Court upon re-filing its complaint that "the parties have largely completed their document production, producing more than 150,00[0] pages of documents, and can promptly begin deposition discovery" (Dkt. No. 22, 4/4/08 Joint Report of Parties' Rule 26(f) Planning Meeting, at 3), since then, Morton Grove has served three more sets of document requests, ten more interrogatories, and thirty requests for admission (Ex. 1, Decl. of W. Thomson ¶ 4). In addition, it served its first notices of deposition in June. (*Id.* ¶ 2.)

3

7. Morton Grove's representation also ignored the discovery NPA would need to take as a result of Morton Grove's re-filed complaint, which placed several new NPA statements at issue, on which no discovery had been taken in the prior proceeding. (*Id.* ¶ 5.)

8. As it informed the Court in briefing in March 2008 that it would do (Dkt. No. 17 at 7), NPA filed a counterclaim against Morton Grove on May 6, 2008. (Dkt. No. 37.)

9. Since Morton Grove filed its new complaint, the parties have continued to engage in the discovery process, but Morton Grove's actions have made this process difficult, and NPA has struggled to obtain the discovery it requests. Specifically:

<u>NPA's Inability to Schedule Depositions of Morton Grove Employees</u>

10. Morton Grove has delayed providing dates for depositions of the current or former employees identified in its Rule 26(a)(1) disclosures. NPA sought these dates in early June. (Ex. 1, Decl. of W. Thomson ¶ 7 & Exs. A & B.) Rather than provide dates for each witness as requested, Morton Grove has provided dates in a piecemeal fashion, and for some witnesses, only after NPA served notices of deposition to force Morton Grove to identify workable dates. (*Id.* ¶¶ 11-14.) This has delayed the progress of discovery for NPA; indeed, it is taking one deposition on the very last day of the current fact discovery period. (*Id.* ¶ 15.)

11. Furthermore, though more than two months have passed since NPA's initial request, Morton Grove has yet to provide any date for the deposition of Brian Tambi, a former Morton Grove CEO listed in Morton Grove's Rule 26(a)(1) disclosures as having knowledge of Morton Grove's sales and marketing efforts for its lindane products. (*Id.*) Other witnesses have testified that Mr. Tambi was actively involved in Morton Grove's sales and forecasting of its lindane products and would be a good source of information as to these important issues.

12.     In contrast, NPA promptly provided dates for the depositions of its current and former employees when requested by Morton Grove.  (*Id.* ¶ 12.)

<u>NPA's Attempts to Obtain Discovery From Non-Party Fact Witnesses</u>

13.     For more than two months, NPA also has pursued but been unable to obtain discovery from four non-party witnesses whom Morton Grove identified in its interrogatory responses as having knowledge of the alleged falsity of the NPA statements forming the basis of Morton Grove's claims.  (*Id.* ¶ 7.)  For many NPA statements, these non-party witnesses, rather than any Morton Grove current or former employees, are the only persons identified as having such knowledge.  (Dkt. No. 82, NPA Motion to Compel, at Exs. 1 & 2.)  In addition, three of these non-party witnesses are listed as reviewers of Morton Grove's website, lindane.com, on which several statements at issue in NPA's counterclaim are posted.  (*Id.* at Ex. 5.)

14.     Despite the witnesses' clear relevance to this lawsuit, Morton Grove's attorneys stated that although they represented the witnesses, they would not produce them voluntarily. (*Id.* ¶ 8.)  Accordingly, NPA served subpoenas beginning on June 20.  (*Id.* ¶ 16.)  Morton Grove's attorneys then claimed they did not represent three of the witnesses.  (*Id.* ¶ 17 & Ex. E.)  Several days later, Morton Grove's attorneys reversed course once again and stated that they *did* represent the witnesses and, at that time, served objections to NPA's subpoenas.  (*Id.* ¶ 18.)

