IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MORTON GROVE PHARMACEUTICALS, INC. | ) ) ) | |
| Plaintiff, | ) ) ) | No: 08-CV-1384 |
| v. | ) ) ) | Judge Bucklo |
| THE NATIONAL PEDICULOSIS ASSOCIATION, INC. | ) ) ) ) | Magistrate Judge Mason |
| Defendants. | ) ) ) | |

**MORTON GROVE PHARMACEUTICALS, INC.'S RESPONSE TO
DEFENDANT'S MOTION TO EXTEND THE TIME ALLOWED FOR DISCOVERY**

The NPA's motion to extend the case management schedule by more than three months should be denied for the following reasons:

*First*, the parties have had plenty of time and opportunity to conduct discovery. During the last 18 months, the parties have served 144 requests for production, 31 interrogatories, and 30 requests to admit; exchanged 154 discovery letters; produced more than 174,000 pages of documents; and noticed more than 20 depositions. All this has already occurred in a straightforward case where no money damages are at issue and the sole issue is whether a dozen statements on the NPA's commercial website are false or deceptive.

*Second*, any remaining discovery tasks can be completed in the next 35 days, before the October 1, 2008 fact discovery cut off. The NPA has retained one of Chicago's largest litigation firms and they have staffed the case with at least five lawyers. The suggestion that the few remaining discovery tasks cannot be completed in five weeks with the resources at hand is beyond belief.

In its motion, the NPA enumerates five discovery tasks that it would like to complete prior to the close of fact discovery:

### A.  *The Deposition of Mr. Brian Tambi*

Morton Grove has informed the NPA that it expects to be able to voluntarily produce its former CEO and third-party, Mr. Brian Tambi, prior to the October 1, 2008 discovery cut off.  This is no reason for an extension.

### B.  *The Depositions of Four Third-Party Physicians*

On June 20, 2008, the NPA issued four third-party subpoenas to Doctors Paller, Hebert, Shwayder, and Gad.  Each is a nationally recognized pediatric dermatologist or toxicologist that has written letters to various state legislators opposing proposed bans on Lindane medications.  By July 11, 2008, each physician had filed timely and well-founded objections to the NPA's subpoenas, which seek both documents (including the costly production of ESI) and a seven hour deposition.  Each physician then engaged the NPA in the meet and confer process.  During that process, the NPA refused to narrow the subpoenas in any way, including refusing to accept anything less than a seven-hour videotaped deposition.

*Importantly, the NPA took absolutely no action in the intervening 47 days with respect to three of these subpoenas.*  With respect to only one of the subpoenas, relating to Dr. Paller, has the NPA filed a motion to compel, and even with that motion, the NPA waited 21 days to file it after receiving Dr. Paller's objections.  Even so, that motion is fully briefed before Judge Mason and the parties expect a timely ruling that will allow for any compliance that might be ordered prior to October 1, 2008.  The NPA cannot credibly seek an extension so that they can file motions to compel against the other three physicians at their leisure, after sitting on those rights for 47 days.

### C. The NPA's Motion to Clarify Magistrate Judge Mason's Ruling Regarding Lobbying Documents

The NPA next argues that more time in discovery is needed because it filed a motion to clarify (a/k/a reconsider) a discovery ruling by Magistrate Judge Mason. The hearing on that motion is set for August 27, 2008, prior to the hearing on this motion. This point may well be moot by the time the Court considers the instant motion. In any event, the parties have 35 days remaining in fact discovery to address and react to any guidance they receive from Magistrate Judge Mason on this point.

### D. Discovery on Morton Grove's Amended Complaint

Although Morton Grove's amended complaint has been in the NPA's possession for more than a month (since July 24, 2008), the NPA has served no discovery regarding it. This dilatory conduct is no excuse to extend the schedule by three months. In addition, Morton Grove put the NPA on notice of the factual predicate for its amendment—the NPA's misrepresentation of its credentials as a "Health Professional"—as early as June 3, 2008. (Exhibit A.) While it is a convenient excuse for more time, the truth, as borne out by the NPA's conduct, is that no additional discovery is needed on Morton Grove's amendment which modifies only six paragraphs and adds no new claims or parties.

