**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MORTON GROVE PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No.: 08-CV-1384 |
| | ) | |
| v. | ) | Judge Bucklo |
| | ) | Magistrate Judge Mason |
| THE NATIONAL PEDICULOSIS | ) | |
| ASSOCIATION, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

**DEFENDANT THE NATIONAL PEDICULOSIS ASSOCIATION, INC.'S REPLY IN
SUPPORT OF ITS MOTION TO EXTEND THE TIME ALLOWED FOR DISCOVERY**

Defendant the National Pediculosis Association, Inc. ("NPA") respectfully submits this reply brief in support of its motion to extend the time allowed for discovery ("Motion"). The Motion was initially set before Judge Bucklo, who referred it to Your Honor on August 27, 2008. (Dkt. No. 114.) Because the parties never appeared before Judge Bucklo on the Motion (and therefore no briefing schedule was entered or discussed), NPA submits this reply brief in order to aide the Court in deciding the Motion and to update the Court on relevant events since the Motion was filed.

In response to NPA's Motion, Plaintiff Morton Grove Pharmaceuticals, Inc. ("Morton Grove") filed a response brief in which it raised several misleading arguments. (*See* Morton Grove's Response to Defendant's Motion to Extend the Time Allowed for Discovery, Dkt. 111, hereinafter, "Response.") The most egregious of Morton Grove's arguments are dealt with below.

**ARGUMENT**

*First*, Morton Grove argues that the parties have had plenty of time for discovery, and that this is a "straightforward case where no money damages are at issue." (Response at 1.) As

an initial matter, Morton Grove mischaracterizes the nature of this lawsuit. While it is true that Morton Grove no longer seeks money damages, as NPA explained to the Court at the August 27, 2008 status conference, NPA's mission is to protect children through education of the risks relating to headlice treatments. Morton Grove is essentially trying to snuff out NPA's advocacy through the current lawsuit. With its First Amendment rights and mission on the line, NPA is entitled to mount a vigorous defense to Morton Grove's lawsuit. Furthermore, Morton Grove only dropped its claim for millions of dollars after the Court dismissed its defamation *per se* claim, and Morton Grove realized that it could not make a credible claim for money damages when responding to NPA's interrogatories on that subject.

And while Morton Grove may be done with its discovery because NPA has given Morton Grove what it has asked for in a timely fashion, NPA is not done with discovery because Morton Grove has dragged its feet on producing documents and on providing dates for depositions of key witnesses, and has forced NPA to file several motions to compel as explained in detail in the Motion.

*Second*, Morton Grove argues that all remaining discovery tasks could be done by October 1, 2008, and notes that NPA has hired "one of Chicago's largest litigation firms." (Response at 1.) This is a non-sequitur. Discovery cannot be completed because of Morton Grove and its law firm, not NPA's law firm. Specifically, William O'Neil, one of four counsel of record (from another of Chicago's largest litigation firms) for Morton Grove, continues to assert that he is the only person available to handle discovery conferences and depositions for this case. And, Mr. O'Neill's schedule has been and continues to be a bottleneck in scheduling both.

2

For example, Morton Grove claims that the deposition of Brian Tambi is one thing that can be accomplished by October 1.  (Response at 2.)  But despite Morton Grove's assurances to the Court and despite the fact NPA has been asking for a deposition date since June 18, to date Morton Grove has not even offered *possible* dates for Mr. Tambi's deposition before October 1.  Given the other scheduled depositions during the month of September and the Jewish holidays, it would be virtually impossible to complete this deposition in the next three weeks.

Morton Grove also raises the issue of NPA's third party subpoenas on four doctors -- some of whom reviewed Morton Grove's websites and/or are Morton Grove's paid consultants -- and suggests that NPA has dragged its feet in enforcing these subpoenas.  (Response at 2.)  NPA did nothing of the sort.  Rather than running around the country and incurring significant legal fees, NPA first sought to enforce its subpoena to Dr. Paller, who resides in this Court's jurisdiction, because it was most efficient to have this Court (which is familiar with the issues in this case) rule on that subpoena first.  The day after this Court's ruling on that motion to compel, NPA's counsel sent a letter to Morton Grove's counsel seeking their agreement on the other three subpoenas to avoid further motion practice.  Morton Grove's counsel, however, was not available to discuss those other subpoenas until this week.  That conversation is scheduled to take place today, and NPA hopes to resolve the other three subpoenas without additional motion practice and the attendant delay and expense.

