**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MORTON GROVE PHARMACEUTICALS, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE NATIONAL PEDICULOSIS )<br>ASSOCIATION, INC. )<br>)<br>Defendants. )<br>) | No: 08-CV-1384<br><br>Judge Bucklo<br>Magistrate Judge Mason |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS
TO MAGISTRATE JUDGE MASON'S ORDER
DENYING DEFENDANT'S MOTION TO COMPEL PRODUCTION**

**APPENDIX OF UNPUBLISHED CASES**

Tab 1   *Patrick v. City of Chicago*, 2008 WL 2339649 (N.D. Ill. Jun. 4, 2008)

Tab 2   *American Motors Corp. v. Great Am. Surplus Lines Ins. Co.*, 1988 WL 2788 (N.D. Ill. Jan. 8, 1988)

MORTON GROVE PHARMACEUTICALS, INC.

By:   /s/ William C. O'Neil
   One of its Attorneys

**WINSTON & STRAWN LLP**

W. Gordon Dobie (wdobie@winston.com)
William C. O'Neil (woneil@winston.com)
Cherish M. Keller (ckeller@winston.com)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
T: (312) 558-5600
F: (312) 558-5700

Dated: September 9, 2008

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 9th day of September 2008, I caused a copy of **Plaintiff's Response to Defendant's Objections to Magistrate Judge Mason's Order Denying Defendant's Motion to Compel Production: Appendix of Unpublished Cases** to be served on counsel of record via ECF electronic filing:

> Debbie L. Berman
> Amanda S. Amert
> Wade A. Thomson
> April A. Otterberg
> JENNER & BLOCK LLP
> 330 North Wabash Avenue
> Chicago, Illinois 60611
> T: (312) 222-9350
> F: (312) 527-0484

        /s/ Cherish M. Keller

# TAB 1

Slip Copy                                                                                                                    Page 1
Slip Copy, 2008 WL 2339649 (N.D.Ill.)

Patrick v. City of Chicago
N.D.Ill.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
Jerry PATRICK, Plaintiff,
v.
CITY OF CHICAGO, a municipal Corporation, et al., Defendants.
No. 06 c 3780.

June 4, 2008.

Annemarie Elizabeth Kill, Avery Camerlingo Kill, LLC, Chicago, IL, for Plaintiff.
Timothy L. Swabb, Jay Michael Kertez, Deja C. Nave, Joseph Francis Graham, City of Chicago, Law Department Corporation Counsel, Chicago, IL, for Defendants.

**MEMORANDUM OPINION AND ORDER**

ROBERT M. DOW, JR., District Judge.

*\*1* On February 25, 2008, Magistrate Judge Valdez entered an order granting in part and denying in part Plaintiff's motion for sanctions, for determination of confidential status of certain documents, for extension of discovery, and for leave to file an amended complaint [87]. Prior to entering that decision, Magistrate Judge Valdez had taken extensive briefing, convened a hearing on the motion, and undertaken "in camera" review of certain documents relevant to the motion. Before the Court are Plaintiff's objections to the February 25, 2008 order [88], Defendants' response [91], and Plaintiff's reply [93]. For the reasons stated below, the Court overrules Plaintiff's objections and affirms Magistrate Judge Valdez's order.

**I. Background**

Plaintiff was terminated from his position with the Chicago Department of Transportation after the City's Human Resources Board determined that Plaintiff had violated the City's Personnel Rules. Plaintiff alleges that his termination was based solely on an off-duty arrest and his subsequent failure to respond to questions posed by the City's Office of the Inspector General. In his complaint, Plaintiff alleges that the City violated his rights to privacy and due process.

The documents that lie at the heart of the current dispute before the Court came to light during Plaintiff's deposition of Deputy Inspector General William Marback, which took place on August 22, 2007. During that deposition, Plaintiff's counsel learned that Marback had reviewed various "loose documents," including "criminal history reports" and "case initiation reports" concerning Plaintiff, and that Marback had those documents in his possession during the IG's attempt to question Plaintiff.