15.     Concurrent with the witnesses' objections, Morton Grove's attorneys indicated that a meet and confer as to the subpoenas "would not be terribly productive" unless NPA severely limited its requests.  (*Id.*)  The parties met and conferred on July 16, but Morton Grove's attorneys refused to produce the witnesses unless NPA paid the witnesses' hourly fees and commit to time limits on the depositions without first seeing the witnesses' documents.  (*Id.* ¶ 19.)

16.     On July 28, after weeks of going through the proper channels and trying to secure discovery from the non-party witnesses without the need for either subpoenas or motion practice, NPA filed a motion to compel the deposition of and production of documents from Dr. Amy S. Paller, the only one of these four non-party witnesses who resides in this judicial district. (Dkt. Nos. 81 & 82.) This motion remains pending and is discussed below.

**C.     Unresolved Issues On Discovery Motions**

17.     In addition, several key issues remain pending before Magistrate Judge Mason. Specifically:

<u>Unresolved Discovery from Four Non-Party Witnesses</u>

18.     As mentioned above, NPA has filed a motion to compel the production of documents from and deposition of Dr. Amy S. Paller, a non-party witness identified by Morton Grove in its interrogatory responses as having personal, factual knowledge of the alleged falsity of five of the thirteen NPA statements at issue in Morton Grove's lawsuit. (Dkt. No. 82 at Exs. 1 & 2.) Only one other non-party witness, and no Morton Grove employee or former employee, is identified as having such knowledge. (*Id.*) Dr. Paller also is a reviewer of lindane.com. (*Id.* at Ex. 5.)

19.     Although the parties have fully briefed NPA's motion (NPA submitted its reply brief on August 21), it remains pending before Magistrate Judge Mason. Even if Magistrate Judge Mason promptly grants NPA's motion, NPA doubts that Dr. Paller will be able to comply with NPA's subpoena in the time remaining for fact discovery.

<u>Unresolved Discovery as to So-Called "Lobbying Strategy" Documents</u>

20.     In early May, NPA served a subpoena on a third party, Closerlook, Inc., the company that designed Morton Grove's website, lindane.com, because several statements at

issue in NPA's counterclaim are posted on the site and because the marketing company assisted Morton Grove in marketing its lindane products, which is relevant to several elements of Morton Grove's claims against NPA. (Ex. 1, Decl. of W. Thomson ¶ 6.) On May 22, Morton Grove moved to quash NPA's subpoena and for entry of a protective order as to its "lobbying strategy" documents. (Dkt. No. 43.) The parties completed briefing by mid-June.

21. Magistrate Judge Mason ruled on Morton Grove's motion on August 14. (Dkt. No. 98.) He ruled that NPA would be allowed to subpoena Closerlook, Inc. for documents but that Morton Grove did not have to produce documents concerning its "lobbying strategy." (*Id.*)

22. Morton Grove then took the position that deposition testimony and documents related to the drafting and purposes of statements made lindane.com were protected under the Court's ruling (Dkt. No. 106, NPA Motion for Clarification of the Court's August 14, 2008 Order at Ex. 1), even though such discovery directly relates to such key disputed factual issues as whether Morton Grove's website is a commercial advertisement for purposes of NPA's Lanham Act claim.

23. On August 21, NPA filed a motion for clarification of the Court's order, in which it sought clarification as to what the Court meant by "lobbying strategy" documents (*see generally id.*), and it also will be filing objections to the order.

24. Even if the Court rules on NPA's motion in the near future, NPA does not believe it is likely that the parties and Closerlook will be able to complete all outstanding discovery on these issues by the current fact discovery cutoff.

<u>Unresolved Issues as to One Category of So-Called "Lobbying Strategy" Documents</u>

25. Magistrate Judge Mason also reserved ruling on a portion of Morton Grove's motion to quash until the Court rules on Morton Grove's pending motion to dismiss NPA's

7

counterclaim. (Dkt. No. 98.) That portion concerned NPA's requests for documents consisting of communications to doctors, health care professionals, and others seeking their assistance in lobbying efforts. (*Id.*)

26. Even if the Court rules promptly on Morton Grove's motion to dismiss, and Magistrate Judge Mason in turn rules promptly as to this remaining aspect of Morton Grove's motion to quash, it is likely that Morton Grove would be unable to produce responsive materials before the current close of discovery. In addition, Morton Grove obviously has held on to such documents for a reason, and their production may require NPA to seek further discovery.