### E. A Morton Grove 30(b)(6) Deposition

The final item on the NPA's wish list is a Rule 30(b)(6) deposition of Morton Grove. After more than 18 months of discovery and after noticing up 18 other depositions (without leave of court or consent to exceed Rule 30's ten-deposition limit), the NPA *just three business days ago* served its Rule 30(b)(6) deposition notice (again without leave of court). If the NPA can cure the procedural and substantive defects with its notice, there is absolutely no reason that this issue also cannot be resolved by October 1, 2008.

*Third*, though the NPA spends 12 pages pointing its finger at Morton Grove, it never once takes responsibility for the predicament it now finds itself in.  Any delay is the result of the NPA's own strategic gambles.  As detailed above, this motion boils down to a request for a three-month extension so that the NPA can (i) consider filing three motions to compel which it sat on for 47 days and (ii) attempt to take a Rule 30(b)(6) deposition, the notice for which the NPA waited 18 months to serve.  If anything, the NPA's dilatory conduct is to blame for any discovery that cannot be completed by the October 1, 2008 deadline.  Any additional time will no doubt be spent by the NPA wielding burdensome discovery mechanisms in pursuit of irrelevant information.

*Fourth*, this is not the first modification requested to the schedule, nor are there any promises that it will be the last.  The discovery schedule was previously altered by a month as recently as July 17, 2008.  (*See* Docket Entry No. 73.)

*Fifth*, Morton Grove will be prejudiced by this extension in two significant ways.  First, the NPA's false advertisements continue to remain on the NPA's commercial website during the pendency of this action, deceiving additional customers, boosting sales of additional NPA product, and inflicting further injury on Morton Grove.  It is then no surprise that the NPA seeks to maximize profits and elongate this proceeding, delaying a judicial determination of their wrongdoing.

Additionally, although positioned by the NPA as David (Morton Grove a/k/a "Big Pharma") versus Goliath (not-for-profit NPA), nothing could be further from the truth.  In fact, discovery has thus far reveled the following: the NPA took in less than $100/year in donations, but made millions selling its competing product, the LiceMeister Comb; Morton Grove is a fledgling suburban Chicago generic pharmaceutical company which recently closed office

4

locations and laid off roughly one third of its employees; Morton Grove is paying for this litigation out of its financial bottom line; and the NPA is fully funded in this litigation through a $5 million policy of insurance. The NPA has sought to take advantage of these facts, running the correspondence total over 150 letters, pushing or exceeding the page limit on virtually every brief it has filed, staffing this case with at least five attorneys, and noticing 18 videotaped depositions. If prior behavior is any indicator of future conduct, this pattern will only continue throughout the three-month extension the NPA seeks, needlessly running up the cost of this litigation for Morton Grove.

*Finally*, the NPA seeks an extension that is well longer than necessary to complete its stated objectives. This is proven by the fact that the NPA has built in an additional seven weeks of padding into its Proposed Order from the last proposal it made to Morton Grove prior to filing this motion, no doubt in the hopes that the Court would "split the baby" and give the NPA some portion of the time it requested. For example, prior to filing this motion, the NPA informed Morton Grove that it believed the parties could file responses to motions in limine by May 5, 2009 (*see* Exhibit L to Exhibit 1 in Docket Entry No. 109, the NPA's motion), but in the Proposed Order the NPA delivered to the Court, it suggest setting that date on June 30, 2009, more than 7 weeks later. Such gamesmanship by the NPA should not be tolerated by this Court.

## CONCLUSION

For the foregoing reasons, Morton Grove respectfully requests that the Court deny the NPA's motion to extend the discovery schedule.

Dated:  August 27, 2008  Respectfully Submitted,

**MORTON GROVE PHARMACEUTICALS, INC.**

By:  /s/ William C. O'Neil
  One of its Attorneys

W. Gordon Dobie (wdobie@winston.com)
William C. O'Neil (woneil@winston.com)
Cherish M. Keller (ckeller@winston.com)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
T:  (312) 558-5600
F:  (312) 558-5700

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of August 2008, I caused a copy of **Morton Grove Pharmaceuticals, Inc.'s Response to Defendant's Motion to Extend the Discovery Schedule** to be served on counsel of record via ECF electronic filing:

>Debbie L. Berman
>Amanda S. Amert
>Wade A. Thomson
>April A. Otterberg
>JENNER & BLOCK LLP
>330 North Wabash Avenue
>Chicago, Illinois 60611
>T: (312) 222-9350
>F: (312) 527-0484

/s/ William C. O'Neil