*Third*, Morton Grove suggests that issues relating to NPA's motion for clarification of Your Honor's ruling regarding "lobbying documents" could be addressed before October 1.  (Response at 3.)  As the Court is aware, on August 27, it granted NPA's motion for clarification (Dkt. 112), and on that same day and the following day, NPA sent letters to Morton Grove and Closerlook, respectively, seeking the responsive documents and a deposition date for Closerlook.

3

(*See* Exs. A & B, attached hereto.) To date, there has been no response to either letter. Thus, despite NPA's best efforts, it is highly unlikely these issues can be resolved before October 1.

*Fourth*, Morton Grove attempts to chastise NPA for delay in taking discovery on Morton Grove's latest -- the fourth -- complaint against it. (Response at 3.) This is a canard. Morton Grove was not given leave to file its latest complaint until August 18 -- it would not have made sense (nor would it have even been permissible) to seek discovery until the Court authorized Morton Grove to file that complaint. NPA served discovery requests regarding the new allegations nine days later.

*Fifth*, Morton Grove asserts that NPA delayed in noticing up a 30(b)(6) deposition and that NPA did it without leave of Court.[1] (Response at 3.) First, as the Court pointed out during the August 27 status conference, a 30(b)(6) deposition does not count against NPA's ten deposition limit so no leave was required. Second, despite the fact that NPA told Morton Grove of its intent to seek a 30(b)(6) deposition on August 15 (and served the notice on August 22), Morton Grove has not even offered any dates for the 30(b)(6) deposition nor has it written any letter or objections as to the scope of that deposition notice. For the reasons set forth above, there is simply no way for that deposition to be completed before October 1.

*Sixth*, Morton Grove argues that it will be prejudiced by an extension because (a) NPA's statements will remain on its website that much longer and (b) Morton Grove is a "fledgling suburban Chicago generic pharmaceutical company which recently closed office locations and

---

[1] Morton Grove also misleads the Court by saying that NPA has noticed up 18 depositions. (Response at 3.) As the NPA has explained to the Court and to opposing counsel on numerous occasions, NPA served many of these subpoenas primarily for documents but, in order to save the time and resources of serving a second subpoena, also noticed a deposition in case that was necessary. To date, NPA has not taken depositions, or even sought to set a deposition date, for six of these subpoenas and hopes that documents (or other depositions) render them all unnecessary. NPA is very mindful of the Court's admonition to be judicious in its deposition choices.

4

laid off roughly one third of its employees," insinuating it cannot afford more discovery. (Response at 4-5.) First, Morton Grove has not identified (and could not identify) any particular injury it will suffer if the statements remain up for additional months -- particularly since some of those statements have been up for years; Morton Grove's new found sense of urgency is especially puzzling in light of its recent filing of its *fourth* complaint in this matter, which Morton Grove should have know would delay resolution of this case. Moreover, Morton Grove's false statements about NPA -- the subject of NPA's counterclaims -- will also remain posted during the extended time, yet NPA realizes it must endure this to adequately litigate Morton Grove's lawsuit.

Second, Morton Grove's argument that it is a small, financially strapped company is blatantly misleading. Morton Grove is owned by Wockhardt Pharmaceuticals, a large "global, pharmaceutical and biotechnology company" with "market capitalisation of over US$ 1 billion and an annual turnover of US$ 650 million." *See* http://www.wockhardt.com/about_us.html. Also, as Morton Grove employees have testified in their depositions, the downsizing of local positions is part of the re-organization of the company, including shifting positions and responsibilities to their New Jersey facilities. Thus, contrary to Morton Grove's pleas, it is not a poor shop unable to fend for itself. The reality is Morton Grove attempted to bully a small non-profit (NPA) and stepped into a more rigorous defense than it wanted.

*Seventh*, and finally, Morton Grove argues that the schedule submitted by NPA is longer than necessary because NPA proposed a shorter schedule during a meet and confer. (Response at 5.) As NPA clearly pointed out to Morton Grove in that proposal (Motion Ex. 1, Ex. L), the shorter schedule would have required specific commitments from Morton Grove, commitments that Morton Grove was not willing to make. Thus, it is disingenuous for Morton Grove to argue

that NPA suggested that shorter proposal without regard to its caveats. NPA hopes that discovery would not take that long to complete but given the track record in this case, it is not confident that Morton Grove will be sufficiently cooperative to finish the remaining discovery more quickly.