Two months later, on October 22, 2007, Plaintiff filed a motion to compel the production of the "loose documents" that Marback mentioned during his deposition [49]. Judge Leinenweber, to whom this case previously was assigned, ordered the City to produce the IG file, which the City did on November 30, 2007, one day after the Court entered an unopposed protective order [65]. At that time, Judge Leinenweber also extended the fact discovery cutoff to December 31, 2007.

The City designated every one of the more than 300 pages in the IG file "confidential" under the terms of the protective order.[FN1] Plaintiff took issue with those designations and filed a motion for sanctions, for determination of confidential status of certain documents, for extension of discovery, and for leave to file an amended complaint [73]. Magistrate Judge Valdez allowed full briefing on the motion [73, 76, 81, 83], convened a lengthy oral hearing on the motion [85], and undertook "in camera" review of certain documents relevant to the motion. On February 25, 2008, Magistrate Judge Valdez

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

entered an order granting in part and denying in part Plaintiff's motion for sanctions, for determination of confidential status of certain documents, for extension of discovery, and for leave to file an amended complaint [87]. In the portions of her decision that are pertinent to the objections before the Court, Magistrate Judge Valdez specifically ruled that (i) many, though not all, of the documents at issue are publicly available and not within the scope of the protective order, and thus should not be designated as confidential, and (ii) Plaintiff's request for leave to file an amended complaint would be denied based on Plaintiff's delay in raising and articulating the legal basis for the proposed amendment. [87, at 2].

> FN1. The protective order specifically encompasses the following material: "The documents and records identified in this paragraph include some or all of the documents the parties anticipate producing in response to discovery requests in this action pursuant to court order. These document contain and consist of any transcripts of Inspector General ("IG") interviews, from January 1, 2003, to the present of current or former employees of the Chicago Department of Transportation ("CDOT") accused of misconduct; complaints against individual defendants William Marback, James Taggert, Miguel d'Escoto, and George Catezone contained in their personnel files, the personnel file of the person Taggart testified at his deposition was read his Miranda rights prior to an IG interview; *and information pertaining to the manner in which the City's Ofice of the IG conducts its investigations."* (Emphasis added.)

**\*2** On March 6, 2008, Plaintiff timely filed his objections to Magistrate Judge Valdez's order [88], asserting that (i) none of the documents at issue should be designated as confidential and (ii) leave to file an amended complaint should have been granted. As to the second argument, Plaintiff contends in the alternative that if the Court upholds the denial of leave to amend, it should state that the denial is without prejudice to Plaintiff's right to bring additional claims in another prospective lawsuit. The City filed a response to Plaintiff's objections [91], and Plaintiff replied [93].

**II. Analysis**

Where, as here, a district court considers objections to a magistrate judge's rulings on nondispositive matters, the magistrate judge's disposition will be set aside only if it is "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a); see also *Bobkoski v. Board of Educ. of Cary Consol. School Dist.,* 141 F.R.D. 88, 90 (N.D.Ill.1992) ("Courts have consistently found routine discovery motions to be 'nondispositive' within the meaning of Rule 72(a)"); *Hall v. Norfolk Southern Ry. Co.,* 469 F.3d 590, 595 (7th Cir.2006) ("The district judge correctly held that the magistrate judge's denial of Hall's motion to amend his complaint was nondispositive, subject only to review for clear error"). The Seventh Circuit has explained that, under the clear error standard, "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Industries Co., Ltd.,* 126 F.3d 926, 943 (7th Cir.1997)."Ordinarily, under clearly erroneous review, if there are two permissible views, the reviewing court should not overturn the decision solely because it would have chosen the other view."*American Motors Corp. v. Great Am. Surplus Lines Ins. Co.,* 1988 WL 2788, at \*1 (N.D.Ill. Jan.8, 1988). Plaintiff objects to two specific rulings encompassed within Magistrate Judge Valdez's February 25, 2008 order. The Court will analyze each objection in turn.