**D.    Discovery Yet To Be Completed**

27. In addition to the outstanding discovery issues identified above, there are other issues on which NPA still needs discovery, and for which discovery cannot be completed before the fact discovery deadline just over a month away.

<u>Discovery Concerning Issues Raised in Morton Grove's New Complaint</u>

28. As the Court is aware, on August 18, Morton Grove filed an amended complaint against NPA. (Dkt. No. 104.) In granting Morton Grove leave to amend its complaint, the Court recognized that further discovery might be warranted and stated that "if additional time is needed to complete any additional discovery concerning the proposed amendments, then this court will entertain the appropriate motion." (Dkt. No. 103.)

29. NPA needs additional time to complete discovery as to several new issues raised in the amended complaint that, thus far, have not been the subject of significant or targeted discovery. In particular, the parties have not taken focused discovery regarding Morton Grove's new allegations as to NPA's completion of MedWatch forms that it then sent to the U.S. Food and Drug Administration. (Ex. 1, Decl. of W. Thomson ¶ 21.)

30. In addition, no targeted discovery has been taken concerning such issues as (1) Morton Grove's new allegations of specific ways the "overall context and message of NPA's website" supposedly create false impressions or have harmed Morton Grove and (2) Morton Grove's new allegations that NPA's actions allegedly violate the "norms and rules of advertising established by the FTC." (*Id.*)

### NPA's Need for a Rule 30(b)(6) Deposition of Morton Grove

31. NPA initially hoped it would not need to take a Rule 30(b)(6) deposition of Morton Grove and would instead take the depositions of those individuals identified by Morton Grove in its Rule 26(a)(1) disclosures or interrogatory responses.

32. So far, NPA has taken five depositions in this action, and three more are scheduled during September. Each deponent is a witness identified in Morton Grove's Rule 26(a)(1) disclosures, and each witness deposed thus far has demonstrated limited or no personal knowledge on the topics for which he or she was identified. Given the witnesses' lack of knowledge, NPA must now seek a Rule 30(b)(6) deposition in order to finally obtain a witness with knowledge as to relevant issues.

33. After informing Morton Grove's counsel that it would need a Rule 30(b)(6) deponent, NPA served a Notice of Rule 30(b)(6) Deposition on August 22. (Ex. 1, Decl. of W. Thomson ¶¶ 22-23.) Given the other depositions already scheduled during September (including a two-day deposition of NPA's president), it is unlikely the parties will be able to schedule a Rule 30(b)(6) deposition in the time remaining for fact discovery.

34. In addition, Morton Grove deponents also have pointed to other individuals, not listed in Morton Grove's Rule 26(a)(1) disclosures, as having knowledge of relevant issues. If

9

Morton Grove's Rule 30(b)(6) witness proves inadequate to provide relevant knowledge, NPA may be forced to seek one or two depositions of these witnesses.

      **E.**      **The Discovery NPA Seeks Is Important, Relevant, and Necessary to NPA's Defense.**

      35.      Morton Grove may respond to this motion by accusing NPA of seeking excessive discovery or attempting to draw out these proceedings by requesting needless or irrelevant discovery. Nothing could be further from the truth: the discovery NPA seeks concerns key issues in this lawsuit, and it is necessary to NPA's ability to adequately defend itself in this action. It was Morton Grove that chose to sue NPA, and it cannot now complain about NPA's mounting a defense.

      36.      Further, this lawsuit is not as straightforward as Morton Grove may suggest. Because Morton Grove seeks injunctive relief that concerns NPA's website – essentially the only way NPA fulfills its mission of educating the public and protecting children from the misuse and abuse of potentially harmful lice and scabies treatments – NPA is fighting for its very existence. It needs outstanding and further discovery to adequately defend itself, and it seeks more time in which to complete it.