## CONCLUSION

For the foregoing reasons, and those set forth in NPA's Motion, the Court should grant NPA's Motion and enter its proposed Scheduling Order.

Dated: September 5, 2008          Respectfully submitted,

THE NATIONAL PEDICULOSIS
ASSOCIATION, INC.

By:   s/ Debbie L. Berman
      One of Its Attorneys

Debbie L. Berman (#6205154)
Amanda S. Amert (#6271860)
Wade A. Thomson (#6282174)
April A. Otterberg (#6290396)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484

## CERTIFICATE OF SERVICE

I, Debbie L. Berman, hereby certify that on September 5, 2008, I caused a copy of the foregoing **Defendant the National Pediculosis Association, Inc.'s Reply in Support of its Motion to Extend the Time Allowed for Discovery**, and its accompanying proposed order and exhibits, to be served upon the following via electronic filing through the CM/ECF system:

> Timothy Joseph Rivelli  (trivelli@winston.com)
> W. Gordon Dobie  (wdobie@winston.com)
> William Charles O' Neil (woneil@winston.com)
> Cherish M. Keller  (ckeller@winston.com)
> Winston & Strawn, LLP
> 35 West Wacker Drive
> 41st Floor
> Chicago, IL  60601
> Telephone:  (312) 558-5600
> Facsimile:  (312) 558-5700
>
> *Counsel for Plaintiff Morton Grove Pharmaceuticals, Inc.*

                                                                          s/ Debbie L. Berman
                                                                           Debbie L. Berman

# EXHIBIT A

**JENNER&BLOCK**

August 27, 2008

Jenner & Block LLP          Chicago
330 N. Wabash Avenue        Dallas
Chicago, IL 60611           New York
Tel  312-222-9350           Washington, DC
www.jenner.com

**BY ELECTRONIC MAIL**

William O'Neil
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, Illinois  60601

Wade A. Thomson
Tel  312 840-8613
Fax  312 840-8713
wthomson@jenner.com

Re:   *Morton Grove Pharmaceuticals, Inc. v. National Pediculosis Association, Inc.*
      Case No. 08-CV-1384 (N.D. Ill.)

Dear Bill:

I write to follow up on my letter of August 15.

Separation Agreements:  Thank you for the separation agreements provided to date. Those documents did not include anything for Bill Goldberg, however. If there are separation documents related to Mr. Goldberg, please produce them immediately.

Supplemental Documents:  As memorialized in my letter of August 15, you offered for Morton Grove to conduct searches of Ralph Hodosh's emails for responsive internal documents and emails relating to the FDA Warning Letter, to produce documents where an attorney was not included on the distribution list, and not to log on a privilege log those documents that were privileged. In your email of August 18, 2008, you said you could not promise production by September 5 but would provide updates on the production when requested. Please provide us an update as to when we can expect these documents.

Morton Grove's responses to NPA's 4th Set of Document Requests and other "lobbying" documents:  In light of today's ruling from Magistrate Judge Mason on NPA's motion for clarification, please produce all documents Morton Grove has not produced regarding the drafting of lindane.com, as well as any other documents that Morton Grove has been withholding as lobbying strategy, that are not "communications between Morton Grove's lawyers and its lobbyists" (which are the only protected "lobbying" documents under the court's order).

In light of the upcoming depositions and Morton Grove's refusal to agree to an extension of the fact discovery cut-off, we are forced to request Morton Grove's commitment to produce these

William O'Neil
August 27, 2008
Page 2

documents no later than Wednesday, September 10. Also, we need to have your commitment by the close of business today so, in the event Morton Grove refuses, we can inform the court tomorrow as it considers NPA's motion to enlarge the discovery schedule.