**A. Confidential status of certain documents**

The discovery issue raised in Plaintiff's objections

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

is about confidentiality, not production, for the parties agree that all documents from the IG file have been produced, are in Plaintiff's possession, and may be used by Plaintiff in this litigation. Plaintiff's motion challenged the City's designation of its entire supplemental production of 300+ documents as "confidential" under the terms of the protective order entered without objection by Judge Leinenweber on November 29, 2007. Properly recognizing the City's burden to justify its designation under the protective order, Magistrate Judge Valdez largely ruled in *Plaintiff's* favor, essentially concluding that the City's initial designation was overly expansive. Tracking the language of the agreed protective order, Magistrate Judge Valdez specifically ruled that all publicly available documents that do not "pertain[ ] to the manner in which the City's office of IG conducts its investigations" should *not* be designated as confidential. [87, at 2]. The upshot of that ruling is that the City has carried its burden *only* as to *non-public* documents that pertain to the *manner* in which the City's office of IG conducts its investigations. Correspondingly, in view of the City's burden on the issue, it must be presumed that any documents outside of that category may not be designated as confidential at this time.

**\*3** In enforcing the protective order, Magistrate Judge Valdez in no way can be said to have ruled in a manner that is "clearly erroneous or contrary to law."Fed.R.Civ.P. 72(b). Plaintiff's suggestion [88, at 5] that the portion of the IG file that was produced on November 30, 2007, was not meant to be "within the ambit of the protective order" entered on November 29, 2007, is not persuasive. The sequence of events and the transcript of proceedings before Judge Leinenweber on October 25, 2007, in which the Court set a schedule for the filing of a protective order and the production of the portion of the IG file in dispute, indicate that the two matters were closely linked and that both the parties and the Court contemplated that at least some of the documents in the IG file and subject to the Court's disclosure order might fall within the scope of the confidentiality provisions of the protective order. The materials that remain "confidential" under Magistrate Judge Valdez's ruling track precisely the language proposed by the parties and adopted by Judge Leinenweber when he entered the protective order. Finally, to the extent that the parties are unclear as to precisely which of the documents remain confidential, they are of course free-after making every good faith effort to reach accord (see Local Rule 37.2)-to file a motion for clarification, which this Court would refer to Magistrate Judge Valdez because she already has reviewed the documents *in camera.*

**B. Motion for leave to amend complaint**

Although Plaintiff objects to Magistrate Judge Valdez's denial of Plaintiff's motion for leave to file an amended complaint, Plaintiff offers very little argument-and essentially no legal argument grounded in Seventh Circuit or Northern District case law-in support of his contention that the ruling was clearly erroneous. Indeed, Plaintiff appears more intent on arguing his alternative request for a "finding" with respect to his asserted right to bring claims in a prospective new lawsuit than on attempting to persuade the Court that Magistrate Judge Valdez clearly erred in ruling that he could not amend his complaint to assert those claims in this lawsuit.

With respect to the denial of leave to amend, Plaintiff's principal contention is that Magistrate Judge Valdez erred in believing that Plaintiff had not raised the prospect of amending his complaint before the close of discovery. In reviewing the timeline, Plaintiff is correct in pointing out that he *raised the issue* of an amended complaint on December 18, 2007, two weeks prior to the close of discovery. However, both at the hearing and in her written ruling, Magistrate Judge Valdez focused not only on how late in the case Plaintiff's request to amend his complaint was made, but also on Plaintiff's delay in articulating any legal basis for the proposed amendment. See [87, at 2]; see also

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

2/7/08 Trans. at 14-20. Magistrate Judge Valdez's conclusion that Plaintiff did not adequately explain any legal basis for amending his complaint in his motion or supporting briefs, or indeed at any time prior to the February 7 hearing, led to the denial of the motion on the ground that Plaintiff "did not *sufficiently explain* why he delayed in raising this issue until after the close of discovery."[87, at 2 (emphasis added) ].