      37.      Moreover, although Morton Grove apparently recognized its previous claim for money damages was without merit and removed that claim from its complaint in this re-filed action, that change did not significantly narrow the issues in this lawsuit. To obtain its requested injunctive relief, Morton Grove still must prove it is being or is likely to be injured by NPA's statements. Tellingly, Morton Grove did not remove the claim from its complaint that NPA's statements allegedly contributed to a 23%, or $9.3 million, drop in Morton Grove's sales of its lindane products between January and November 2006. (Dkt. No. 104, Am. Compl. ¶ 49.)

Thus, NPA still must take discovery regarding the myriad other factors that caused this alleged sales decline at Morton Grove.

38. Morton Grove also may respond to this motion by claiming that NPA is taking unnecessary or duplicative discovery, and that it has noticed 19 depositions in this matter compared to Morton Grove's three depositions. This argument is a red herring: although NPA has noticed 17 depositions plus a Rule 30(b)(6) deposition, NPA has been forced to seek more depositions than Morton Grove because relevant knowledge is fragmented among current and former employees in a way that relevant knowledge about NPA is not. Morton Grove's status as a sophisticated pharmaceutical company means relevant knowledge is not limited to one or two people,[1] and Morton Grove's change in ownership during the course of this lawsuit has meant that new individuals now have relevant knowledge and others' knowledge is limited only to certain time periods. Indeed, Morton Grove identified nine current or former employees in its Rule 26(a)(1) disclosures; it would have been almost malpractice for NPA not to seek depositions of these individuals. Finding that such identified individuals often lacked personal knowledge of the topics on which they were identified, however, and recognizing that these individuals often identified still others as having relevant knowledge, NPA had to seek other depositions as well.[2]

39. Both Morton Grove and NPA anticipated this situation last fall, when they jointly informed the Court that they believed they would need "approximately 15 depositions per party." (Case No. 06-3815, 8/8/07 Joint Report of Parties' Rule 26(f) Planning Meeting, at 2.) NPA

---

[1] By contrast, throughout its history, NPA generally has had only a handful of paid employees.

[2] NPA also served several third-party subpoenas seeking both documents and depositions as a matter of efficiency so that it would not have subpoena these entities twice – first for documents and then for depositions, if necessary. As it turns out, after receiving documents from some of these entities, NPA has decided not to proceed with at least one of these depositions.

11

reiterated its position in this re-filed action.  (Dkt. No. 22, Joint Report of Parties' Rule 26(f) Planning Meeting, at 5.)

    WHEREFORE, for the foregoing reasons, NPA respectfully requests that the Court enter the Scheduling Order attached hereto and also emailed to the Court.

Dated:  August 25, 2008          Respectfully submitted,

THE NATIONAL PEDICULOSIS
ASSOCIATION, INC.

By:   s/ Debbie L. Berman
      One of Its Attorneys

Debbie L. Berman (#6205154)
Amanda S. Amert (#6271860)
Wade A. Thomson (#6282174)
April A. Otterberg (#6290396)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484

## **CERTIFICATE OF SERVICE**

I, Debbie L. Berman, hereby certify that on August 25, 2008, I caused a copy of the foregoing **Defendant the National Pediculosis Association, Inc.'s Motion to Extend the Time Allowed for Discovery**, and its accompanying proposed order and exhibits, to be served upon the following via electronic filing through the CM/ECF system:

Timothy Joseph Rivelli  (trivelli@winston.com)
W. Gordon Dobie  (wdobie@winston.com)
William Charles O' Neil (woneil@winston.com)
Cherish M. Keller  (ckeller@winston.com)
Winston & Strawn, LLP
35 West Wacker Drive
41st Floor
Chicago, IL  60601
Telephone:  (312) 558-5600
Facsimile:  (312) 558-5700

*Counsel for Plaintiff Morton Grove Pharmaceuticals, Inc.*

    s/ Debbie L. Berman
    Debbie L. Berman