Sincerely,

*[signature]*

Wade A. Thomson

cc:  Debbie L. Berman
     Amanda S. Amert

# EXHIBIT B

# JENNER&BLOCK

August 28, 2008

Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611
Tel 312-222-9350
www.jenner.com

Chicago
New York
Washington, DC

**VIA U.S. MAIL & FACSIMILE**

Mark E. Abraham
Gould & Ratner LLP
222 North LaSalle Street
Suite 800
Chicago, Illinois  60601

Wade A. Thomson
Tel  312 840-8613
Fax  312 840-8713
wthomson@jenner.com

Re:   **Morton Grove Pharmaceuticals v. National Pediculosis Association**
      **Case No. 06-CV-3815**

Dear Mark:

I write to follow-up on the subpoena served by my client, NPA, on your client, Closlerlook, and my letter to you of May 29, 2008. As you may know, the Court recently entered an order regarding Morton Grove's motion to quash the subpoena on Closerlook, and subsequently clarified that order. I have attached both orders. As you can see, the orders allow NPA to proceed with Closerlook's deposition and seek documents from Closerlook. The only documents NPA cannot seek are documents that are "communications between Morton Grove's lawyers and its lobbyists."

As you may also know, there is currently a fact discovery cut-off of October 1 in our case. Moreover, as I indicated in my letter of May 29, 2008, Closerlook has now had plenty of time to prepare its response to our subpoena. Therefore, please produce all responsive documents no later than September 9, 2008. As for the deposition, we are willing to work with you (and counsel for Morton Grove to the extent they want to attend) to find a mutually convenient date, but that date must be before October 1, unless the court extends the discovery deadline or the parties agree to extend the deadline for this deposition.

Please do not hesitate to contact me if you want to discuss this.

Very truly yours,

Wade A. Thomson

WAT:kmd

cc:   William C. O'Neill (via email)

Order Form (01/2005)    Case 1:08-cv-01384    Document 112    Filed 08/27/2008    Page 1 of 2

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| CASE NUMBER | 08 C 1384 | DATE | 8/27/2008 |
| CASE TITLE | Morton Grove Pharmaceuticals vs. National Pediculosis Association | | |

**DOCKET ENTRY TEXT**

Status hearing held and continued to 9/24/08 at 9:00 a.m. NPA's motion to clarify this Court's August 14, 2008 Order [106] is granted. NPA's motion to compel the production of documents and deposition of non-party Dr. Amy S. Paller [81] is granted in part and denied in part.

■[ For further details see text below.]    Notices mailed by Judicial staff.

00:30

## STATEMENT

NPA's motion to clarify this Court's August 14, 2008 Order [106] is granted. In its August 14, 2008 order [98], when this Court refers to documents regarding "lobbying strategy" it defines "lobbying strategy" the same way Morton Grove does in its own motion: the lobbying documents regarding strategy include "communications between Morton Grove's lawyers and its lobbyists—many of whom themselves are lawyers." [44] Therefore, based on this definition, the following discovery requests regarding lindane.com are allowed and do not fall within the scope of lobbying strategy:

a) That NPA may proceed with a deposition of Closerlook (as was contemplated by NPA's subpoena) to ask questions about Closerlook's understanding as to the purpose of lindane.com, *i.e.*, whether it was solely intended to influence legislation, including its bases for its positions; the drafting of lindane.com; and support for the statements posted on lindane.com and at issue in NPA's counterclaim;

b) That NPA may seek documents from Morton Grove and Closerlook relating to the drafting of lindane.com, and that such materials are not "lobbying strategy" as contemplated by the Order; and

c) That, during depositions, NPA may inquire into the understanding of current and former Morton Grove employees as to their understanding as to the purpose of lindane.com, *i.e.*, whether it was solely intended to influence legislation, including their bases for their positions; the drafting of lindane.com; and support for the statements posted on lindane.com and at issue in NPA's counterclaim.

## STATEMENT

This ruling does not mend this Court's August 14, 2008 Order. Moreover, it does not limit Morton Grove's ability to raise valid objections, other than its previously argued objection that these requests are not allowed based on this Court's August 14, 2008 Order, to these discovery requests.

NPA's motion to compel the production of documents and deposition of non-party Dr. Amy S. Paller [81] is granted in part and denied in part. NPA may take the deposition of Dr. Paller. The deposition of Dr. Paller must be taken by 10/15/08. The parties are reminded to be sensitive of Dr. Paller's professional and personal schedule when choosing a date for her deposition. As discussed in open court, the parties are instructed to stay within the scope of the subject statements related to this case and Dr. Paller's work on lindane.com during her deposition. The parties are also reminded that, as of this date, Dr. Paller is not a retained expert in this litigation. Therefore, NPA is not allowed to ask Dr. Paller questions regarding her expert opinion of lindane generally.