***4** In short, both the transcript of the February 7 motion hearing and the February 25 written ruling reflect Magistrate Judge Valdez's judgment that (i) Plaintiff did not pursue the trail of any amended claims that he may have wished to assert with sufficient urgency, either after the receipt of the documents referenced in the August 2007 deposition or the filing of his motion in December 2007, and (ii) Plaintiff did not substantiate any legal basis for the proposed amendment until after the close of discovery. See *Glatt v. Chicago Park Dist.,* 87 F.3d 390, 394 (7th Cir.1996) (affirming denial of motion for leave to amend complaint and explaining that a motion for leave to amend a complaint filed long after the original complaint was filed is "addressed to the discretion of the district court" and "requires more to compel acceptance than the fact that the pleading sought to be added states a claim"). To be sure, Plaintiff could have presented a respectable legal argument that leave to amend should have been granted because-for example-no trial date has been set and the prejudice to Defendants as a result of the new claims and additional discovery would have been manageable. See, *e.g., Jacobs v. Xerox Corp. Long Term Disability Income Plan,* 520 F.Supp.2d 1022, 1045-48 (N.D.Ill.2007) (discussing in detail the law governing motions for leave to file an amended complaint). Although no such argument appears to have been presented to Magistrate Judge Valdez [see 78, 83] or to this Court [see 88, 93], the Court has considered the pertinent case law in light of the circumstances present here and concludes that the motion for leave to amend raised a debatable question as to which reasonable minds could differ.

There is no dispute that leave to amend a complaint pursuant to Rule 15(a) lies within the discretion of the Court (see *Sanders v. Venture Stores, Inc.,* 56 F.3d 771, 773 (7th Cir.1995)), and under Rule 72(a), it was Magistrate Judge Valdez's call to make in the first instance. Where, as here, the matter is before this Court on objections from a ruling on a non-dispositive motion, "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made."*Weeks v. Samsung Heavy Industries Co., Ltd.,* 126 F.3d 926, 943 (7th Cir.1997). For the reasons stated above, this Court has no such conviction, and thus cannot conclude that Magistrate Judge Valdez abused her discretion in denying Plaintiff's motion for leave to amend his complaint.FN2

> FN2. The Court declines Plaintiff's alternative request [88, at 9; 93, at 6-7] that the Court specifically state that leave to file an amended complaint is "denied without prejudice to his right to file any other separate charge or cause of action based on the newly-discovered IG file."The sole issue before this Court at this time is whether Magistrate Judge Valdez's ruling that Plaintiff may not file an amended complaint in this case was "clearly erroneous or contrary to law."The Court offers no opinion on the propriety of any independent action that Plaintiff may choose to file based on information that was disclosed in the IG file.

**III. Conclusion**

For the foregoing reasons, the Court overrules Plaintiff's objections and affirms Magistrate Judge Valdez's written order entered on February 25, 2008 [87].

N.D.Ill.,2008.
Patrick v. City of Chicago
Slip Copy, 2008 WL 2339649 (N.D.Ill.)

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# TAB 2

Westlaw.

Not Reported in F.Supp.                                                                                                               Page 1
Not Reported in F.Supp., 1988 WL 2788 (N.D.Ill.)

American Motors Corp. v. Great American Surplus Lines Ins. Co.
N.D.Ill., 1988.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
AMERICAN MOTORS CORPORATION, Plaintiff,
v.
GREAT AMERICAN SURPLUS LINES INSURANCE COMPANY, Defendant.
**No. 87 C 2496.**

January 8, 1988.

MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.
**\*1** This case involves discovery motions related to document production at a deposition being taken in the Northern District of Illinois. The principal case is in the Eastern District of Michigan.American Motors Corp. v. Great American Surplus Lines Insurance Co., No. 86-CV-74293-DT (E.D. Mich.) (Woods, J.). The principal case concerns insurance coverage under an environmental impairment liability ('EIL') policy for the cleanup of a hazardous waste site. Plaintiff, American Motors Corporation ('AMC'),[FN1] is deposing Stewart Smith Mid-America, Inc. and Stewart Smith Michigan, Inc. (collectively 'Stewart Smith') which are not parties in the principal case. Stewart Smith acted as the program manager and broker for EIL policies issued by Great American Surplus Lines Insurance Company ('GASLIC'). Resolution of the discovery dispute was transferred to Magistrate Weisberg. The magistrate entered two orders, both of which are now before the court on the objections of Stewart Smith.