Morton Grove's request that NPA compensate at Dr. Paller at a rate of $500 per hour for her preparation and time at the deposition is denied. Dr. Paller is entitled to receive the statutory rate of a deponent.

NPA's request to seek electronically stored information from Dr. Paller is denied without prejudice. Morton Grove is to produce Dr. Paller's paper documents, including Dr. Paller's curriculum vitae and list of the articles she has authored or co-authored, to NPA by 9/10/08.

Order Form (01/2005)   Case 1:08-cv-01384   Document 98   Filed 08/14/2008   Page 1 of 2

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 08 C 1384 | **DATE** | 8/14/2008 |
| **CASE TITLE** | Morton Grove Pharmaceuticals, Inc. Vs. National Pediculous Association, Inc. | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion for a protective order and to quash subpoena [43] is granted in part and denied in part. For further details see text below.

■ [ For further details see text below.]   Docketing to mail notices.

## STATEMENT

In its motion, Morton Grove Pharmaceuticals, Inc. ("Morton Grove") requests that this Court 1) enter a protective order precluding discovery regarding documents relating to Morton Grove's lobbying activities, and 2) quash the subpoena issued to Closerlook, Inc. by the National Pediculosis Association, Inc. ("NPA"). We begin with Morton Grove's request to enter a protective order precluding discovery.

In response to NPA's document requests, Morton Grove has produced the following categories of documents related to its lobbying activities: 1) communications between Morton Grove and any governmental entities or officials; 2) documents that Morton Grove distributed in connection with any lobbying campaign it conducted; 3) documents sufficient to identify those persons involved with Morton Grove's lobbying efforts; and 4) Morton Grove's testimony relating to lindane medications. Motion, p. 3.

Morton Grove refuses to produce documents generally relating to its lobbying strategy and communications by Morton Grove to any doctors, health professionals, or organizations requesting assistance in Morton Grove's lobbying efforts. Morton Grove requests a protective order and argues that these lobbying documents are not relevant to the claims in this case and that NPA's is using its extensive document requests to harass Morton Grove.

In response to Morton Grove's motion, NPA argues that the subject documents should be produced because they are relevant to plaintiff's claims and NPA's counterclaims. In its complaint, plaintiff alleges that NPA's campaign included misinformation regarding plaintiff's lindane medications. In its counterclaims, NPA alleges that Morton Grove made false statements about its lindane-containing products and NPA. NPA further claims that the false statements were made during lobbying activities including in letters Morton Grove sent to health care professionals and on Morton Grove's website, lindane.com, which was created by Closerlook.

## STATEMENT

This Court finds that Morton Grove's documents related to lobbying strategy are not relevant to any of the pending claims or counterclaims. Therefore, Morton Grove does not have to produce documents regarding its lobbying strategy.

However, this Court will not rule on the category of documents including the communications by Morton Grove to doctors, health professionals, or organizations requesting assistance in Morton Grove's lobbying efforts at this time. This Court will reserve ruling of this issue until Morton Grove's motion to dismiss NPA's counterclaim [66] is ruled on by the District Court Judge.

In its motion, Morton Grove also requests that this Court quash the subpoena issued to Closerlook, Inc. ("Closerlook") by NPA. Morton Grove defines Closerlook as the vendor that developed its lobbying website, www.lindane.com. Based on this definition, Morton Grove makes similar arguments to those raised in connection with the lobbying documents. Morton Grove argues that its lobbying documents are not relevant. NPA responds that Closerlook developed more than a lobbying website for Morton Grove. NPA alleges that www.lindane.com is a marketing tool.

Morton Grove's request that NPA's subpoena be quashed is denied in part. NPA may subpoena Closerlook for documents. However, NPA may not request documents regarding lobbying strategy. In addition, if Closerlook possesses any documents that fall into the category of documents of communications by Morton Grove to any doctors, health professionals, or organizations requesting assistance in Morton Grove's lobbying efforts, those documents should not be produced until a ruling has been made on that issue.

Morton Grove asserts that some of the documents within Closerlook's control may fall with the attorney-client or work product doctrine privileges. Morton Grove is ordered to provide NPA with a detailed privilege log of the documents that fall within the categories of attorney-client and work product doctrine privileges .

Finally, NPA requests that this Court order Morton Grove to pay NPA's costs for this motion. NPA does not provide the basis for its request for costs. NPA's request for costs is denied.