The first question is the review procedure applicable to this case. The case was transferred to the magistrate under 28 U.S.C. § 636(b)(3)'for disposition on motion to compel production of documents.'Section 636(b)(3) permits the assignment to magistrates of 'such additional duties as are not inconsistent with the Constitution and laws of the United States.'The motion to compel should have been transferred under § 636(b)(1)(A) which covers 'any pretrial matter,' with certain types of motions (not involved here) excepted.[FN2] The court finds the reference to § 636(b)(3) in the transfer order to be a clerical error or oversight.SeeFed. R. Civ. P. 60(a). Citations to the wrong section of the Federal Magistrate's Act do not invalidate the transfer. See King v. Ionization International, Inc., 825 F.2d 1180, 1186 (7th Cir. 1987). The transfer order is corrected <u>nunc pro tunc</u> to be a transfer pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 1.70(c)(2).

Even if the transfer order should not be corrected at this time, the standard of review would be the same. There is no express review standard for § 636(b)(3), but the present matter would fall under Fed. R. Civ. P. 72(a), which covers 'a pretrial matter not dispositive of a claim or defense of a party,' without being limited to transfers under a specific section of the Federal Magistrate's Act.See C.A. Wright, A. Miller, & F. Elliott, Federal Practice & Procedure § 3076.3 at 33 (1987 Supp.). It is also clear that the parties did not consent to a final disposition by the magistrate, appealable to the district court under 28 U.S.C. § 636(c)(4).Compare King, 825 F.2d at 1185. AMC's citations to Fed. R. Civ. P. 73(d) & 75, which apply to transfers pursuant to § 636(c)(4), are misplaced.

Under both § 636(b)(1)(A) and Rule 72(a), the magistrate's orders can only be overturned if 'clearly erroneous or contrary to law.'A finding is clearly erroneous only when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985) (quoting United States v. United States

Not Reported in F.Supp.
Not Reported in F.Supp., 1988 WL 2788 (N.D.Ill.)

Page 2

Gypsum Co., 333 U.S. 364, 395 (1948)). Ordinarily, under clearly erroneous review, if there are two permissible views, the reviewing court should not overturn the decision solely because it would have chosen the other view.Id. at 573-74. The Seventh Circuit, however, has held that a district court can choose to conduct de novo review under § 636(b)(1)(A).United States v. Frans, 697 F.2d 188, 191 n.3 (7th Cir.), cert. denied, 464 U.S. 828 (1983); Empire Gas Corp. v. American Bakeries Co., 646 F. Supp. 269 (N.D. Ill. 1986).Contra Merritt v. International Brotherhood of Boilermakers, 649 F.2d 1013, 1017 (5th Cir. 1981); Laxalt v. McClatchy, 602 F. Supp. 214, 216 (D. Nev. 1985); Industrial Risk Insurers v. Creole Production Services, Inc., 568 F. Supp. 1323, 1325 (D. Alaska 1983), aff'd, 746 F.2d 526 (9th Cir. 1984); Princiotta v. New England Telephone & Telegraph Co., 532 F. Supp. 1009, 1011 (D. Mass. 1982).Frans does not require de novo review nor even make it the ordinary procedure; it only makes de novo review an available option under § 636(b)(1)(A).See Fustok v. ContiCommodity Services, Inc., 106 F.R.D. 590 (S.D.N.Y. 1985). Additionally, review of discovery rulings is extremely deferential.See Indianapolis Colts v. Mayor & City Council of Baltimore, 775 F.2d 177, 183 (7th Cir. 1985).

Magistrate Weisberg's September 10, 1987 written order provides no reason for his ruling, but expressly refers to his oral ruling delivered in open court. The briefs indicate the oral ruling explains the magistrate's written ruling. A transcript of the oral ruling was not provided to this court.Rules 72(b) and 75(d) require the objecting party to provide a transcript.Rule 72(a) is silent, but it would seem that the burden should be on the objecting party to provide necessary transcripts.FN3 Under § 636(c)(4), failure of the objecting party to provide a transcript permits the district court to take such action as it deems appropriate.Adams v. Heckler, 794 F.2d 303, 308 (7th Cir. 1986). The same rule should apply under § 636(b)(1)(A). The court will decide the issues before it on the limited record, with any doubts as to the record resolved against Stewart Smith.Cf. id.

*2 Stewart Smith argues the documents requested are irrelevant and points to the possibility that Judge Woods in Michigan will dismiss some of AMC's claim and/or deny certain discovery from defendant GASLIC on relevancy grounds. Stewart Smith urges this court to defer to Judge Woods' decision. AMC argues deference is not required on the relevancy issue and that Stewart Smith waived this argument by not adequately opposing AMC's views before the magistrate. Judge Woods, though, recently ruled in favor of AMC and against GASLIC, thus largely undercutting the basis of Stewart Smith's argument. Stewart Smith has presented no grounds that the court finds sufficient to overturn the magistrate's ruling on relevancy. Stewart Smith has also presented no arguments convincing this court that the magistrate was clearly erroneous in finding that the second subpoena was not duplicative. Nor has Stewart Smith presented facts showing that the magistrate was clearly erroneous in not finding the discovery requests to be unduly burdensome. Stewart Smith shall comply with the September 10, 1987 order of Magistrate Weisberg within three weeks of the date of this order. AMC's suggestion of a protective order protecting the confidentiality of documents related to other insureds is well taken. Today's order does not prevent Stewart Smith or AMC from moving this court for a protective order preserving the confidentiality of such documents turned over in compliance with the September 10 order. Such a protective order, however, must be expeditiously sought and will not delay compliance with today's order.

Stewart Smith also objects in part to Magistrate Weisberg's July 31, 1987 order concerning the application of the attorney-client privilege to various documents. Stewart Smith points to all or portions of six documents that it claims should be privileged. The magistrate's order does not explain the reasoning for his decisions. It appears, though, that he found that an attorney-client relationship exis-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:08-cv-01384 Document 124 Filed 09/09/2008 Page 12 of 13

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1988 WL 2788 (N.D.Ill.)

ted, but ordered disclosure of all documents and portions of documents that did not contain specific legal advice. There is no indication in the record that Stewart Smith presented to the magistrate anything other than the purportedly privileged documents and a short brief in which Stewart Smith conclusorily asserted Lord, Bissell and Brook had a confidential attorney-client relationship with Underwriters at Lloyd's, Stewart Wrightson & Co. (apparently Stewart Smith's parent corporation in Great Britian), Stewart Smith,[FN4] and GASLIC.

The court does not have before it all the documents that were before the magistrate, only the six contested documents. Three of the documents are letters from Lord Bissell to Lloyd's addressed care of Stewart Wrightson. One letter is from Lord Bissell to Stewart Wrightson and another is to Stewart Smith. Another letter is from Stewart Wrightson to Stewart Smith. One of the letters indicates that as of 1984 Lord Bissell was not certain as to which of the insurers were actually its clients. Stewart Smith, however, filed two additional affidavits with the court. An employee of GASLIC states in his affidavit that the four insurers worked together to develop the EIL insurance program since 1980. Since at least 1981, he regarded Lord Bissell as attorneys for the program and each insurer involved. He also considered 'all' of his communications with Lord Bissell to be confidential attorney-client communications. An employee of Stewart Smith makes the same statements in his affidavit.

**\*3** The burden of showing the documents are privileged is on Stewart Smith, the litigant claiming the privilege.FTC v. Shaffner, 626 F.2d 32, 37 (7th Cir. 1980). The essential elements include that the communication (1) concerned legal advice; (2) was in confidence; (3) was between a client and an attorney acting in his or her capacity as an attorney; (4) was related to legal matters, and (5) was permanently protected from disclosure at the request of the client.Id.;United States v. Tratner, 511 F.2d 248, 251 (7th Cir. 1975) (quoting 8 J. Wigmore, Evidence § 2292 (McNaughton rev. 1961)). The attorney-client privilege should be construed narrowly.Marshall & Ilsley Trust Co. v. Pate, 819 F.2d 806, 811 (7th Cir. 1987). In light of Lord Bissell's uncertainty as to who was its client, the credibility of Stewart Smith's affidavits are questionable. It is somewhat questionable whether Lord Bissell should be considered to have a confidential attorney-client relationship with all of the insurers.Cf. Sneider v. Kimberly-Clark Corp., 91 F.R.D. 1, 8 (N.D. Ill. 1980); Hartford Fire Insurance Co. v. Garvey, 109 F.R.D. 323, 327-28 (N.D. Cal. 1985). Clear error, however, has not been shown and therefore the court will defer to the implicit finding of the magistrate that such a relationship existed.

That a confidential attorney-client relationship existed does not make every communication between the attorney and the clients privileged, nor is there even a presumption that such communications are privileged.Sneider, 91 F.R.D. at 3. Four insurers were setting up an insurance program. Strategies and management concerns of setting up that program are not privileged, even if advice on those issues came from an attorney.See Resnick v. American Dental Association, 95 F.R.D. 372, 375 (N.D. Ill. 1982). Memoranda describing meetings are generally not privileged, but if they were intended to be confidential and contain legal advice, they can be.See Sneider, 91 F.R.D. at 6. Also, cover letters for the transfer of confidential documents and descriptions of services provided are generally not privileged, but will be to the extent they describe confidential legal advice.See Mitts & Merrill, Inc. v. Shred Pax Corp., 112 F.R.D. 349, 352 (N.D. Ill. 1986); Schachar v. American Academy of Opthamology, Inc., 106 F.R.D. 187, 192 (N.D. Ill. 1985).

The magistrate went through the documents presented and required disclosure of documents or portions of documents that did not contain legal advice. The court has read the documents presented. The court does not find any clear error in the magistrate's July 31 order except as follows. Docu-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:08-cv-01384    Document 124    Filed 09/09/2008    Page 13 of 13

Not Reported in F.Supp.
Not Reported in F.Supp., 1988 WL 2788 (N.D.Ill.)

Page 4

ments covering the following Bates numbers are entirely privileged and do not have to be disclosed: 509-13, 521-24, 574-87, & 6680-81. The following additional paragraphs of document 2785-94 are privileged and should be redacted before disclosure. All of page 2787 except the last paragraph. The paragraph numbered 4 on page 2791. The first two paragraphs of page 2794. A letter between two of the insurers (Document No. 6686) is not an attorney-client communication and, although it refers to a document possibly containing legal advice, it does not disclose legal advice. As modified, Stewart Smith shall fully comply with the magistrate's July 31 order.

**\*4** IT IS THEREFORE ORDERED that:

(1) The order transferring this case to the magistrate is corrected nunc pro tunc to be a transfer pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 1.70(c)(2).

(2) American Motors Corporation's motion for resolution of the issue of recusal is granted and the court finds it will not recuse itself.

(3) Stewart Smith shall fully comply with the magistrate's September 10, 1987 order within three weeks of the date of today's order.

(4) As modified, Stewart Smith shall fully comply with the magistrate's July 31, 1987 order no later than seven days from the date of today's order.

> FN1 I previously advised the litigants that when in private practice, I frequently represented AMC. I, however, had no prior knowledge or involvement in this particular case and have been out of private practice for a number of years. Neither party has requested I recuse myself, but one party has asked me for an express ruling on recusal. None of the grounds enumerated in 28 U.S.C. § 455(b) are present. The aforesaid facts also do not constitute circumstances under which my impartiality might reasonably be questioned. See id. § 455(a). I will not recuse myself.

> FN2 The basic distinction between referrals under §§ 636(b)(1)(A) and 636(b)(1)(B) is that the former involves nondispositive pretrial matters and the latter dispositive pretrial matters. See C.A. Wright, A. Miller, & F. Elliott, Federal Practice & Procedure § 3076.3 at 33 (1987 Supp.); Fed. R. Civ. P. 72(a) & (b); Local Rule 1.70(c)(1) & (2).

> FN3 It would seem that AMC, which requested an expedited decision, would also have made sure the transcript was provided. It, however, does not have the same obligations as Stewart Smith since AMC is not seeking to overturn the ruling of the magistrate. AMC's lack of diligence only goes against granting its motion for an expedited ruling; its lack of diligence regarding the transcript does not go against it on the merits of the ruling.

> FN4 At the time the letters involved were written, Stewart Smith went by another name. To avoid confusion, the former name is not used in this order.

N.D.Ill., 1988.
American Motors Corp. v. Great American Surplus Lines Ins. Co.
Not Reported in F.Supp., 1988 WL 2788 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.